Thomas R. Curtin
George C. Jones
McELROY, DEUTSCH, MULVANEY
 & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100

Jonathan E. Missner (*pro hac vice* forthcoming)
Robert B. Gilmore (*pro hac vice* forthcoming)
Philip J. O'Beirne (*pro hac vice* forthcoming)
Michael A. Petrino (*pro hac vice* forthcoming)
Kevin L. Attridge (*pro hac vice* forthcoming)
STEIN MITCHELL BEATO & MISSNER LLP
901 15th Street, N.W., Suite 700
Washington, DC 20005
(202) 737-7777

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, SONY MUSIC ENTERTAINMENT, ARISTA RECORDS LLC, ARISTA MUSIC, LAFACE RECORDS LLC, SONY MUSIC ENTERTAINMENT US LATIN LLC, VOLCANO ENTERTAINMENT III, LLC, ZOMBA RECORDING LLC, ATLANTIC RECORDING CORPORATION, BAD BOY RECORDS LLC, ELEKTRA ENTERTAINMENT GROUP INC., FUELED BY RAMEN LLC, MAVERICK RECORDING COMPANY, THE ALL BLACKS U.S.A., INC., WARNER MUSIC NASHVILLE LLC, WARNER RECORDS INC., WARNER RECORDS/SIRE VENTURES LLC, and WEA INTERNATIONAL INC., <br><br> Plaintiffs, <br><br> v. <br><br> RCN TELECOM SERVICES, LLC, RCN TELECOM SERVICES OF NEW YORK, L.P., RCN CAPITAL CORP., RCN TELECOM SERVICES OF PHILADELPHIA, LLC, RCN TELECOM SERVICES OF MASSACHUSETTS, LLC, STARPOWER COMMUNICATIONS, LLC, RCN MANAGEMENT CORPORATION, RCN ISP, LLC, RCN DIGITAL SERVICES, LLC, RCN NY LLC 1, RCN TELECOM SERVICES (LEHIGH), LLC, RCN TELECOM SERVICES OF ILLINOIS, LLC, 21ST CENTURY TELECOM SERVICES, INC., RCN CABLE TV OF CHICAGO, INC., and PATRIOT MEDIA CONSULTING, LLC, <br><br> Defendants. | Civil Action No. 19-17272 (MAS) (ZNQ) <br><br><br><br><br><br> **FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, Sony Music Entertainment, Arista Records LLC, Arista Music, LaFace Records LLC, Sony Music Entertainment US Latin LLC, Volcano Entertainment III, LLC, Zomba Recording LLC, Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled by Ramen LLC, Maverick Recording Company, The All Blacks U.S.A., Inc., Warner Music Nashville LLC, Warner Records Inc., Warner Records/SIRE Ventures LLC, and WEA International Inc. (collectively "Plaintiffs"), for their First Amended Complaint against RCN Telecom Services, LLC, RCN Telecom Services of New York, L.P., RCN Capital Corp., RCN Telecom Services of Philadelphia, LLC, RCN Telecom Services of Massachusetts, LLC, Starpower Communications, LLC, RCN Management Corporation, RCN ISP, LLC, RCN Digital Services, LLC, RCN NY LLC 1, RCN Telecom Services (Lehigh), LLC, RCN Telecom Services of Illinois, LLC, 21st Century Telecom Services, Inc., RCN Cable TV of Chicago, Inc., and Patriot Media Consulting, LLC (collectively "Defendants"), allege as follows:

## NATURE OF THE CASE

1.    This is a case about a leading internet service provider knowingly enabling its customers' massive online copyright infringement of sound recordings.

2.    Plaintiffs are record companies that produce, manufacture, distribute, sell, and license the great majority of all legitimate commercial sound recordings in this country. Plaintiffs invest significant amounts of money, time, and effort to discover and develop recording artists, and to create, manufacture, advertise, promote, sell, and distribute the world's most popular music. Plaintiffs own or control exclusive rights to the copyrights to many of the most famous sound recordings performed by classic artists and contemporary superstars. Their investments and creative efforts have shaped the musical landscape in the United States and around the world.

3.      Defendants RCN Telecom Services, LLC, RCN Telecom Services of New York, L.P., RCN Capital Corp., RCN Telecom Services of Philadelphia, LLC, RCN Telecom Services of Massachusetts, LLC, Starpower Communications, LLC, RCN Management Corporation, RCN ISP, LLC, RCN Digital Services, LLC, RCN NY LLC 1, RCN Telecom Services (Lehigh), LLC, RCN Telecom Services of Illinois, LLC, 21st Century Telecom Services, Inc., and RCN Cable TV of Chicago, Inc. (collectively referred to as "RCN") are Internet Service Providers ("ISPs") that provide internet services to customers throughout a number of major metropolitan regions in the U.S., including New York, Chicago, Boston, Philadelphia, and Washington D.C.   Upon information and belief, the RCN Defendants are operated as a single, integrated company, under the RCN brand, with common management, a common corporate headquarters, and common policies and practices with respect to the provision of internet services.  Defendant Patriot Media Consulting, LLC ("Patriot") provides management services to RCN.

4.      Through the provision of RCN's internet services, Defendants knowingly contributed to, and reaped substantial profits from, copyright infringement by RCN subscribers, including thousands of repeat infringers.  Defendants' conduct caused substantial harm to Plaintiffs, whose businesses depend on the lawful use of music.

5.      For years, RCN and its management company, Patriot, have been well aware of specific acts of infringement on RCN's network.  Defendants have received more than five million notices that RCN's customers were using RCN's internet services to engage in infringement of copyrighted works, including tens of thousands of blatant infringements by repeat infringers of Plaintiffs' copyrighted works.  Armed with the knowledge of which customers were engaged in specific, repeated acts of illegal infringement on RCN's network, Defendants could easily have stopped those customers from continuing to engage in infringement using RCN's internet service. But for years, Defendants failed to terminate the accounts of repeat infringers or take any other

3

meaningful action to curb this ongoing theft.  Instead, Defendants continued to provide known infringing customers with RCN's internet services—the indispensable means to infringe Plaintiffs' copyrights—without consequence.

6.     Defendants operated RCN as a haven for infringement.  Defendants promoted RCN's high internet speeds to customers, knowing that the ability to download copyrighted materials (including Plaintiffs' copyrighted sound recordings) illegally using high-speed internet, without repercussions, was a substantial draw for infringers.  Defendants' material contribution to RCN's subscribers' infringement was both willful and extensive, and it renders Defendants liable for contributory copyright infringement.

7.     Defendants derived a direct financial benefit from RCN's subscribers' infringement.  The ability of subscribers to download and distribute Plaintiffs' copyrighted works illegally through RCN's service, without limit, has served as a valuable draw for infringing subscribers to use RCN's service, and has allowed Defendants to attract, retain, and charge higher fees to subscribers.  Upon information and belief, Defendants' failure to adequately police RCN's infringing subscribers was also a draw for customers to purchase RCN's internet services and to use those services to infringe Plaintiffs' copyrighted sound recordings.  Upon information and belief, subscribers who sought to engage in online infringement knew that they could do so on RCN's network with impunity, which attracted those subscribers to use RCN's service to do so.

8.     By continuing to provide known repeat infringers with the internet service they use to commit their infringement, Defendants obtained a direct financial benefit from the subscribers' infringing activity in the form of monthly subscription fees that they would not have received if they had terminated those subscribers' accounts.  Defendants also reaped benefits in the form of good will from customers and potential customers who sought to, and were able to, steal music on RCN's network with impunity.  Defendants' right and ability to control RCN subscribers'

infringement, and Defendants' direct financial benefit from that infringement, renders Defendants liable for vicarious copyright infringement.

9.      Defendants' actions, including their refusal to prevent their users' repeat infringement of Plaintiffs' copyrighted works, have caused—and continue to cause—Plaintiffs significant and irreparable harm.  The success of Plaintiffs' businesses depends on their ability to generate revenue through the lawful and authorized exploitation of their intellectual property. Defendants' acts of infringement have severely interfered with those efforts.  Plaintiffs are entitled to permanent injunctive relief to stop Defendants' ongoing violation of Plaintiffs' rights, as well as damages resulting from Defendants' egregious infringing conduct.

## JURISDICTION AND VENUE

10.      This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States, 17 U.S.C. §§ 101 *et seq.*

11.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions).

12.      This Court has personal jurisdiction over RCN because each of the RCN Defendants is headquartered in Princeton, New Jersey and in this judicial district.  RCN's corporate headquarters are located at 650 College Road East, Suite 3100, Princeton, New Jersey 08540, within this judicial district and division.

13.      This Court has personal jurisdiction over Patriot because Patriot is headquartered in Princeton, New Jersey, at the same address as RCN (650 College Road East, Suite 3100, Princeton, New Jersey 08540).  Patriot does systematic and continuous business in New Jersey and in this judicial district and division, including providing management and general counsel services to RCN at and through its corporate headquarters.

5

14.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)-(c), and/or 28 U.S.C. § 1400(a).  A substantial part of the acts of infringement complained of herein occurs or has occurred in this judicial district, where RCN and Patriot both reside and may be found.

## THE PARTIES

**A.     Plaintiffs**

15.     Plaintiff UMG Recordings, Inc. is a Delaware corporation with its principal place of business in Santa Monica, California.

16.     Plaintiff Capitol Records, LLC is a Delaware limited liability company with its principal place of business in Santa Monica, California.

17.     Plaintiff Sony Music Entertainment is a Delaware partnership with its principal place of business in New York, New York.

18.     Plaintiff Arista Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

19.     Plaintiff Arista Music is a New York partnership with its principal place of business in New York, New York.

20.     Plaintiff LaFace Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

21.     Plaintiff Sony Music Entertainment US Latin LLC is a Delaware limited liability company with its principal place of business in New York, New York.

22.     Plaintiff Volcano Entertainment III, LLC is a Delaware limited liability company with its principal place of business in New York, New York.

23.     Plaintiff Zomba Recording LLC is a Delaware limited liability company with its principal place of business in New York, New York.

24.     Plaintiff Atlantic Recording Corporation is a Delaware corporation with its principal place of business in New York, New York.

25.     Plaintiff Bad Boy Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

26.     Plaintiff Elektra Entertainment Group Inc. is a Delaware corporation with its principal place of business in New York, New York.

27.     Plaintiff Fueled by Ramen LLC is a Delaware limited liability company with its principal place of business in New York, New York.

28.     Plaintiff Maverick Recording Company is a California general partnership with its principal place of business in Los Angeles, California.

29.     Plaintiff The All Blacks U.S.A., Inc. is a Delaware corporation with its principal place of business in New York, New York.

30.     Plaintiff Warner Music Nashville LLC is a Tennessee limited liability company with its principal place of business in Nashville, Tennessee.

31.     Plaintiff Warner Records Inc. is a Delaware corporation with its principal place of business in Los Angeles, California.

32.     Plaintiff Warner Records/SIRE Ventures LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California.

33.     Plaintiff WEA International Inc. is a Delaware corporation with its principal place of business in New York, New York.

**B.      Defendants**

34.     Upon information and belief, RCN Telecom Services, LLC is a Delaware limited liability company with its principal place of business in Princeton, New Jersey.

35.     Upon information and belief, RCN Telecom Services of New York, L.P. is a New York limited partnership with its principal place of business in Princeton, New Jersey.

36.     Upon information and belief, RCN Capital Corp. is a Delaware corporation with its principal place of business in Princeton, New Jersey.

37.     Upon information and belief, RCN Telecom Services of Philadelphia, LLC is a Pennsylvania limited liability company with its principal place of business in Princeton, New Jersey.

38.     Upon information and belief, RCN Telecom Services of Massachusetts, LLC is a Delaware limited liability company with its principal place of business in Princeton, New Jersey.

39.     Upon information and belief, Starpower Communications, LLC is a Delaware limited liability company with its principal place of business in Princeton, New Jersey.

40.     Upon information and belief, RCN Management Corporation is a Delaware corporation with its principal place of business in Princeton, New Jersey.

41.     Upon information and belief, RCN ISP, LLC is a Delaware limited liability company with its principal place of business in Princeton, New Jersey.

42.     Upon information and belief, RCN Digital Services, LLC is a Delaware limited liability company with its principal place of business in Princeton, New Jersey.

43.     Upon information and belief, RCN NY LLC 1 is a Delaware limited liability company with its principal place of business in Princeton, New Jersey.

44.     Upon information and belief, RCN Telecom Services (Lehigh), LLC is a Delaware limited liability company with its principal place of business in Princeton, New Jersey.

45.     Upon information and belief, RCN Telecom Services of Illinois, LLC is an Illinois limited liability company with its principal place of business in Princeton, New Jersey.

46.     Upon information and belief, 21st Century Telecom Services, Inc. is a Delaware corporation with its principal place of business in Princeton, New Jersey.

47.     Upon information and belief, RCN Cable TV of Chicago, Inc. is a Delaware corporation with its principal place of business in Princeton, New Jersey.

48.     Upon information and belief, Patriot is a New Jersey limited liability company with its principal place of business in Princeton, New Jersey.

## FACTUAL BACKGROUND

### Plaintiffs' Extensive and Valuable Copyrights

49.     Plaintiffs are the copyright owners of, or owners of exclusive rights with respect to, the great majority of copyrighted sound recordings sold in the United States, including sound recordings embodying the performances of some of the most popular and successful recording artists of all time, from Aerosmith to ZZ Top, Bruce Springsteen to Bon Jovi, One Direction to Beyoncé, Kanye West to John Legend, Rihanna to Carrie Underwood, and many more.

50.     Plaintiffs are engaged in the business of, and have invested and continue to invest significant money, time, effort, and creative talent in, producing, manufacturing, distributing, promoting, selling, licensing, and otherwise exploiting sound recordings in various media throughout the United States, including in New Jersey.  The considerable artistic quality of Plaintiffs' sound recordings is well-known in New Jersey, and throughout the United States and the world.

51.     A non-exhaustive, illustrative list of Plaintiffs' federally copyrighted sound recordings that Defendants have illegally infringed within the limitations time period is attached hereto as Exhibit A (the "Copyrighted Sound Recordings").  Plaintiffs (or other persons or entities from which Plaintiffs have acquired or licensed the exclusive rights to the Copyrighted Sound Recordings in the United States) have received Certificates of Copyright Registration from the

Register of Copyrights for each of the Copyrighted Sound Recordings.  Plaintiffs may further amend the First Amended Complaint to provide an expanded list of works infringed by Defendants.

52.     Under the Copyright Act of 1976 (the "Copyright Act"), Plaintiffs have the exclusive U.S. rights, among other things, to "reproduce the copyrighted work[s]" and to "distribute copies or phonorecords of the copyrighted work[s] to the public," as well as to authorize or license such activities.  17 U.S.C. § 106.

53.     The Copyright Act imposes liability not only on those who engage in the direct infringement of copyrights, but also on those who materially contribute to such infringement, and on those who engage in vicarious infringement.  Liability may attach regardless of whether the infringement pertains to physical products or digital files over the internet.

54.     Under federal copyright law, plaintiffs in copyright infringement actions may seek actual damages or instead may seek statutory damages in an amount of up to $150,000 with respect to each work infringed.  17 U.S.C. § 504.  Plaintiffs may also recover reasonable attorneys' fees and costs.  17 U.S.C. § 505.

**Online Copyright Infringement Using BitTorrent**

55.     Massive online infringement of copyrighted music and other digital works is a significant problem for the record industry, as well as for other content-owning industries. Infringement frequently occurs over BitTorrent networks that distribute copyrighted works in small pieces using many users' computers working together.  BitTorrent systems allow users to join a "swarm" of collaborating host computers to download and upload copyrighted works from each other simultaneously.  When a file is requested, BitTorrent software identifies multiple computers hosting the identical file, takes small pieces of the requested file from each of those host computers, and downloads them simultaneously onto the requester's computer where they

will be reassembled into one file. These pieces become immediately available for further distribution and download to other infringing users.

56.     BitTorrent allows large files, such as entire catalogs of recordings, to be transferred quickly and efficiently, all for free and without authorization from the owner of that content. BitTorrent systems enable a more efficient system for unauthorized copying—speeding up the process and shrinking the internet connection bandwidth needed for uploading and downloading. In a 2013 report, NetNames estimated that 99.97% of non-pornographic files distributed by BitTorrent systems infringe copyrights, and there is no evidence that this figure has changed since.

57.     In an effort to combat the massive pirating of their copyrighted works, certain rights holders have engaged Rightscorp, Inc. ("Rightscorp"). Rightscorp has developed a technology that identifies actual copyright infringements on the internet and the perpetrators of these infringements (by IP address, port number, time, and date). Rightscorp monitors BitTorrent systems and extracts information about the infringing activity, including, *inter alia,* the IP address, the ISP, the infringing content, and the suspected location of the host computer accessing BitTorrent networks. Rightscorp's system also has the capability to acquire entire files from the infringing host computers.

58.     Using this system, Rightscorp has notified RCN of specific instances of first-time and repeat copyright infringement committed by RCN's account holders, and has requested RCN notify its account holders of these infringements.

59.     The Rightscorp data is accurate and reliable. For example, in a copyright infringement lawsuit brought by a music publishing company against another ISP, Cox Communications, the court and jury found that Rightscorp data was reliable and established infringement. *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 663

(E.D. Va. 2015) (summary judgment) and 199 F. Supp. 3d 958, 972 (E.D. Va. 2016) (post-trial JML), *aff'd in part and rev'd in part*, 881 F.3d 293 (4th Cir. 2018).

60.     Many of these same record company Plaintiffs have filed suit against another ISP, Grande Communications Networks LLC—a sister company of RCN—in Texas federal district court, for secondary copyright infringement, also relying on evidence collected and notices sent by Rightscorp.  The district court in that case found that Grande (also managed by Defendant Patriot) "took the Rightscorp and other notices as affirmative evidence of infringement" and found that the evidence from the "Rightscorp notices and analysis" was sufficient to warrant a trial.  *UMG Recordings, Inc., et al. v. Grande Comm'ns Networks LLC*, 384 F. Supp. 3d 743, 757, 765 (W.D. Tex. 2019).

### RCN's High-Speed Internet Service

61.     As alleged, upon information and belief, the RCN Defendants are operated as a single, integrated company, under the RCN brand, with common management, a common corporate headquarters, and common policies and practices with respect to the provision of internet services and with respect to copyright infringement on the RCN network.  Plaintiffs' allegations herein against "RCN" apply to each of the RCN Defendants.

62.     RCN provides its subscribers with high-speed internet service.  It claims that "RCN's powerful, fiberoptic network" provides its users with "seamless wifi and video streaming through a blazing fast, secure connection."  *See* https://www.rcn.com/new-york/high-speed-internet/.  In exchange for this service, RCN charges its subscribers monthly fees ranging from approximately $34.99 for 155 Mbps speeds, to approximately $59.99 for 1 Gig (1000) Mbps speeds.  *Id*.

63.     After purchasing high-speed internet access from RCN, subscribers can access BitTorrent networks and upload and download copyrighted works with ease and increasing speed,

depending upon the level of RCN service that the subscribers purchase.  Thus, RCN provides its subscribers with a fully functioning system that allows them to engage in copyright infringement on a massive scale using BitTorrent networks.  And for those subscribers who want to pirate more and larger files at faster speeds, RCN obliges them in return for higher fees.  The greater the bandwidth its subscribers require for pirating content, the more money RCN receives.

64.  For many of RCN's subscribers, the ability to use RCN's network to download music and other copyrighted content—including unauthorized content—as efficiently as possible is a primary motivation for subscribing to RCN's service.  In its consumer marketing materials, RCN touts an internet service that provides its subscribers "with an online experience that delivers unlimited access to a wealth of resources"—"with speeds up to 1 GB"—which RCN advertises as "the fastest Internet speeds in town to support your entire family online at once."  RCN makes these representations while knowing that many of its subscribers use its service for copyright infringement; and RCN chooses to take no action to prevent repeat infringement.  RCN collects significant fees from its subscribers, and subscribers who frequently upload copyrighted content often pay higher monthly fees for greater bandwidth.

**Defendants' Knowledge of Extensive and Continuing Copyright Infringement by RCN's Subscribers**

65.  RCN has known for years that its subscribers routinely use its network for illegal downloading and uploading of copyrighted works, especially music.  As described below in greater detail, Rightscorp sent RCN millions of notices indicating that many of its subscribers were using RCN's service to infringe; the notices gave RCN the specific identities of its infringing subscribers, by referring to their unique Internet Protocol or "IP" addresses.  Yet RCN consistently turned a blind eye to the massive infringement, including the infringement of Plaintiffs' works.

13

66.     Rightscorp has sent RCN more than five million infringement notices, which identified tens of thousands of RCN's subscriber accounts that were engaged in repeated acts of copyright infringement.   Not only did the notices make RCN aware of the sheer volume of infringing activity on its network, they also identified numerous RCN subscribers engaged in repeat infringement.   Prior to the filing of this First Amended Complaint, Rightscorp notified RCN that 36,773 of its customers had engaged in repeat infringement; 10,628 of its customers had each engaged in infringement at least 50 times; 6,913 of its customers had each engaged in infringement at least 100 times; 1,960 of its customers had engaged in infringement at least 500 times; and 966 of its customers had engaged in infringement at least 1,000 times.

67.     Because Rightscorp can observe only a small percentage of the overall activity of RCN subscribers, upon information and belief, the infringement Rightscorp reported to RCN is likely a small fraction of the infringing activity occurring over RCN's network.

68.     The Rightscorp notices provided RCN with actual knowledge of specific infringers using RCN's internet service to infringe various copyrighted works.   The notices were based on Rightscorp's software system that identified specific actual infringements of various copyrighted works and the users of BitTorrent networks who infringed these copyrighted works.   When it communicated with a host computer using BitTorrent, the software logged certain identifying information, including the IP address and port number of the host computer, the date and time the host computer offered the content, the name of the host computer's ISP, and information about the infringing file.   Upon collecting this information, Rightscorp sent notices to RCN, detailing the exact nature of the infringements.   Each notice requested that RCN forward the notice to the corresponding RCN subscriber, because only RCN, as the ISP, could identify and contact the account holder.   Thereafter, Rightscorp's system continuously monitored RCN's network to determine if the same subscriber engaged in repeat infringements.   When repeat infringement was

14

detected, Rightscorp notified RCN and requested that RCN terminate the accounts of repeat infringers.

69.     In addition to sending notices to RCN informing RCN of its customers' infringement, Rightscorp also repeatedly obtained a copy of the infringing file that was the subject of an infringement notice, further proving the infringement occurring over RCN's network. Rightscorp obtained tens of thousands of these audio files, including copies of each of the Copyrighted Sound Recordings listed in Exhibit A, within the applicable statute of limitations period.

70.     Rightscorp also provided RCN with weekly infringement summaries detailing the notices sent to RCN that week, as well as access to an online dashboard that allowed RCN to access the Rightscorp records and even listen to the files that its users were infringing.

71.     Through the Rightscorp notices, RCN for years had actual and specific knowledge of the repeat infringements by its subscribers: it knew which subscribers were engaged in infringement; it knew which copyrighted works they were infringing; and it knew how many times each subscriber infringed each work.  Upon information and belief, through its role in providing management services to RCN, Patriot, too, had actual and ongoing specific knowledge of these repeat infringements.

72.     Nonetheless, Defendants failed to take any meaningful action to discourage this wrongful conduct.  Instead of terminating repeat infringers—and losing subscription revenue— RCN for years simply looked the other way and chose to allow the unlawful conduct to continue unabated.   By ignoring the repeat infringement notifications and refusing to take action against repeat infringers, and instead providing those customers with ongoing internet service, Defendants made a deliberate decision to contribute to known copyright infringement.

73.     Upon information and belief, RCN did not terminate internet customers who were repeat infringers because internet customers generate high profit margins for RCN.   Upon information and belief, RCN's internet service is its most profitable line of business, which motivated RCN to avoid terminating internet customers, including repeat copyright infringers. Despite the continuous and frequent notifications to Defendants of specific instances of infringement and repeat infringement committed by RCN's subscribers, Defendants refused to take meaningful action against RCN subscribers who were repeat infringers.  Instead, Defendants continued reaping substantial financial benefits in the form of subscription fees and fees for greater bandwidth, and in the form of good will from customers and potential customers.  RCN continues to collect substantial money in subscription fees from accounts of known repeat infringers.

74.     During all relevant times, Defendants had the full legal right and obligation, and the technical and practical ability, to prevent or limit the specific acts of infringement occurring on RCN's network.

75.     Defendants' infringing conduct includes providing the facilities and products necessary for RCN's subscribers to commit direct infringement by delivering uninhibited access to the internet, as well as the system and technology that allow for the storage and transmission of data constituting the infringing files that comprise the Copyrighted Sound Recordings.  In addition to providing the site and facilities for the infringement, Defendants materially contribute to subscribers' direct infringement by continuing to provide internet service to account holders they know to be repeat infringers.

**RCN Is Not Eligible for the Digital Millennium Copyright Act's Safe Harbor**

76.     As part of the Digital Millennium Copyright Act ("DMCA"), Congress created a safe harbor that limits the liability of ISPs for copyright infringement when their involvement is limited to, among other things, "transmitting, routing, or providing connections for, material

16

through a system or network controlled or operated by or for the service provider." 17 U.S.C. § 512(a). To benefit from this safe harbor, however, an ISP must demonstrate that it "has adopted and reasonably implemented . . . a policy that provides for the termination in appropriate circumstances of subscribers . . . who are repeat infringers." 17 U.S.C. § 512(i)(1)(A).

77.     Although RCN purported to adopt a policy to address repeat infringers, RCN in reality never adopted or reasonably implemented a policy that provided for the termination of repeat infringers—despite receiving over five million infringement notices. Its purported policy was a sham.

78.     RCN's conduct renders it ineligible for safe harbor immunity from copyright liability under the DMCA.

79.     In its summary judgment decision in the *Grande Communications* case earlier this year, the district court granted summary judgment against Grande on its asserted DMCA safe harbor defense, finding that Grande's "complete abdication of their responsibilities to implement and enforce a policy terminating repeat copyright infringers requires the Court to conclude that Grande is not entitled, as a matter of law, to the safe harbor provisions of 17 U.S.C. § 512(i)." *Grande Comm'ns*, 784 F. Supp. 3d at 756.

80.     Upon information and belief, RCN's policies and practices with respect to copyright infringement have been materially the same as its sister company Grande's, further underscoring that RCN is not entitled to the DMCA safe harbor defense.

### Patriot's Role in the Infringement

81.     Upon information and belief, Patriot is an owner of RCN, and Patriot effectively makes all policy decisions for RCN, specifically including any policy regarding copyright infringement. Upon information and belief, Patriot directed RCN's response to allegations of

copyright infringement occurring on the RCN network, including RCN's decision not to terminate repeat copyright infringers.

82.    Upon information and belief, Patriot's infringing conduct includes, among other things, formulating and implementing the business policies, procedures, and practices that provide repeat infringers with continued internet service through RCN, without consequence.  Because it provided management and general counsel services to RCN, and because it directed RCN's copyright policies, Patriot is equally liable for RCN's failure to comply with its legal responsibilities and for the copyright infringement that resulted from those failures.

83.    Upon information and belief, Patriot engaged in this conduct because of its financial interest in the amount of revenue RCN generated from continuing to provide internet service to known infringing users.

## CAUSES OF ACTION

### Count One—Contributory Copyright Infringement Against RCN
### 17 U.S.C. §§ 101 *et seq.*

84.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 83 as if fully set forth herein.

85.    RCN and its subscribers do not have any authorization, permission, license, or consent to exploit the Copyrighted Sound Recordings.

86.    As detailed herein, thousands of users of the RCN service are engaged in repeat and pervasive infringement of Plaintiffs' exclusive rights to reproduce and distribute the Copyrighted Sound Recordings.

87.    Through its activities, RCN knowingly and intentionally takes steps that are substantially certain to result in direct infringement of the Copyrighted Sound Recordings, and that have resulted in such direct infringement, in violation of Plaintiffs' copyrights.

88.     RCN is liable as a contributory copyright infringer for the infringing acts of its subscribers.   RCN has actual and constructive knowledge of the infringing activity of its subscribers.  RCN knowingly caused and otherwise materially contributed to these unauthorized reproductions and distributions of the Copyrighted Sound Recordings, and continues to do so.

89.     Through notices of infringement from Rightscorp and others, and through other means, RCN knew that its network was being used for copyright infringement on a massive scale, and also knew of specific subscribers engaged in such repeated and flagrant infringement. Nevertheless, RCN facilitated, encouraged, and materially contributed to such infringement by continuing to provide its network and the facilities necessary for its subscribers to commit repeated infringements.  At the same time, RCN had the means to withhold that assistance upon learning of specific infringing activity by specific users, but failed to do so, purposefully ignoring and turning a blind eye to the flagrant and repeated infringement by its subscribers.

90.     Each infringement of Plaintiffs' rights in each of the Copyrighted Sound Recordings constitutes a separate and distinct act of infringement.

91.     RCN's acts of infringement are willful, intentional and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

92.     As a direct and proximate result of RCN's infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

93.     In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including RCN's profits from infringement, in amounts to be proven at trial.

94.     Plaintiffs are entitled to their costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

95.     RCN's conduct has caused, is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

### Count Two—Vicarious Copyright Infringement Against RCN
### 17 U.S.C. §§ 101 *et seq.*

96.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 83 as if fully set forth herein.

97.     RCN and its subscribers do not have any authorization, permission, license, or consent to exploit the Copyrighted Sound Recordings.

98.     As detailed herein, thousands of users of the RCN service are engaged in repeat and pervasive infringement of Plaintiffs' exclusive rights to reproduce and distribute the Copyrighted Sound Recordings.

99.     RCN is vicariously liable for the infringing acts of its subscribers described herein. RCN has the right and ability to supervise and control the infringing activities that occur through the use of its service, and at all relevant times has derived a direct financial benefit from the infringement of Plaintiffs' copyrights.  RCN has refused to take any meaningful action to prevent the widespread infringement by its subscribers.  Indeed, the ability to download music illegally— and particularly to download Plaintiffs' music using the high internet speeds touted by RCN to customers—without facing any repercussions from RCN and Patriot, acts as a powerful draw for RCN's subscribers, who utilize RCN's service to download infringing music files using BitTorrent

protocols.  The ability of subscribers to download and distribute Plaintiffs' copyrighted works illegally through RCN's service, without limit, has served as a valuable draw for infringing subscribers, and has allowed RCN to attract, retain and charge higher fees to those subscribers. Upon information and belief, RCN's failure to adequately police its infringing subscribers was also a draw for customers to purchase RCN's internet services and to use those services to infringe the Copyrighted Sound Recordings.  Upon information and belief, subscribers who sought to engage in online infringement knew that they could do so on RCN's network with impunity, which attracted those subscribers to use RCN's service to do so.

100.    By continuing to provide known repeat infringers with the internet service they use to commit their infringement, RCN obtained a direct financial benefit from the subscribers' infringing activity in the form of monthly subscription fees that they would not have received if they had terminated those subscribers' accounts.  RCN also reaped benefits in the form of good will from customers and potential customers who sought to, and were able to, steal music on RCN's network with impunity.

101.    RCN is therefore vicariously liable for the unauthorized reproduction and distribution of the Copyrighted Sound Recordings.

102.    Each infringement of Plaintiffs' rights in each of the Copyrighted Sound Recordings constitutes a separate and distinct act of infringement.

103.    RCN's acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

104.    As a direct and proximate result of RCN's infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

105.    In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including RCN's profits from infringement, in amounts to be proven at trial.

106.    Plaintiffs are entitled to their costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

107.    RCN's conduct has caused, is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## Count Three—Contributory Copyright Infringement Against Patriot
## 17 U.S.C. §§ 101 *et seq.*

108.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 83 as if fully set forth herein.

109.    Patriot, RCN, and RCN's subscribers do not have any authorization, permission, license, or consent to exploit the Copyrighted Sound Recordings.

110.    As detailed herein, thousands of users of the RCN service are engaged in repeat and pervasive infringement of Plaintiffs' exclusive rights to reproduce and distribute the Copyrighted Sound Recordings.

111.    Upon information and belief, during the relevant period, Patriot was responsible for management of RCN, including performing executive, legal, and compliance responsibilities, and formulating and implementing policies with respect to copyright infringement.  Upon information and belief, Patriot also has been an owner of RCN.

112.    Through its management of RCN, Patriot knowingly and intentionally takes steps that are substantially certain to result in direct infringement of the Copyrighted Sound Recordings, in violation of Plaintiffs' copyrights.

113.    Patriot is liable as a contributory copyright infringer for RCN subscribers' infringing acts.  Patriot has actual and constructive knowledge of RCN subscribers' infringing activity.  Patriot knowingly caused and otherwise materially contributed to these unauthorized reproductions and distributions of the Copyrighted Sound Recordings, and continues to do so.

114.    Through notices of infringement from Rightscorp and others, and through other means, and by virtue of its management of RCN, Patriot knew that RCN's network was being used for copyright infringement on a massive scale, and also knew of specific subscribers engaged in such repeated and flagrant infringement.  Nevertheless, Patriot facilitated, encouraged, and materially contributed to such infringement by having RCN continue to provide its network and the facilities necessary for its subscribers to commit repeated infringements.  At the same time, by virtue of its management of RCN, Patriot had the means to withhold that contribution upon learning of specific infringing activity by specific users, but failed to do so, purposefully ignoring and turning a blind eye to the flagrant and repeated infringement by its subscribers.

115.    Patriot's infringement of Plaintiffs' rights in each of the Copyrighted Sound Recordings constitutes a separate and distinct act of infringement.

116.    Patriot's acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

117.    As a direct and proximate result of Patriot's infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to statutory damages, pursuant to 17 U.S.C. § 504(c), in an amount of up to $150,000 for each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

118.    In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Patriot's profits from infringement, in amounts to be proven at trial.

119.    Plaintiffs are entitled to their costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

120.    Patriot's conduct has caused, is causing, and, unless enjoined by this Court, will continue to cause, Plaintiffs irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

### Count Four—Vicarious Copyright Infringement Against Patriot
### 17 U.S.C. §§ 101 *et seq.*

121.    Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 83 as if fully set forth herein.

122.    Patriot, RCN, and RCN's subscribers do not have any authorization, permission, license, or consent to exploit the Copyrighted Sound Recordings.

123.    As detailed herein, thousands of users of the RCN service are engaged in repeat and pervasive infringement of Plaintiffs' exclusive rights to reproduce and distribute the Copyrighted Sound Recordings.

124.    Upon information and belief, during the relevant period, Patriot was responsible for management of RCN, including performing executive, legal, and compliance responsibilities, and formulating and implementing policies with respect to copyright infringement.  Upon information and belief, Patriot also has been an owner of RCN.

125.    Patriot is vicariously liable for the infringing acts of RCN's subscribers.  Patriot has the right and ability to supervise and control the infringing activities that occur using the RCN service, and at all relevant times has derived a direct financial benefit from the infringement of Plaintiffs' copyrights.   Indeed, the ability to download music illegally—and particularly to download Plaintiffs' music using the high internet speeds touted by RCN to customers—without facing any repercussions from RCN and Patriot, acts as a powerful draw for RCN's subscribers, who utilize RCN's service to download infringing music files using BitTorrent protocols.  Upon information and belief, Patriot's (and RCN's) failure to adequately police RCN's infringing subscribers was also a draw for customers to purchase RCN's internet services and to use those services to infringe the Copyrighted Sound Recordings.  Upon information and belief, subscribers who sought to engage in online infringement knew that they could do so on RCN's network with impunity, which attracted those subscribers to use RCN's service to do so.

126.    By virtue of its ownership interest in and control over RCN, Patriot enjoys a direct financial benefit in RCN infringing customers' wrongful activity, in the same manner as does RCN.  Patriot has refused to take any meaningful action to prevent the widespread infringement by RCN's subscribers.  Patriot is therefore vicariously liable for the unauthorized reproduction and distribution of the Copyrighted Sound Recordings.

127.    Patriot's infringement of Plaintiffs' rights in each of the Copyrighted Sound Recordings constitutes a separate and distinct act of infringement.

128.    Patriot's acts of infringement are willful, intentional, and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

129.    As a direct and proximate result of Patriot's infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to statutory damages, pursuant to 17

U.S.C. § 504(c), in an amount of up to $150,000 for each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

130.    In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Patriot's profits from infringement, in amounts to be proven at trial.

131.    Plaintiffs are entitled to their costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

132.    Patriot's conduct has caused, is causing, and, unless enjoined by this Court, will continue to cause, Plaintiffs irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment against Defendants, and each of them, as follows:

a.  For a judgment that Defendants infringed the Copyrighted Sound Recordings, and that such infringement was willful;

b.  For statutory damages pursuant to 17 U.S.C. § 504(c), in an amount up to the maximum, per infringed work, arising from Defendants' willful violations of Plaintiffs' rights under the Copyright Act or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs' actual damages, including Defendants' profits from infringement, in amounts to be proven at trial;

c.  For a permanent injunction enjoining Defendants and their respective officers, agents, servants, employees, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, from (1)

directly or indirectly infringing in any manner any of Plaintiffs' respective copyrights or other exclusive rights (whether now in existence or hereafter created), including without limitation, copyrights or exclusive rights under copyright in the Copyrighted Sound Recordings, (2) causing, contributing to, enabling, facilitating, or participating in the infringement of any of Plaintiffs' respective copyrights or other exclusive rights (whether now in existence or hereafter created), including without limitation, copyrights or exclusive rights under copyright in the Copyrighted Sound Recordings, and ordering Defendants (3) to promptly send infringement notices to RCN's infringing subscribers.

d.   For pre-judgment and post-judgment interest according to law;

e.   For Plaintiffs' attorneys' fees, and full costs and disbursements in this action, pursuant to 17 U.S.C. § 505; and

f.   For such other and further relief as the Court may deem proper and just.

## <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs respectfully demand trial by jury of all issues triable by right of jury.

## <u>CERTIFICATION UNDER LOCAL CIVIL RULE 11.2</u>

The undersigned counsel hereby certifies pursuant to Local Civil Rule 11.2 that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated:  November 22, 2019                  Respectfully submitted,

*/s/ Thomas R. Curtin*
Thomas R. Curtin
George C. Jones
**McElroy, Deutsch, Mulvaney & Carpenter, LLP**
1300 Mount Kemble Ave., P.O. Box 2075

Morristown, NJ 07962-2075
Telephone: (973) 993-8100
Facsimile: (973) 425-0161
tcurtin@mdmc-law.com
gjones@mdmc-law.com

Jonathan E. Missner (*pro hac vice* forthcoming)
Robert B. Gilmore (*pro hac vice* forthcoming)
Philip J. O'Beirne (*pro hac vice* forthcoming)
Michael A. Petrino (*pro hac vice* forthcoming)
Kevin L. Attridge (*pro hac vice* forthcoming)
**Stein Mitchell Beato & Missner LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com
kattridge@steinmitchell.com

*Attorneys for Plaintiffs*