# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

UMG RECORDINGS, INC., et al.,

        Plaintiffs,

    vs.

RCN TELECOM SERVICES, LLC, et al.,

        Defendants.

**No.  3:19-cv-17272-MAS-ZNQ**

**ORAL ARGUMENT REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF
## RCN DEFENDANTS' MOTION TO DISMISS

Edward F. Behm, Jr.
ARMSTRONG TEASDALE LLP
Attorney I.D. No. 017972002
2005 Market Street
29th Floor, One Commerce Square
Philadelphia, PA 19103
Telephone: 267.780.2000
Fax: 215.405.9070

Richard L. Brophy*
Zachary C. Howenstine*
Margaret R. Szewczyk*
Michael W. Carwin*
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone:  314.621.5070
Fax:  314.621.5065
*Pro Hac Vice Forthcoming

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ iii

INTRODUCTION ...........................................................................1

I. FACTUAL BACKGROUND ...............................................3

II. LEGAL STANDARD ......................................................8

III. THE AMENDED COMPLAINT FAILS TO STATE A
     CLAIM FOR CONTRIBUTORY COPYRIGHT
     INFRINGEMENT ..........................................................8

     A. Plaintiffs Fail to Plausibly Allege that RCN Had
        Knowledge of Specific Instances of Direct
        Infringement. ...........................................................9

     B. Plaintiffs Fail to Plausibly Allege Any Conduct by RCN
        that Supports Contributory Liability. ..........................12

        1. *The Complaint fails to plausibly allege that RCN
           actively encouraged or induced infringement
           through specific acts.* ...........................................13

        2. *The* Sony *rule precludes liability because RCN's
           internet service has substantial noninfringing
           uses.* .................................................................16

        3. *Plaintiffs do not plausibly allege that RCN
           "materially contributed" to any direct
           infringement.* ......................................................17

           i. RCN's alleged material contribution is not
              directly related to the alleged direct
              copyright infringement ......................................17

           ii. Plaintiffs do not allege that RCN acted in
               concert with any direct infringer. .......................19

           iii. The *Sony* rule bars Plaintiffs' material
                contribution allegations. ..................................19

iv.     RCN does not provide the "site and facilities" for copyright infringement. ....................20

v.     The two cases permitting a similar contributory infringement claim against an ISP are not binding on this Court and should not be followed.............................................23

IV.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR VICARIOUS COPYRIGHT INFRINGEMENT.............27

A.    Plaintiffs fail to plausibly allege that RCN has any direct financial interest in its subscribers' alleged infringement.......................................................................27

B.    Plaintiffs fail to plausibly allege that RCN has the ability to supervise and control the purported infringement.......................................................................30

V.    THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE DIRECT COPYRIGHT INFRINGEMENT BY ANY RCN SUBSCRIBER ....................................................33

A.    Plaintiffs do not plausibly allege infringement of their reproduction rights...........................................34

B.    Plaintiffs do not plausibly allege direct infringement of their distribution rights. ................................35

CONCLUSION ................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ....................................................................9, 26

*Arista Records, Inc. v. Flea World, Inc.*,
   No. 03-cv-2670, 2006 WL 842883 (D.N.J. Mar. 31, 2006) ..............................21

*Arista Records, Inc. v. MP3Board, Inc.*,
   No. 1:00-cv-4660, 2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) .....................11

*Arista Records LLC v. Lime Group, LLC*,
   784 F. Supp. 2d 398 (S.D.N.Y. 2011) ..............................................................20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................8

*Atl. Recording Corp. v. Howell*,
   554 F. Supp. 2d 976 (D. Ariz. 2008) .............................................................6, 36

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................8

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
   881 F.3d 293 (4th Cir. 2018) ...............................................................23, 24, 26

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
   No. 1:14-cv-1611 (E.D. Va.) ...........................................................7, 23, 24, 25

*Buck v. Hampton Twp. Sch. Dist.*,
   452 F.3d 256 (3d Cir. 2006) .............................................................................10

*In re Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997) ...........................................................................10

*BWP Media USA Inc. v. Polyvore, Inc.*,
   No. 1:13-cv-7867, 2016 WL 3926450 (S.D.N.Y. Jul. 15, 2016),
   *aff'd in relevant part*, 922 F.3d 42 (2d Cir. 2019).............................................20

*Cobbler Nevada, LLC v. Gonzales*,
  901 F. 3d 1142 (9th Cir. 2018) .................................................................13, 15, 16

*Columbia Pictures Indus., Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) .......................................................................34

*Dallas Buyers Club, LLC v. Doughty*,
  No. 3:15-cv-00176, 2016 WL 1690090 (D. Or. April 27, 2016) .....................14

*David v. CBS Interactive, Inc.*,
  No. 2:11-cv-9437, 2012 WL 12884914 (N.D. Cal. July 13, 2012)............32, 36

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) ...................................................................28, 29

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3rd Cir. 2009) ........................................................................30

*Gordon v. Person Educ., Inc.*,
  85 F. Supp. 3d 813 (E.D. Penn. 2015)......................................................18, 23

*Leonard v. Stemtech Int'l Inc.*,
  834 F.3d 376 (3d Cir. 2016) ...................................................................*passim*

*Live Face on Web, LLC v. The Control Grp. Media Co.*,
  150 F. Supp. 3d 489 (E.D. Penn. 2015)....................................................18, 33

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  591 F. Supp. 2d 1098 (N.D. Cal. 2008)..........................................................29

*Luvdarts LLC v. AT&T Mobility, LLC*,
  No. 2:10-cv-05442, 2011 WL 997199 (C.D. Cal. Mar. 17, 2011) ...................15

*Malibu Media v. Park*,
  No. 2:17-cv-12107-JMV-MF, 2019 WL 2960146 (D.N.J. July 9,
  2019) ............................................................................................................16

*McDermott v. Clondalkin Grp., Inc.*,
  649 F. App'x 263 (3d Cir. 2016) ...................................................................30

*Menard v. CXT Transp., Inc.*,
  698 F.3d 40 (1st Cir. 2012)............................................................................30

*MGM Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) (Ginsburg, J., concurring) ........................................*passim*

*In re Napster, Inc. Copyright Litig.*,
    No. 3:00-md-1369, 2001 WL 36593841 (N.D. Cal. July 9, 2001) ...................36

*Parker v. Google, Inc.*,
    242 F. App'x 833 (3d Cir. 2007) ........................................................................17

*Parker v. Google, Inc.*,
    422 F. Supp. 2d 492 (E.D. Pa. 2006)................................................................29

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ...................................................................28, 29

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ............................................................................26

*Perfect 10, Inc. v. Giganews, Inc.*,
    No. 2:11-cv-7098, 2014 WL 8628031 (C.D. Cal. Nov. 14, 2014)............*passim*

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    No. 5:04-cv-371, 2004 WL 1773349 (N.D. Cal. Aug. 5, 2004)................*passim*

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3rd Cir. 2008) ..............................................................................8

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
    907 F. Supp. 1361 (N.D. Cal. 1995)...................................................................9

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)......................................................................14, 17, 19, 23

*Tanksley v. Daniels*,
    259 F. Supp. 3d 271 (E.D. Penn. 2017).................................................18, 19, 25

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*,
    384 F. Supp. 3d 743 (W.D. Tex. 2019) ..................................................23, 25, 26

*UMG Recordings, Inc. v. Grande Commcn's Networks LLC*,
    No. 1:17-cv-365 (W.D. Tex.) ............................................................7, 23, 25, 28

*Viacom Int'l Inc. v. YouTube, Inc.*,
   940 F. Supp. 2d 110 (S.D.N.Y. 2013) ...............................................................11

*Viesti Assocs., Inc. v. Pearson Educ., Inc.*,
   No. 1:12-cv-02240, 2013 WL 4052024 (D. Colo. Aug. 12, 2013) ...................14

*Wolk v. Kodak Imaging Network, Inc.*,
   840 F. Supp. 2d 724 (S.D.N.Y. 2012) .........................................................19, 23

**Statutes**

17 U.S.C. § 106 ...................................................................................................6

17 U.S.C. § 106(1) .............................................................................................34

17 U.S.C. § 512(c) .............................................................................................11

17 U.S.C. § 512(c)(3)(A)(iii) .............................................................................11

## INTRODUCTION

Plaintiffs, a collection of U.S. record labels, seek to hold Defendant RCN[1]—a general-purpose internet service provider ("ISP")—secondarily liable for its subscribers' alleged attempts to share copyrighted music over the internet.

At the outset, it is important to keep in mind what Plaintiffs do *not* allege. First, Plaintiffs do not allege that RCN stored or hosted any of the copyrighted material at issue.  Second, Plaintiffs do not allege that RCN promoted its internet service as a way to illegally share copyrighted content or that RCN otherwise encouraged any subscriber to infringe copyrights.  Third, Plaintiffs do not allege that RCN has any practical ability—let alone a legal duty—to determine whether its subscribers copied or distributed copyrighted material over the internet.

Instead, the thrust of Plaintiffs' case is that RCN is secondarily liable because it did not terminate the internet access of subscribers ***accused*** of copyright infringement.  These accusations came from a third party, Rightscorp Inc., which is

---

[1] "RCN" collectively refers to Defendants RCN Telecom Services, LLC; RCN Telecom Services of New York, L.P.; RCN Capital Corp.; RCN Telecom Services of Philadelphia, LLC; RCN Telecom Services of Massachusetts, LLC; Starpower Communications, LLC; RCN Management Corporation; RCN ISP, LLC; RCN Digital Services, LLC; RCN NY LLC 1; RCN Telecom Services (Lehigh), LLC; RCN Telecom Services of Illinois, LLC; 21st Century Telecom Services, Inc.; and RCN Cable TV of Chicago, Inc.

Defendant Patriot Media Consulting, LLC, which provides certain management services to RCN, is contemporaneously filing a separate motion to dismiss.

in the business of sending emails alleging copyright infringement and using threats of litigation to extract small settlements from the alleged infringers.  This means that Rightscorp is incentivized to send huge volumes of infringement accusations, without regard to the amount or frequency of any actual copyright infringement. Plaintiffs do not claim that Rightscorp has ever monitored the internet for copyright infringement on their behalf, and do not claim that Plaintiffs have ever asked RCN to terminate the internet access of a subscriber based on information obtained from Rightscorp.  In fact, it appears that Plaintiffs acquired Rightscorp's records after the fact, in a cynical attempt to pursue litigation against RCN.

No reasonable ISP would accept Rightscorp's copyright infringement allegations as credible, much less actionable.  Rightscorp does not provide any evidence whatsoever demonstrating that a given internet user possessed or shared the copyrighted content in question.  Instead, as detailed below, Rightscorp's emails contain only conclusory, unverifiable allegations.

For a number of reasons, Plaintiffs lack any legal or factual basis for holding RCN contributorily liable for copyright infringement.  For one, Rightscorp's unsupported, unverifiable, and conclusory accusations cannot confer knowledge of specific instances of copyright infringement—a necessary element of Plaintiffs' claim.  Furthermore, controlling law holds that a defendant can only be liable for contributory infringement if the defendant (1) actively encourages or induces

infringement through specific acts or (2) distributes a product or service used to infringe copyrights, *if* the product or service has no significant non-infringing uses. *See, e.g.*, *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 942 (2005) (Ginsburg, J., concurring).  Plaintiffs' allegations do not support either basis for liability.

Plaintiffs also fail to plausibly plead vicarious copyright infringement. Imposition of vicarious liability requires Plaintiffs to demonstrate that RCN receives a direct financial benefit from its subscribers' alleged copyright infringement, and that RCN has direct control over the infringing activity. Plaintiffs' allegations do not support either element of their claim.

Finally, Plaintiffs' claims fail for failure to plausibly allege direct copyright infringement by users of RCN's network.  Taking Plaintiffs' allegations as true, they cannot show that any infringing content was unlawfully obtained over RCN's network, or that any user of RCN's engaged in conduct directly infringing Plaintiffs' distribution rights.

For the foregoing reasons, as discussed in detail below, the Court should dismiss Plaintiffs' Amended Complaint for failure to state a claim.

## I.      FACTUAL BACKGROUND

RCN, as an internet service provider, is in the business of providing internet connectivity to subscribers.  Am. Compl., ¶ 3.  Plaintiffs do not allege that RCN

hosts websites, stores data for customers, or distributes online content, software, or tools.  Plaintiffs do not allege that RCN monitors or otherwise controls the manner in which its subscribers utilize the internet.  Plaintiffs do not allege that RCN has any ability to determine what files are stored on its subscribers' private home computers and networks, or to determine whether any file-sharing or other programs running on those private computers and networks are being used to obtain or distribute copyrighted content.

Nevertheless, Plaintiffs, a collection of record labels, seek to hold RCN secondarily liable for acts of direct copyright infringement allegedly committed by users of RCN's network—specifically, sharing copyrighted music using the peer-to-peer file sharing protocol BitTorrent.[2]  *See generally* Am. Compl. & Ex. A (ECF No. 9, 9-1).  Plaintiffs allege that RCN is secondarily liable because it did not terminate subscribers' accounts after receiving emails alleging that they had committed copyright infringement.  *See, e.g.*, *id.* at ¶ 89.  To be clear, this is the ***only*** allegedly wrongful conduct at issue in this case—Plaintiffs do not allege that RCN has ever promoted or advertised its internet service as a way to engage in illegal file-sharing, or that RCN has ever encouraged any subscriber to engage in such conduct.

---

[2] Paragraph 55 of the Amended Complaint contains a general description of how BitTorrent functions.  RCN notes that it does not completely agree with this description, which is at best incomplete.

To support their claims, Plaintiffs rely on email accusations of copyright infringement made by a company called Rightscorp.[3]  *See, e.g.*, Am. Compl., ¶¶ 57–58, 66.  Plaintiffs allege that Rightscorp has a software system that "identifies actual copyright infringements on the internet and the perpetrators of these infringements (by IP address, port number, time, and date)."  *Id.* at ¶ 57.

Plaintiffs do not allege any facts regarding the nature of these "actual copyright infringements" that Rightscorp allegedly identified.  More specifically, Plaintiffs do not allege any facts indicating that Rightscorp has the ability to detect the actual transmission of copyrighted content from one BitTorrent user to another—*i.e.*, the unlawful reproduction or distribution of copyrighted material.

In fact, Plaintiffs' allegations indicate that Rightscorp can, at most, detect that a BitTorrent user is *offering* to share a particular music file.  *See id.* at ¶ 68 ("When it communicated with a host computer using BitTorrent, the [Rightscorp]

---

[3] Commentators have recognized the questionable nature of Rightscorp's emails and the glaring problems that would result from imposing liability based on unadjudicated and unverifiable accusations.  *See Wherein The Copia Institute Updates The Copyright Office On The First Amendment Problems With The DMCA* (April 16, 2019), Techdirt Daily, available at https://www.techdirt.com/articles/20190412/16591441995/wherein-copia-institute-updates-copyright-office-first-amendment-problems-with-dmca.shtml  ("But instead of finding that these deficiencies in the [Rightscorp] notices justified the ISP's suspicions about the merit of the other notices it had received, the court still held it against the ISP that they hadn't automatically credited all the other claims in all the other notices it had received, despite ample reason for being dubious about them.") (last visited January 21, 2020).

software logged certain identifying information, including . . . the date and time the host computer offered the content . . . ."). Under the plain language of the Copyright Act, an *offer* to share copyrighted material does not violate any exclusive right of the copyright owner. *See* 17 U.S.C. § 106; *see also Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 983 (D. Ariz. 2008) ("Merely making an unauthorized copy of a copyrighted work available to the public does not violate a copyright holder's exclusive right of distribution.").

According to Plaintiffs, once Rightscorp detected such an "offer," Rightscorp generated and sent an email to RCN, addressed to the subscriber, alleging that the subscriber had committed copyright infringement. Am. Compl., ¶ 68. Thus, taking Plaintiffs' allegations as true, the volume of Rightscorp's emails has no direct relationship to the volume of copyrighted content transmitted over RCN's network. Instead, the number of emails is simply a function of how often Rightscorp runs its system. For instance, if a subscriber was "offer[ing] the content" for seven days, and Rightscorp ran its system once per day, that could potentially result in seven emails alleging copyright infringement without a single instance of unlawful reproduction or distribution.

Plaintiffs also do not allege that Rightscorp's emails included or referenced any actual evidence of copyright infringement. In fact, they did not—they simply contained the conclusory allegation that "[y]our ISP account has been used to

download, upload or offer for upload copyrighted content in a manner that infringes on the rights of the copyright owner."[4]   *See* Ex. 1[5] (Exemplary Rightscorp Emails).   Plaintiffs do not allege that RCN has any ability to verify Rightscorp's conclusory accusations—assuming RCN had an affirmative duty to investigate every email it received, which it did not.

Rightscorp also has a history of destroying evidence.   In one previous case against an ISP, the plaintiff was sanctioned because Rightscorp intentionally destroyed evidence of changes to its software.   *See* Oct. 22, 2015 Order, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14-cv-1611 (E.D. Va.) (ECF No. 447).   In another, Rightscorp is accused of having intentionally destroyed evidence it allegedly collected from accused infringers—*i.e.*, the evidence underlying its email accusations.   *See* Oct 11, 2019 Objs. to Report & Recommendation, *UMG Recordings, Inc. v. Grande Commcn's Networks LLC*, No. 1:17-cv-365 (W.D. Tex.) (ECF No. 290).

Furthermore, with respect to the emails Rightscorp sent to RCN, the "copyright owner" identified in Rightscorp's emails—to the extent there is one—is not any of the Plaintiffs.   Plaintiffs do not allege that Rightscorp sent these emails

---

[4] As discussed below, the Court may consider these emails because they are integral to Plaintiffs' pleaded claims.

[5] Exhibit 1 is an exhibit to the contemporaneously-filed Declaration of Edward F. Behm, Jr.

on Plaintiffs' behalf or with Plaintiffs' knowledge. Indeed, Plaintiffs carefully avoid claiming that they ever engaged Rightscorp to monitor the internet for alleged infringement of their copyrighted works. *See, e.g.*, Am. Compl., ¶ 57 ("*[C]ertain rights holders* have engaged Rightscorp, Inc. . . . .") (emphasis added). Plaintiffs are silent as to how or why they came to rely on Rightscorp's emails, and as to what the relationship is—if any—between Plaintiffs and Rightscorp.

## II.    LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3rd Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007)). A pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Phillips*, 515 F.3d at 232. In addition, a plaintiff must set forth a *plausible* claim for relief, a *possible* claim for relief is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*.

## III.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT

"One infringes contributorily by intentionally inducing or encouraging direct

infringement." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, (3d Cir. 2016) (quoting *Grokster*, 545 U.S. at 930). "To establish a claim of contributory infringement, a plaintiff must show: (1) a third party directly infringed the plaintiff's copyright; (2) the defendant knew that the third party was directly infringing; and (3) the defendant materially contributed to or induced the infringement." *Id.* As detailed below, Plaintiffs' Amended Complaint fails to plausibly allege any of these necessary elements of their claim.

### A. Plaintiffs Fail to Plausibly Allege that RCN Had Knowledge of Specific Instances of Direct Infringement.

To state a claim for contributory infringement, Plaintiffs must plausibly allege that RCN had knowledge of the underlying direct copyright infringement at issue. *See id.* Rightscorp's emails are the sole basis for RCN's alleged knowledge of infringement. *See, e.g.*, Am. Compl., ¶ 65.

Rightscorp's conclusory email allegations cannot confer knowledge of copyright infringement because they are unsupported and unverifiable. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001) ("[F]or the operator to have sufficient knowledge, the copyright holder must provide the necessary documentation to show there is likely infringement.") (quotations & citations omitted); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1374 (N.D. Cal. 1995) ("Where a [defendant] cannot reasonably verify a claim of infringement, either because of a possible fair use

defense, the lack of copyright notices on the copies, or the copyright holder's failure to provide the necessary documentation to show that there is a likely infringement, the operator's lack of knowledge will be found reasonable and there will be no liability for contributory infringement for allowing the continued distribution of the works on its system.").

Rightscorp's emails provided no documentation demonstrating that a user of RCN's network possessed, shared, or even offered to share the allegedly infringing music file identified in the email; no evidence or information demonstrating that the allegedly infringing file is copyrighted; and certainly no evidence or information that would enable RCN to verify Rightscorp's allegations.[6] *See* Ex. 1 (Exemplary Rightscorp Emails). In fact, Rightscorp's emails do not appear to contain *any* data or factual information necessarily extracted from a BitTorrent user on RCN's network. Plaintiffs do not allege otherwise. Thus, as a matter of law, these emails could not give RCN knowledge of any specific instance of direct copyright infringement by a user of RCN's network.

---

[6] The Court may consider the content of Rightscorp's emails on a motion to dismiss because they are central to Plaintiffs' claims. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider . . . any matters incorporated by reference or integral to the claim . . . .") (quotations & citation omitted); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them.").

Furthermore, although Rightscorp's emails purported to be notices of copyright infringement under the Digital Millennium Copyright Act ("DMCA") (*see id.* ("Pursuant to 17 U.S.C. § 512(c), this letter serves as actual notice of infringement.")), Rightscorp's emails did not comply with the DMCA.  A section 512(c) notice must include, among other things, "information reasonably sufficient to permit the service provider to locate the [allegedly infringing] material . . . that is to be removed or access to which is to be disabled," as well as "[i]dentification of the copyrighted work claimed to have been infringed." 17 U.S.C. § 512(c)(3)(A)(ii–iii).   A notice that "fails to comply substantially with" these requirements "shall not be considered . . . in determining whether a service provider has actual knowledge or is aware of facts or circumstances from which infringing activity is apparent." § 512(c)(3)(B)(i); *see Perfect 10, Inc. v. Giganews, Inc.*, No. 2:11-cv-7098, 2014 WL 8628031, at *8 (C.D. Cal. Nov. 14, 2014); *Viacom Int'l Inc. v. YouTube, Inc.*, 940 F. Supp. 2d 110, 114–15 (S.D.N.Y. 2013).

Here, Rightscorp's emails did not provide "information reasonably sufficient" to allow RCN to locate and remove or disable access to the infringing material (*see* Ex. 1), and Plaintiffs do not allege otherwise.  Plaintiffs do not allege that RCN has any right or ability to access its subscribers' private devices—the place where the allegedly infringing material resides.  Rightscorp's emails also did not reasonably identify the copyrighted work in question, for instance by providing

a true copy or by identifying a U.S. copyright registration number.  *See id.*  As a result, RCN had no legitimate way of comparing the alleged copy to the actual copyrighted work, assuming it had a duty or the practical ability to conduct such an investigation for every email.  Pursuant to the DMCA, Rightscorp's emails therefore could not confer knowledge of copyright infringement.

Thus, because Rightscorp's emails are facially insufficient to confer knowledge of specific instances of direct copyright infringement, the Court should dismiss Plaintiffs' contributory infringement claim for failure to state a claim.

### B.  Plaintiffs Fail to Plausibly Allege Any Conduct by RCN that Supports Contributory Liability.

"One infringes contributorily by intentionally inducing or encouraging direct infringement."  *Leonard*, 834 F.3d at 387 (quoting *Grokster*, 545 U.S. at 930). Under the Supreme Court's contributory infringement jurisprudence, liability for intentionally inducing or encouraging infringement "may be predicated on [1] actively encouraging (or inducing) infringement through specific acts . . . or on [2] distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring) (emphasis & alterations added) (quoting *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 442 (1984)); *see also Cobbler Nevada, LLC v. Gonzales*, 901 F. 3d 1142, 1148 (9th Cir. 2018) (same).

        1.     *The Complaint fails to plausibly allege that RCN actively encouraged or induced infringement through specific acts.*

To sufficiently allege that RCN induced or encouraged contributory infringement, Plaintiffs must allege facts showing that RCN offered its internet service "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." *Grokster*, 545 U.S. at 936-37.

"[P]urposeful, culpable expression and conduct" are essential. *Id*. at 937. Specifically, a party offering a service capable of substantial or commercially significant noninfringing uses can only be held secondarily liable if the party takes "*active steps* []to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use." *Id*. at 936 (emphasis added). Only in those limited circumstances does the defendant's conduct evidence "an affirmative intent that the product be used to infringe, [which] overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use." *Id.* at 936.

Crucially, the requisite intent may *not* be imputed from knowledge—even actual knowledge—of direct copyright infringement. *Id*. at 937 ("We are, of course, mindful of the need to keep from trenching on regular commerce or discouraging the development of technologies with lawful and unlawful potential. Accordingly, just as *Sony* did not find intentional inducement despite the

knowledge of the VCR manufacturer that its device could be used to infringe, *mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability*.") (emphasis added).  Thus, whether the defendant had actual knowledge of the infringement—a separate element of a contributory infringement claim—is irrelevant.  *See also Dallas Buyers Club, LLC v. Doughty*, No. 3:15-cv-00176, 2016 WL 1690090, at *9 (D. Or. April 27, 2016) ("Doughty did not promote the use of his Internet service to infringe Dallas's copyright and is therefore not liable for contributory infringement."[7]) (emphasis added); *Viesti Assocs., Inc. v. Pearson Educ., Inc*., No. 1:12-cv-02240, 2013 WL 4052024, at *7 (D. Colo. Aug. 12, 2013) ("[E]ven though the complaint avers that Pearson had 'knowledge of the unauthorized use of the Photographs,' the Supreme Court has held that 'mere knowledge of infringing potential or of actual infringing uses' is not enough to establish liability.") (citations omitted).

Plaintiffs have therefore failed to state a claim.  Plaintiffs do not allege that RCN—whose internet service indisputably has substantial noninfringing uses—took any "active steps to encourage direct infringement."  Instead, Plaintiffs merely allege that Rightscorp sent RCN emails regarding alleged copyright infringement and that RCN did not terminate internet access for the affected subscriber accounts.

---

[7] In *Dallas Buyers Club*, as here, the defendant's alleged knowledge of infringement was premised on the receipt of emails identifying alleged instances of copyright infringement. 2016 WL 1690090, at *3.

*See, e.g.*, Am. Compl., ¶¶ 5, 64, 72, 89.  This is clearly insufficient to show "*active steps* []to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use." *Grokster*, 545 U.S. at 936; *see also Luvdarts LLC v. AT&T Mobility, LLC*, No. 2:10-cv-05442, 2011 WL 997199, at *2 (C.D. Cal. Mar. 17, 2011) (plaintiffs failed to state a claim against wireless carriers because they did not allege "that Defendants' networks were designed with the 'object of promoting' infringement of Plaintiffs' copyrights," did not allege "a 'clear expression,' 'other affirmative steps,' or 'specific acts' taken by Defendants that actively encourage or induce infringement," and did not allege "that Defendants undertook 'any substantial promotional or advertising efforts to encourage infringing activity'") (citations omitted).

The Ninth Circuit's decision in *Cobbler* reinforces this conclusion.  The defendant in *Cobbler* operated a foster care home, and was accused of contributing to infringement by permitting users of the facility's network to infringe copyrights. 901 F.3d at 1145–46.   The Ninth Circuit held that the plaintiff failed to plausibly allege contributory infringement because there were no allegations that the defendant "contributed to the infringement through 'purposeful, culpable expression and conduct.'" *Id*. at 1148 (quoting *Grokster*, 545 U.S. at 937).  As Judge Vazquez observed in a recent opinion, the *Cobbler* defendant was not contributorily liable because "there was no evidence that the defendant actively

encouraged infringement, . . . the defendant did not have a duty to actively monitor users of his internet service for infringement, and . . . internet access [is] capable of substantial noninfringing uses." *Malibu Media v. Park*, No. 2:17-cv-12107-JMV-MF, 2019 WL 2960146, at \*5 (D.N.J. July 9, 2019) (citation omitted).

The same reasoning requires dismissal of Plaintiffs' contributory infringement claim against RCN: Plaintiffs do not allege that RCN actively encouraged infringement, that RCN had any affirmative duty to police infringement on its network, or that RCN's internet service lacks substantial noninfringing uses.[8] Plaintiffs have therefore failed to state a claim for contributory copyright infringement.

> 2.   *The* Sony *rule precludes liability because RCN's internet service has substantial noninfringing uses.*

The second potential basis for contributory liability is "distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring). In *Sony*, the Supreme Court held that the sale or distribution of a product used for direct copyright infringement "does not constitute

---

[8] There is no support in the copyright law for applying different contributory liability standards to the *Cobbler* defendant and RCN (or more broadly, different liability standards governing individuals and internet service providers). Indeed, Judge Vazquez rejected that notion in *Park*. 2019 WL 2960146, at \*5 (agreeing with another district court that "the *Cobbler* ruling was not limited to situations such as an adult care home").

contributory infringement if the product is widely used for legitimate, unobjectionable purposes. Indeed, it need merely be capable of substantial noninfringing uses." 464 U.S. at 442.

Here, it is indisputable that RCN's internet service has substantial noninfringing uses, and Plaintiffs do not allege otherwise. As discussed above, Plaintiffs do not plausibly allege any "statements or actions [by RCN] directed to promoting infringement." Thus, the *Sony* rule precludes contributory liability, and Plaintiffs have therefore failed to state a claim.

### 3. Plaintiffs do not plausibly allege that RCN "materially contributed" to any direct infringement.

Plaintiffs allege that RCN is contributorily liable because it "materially contributed" to its subscribers' alleged direct copyright infringement, by providing them with internet access. While RCN disputes that "material contribution" is an independent basis for contributory liability,[9] Plaintiffs have still failed to state such a claim for a number of different reasons.

### i. RCN's alleged material contribution is not directly related to the alleged direct copyright infringement.

A viable material contribution theory requires allegations that the defendant

---

[9] Third Circuit case law indicates that the term "material contribution" to infringement is merely synonymous with "intentionally inducing or encouraging direct infringement," and is not an independent basis for contributory liability. *See Leonard*, 834 F.3d at 387; *Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007).

provided "encouragement or assistance [to the direct infringer that] bear[s] some *direct relationship* to the infringing acts." *See Tanksley v. Daniels*, 259 F. Supp. 3d 271, 296 (E.D. Penn. 2017) (emphasis added) (quotations & citations omitted); *see also Live Face on Web, LLC v. The Control Grp. Media Co.*, 150 F. Supp. 3d 489, 499 (E.D. Penn. 2015) (same); *Gordon v. Person Educ., Inc.*, 85 F. Supp. 3d 813, 818 (E.D. Penn. 2015) (same); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. 5:04-cv-371, 2004 WL 1773349, at *3 (N.D. Cal. Aug. 5, 2004) ("To have materially contributed to copyright infringement, the assistance must bear some direct relationship to the infringing acts.") (quotations & citations omitted).

Plaintiffs' allegations refute the notion of any such "direct relationship" between RCN's conduct and its customers' alleged direct infringement.   As discussed, Plaintiffs only allege that RCN provided the alleged direct infringers with internet access.   *See, e.g.*, Am. Compl., ¶ 89 ("RCN facilitated, encouraged, and materially contributed to such infringement by continuing to provide its network and the facilities necessary for its subscribers to commit repeated infringements.").   This is far too attenuated from the infringing conduct to constitute material contribution.   *See Live Face on Web*, 150 F. Supp. 3d at 499–500 ("automated process" of transmitting copyrighted information to visitors of website is not material contribution); *Tanksley*, 259 F. Supp. 3d at 296 (providing a forum where the direct infringer met the plaintiff is not material contribution)

(citations omitted); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 751 (S.D.N.Y. 2012) (operating website used to share copyrighted images did not materially contribute to infringement because the "website was, at most, a means for unidentified users of the website to accomplish an infringing activity").

> ii. Plaintiffs do not allege that RCN acted in concert with any direct infringer.

Additionally, to constitute material contribution, "the person rendering such assistance or giving such authorization must be acting in concert with the infringer." *Tanksley*, 259 F. Supp. 3d at 271 (citations omitted). Plaintiffs allege no facts supporting the notion that RCN acted "in concert" with any direct infringer. Indeed, Plaintiffs do not allege that RCN had *any* contact with an alleged direct infringer regarding their use of BitTorrent—let alone that RCN encouraged or authorized the sharing of copyrighted material.

> iii. The *Sony* rule bars Plaintiffs' material contribution allegations.

As discussed above, the *Sony* rule precludes contributory liability because (1) RCN's internet service indisputably has substantial noninfringing uses and (2) Plaintiffs do not allege any "statements or actions [by RCN] directed to promoting infringement." *See Grokster*, 545 U.S. at 934–35. The *Sony* rule applies with equal force to allegations of material contribution to infringement. *See BWP Media USA Inc. v. Polyvore, Inc.*, No. 1:13-cv-7867, 2016 WL 3926450, at *7-8

(S.D.N.Y. Jul. 15, 2016) ("[E]ven assuming that Polyvore had knowledge of the infringing activity and materially contributed to copyright infringement, the *Sony-Betamax* rule shields Polyvore from liability."), *aff'd in relevant part*, 922 F.3d 42, 44, 46 n.3 (2d Cir. 2019); *Arista Records LLC v. Lime Group, LLC*, 784 F. Supp. 2d 398, 434 (S.D.N.Y. 2011) ("LW 'materially contributed' to the infringement by designing, distributing, supporting, and maintaining the [software used to share copyrighted content]. There exists a genuine issue of material fact, however, as to whether [the software] is 'capable of substantial noninfringing uses' such that liability should not be imposed pursuant to the *Sony-Betamax* rule.").

> iv.   RCN does not provide the "site and facilities" for copyright infringement.

Certain case law suggests that a defendant may be contributorily liable for copyright infringement if it "materially contributed" to the infringement by providing the "site and facilities" for direct infringement. In the same vein, Plaintiffs allege that RCN is contributorily liable because it "provid[ed] the facilities and products necessary for RCN's subscribers to commit direct infringement." *See* Am. Compl., ¶ 75.

Plaintiffs' allegations fail because merely providing internet access is not providing the "site and facilities" for infringement. Providing the "site and facilities" for infringement means, at a minimum, "provid[ing] a central 'hub' for infringing activity." *Arista Records, Inc. v. Flea World, Inc.*, No. 03-cv-2670,

2006 WL 842883, at *15 (D.N.J. Mar. 31, 2006).  In *Flea World*, the defendant operated a swap meet, and courts have concluded that swap meet operators may be contributorily liable because they create, maintain, and support the "site and facilities" that enable sellers to traffic in counterfeit goods.  *See id.* (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) ("[I]t would be difficult for the infringing activity to take place in the massive quantities alleged without the support services provided by the swap meet.  These services include, *inter alia*, the provision of space, utilities, parking, advertising, plumbing, and customers."); *UMG Recordings, Inc. v. Sinnott*, 300 F. Supp. 2d 993, 1001 (E.D. Cal. 2004) (same)).

Unlike a swap meet operator, RCN does not provide any "site and facilities" for copyright infringement—let alone a "central 'hub' for infringing activity." RCN merely provides access to the internet as a whole, on a content-neutral basis. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, No. 5:04-cv-00371, 2004 WL 1773349, at *3–4 (N.D. Cal. Aug. 5, 2004) (defendant's provision of "content-neutral [payment processing] services" did not materially contribute to infringing sales of copyrighted goods).  Indeed, in *Visa*, the Ninth Circuit held that the "site and facilities" of internet-based infringement narrowly refers to the sources of infringing content.  494 F.3d 788, 799–800 (9th Cir. 2007) ("Perfect 10's theory appears to include [as the 'site and facilities' of infringement] any tangible or

intangible component related to any transaction in which infringing material is bought and sold. . . . The actual display, location, and distribution of infringing images in this case occurs on websites that organize, display, and transmit information over the wires and wireless instruments that make up the Internet. The *websites* are the 'site' of the infringement, not Defendants' payment networks.") (italics in original). In so holding, the court recognized that the plaintiff's overbroad conception of "site and facilities" would improperly encompass "a number of peripherally-involved third parties, such as computer display companies, storage device companies, and software that make the software necessary to alter and view the [infringing] pictures and even utility companies that provide electricity to the Internet." *Id.* at 800.

As an ISP, RCN falls squarely within this category of "peripherally-involved third parties." Plaintiffs do not allege that RCN distributes BitTorrent software, hosts BitTorrent-related websites, stores content shared or obtained by BitTorrent users, or advertises or promotes the use of BitTorrent. RCN therefore does not, as a matter of law, provide the "site and facilities" for the alleged direct copyright infringement at issue in this case.[10] *See id.*

---

[10] This conclusion is further supported by the wealth of case law recognizing that merely supplying the means to engage in copyright infringement is no basis for contributory liability. *See, e.g.*, *Gordon*, 85 F. Supp. 3d at 822 ("Defendant is correct that . . . merely supplying the means to accomplish infringing activity is not

> v.   The two cases permitting a similar contributory infringement claim against an ISP are not binding on this Court and should not be followed.

In two recent cases, courts found that a defendant ISP may be contributorily liable if it provided internet access to a customer with knowledge that the customer previously infringed a copyright. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 307–10 (4th Cir. 2018); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 767–68 (W.D. Tex. 2019). The Court should not follow these decisions for a number of reasons.

First, *BMG* and *Grande* cannot be reconciled with the Supreme Court's decisions in *Grokster* and *Sony*. As discussed *supra*, *Sony* holds that distributing a product used for infringement is no basis for contributory liability, and *Grokster* holds that (1) the only way to overcome this rule is through other evidence of intent to promote infringement; and (2) mere knowledge of infringement is insufficient to show such intent. *Grokster*, 545 U.S. at 934–35, 936–7.

The *BMG* court reached the opposite result, finding that culpable intent can be imputed from knowledge alone, and even from evidence of willful blindness. 881 F.3d at 308 ("It is well-established that one mental state slightly less

---

enough . . . ."); *Wolk*, 840 F. Supp. 2d at 750 ("An allegation that a defendant merely provided the means to accomplish an infringing activity is insufficient to establish a claim for contributory infringement. Participation must be substantial.") (quotations & citations omitted).

demanding than actual knowledge—willful blindness—can establish the requisite intent for contributory copyright infringement."). *BMG* has therefore been criticized for conflating the separate issues of knowledge and intent.[11]

The *Grande* court took a different tack, reasoning that the defendant ISP's conduct in "continuing to provide internet access to infringing customers" could

---

[11] *See* Mitch Stoltz, *BMG v. Cox: ISPs Can Make Their Own Repeat Infringer Policies, But the Fourth Circuit Wants a Higher "Body Count*," Electronic Frontier Foundation (Feb. 5, 2018) ("The court's ruling on inducement liability was confusing, as it seemed to conflate 'intent' with 'knowledge.' It's important that the courts treat secondary liability doctrines thoughtfully and clearly, as they have a profound effect on how Internet services are designed and what users can do on them."), available at https://www.eff.org/deeplinks/2018/02/bmg-v-cox-isps-can-make-their-own-repeat-infringer-policies-fourth-circuit-wants (last visited Jan. 21, 2020); Mike Masnick, *Appeals Court Makes A Mess of Copyright Law Concerning ISPs And Safe Harbors*, Techdirt (Feb. 2, 2018) ("Remember, the *Grokster* standard is about 'inducement' which involved a level of intent on the part of the service provider. That's about taking specific actions to encourage the use for infringement. But, the court here keeps slipping into a separate question of 'knowledge.' The knowledge question and the inducement/intent question are two separate questions. . . . . [K]nowledge alone is not enough to prove a party induced others to infringe on a copyright."), available at https://www.techdirt.com/articles/20180201/15205039136/appeals-court-makes-mess-copyright-law-concerning-isps-safe-harbors.shtml (last visited Jan. 21, 2020); Cotropia, Christopher Anthony and Gibson, James, *Convergence and Conflation in Online Copyright* (Aug. 16, 2018) ("[N]either the district court nor the appeals court pushed back against the central conceit of the case: that a copyright owner can impose liability on a conduit merely by sending it enough allegations of infringement (infringement from the past, mind you, about which nothing can now be done) and demanding the termination of the targeted subscribers. This goes well beyond any theory of liability ever articulated in the common law."), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3233113 (last visited Jan. 21, 2020).

satisfy *Grokster*'s requirement of affirmative conduct that encourages infringement.   384 F. Supp. 3d at 767.   This conclusion does not withstand scrutiny.   "[C]ontinuing to provide internet access to infringing customers" is nothing more than (1) providing a service that has substantial noninfringing uses (2) with knowledge "of actual infringing uses."   *Grokster* expressly holds that this is insufficient to establish culpable intent.[12]  545 U.S. at 934–35, 936–37.

Second, neither *BMG* nor *Grande* addressed the requirements that the defendant's contribution "must bear some direct relationship to the infringing acts, and [that] the person rendering such assistance or giving such authorization must be acting in concert with the infringer." *See Tanksley*, 259 F. Supp. 3d at 296 (citations omitted).  Plaintiffs cannot allege facts satisfying either requirement.

Third, *BMG* and *Grande* both erroneously relied on *Perfect 10, Inc. v. Amazon.com, Inc.*, which held that "a computer system operator can be held contributorily liable if it has actual knowledge that specific infringing material is available using its system, and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works."  508 F.3d 1146, 1172 (9th Cir. 2007); *see BMG*, 881 F.3d at 306; *Grande*, 384 F. Supp.

---

[12] As discussed above, Plaintiffs have also failed to plausibly allege that RCN had knowledge of any actual copyright infringement.

3d at 768.   This liability standard—to the extent it should be used at all[13]—is plainly inapplicable to RCN because RCN is not alleged to operate any "computer system" that "provide[s] access to infringing works."

The Ninth Circuit has only applied this standard to defendants who directly controlled access to copyrighted content.   *See, e.g.*, *Perfect 10*, 508 F.3d at 1172–73 (defendant operated search engine that linked users to copyrighted images); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 663 (9th Cir. 2017) (defendant operated and provided access to servers containing copyrighted content); *Napster*, 239 F.3d at 1022 (defendant operated peer-to-peer file sharing service that indexed and enabled searching for copyrighted content).   Put another way, a "computer system operator" can only refer to the operator of a computer system *that hosts or provides access to the allegedly infringing material*.

It is clear from Plaintiffs' allegations that RCN is not such a "computer system operator."   RCN cannot remove or disable access to copyrighted content and thereby prevent further infringement, and Plaintiffs do not allege otherwise. *See Napster*, 239 F.3d at 1021-22 ("We agree that if a computer system operator learns of specific infringing material available on its system *and fails to purge such material from the system*, the operator knows of and contributes to direct

---

[13] The Third Circuit has not adopted this standard, and RCN is not aware of any district court decisions in the Third Circuit adopting or otherwise approving of it.

infringement. . . . . *[But] [t]o enjoin simply because a computer network allows for infringing uses would, in our opinion, violate Sony and potentially restrict activity unrelated to infringing use*.") (emphasis added).  Relatedly, simply providing an accused infringer with internet access does not "materially contribute" to infringement, because a direct infringer can obtain internet access from any number of other sources.  *See Visa*, 494 F.3d at 797 ("[B]ecause infringement of Perfect 10's copyrights can occur without using Defendants' payment system, we hold that payment processing by the Defendants . . . does not constitute a 'material contribution' under the test for contributory infringement of copyrights.").

For all of these reasons, Plaintiffs have failed to state a contributory infringement claim against RCN.

## IV.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR VICARIOUS COPYRIGHT INFRINGEMENT

To state a claim for vicarious infringement, Plaintiffs must plausibly allege that RCN has (1) a direct financial interest in the infringing activity and (2) the right and ability to control the activity that causes the infringement.  *See Leonard*, 834 F.3d at 388 (citing *Grokster*, 505 U.S. at 930 & n.9).  Plaintiffs fail to plausibly allege either of these elements.

### A.   Plaintiffs fail to plausibly allege that RCN has any direct financial interest in its subscribers' alleged infringement.

To state a claim, Plaintiffs must plausibly allege that RCN derived a direct

financial benefit from the infringement purportedly conducted by its subscribers. *See, e.g.*, *Leonard*, 834 F.3d at 388; *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004); *Grande*, 2018 WL 1096871.  In *Grande*, the district court dismissed the plaintiffs' vicarious infringement claims against an ISP, based on nearly identical allegations to those in the Amended Complaint.  *Grande* held that merely alleging that subscribers are drawn to Grande's services because of the existence of music and the BitTorrent protocol "would impose liability on every ISP, as the music at issue is available on the Internet generally, as is the BitTorrent protocol, and is not something *exclusively available* through Grande's services." *Grande*, 2018 WL 1096871, at *10.  In other words, a "*direct* financial benefit" had to be shown by more than an ISP receiving general payments from subscribers who allegedly shared copyrighted works without authorization.

Thus, Plaintiffs must allege more than the mere receipt of "flat periodic payments for service." *Ellison*, 357 F.3d at 1079; *Perfect 10*, 488 F.3d at 1118 ("Perfect 10 only alleges that 'CWIE hosts websites for a fee.' This allegation is insufficient to show that the infringing activity was 'a draw' as required by *Ellison*.").  Rather, courts require a claimant to establish that the service provider "attracted or retained subscriptions because of the infringement or lost subscriptions because of [the] eventual obstruction of the infringement." *Ellison*, 357 F.3d at 1079.  Thus, the relevant inquiry "is whether the infringing activity

constitutes a draw for subscribers, not just an added benefit." *Id*.; *see also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1117-18 (9th Cir. 2007).

Plaintiffs' allegations do not meet this standard. Plaintiffs' only *factual* basis for alleging a direct financial benefit is RCN's receipt of flat monthly Internet service subscription fees. Am. Compl., ¶¶ 62, 63, 73. Based on the foregoing case law, these allegations regarding monthly subscription fees do not—and cannot—demonstrate a direct relationship between alleged infringing activity and RCN's pecuniary interests. *See Ellison*, 357 F.3d at 1078-79; *see also Parker v. Google, Inc*., 422 F. Supp. 2d 492, 499-500 (E.D. Pa. 2006) (dismissing claim alleging that "Google's advertising revenue is directly related to the number of Google users and that the number of users is dependent directly on Google's facilitation of and participation in the alleged infringement"); *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc*., 591 F. Supp. 2d 1098, 1110 (N.D. Cal. 2008) ("To establish liability for vicarious infringement, a plaintiff must show that customers either subscribed because of the available infringing material or canceled subscriptions because it was no longer available. It is insufficient to merely show that a defendant's customers themselves value the ability to infringe.") (citation omitted).

Plaintiffs cannot state a claim based on conclusory allegations, "upon information and belief," that the ability to engage in copyright infringement drew subscribers to RCN. *See, e.g.*, Am. Compl., ¶¶ 7, 99. First, it is well-established

29

that conclusory allegations aping a claim element are insufficient to state a claim. *See, e.g.*, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3rd Cir. 2009) (citations omitted).   Second, Plaintiffs lack any basis for pleading "upon information and belief" because (1) the facts at issue—regarding RCN's subscribers' subjective motivations for using RCN's service—are not "peculiarly within [RCN's] knowledge or control"; and (2) Plaintiffs do not support their claim with any non-conclusory "factual allegations that make their theoretically viable claim plausible." *See McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016); *see also Menard v. CXT Transp., Inc.*, 698 F.3d 40, 44 n.5 (1st Cir. 2012) ("Menard says the allegation is made on 'information and belief,' but if he had any facts to support this assertion, they should have been set forth. 'Information and belief' does not mean pure speculation.").

Because Plaintiffs fail to allege facts showing that RCN gained or lost subscribers based on its subscribers' alleged ability to engage in copyright infringement, the Court should dismiss Plaintiffs' vicarious infringement claim.

> **B.   Plaintiffs fail to plausibly allege that RCN has the ability to supervise and control the purported infringement.**

Vicarious liability is premised on a party's ability to stop a third-party from committing direct infringement.   *See, e.g.*, *Perfect 10*, 508 F.3d at 1175.   "[A] defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do

so." *Id*. at 1173 (citing *Grokster*, 545 U.S. at 930).

Plaintiffs allege that RCN is vicariously liable because it has the ability to terminate subscribers that are suspected of engaging in copyright infringement. *See, e.g.*, Am. Compl., ¶¶ 5, 8.   This is insufficient because RCN's ability to terminate subscribers does not translate into an ability to stop alleged infringers from committing acts of infringement.   Courts recognize a distinction between entities that have a genuine ability to directly control infringing conduct, and those whose ability to curb infringement is so attenuated or *de minimis* that they cannot actually control the infringement.   Because RCN squarely falls into the latter category, Plaintiffs' vicarious infringement claim should be dismissed.

In *Perfect 10, Inc. v. Amazon.com, Inc*., Perfect 10 alleged that Google was vicariously liable because it provided search services that directed users to websites containing infringing copyrighted material.   The court determined that because Google lacked any control over the websites that housed the copyrighted material, Google's ability to remove those websites from its search results did not constitute sufficient control of the infringement to support a vicarious infringement claim.   508 F.3d at 1173 ("Perfect 10 has not shown that Google has contracts with third-party websites that empower Google to stop or limit them from reproducing, displaying, and distributing infringing copies of Perfect 10's images on the Internet."); *see also Visa*, 494 F.3d at 803 ("Just like Google, Defendants could

31

likely take certain steps that may have the *indirect effect* of reducing infringing activity on the Internet at large.  However, neither Google nor Defendants has any ability to *directly control* that activity . . . .") (emphasis added).

In reaching this conclusion, the *Perfect 10* court distinguished Google's limited role in the infringement from a company like Napster, which operated and maintained peer-to-peer software used for copyright infringement.  508 F.3d at 1174 ("Because Napster had a closed system requiring user registration, and could terminate its users' accounts and block their access to the Napster system, Napster had the right and ability to prevent its users from engaging in the infringing activity of uploading file names and downloading Napster users' music files through the Napster system.").

Like Google and Visa, RCN has no ability to directly control the allegedly infringing conduct that is taking place on the internet.  Plaintiffs also do not allege that RCN houses on its own servers any of the allegedly infringing material, or that it has the attendant right or ability to block access to those materials.  *See also David v. CBS Interactive, Inc.*, No. 2:11-cv-9437, 2012 WL 12884914, at *4 (N.D. Cal. July 13, 2012) (dismissing vicarious infringement claim because "[d]efendants control whether infringing third-parties can access the P2P software [used to commit direct infringement] through their site, but do not have the right to stop users from using the software to download copyrighted material illegally. . . . This

does not equate to control over direct infringement.").

Moreover, while it is true that RCN has the technical ability to terminate subscriber accounts, Plaintiffs do not allege that such termination would actually stop the alleged infringement.  Plaintiffs cannot make such an allegation, because a trip to the nearest coffee shop would provide the alleged infringer with another conduit to the internet.  In other words, while RCN may be able to exert "some indirect effect on the infringing activity . . . so might any number of actions by any number of actors.  For vicarious liability to attach, however, the defendant must have the right and ability to *supervise* and *control* the infringement, not just affect it."  *See Perfect 10*, 494 F.3d at 805 (emphasis added).

The Court should therefore dismiss Plaintiffs' vicarious infringement claim.

## V.   THE AMENDED COMPLAINT FAILS TO PLAUSIBLY ALLEGE DIRECT COPYRIGHT INFRINGEMENT BY ANY RCN SUBSCRIBER

"Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party."  *Leonard*, 834 F.3d at 386 (quotations & citation omitted).   "Thus, to prove a claim of contributory or vicarious infringement, a plaintiff must first show direct infringement by a third party."  *Id*.

Here, Plaintiffs allege that RCN subscribers directly infringed "Plaintiffs' exclusive rights to reproduce and distribute" the copyrighted songs at issue.  *See* Am. Compl., ¶¶ 86, 98; *see also* 17 U.S.C. § 106(1) (reproduction right), (3)

(distribution right).

### A.    Plaintiffs do not plausibly allege infringement of their reproduction rights.

17 U.S.C. § 106(1) grants a copyright owner the exclusive right "to reproduce the copyrighted work in copies or phonorecords."  Thus, in order to allege direct infringement under § 106(1) <u>for which RCN may be liable</u>, Plaintiffs must allege facts plausibly showing that an RCN subscriber actually copied copyrighted material—*i.e.*, downloaded it from another BitTorrent user—using RCN's network.  *See, e.g.*, *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) (downloading copyrighted material violates the reproduction right, while uploading copyrighted material violates the distribution right).

Plaintiffs allege no such facts.  Plaintiffs do not allege that Rightscorp detected—or can detect—that any RCN subscriber *downloaded* an allegedly

infringing music file over RCN's network.[14]   Instead, Plaintiffs' direct infringement allegations only bear on *the upload* of Plaintiffs' copyrighted works to other BitTorrent users—*i.e.*, alleged distribution. *See* Am. Compl., ¶¶ 68–69. The Court should therefore dismiss Plaintiffs' claims to the extent they are based on underlying direct infringement of Plaintiffs' reproduction rights.

### B. Plaintiffs do not plausibly allege direct infringement of their distribution rights.

Taking Plaintiffs' factual allegations as true, Plaintiffs fail to allege that any RCN subscriber directly infringed Plaintiffs' section 106(3) distribution rights.

Specifically, Plaintiffs allege that users of RCN's network made copyrighted works available through BitTorrent, which other BitTorrent users could then choose to download. *See, e.g.*, Am. Compl., ¶¶ 55, 68.  These alleged acts— making files available to others for download—are not direct infringement of the distribution right, but are rather secondary infringement of the copyright owner's

---

[14] To be clear, Plaintiffs allege no facts regarding how any user of RCN's network came to possess any allegedly infringing music file.  Those files could have been obtained through any number of legitimate means, such as a paid download from a licensed service like iTunes Music, Google Play Music, or Amazon Music.  Even if the songs were originally obtained illegally—a notion unsupported by any factual allegations—Plaintiffs do not and cannot plausibly allege that the unlawful download occurred <u>over RCN's network</u>.  As alleged in the Amended Complaint, Rightscorp's system is incapable of detecting or determining (1) whether any copyrighted content was originally obtained lawfully or (2) whether that content was originally obtained over RCN's network.  For example, the songs could have been downloaded through another ISP's network, been given to the subscriber on a flash drive, or been copied by the subscriber from a compact disc.

reproduction right.  *See Howell*, 554 F. Supp. 2d at 986 ("If the owner of the shared folder simply provides a member of the public with access to the work and the means to make an unauthorized copy, the owner is not liable as a primary infringer of the distribution right, but rather is potentially liable as a secondary infringer of the reproduction right."); *see also* 4 Patry on Copyright § 13:11.50 (2018) ("To argue that the individual from whose hard drive the work is snatched from is sending the work (much less distributing a copy of the work) is technically and legally incorrect . . . . [The copyright owner may] be able to sue the individual who has the work on his or her hard drive for contributory infringement of the reproduction right, and perhaps for inducement; but there has been no distribution by that individual.").

Thus, at the very most, Plaintiffs' factual allegations suggest that users of RCN's network engaged in secondary copyright infringement by offering to share (or sharing) copyrighted material with other BitTorrent users.  RCN cannot be secondarily liable for this alleged secondary infringement because that amounts to impermissible tertiary liability.  *See, e.g.*, *In re Napster, Inc. Copyright Litig.*, No. 3:00-md-1369, 2001 WL 36593841, at *2 (N.D. Cal. July 9, 2001) ("Under this formulation, Napster uses are the direct infringers, Napster is the secondary infringer, and the individual defendants [responsible for Napster's operations] are tertiary infringers. The Court finds no support for this legal proposition."); *David*,

2012 WL 12884914, at *4 ("The courts have yet to find contributory liability based on a tertiary actor's conduct.").

Plaintiffs' claims should therefore be dismissed for failure to plausibly allege any direct copyright infringement for which RCN may be secondarily liable.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint under Rule 12(b)(6) for failure to state a claim.

Dated: January 21, 2020

By:   */s/ Edward F. Behm, Jr.*
Edward F. Behm, Jr.
ARMSTRONG TEASDALE LLP
Attorney I.D. No. 017972002
2005 Market Street
29th Floor, One Commerce Square
Philadelphia, PA 19103
Telephone: 267.780.2000
Fax: 215.405.9070

Richard L. Brophy*
Zachary C. Howenstine*
Margaret R. Szewczyk*
Michael W. Carwin*
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone:  314.621.5070
Fax:  314.621.5065
rbrophy@armstrongteasdale.com
zhowenstine@armstrongteasdale.com
mszewczyk@armstrongteasdale.com
mcarwin@armstrongteasdale.com
*Pro Hac Vice Forthcoming*

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of January, 2020, I caused a copy of the foregoing Memorandum of Law in Support of RCN Defendants' Motion to Dismiss to be served upon all counsel of record via ECF notification.


By: <u>  /s/ Edward F. Behm  </u>
          Edward F. Behm