# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>                  Plaintiffs,<br><br>v.<br><br>RCN TELECOM SERVICES, LLC, *et al.*,<br><br>                  Defendants. | Civil Action No. 19-17272 (MAS)<br>(ZNQ) |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT
## PATRIOT MEDIA CONSULTING, LLC's MOTION TO DISMISS

Thomas R. Curtin
George C. Jones
McELROY, DEUTSCH, MULVANEY
 & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
(973) 993-8100

Robert B. Gilmore (*pro hac vice*)
Philip J. O'Beirne (*pro hac vice*)
Michael A. Petrino (*pro hac vice*)
Kevin L. Attridge (*pro hac vice*)
Shawna Bray (*pro hac vice*)
STEIN MITCHELL BEATO &
MISSNER LLP
901 15th Street, N.W., Suite 700
Washington, DC 20005
(202) 737-7777

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

FACTUAL BACKGROUND .................................................................4

LEGAL STANDARD ...........................................................................7

ARGUMENT .......................................................................................8

I.  PATRIOT'S RELIANCE ON *GRANDE* IS UNAVAILING, BECAUSE
PLAINTIFFS HAVE PLEADED ADDITIONAL FACTS ESTABLISHING
PATRIOT'S LIABILITY, AND THIS CIRCUIT'S LAW CONFIRMS
THAT PLAINTIFFS' CLAIMS ARE ACTIONABLE. ......................8

II.  PLAINTIFFS DO NOT SEEK TO IMPOSE "TERTIARY" LIABILITY ON
PATRIOT. ..............................................................................10

III.  PATRIOT IS LIABLE FOR SECONDARY COPYRIGHT
INFRINGEMENT. ....................................................................15

A.  Contributory Infringement. ....................................................16

1.  Plaintiffs have pleaded facts establishing Patriot's
knowledge of the infringing conduct...........................16

2.  Plaintiffs have pleaded facts establishing Patriot's
material contribution to the infringement......................17

B.  Vicarious Liability. ................................................................20

1.  Plaintiffs have pleaded facts establishing that
Patriot had the right and ability to supervise the
infringing activity. .........................................................20

2.  Plaintiffs have pleaded facts establishing that
Patriot had a direct financial interest in allowing
known repeat infringers continued access to
RCN's internet service...................................................23

CONCLUSION ....................................................................................26

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A&M Records, Inc. v. Napster, Inc.*,
　239 F.3d 1004 (9th Cir. 2001) ......................................................22

*Arista Records LLC v. Lime Grp. LLC*,
　784 F. Supp. 2d 398 (S.D.N.Y. 2011) ...........................................11

*Arista Records LLC v. Usenet.com, Inc.*,
　633 F. Supp. 2d 124 (S.D.N.Y. 2009) ...........................................22

*Arista Records, Inc. v. Flea World, Inc.*,
　No. 03-2670 (JBS), 2006 WL 842883 (S.D.N.Y. Oct. 25, 2011) .................23

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)..........................................................................8

*Bell Atl. v. Twombly*,
　550 U.S. 544 (2007)..........................................................................8

*BMG Rights Management (US) LLC v. Cox Commc'ns, Inc.*,
　149 F. Supp. 3d 634 (E.D. Va. 2015) ...................................... 23, 24

*BMG Rights Management (US) LLC v. Cox Commc'ns, Inc.*,
　199 F. Supp. 3d 958 (E.D. Va. 2016) ...........................................20

*Broad. Music, Inc. v. Miller Asociates, Inc.*,
　No. CIVA 04-1711, 2006 WL 3064107 (W.D. Pa. Oct. 25, 2006) .............21

*Broad. Music, Inc. v. Prana Hosp., Inc.*,
　158 F. Supp. 3d 184 (S.D.N.Y. 2016) ...........................................10

*Broadcast Music Inc. v. Hemingway's Café, Inc.*,
　No. CIV.A. 03-2670(JBS),
　2006 WL 842883 (D.N.J. Mar. 31, 2006) ............................... 11, 21

*Burgese v. Starwood Hotels & Resorts Worldwide, Inc.*,
　101 F. Supp. 3d 414 (D.N.J. 2015)..................................................8

*Capitol Records, Inc. v. MP3tunes, LLC*,
48 F. Supp. 3d 703 (S.D.N.Y. 2014), *aff'd in part and rev'd in part
sub nom. EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
840 F.3d 69 (2d Cir. 2016), *cert denied sub nom.
Robertson v. EMI Christian Music Grp., Inc.*,
No. 16-1227, 2017 WL 1365643 (U.S. June 19, 2017) .................. 13, 14, 15

*Capitol Records, Inc. v. Wings Digital Corp.*,
218 F. Supp. 2d 280 (E.D.N.Y. 2002).........................................................11

*Capitol Records, LLC v. Escape Media Grp., Inc.*,
No. 12-CV-6646 AJN, 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015).........25

*Covington v. Int'l Ass'n of Approved Basketball Officials*,
710 F.3d 114 (3d Cir. 2013) ..........................................................................8

*David v. CBS Interactive Inc.*,
No. CV 11-9437 DSF (JCX),
2012 WL 12884914 (C.D. Cal. July 13, 2012) ............................................12

*Durant v. duPont Publ'g, Inc.*,
No. CV189794MASDEA,
2019 WL 1433620 (D.N.J. Mar. 29, 2019) ..................................................18

*Ellison v. Robertson*,
357 F.3d 1072 (9th Cir 2004) ............................................................... 23, 24

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996) .........................................................................23

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ..........................................................................8

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
443 F.2d 1159 (2d Cir. 1971) .......................................................................16

*Hedges v. U.S.*,
404 F.3d 744 (3d Cir. 2005) ..........................................................................8

*In re Napster Inc. Copyright Litig.*,
No. 3:00-md-1369, 2001 WL 36593841 (N.D. Cal. July 9, 2001) ...............12

*J & J Sports Prods., Inc. v. Cruz*,
No. CIV.A. 14-2496, 2015 WL 2376290
(E.D. Pa. May 18, 2015) ...................................................................................21

*Leonard v. Stemtech Int'l Inc.*,
834 F.3d 376 (3d Cir. 2016) ...................................................... 16, 18, 20, 24

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
38 F.3d 1380 (3d Cir.1994) .............................................................................8

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .......................................................... 18, 19, 22

*Star Pac. Corp. v. Star Atl. Corp.*,
No. 08-cv-04957 SDW, 2011 WL 2413150 (D.N.J. June 10, 2011),
*aff'd* 574 F. App'x 225 (3d Cir. 2014) ................................................... 11, 17

*Sygma Photo News, Inc. v. High Society Magazine, Inc.*,
778 F.2d 89 (2d Cir. 1985) ...........................................................................11

*UMG Recordings, Inc. v. Bertelsmann AG*,
222 F.R.D. 408 (N.D. Cal. 2004) ........................................................... 13, 14

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*,
No. 1:17-cv-00365, 2018 WL 1096871 (W.D. Tex. Feb. 28, 2018)...........2, 9

*Warner Bros. Records Inc. v. Charter Commc'ns, Inc.*,
No. 19-cv-00874-RBJ-MEH, 2019 WL 5387099
(D. Colo. Oct. 21, 2019) ...............................................................................25

**Federal Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................8

## INTRODUCTION

Patriot Media Consulting LLC ("Patriot") operated RCN[1] as a haven for massive online copyright infringement.  A part owner of RCN, Patriot is the management company that created and implemented RCN's copyright policies, including the decision not to terminate subscribers engaged in repeated acts of infringement.  As set forth in Plaintiffs' opposition to RCN's motion to dismiss, Patriot and RCN received over five million notices of infringement, each of which identified the IP address of an RCN subscriber who was infringing copyrighted music through online file-sharing programs like BitTorrent.  The notices identified more than 36,000 RCN subscribers who were engaged in repeat infringement, many of whom engaged in infringement dozens, hundreds or even thousands of times. Patriot directed RCN's response to the millions of infringement notices.  Through its active management of RCN and its copyright policies, Patriot was well aware of the infringement on RCN's network.  Although Patriot had the legal right and practical ability to stop the infringement by implementing a policy to terminate

---

[1] "RCN" collectively refers to Defendants RCN Telecom Services, LLC; RCN Telecom Services of New York, L.P.; RCN Capital Corp.; RCN Telecom Services of Philadelphia, LLC; RCN Telecom Services of Massachusetts, LLC; Starpower Communications, LLC; RCN Management Corporation; RCN ISP, LLC; RCN Digital Services, LLC; RCN NY LLC 1; RCN Telecom Services (Lehigh), LLC; RCN Telecom Services of Illinois, LLC; 21st Century Telecom Services, Inc.; and RCN Cable TV of Chicago, Inc.

infringing subscribers, Patriot chose instead to allow the illegal conduct to continue unabated so that it and RCN could reap substantial revenues from subscription fees that they would not have received if Patriot had directed RCN to terminate infringing users' accounts.

Plaintiffs filed this lawsuit to hold Patriot and RCN liable for conduct that gives rise to contributory and vicarious copyright infringement liability under well established law.  Having been integrally involved in allowing infringement to run rampant on RCN's network, Patriot cannot escape liability simply by pointing a finger at RCN.  *See* Patriot Mem. Supp. Mot. to Dismiss at 4 (Dkt. 30-1) ("Motion" or "Mot.") ("That was RCN's alleged conduct, not Patriot's.").  Patriot's Motion fails to provide any sound basis for dismissing Plaintiffs' First Amended Complaint (Dkt. 9) ("Complaint" or "FAC").

*First*, Patriot's reliance on *UMG Recordings, Inc. v. Grande Communications Networks, LLC* is misplaced.  The court's dismissal of Patriot in that case is inapplicable to the instant case, because Plaintiffs have significantly enhanced their allegations here to include the facts that Patriot is an owner of RCN; Patriot directed RCN's policies of allowing unlimited infringement on its network; these Patriot-directed policies attracted and kept infringing users as paying subscribers on RCN's network; and Patriot reaped a direct financial benefit from that infringement as a result.  These allegations distinguish the claims against Patriot here from those at

issue in *Grande* and confirm that Plaintiffs' claims against Patriot in this case are actionable.

*Second*, Patriot's argument that Plaintiffs have asserted an impermissible claim for "tertiary" liability cannot be squared with well settled law in the Third Circuit and other courts. As discussed below, courts have held that where a defendant exercises control over the conduct that gives rise to liability, that defendant can be held legally responsible for secondary copyright infringement if its actions meet the elements of each claim, as Patriot's conduct does here.

*Third*, Plaintiffs have pleaded facts that plainly establish Patriot's liability for secondary copyright infringement. With respect to the claim for contributory infringement, Plaintiffs have alleged both knowledge and material contribution: the millions of Rightscorp notices unquestionably established Patriot's knowledge of specific acts of infringement; and Patriot materially contributed to the infringement by developing the policies that allowed repeat infringers to have continued access to RCN's internet service, without terminating their accounts or taking other measures to stop their unlawful acts. With respect to the claim for vicarious liability, Patriot's liability is similar to RCN's. It had the right and ability to control the infringing subscribers' conduct, because it could have implemented a policy to terminate their accounts. And like RCN, Patriot enjoyed a direct financial benefit from its infringing subscribers. Patriot developed RCN's policy of allowing infringement

without repercussion, which drew customers to RCN's high speed internet service. Moreover, Patriot reaped subscriber fees from those infringers—fees it would not have collected if it had acted responsibly by terminating infringing customers or taking other steps to halt the widescale theft of copyrighted content.

For these reasons, as more fully explained below, as well as those set forth in Plaintiffs' opposition to RCN's motion to dismiss (which Plaintiffs incorporate by reference), the Court should deny Patriot's Motion.

## FACTUAL BACKGROUND

The facts alleged in Plaintiffs' Complaint plainly state claims against Patriot for contributory copyright infringement and vicarious liability. "Plaintiffs are record companies that produce, manufacture, distribute, sell, and license the great majority of all legitimate commercial sound recordings in this country." FAC ¶ 2. Defendant RCN is an internet service provider that operates out of its corporate headquarters in New Jersey; Defendant Patriot provides management services to RCN. *Id.* ¶ 3.

In addition to the facts set forth in Plaintiffs' opposition to RCN's motion to dismiss, the following facts relate to Patriot's liability for secondary copyright infringement.

### A.    Patriot's Control Over The Copyright Infringement.

"[D]uring the relevant period, Patriot was responsible for management of RCN, including performing executive, legal, and compliance responsibilities, and

formulating and implementing policies with respect to copyright infringement." *Id.* ¶ 111, 124. "Patriot effectively makes all policy decisions for RCN, specifically including any policy regarding copyright infringement." *Id.* ¶ 81. "Patriot[] formulat[es] and implement[s] the business policies, procedures, and practices that provide repeat infringers with continued internet service through RCN, without consequence." *Id.* ¶ 82.

### B.   Patriot's Knowledge Of The Copyright Infringement.

"Patriot … provid[es] management and general counsel services to RCN at and through its corporate headquarters." *Id.* ¶ 13. "Defendants have received more than five million notices that RCN's customers were using RCN's internet services to engage in infringement of copyrighted works, including tens of thousands of blatant infringements by repeat infringers of Plaintiffs' copyrighted works." *Id.* ¶ 5. "Through notices of infringement from Rightscorp and others, and through other means, and by virtue of its management of RCN, Patriot knew that RCN's network was being used for copyright infringement on a massive scale, and also knew of specific subscribers engaged in such repeated and flagrant infringement." *Id.* ¶ 114; *see also* ¶¶ 71, 113. Therefore, "through its role in providing management services to RCN, Patriot, too, had actual and ongoing specific knowledge of the[] repeat infringements [Plaintiffs specifically identify in their First Amended Complaint]." *Id.* ¶ 71.

### C.    Patriot's Material Contribution To The Copyright Infringement.

"Despite the continuous and frequent notifications to Defendants of specific instances of infringement and repeat infringement committed by RCN's subscribers, Defendants refused to take meaningful action against RCN subscribers who were repeat infringers." *Id.* ¶ 73.  "Patriot directed RCN's response to allegations of copyright infringement occurring on the RCN network, including RCN's decision not to terminate repeat copyright infringers." *Id.* ¶ 81.  "Patriot facilitated, encouraged, and materially contributed to such infringement by having RCN continue to provide its network and the facilities necessary for its subscribers to commit repeat infringements." *Id.* ¶ 114; *see also* ¶ 7.

"Defendants failed to terminate the accounts of repeat infringers or take any other meaningful action to curb this ongoing theft.  Instead, Defendants continued to provide known infringing customers with RCN's internet services." *Id.* ¶ 5.  "By ignoring the repeat infringement notifications and refusing to take action against repeat infringers, and instead providing those customers with ongoing internet service, Defendants made a deliberate decision to contribute to known copyright infringement." *Id.* ¶ 72.

### D.    Patriot's Financial Benefit From The Copyright Infringement.

"Patriot engaged in this conduct because of its financial interest in the amount of revenue RCN generated from continuing to provide internet service to known

infringing users." *Id.* ¶ 83  "Patriot is an owner of RCN."  *Id.* ¶ 81.  "By virtue of its ownership interest in and control over RCN, Patriot enjoys a direct financial benefit in RCN infringing customers' wrongful activity, in the same manner as does RCN." *Id.* ¶ 126.

The ability to conduct illegal downloading provided "a draw for infringing subscribers" and "allowed Defendants to attract, retain, and charge higher fees to subscribers." *Id.* ¶ 7.  "Defendants' failure to adequately police RCN's infringing subscribers was also a draw for customers to purchase RCN's internet services and to use those services to infringe Plaintiffs' copyrighted sound recordings … [and] attracted those subscribers to use RCN's service to do so." *Id.*  "Defendants obtained a direct financial benefit from the subscribers' infringing activity in the form of monthly subscription fees that they would not have received if they had terminated those subscribers' accounts.  Defendants also reaped benefits in the form of good will from customers and potential customers who sought to, and were able to, steal music on RCN's network with impunity." *Id.* ¶ 8; *see also id.* ¶ 73.  Therefore, "Patriot … at all relevant times has derived a direct financial benefit from the infringement of Plaintiffs' copyrights." *Id.* ¶ 125; *see also id.* ¶ 7.

## LEGAL STANDARD

When considering motions to dismiss under Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotations omitted) (citing *Bell Atl. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "The pleading standard 'is not akin to a probability requirement'" and a plaintiff "does not have to set out in detail the facts upon which he bases his claim[,]" but "merely has to state a 'plausible claim for relief.'" *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

"Only the allegations in the complaint, and matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case are taken into consideration" when a court evaluates a motion under Rule 12(b)(6). *Burgese v. Starwood Hotels & Resorts Worldwide, Inc.*, 101 F. Supp. 3d 414, 419 (D.N.J. 2015) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 2 (3d Cir.1994)).

Ultimately, it is the defendant's burden to "show[] that no claim has been presented." *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005).

## ARGUMENT

### I.   PATRIOT'S RELIANCE ON *GRANDE* IS UNAVAILING, BECAUSE PLAINTIFFS HAVE PLEADED ADDITIONAL FACTS ESTABLISHING PATRIOT'S LIABILITY,

### AND THIS CIRCUIT'S LAW CONFIRMS THAT PLAINTIFFS' CLAIMS ARE ACTIONABLE.

At the outset, Patriot's reliance on *UMG Recordings, Inc. v. Grande Communications Networks, LLC*[2] is misplaced. Patriot attempts to support its argument for dismissal by contending that the *Grande* case (in which claims against Patriot were dismissed) and the instant case involve the same parties and the same alleged misconduct. Mot. at 1-2. But the factual allegations in this case are different. Plaintiffs have pleaded numerous additional facts, including the following:

- "Patriot is an owner of RCN," FAC ¶ 81;

- "Patriot effectively makes all policy decisions for RCN, specifically including any policy regarding copyright infringement." *Id.* ¶ 81;

- "Patriot engaged in this conduct because of its financial interest in the amount of revenue RCN generated from continuing to provide internet service to known infringing users." *Id.* ¶ 83;

- "[Patriot's and RCN's] failure to adequately police RCN's infringing subscribers was also a draw for customers to purchase RCN's internet services and to use those services to infringe Plaintiffs' copyrighted sound recordings … [and] attracted those subscribers to use RCN's service to do so." *Id.*;

- "[Patriot and RCN] obtained a direct financial benefit from the subscribers' infringing activity in the form of monthly subscription fees that they would not have received if they had terminated those subscribers' accounts. Defendants also reaped benefits in the form of good will from customers and potential customers who sought to, and were able to, steal music on RCN's network with impunity." *Id.* ¶ 8; *see also* ¶ 73; and

---

[2] No. 1:17-cv-00365, 2018 WL 1096871 (W.D. Tex. Feb. 28, 2018).

- Therefore, "Patriot … at all relevant times has derived a direct financial benefit from the infringement of Plaintiffs' copyrights." *Id.* ¶ 125; *see also* ¶ 7.

As discussed below, these key allegations—which Patriot declined to address in its Motion—relate to the elements of secondary copyright infringement, including the material contribution element of contributory liability, as well as the right to control and supervise, and the direct financial benefit, elements of vicarious liability. Plaintiffs have therefore alleged additional new facts that distinguish this case from *Grande*, and confirm Plaintiffs' claims against Patriot are actionable.[3]

## II.   PLAINTIFFS DO NOT SEEK TO IMPOSE "TERTIARY" LIABILITY ON PATRIOT.

Patriot argues that "Plaintiffs are seeking to hold Patriot secondarily liable for RCN's alleged secondary liability, which amounts to impermissible 'tertiary' liability." Mot. at 5. But that argument cannot be squared with the law. "[A]ll entities and persons who 'participate in, exercise control over, or benefit from' a copyright infringement are jointly and severally vicariously liable as copyright infringers." *Broad. Music, Inc. v. Prana Hosp., Inc.*, 158 F. Supp. 3d 184, 193 (S.D.N.Y. 2016) (quoting *Sygma Photo News, Inc. v. High Society Magazine, Inc.*,

---

[3] Moreover, Plaintiffs respectfully submit that the dismissal of the claims against Patriot with prejudice in the *Grande* case was incorrect, and that Plaintiffs should have been allowed to amend their pleadings against Patriot in that case.

778 F.2d 89, 92 (2d Cir. 1985)). *See also Star Pac. Corp. v. Star Atl. Corp.*, No. CIV.A. 08-04957 SDW, 2011 WL 2413150 (D.N.J. June 10, 2011), *aff'd in relevant part*, 574 F. App'x 225 (3d Cir. 2014) (holding corporation, its executives and shareholders liable for copyright infringement); *Broadcast Music Inc. v. Hemingway's Café, Inc.*, No. CIV.A. 03-2670(JBS), 2006 WL 842883, *4-5 (D.N.J. Mar. 31, 2006) (granting summary judgment for plaintiff on secondary infringement claims against defendant café, its owners and managers, and holding that "[i]ndividual infringers can be held personally liable, jointly and severally, with corporate infringers for each act of copyright infringement").

In *Arista Records LLC v. Lime Grp. LLC*, the court examined numerous cases and concluded that "[i]t is well established that '[a]ll persons and corporations who participate in, exercise control over or benefit from an infringement are jointly and severally liable as copyright infringers.'" 784 F. Supp. 2d 398, 437 (S.D.N.Y. 2011) (citing cases). The *Arista Records* court went on to state that "[t]hese principles apply equally to claims of direct infringement and claims based on secondary liability." *Id.* at 438 (citing *Capitol Records, Inc. v. Wings Digital Corp*., 218 F. Supp. 2d 280, 284-85 (E.D.N.Y. 2002) (emphasis added) (finding that CEO of defendant corporation could be individually liable for contributory and vicarious infringement committed by corporation)).

11

Patriot relies on two cases from outside this Circuit to support its "tertiary liability" theory. But those two cases—a district court decision in the *Napster* litigation, *In re Napster Inc. Copyright Litig.*, No. 3:00-md-1369, 2001 WL 36593841 (N.D. Cal. July 9, 2001), and *David v. CBS Interactive Inc.*, No. CV 11-9437 DSF (JCX), 2012 WL 12884914 (C.D. Cal. July 13, 2012)— are inapposite.[4] At most, they stand for the unremarkable proposition that a passive third-party who has not taken any action contributing to infringement, has not directed or controlled the infringing activity, and has no other duty to act which it has failed to meet, cannot be held secondarily liable for copyright infringement.

But that is a far cry from Plaintiffs' allegations against Patriot. As Plaintiffs' Complaint make clear, Patriot is at the center of this suit. "Patriot effectively makes all policy decisions for RCN, specifically including any policy regarding copyright

---

[4] The *Napster* decision involved claims that individual investors/owners of Napster were themselves liable for Napster's infringing activity. 2001 WL 36593841, at *1. Analyzing both vicarious and contributory liability theories, the Court found that the plaintiffs simply had not alleged any conduct—either affirmative activity or a failure to act when required—that supported imposing liability on the individual defendants, whether such liability was described as traditional secondary liability or cast as "tertiary" liability. *Id.* at **2-4. The plaintiffs in *David* alleged that the website CNet made available for download a variety of different types of software, including peer-to-peer file sharing software (such as BitTorrent). The Court characterized this allegation, standing alone, as tantamount to a "tertiary" liability assertion, which failed to state a claim. 2012 WL 12884914, at *4. However, Patriot fails to mention that *David* concluded CNet *could be* liable for copyright infringement under a different theory. *Id.* at *5.

infringement."  FAC ¶ 81.  *See UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 412 (N.D. Cal. 2004) (defendant can be held liable where it exercises "control over [a company's] operations and direct[s] the infringing activities"). Patriot affirmatively performed executive, general counsel, and management functions for RCN, including making and implementing all policy decisions regarding copyright infringement and responses (or failures to respond) to notices of infringement.  *See supra* Factual Background § A.  Patriot therefore was *directly involved* in the actions and inactions of RCN that gave rise to the infringing conduct.

Indeed, other courts have rejected the "tertiary liability" label that Patriot tries to slap on garden-variety secondary infringement claims.  Plaintiffs' suit against Patriot is far more similar to these cases, such as *Bertelsmann* and *Capitol Records, Inc. v. MP3tunes, LLC*, 48 F. Supp. 3d 703, 713 (S.D.N.Y. 2014),[5] where the courts denied defendants' attempts to recast proper claims of secondary infringement as so-called "tertiary" liability.  *Bertelsmann*, decided after the *Napster* decision Patriot cites, involved claims against the upstream owner of the Napster company.  The defendants there, like Patriot here, argued that the plaintiffs supposedly sought

---

[5] *aff'd in part, rev'd in part and remanded sub nom. EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 840 F.3d 69 (2d Cir. 2016), *withdrawn from bound volume, and aff'd in part, rev'd in part and remanded sub nom. EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79 (2d Cir. 2016), *cert. denied sub nom. Robertson v. EMI Christian Music Grp., Inc.*, No. 16-1227, 2017 WL 1365643 (U.S. June 19, 2017).

impermissible tertiary liability: "According to defendants, plaintiffs thus state claims for what this court has termed 'tertiary infringement'—vicarious or contributory assistance to a vicarious or contributory infringer, here Napster—and towards which this court has previously expressed disfavor." 222 F.R.D. at 412. But the *Bertelsmann* court soundly rejected that argument:

> *Defendants have not properly characterized plaintiffs' complaints.* Rather than alleging that defendants merely supplied Napster with necessary funding (serving as a "but for" cause of Napster's subsequent activities)—or accusing defendants of contributory and vicarious infringement in purely conclusory fashion—*plaintiffs have specifically accused defendants of assuming control over Napster's operations and directing the infringing activities that gave rise to the original Napster litigation.*

*Id.* (emphasis added). The court concluded that "such allegations state a viable claim for relief under theories of both contributory and vicarious liability." *Id.* at 414.

*MP3tunes* further confirms that Plaintiffs' liability claims against Patriot are actionable. There, the defendants were a file-sharing website and its individual owner and operator. Even though the court was receptive to some of the defendants' arguments, it rejected the individual defendant's assertion that "there is no legal basis for 'tertiary liability'—that is, Robertson's secondary liability for MP3tunes' secondary liability," concluding that "an individual defendant can be held personally liable for claims of direct *and* secondary liability of a corporation." (emphasis in original). *MP3tunes*, 48 F. Supp. 3d at 713. The district court explicitly

distinguished the *Napster* decision that Patriot cites, finding that "more recent and persuasive authorities" rejected the crabbed reading of secondary liability that the individual defendant urged. *Id.* The Second Circuit affirmed the district court judgment in this regard. 844 F.3d at 86.

For all these reasons, and based on the facts alleged in this case (as set forth above), Patriot is liable under traditional secondary infringement law, just like the supposedly "tertiary" defendants in *Bertelsmann*, *MP3tunes*, and *Arista Records*.

## III.   PATRIOT IS LIABLE FOR SECONDARY COPYRIGHT INFRINGEMENT.

Patriot has responded to Plaintiffs' claims for contributory and vicarious liability by omitting or mischaracterizing Plaintiffs' factual allegations. Patriot's Motion frequently cites a single, less-detailed allegation from Plaintiffs' Complaint, while failing to acknowledge other more detailed allegations that relate to the same issue. Indeed, Patriot disregards the vast majority of Plaintiffs' allegations set forth in the Factual Background section, *supra*. For example, nowhere in its brief does Patriot even acknowledge Plaintiffs' allegations that "Patriot effectively makes all policy decisions for RCN, specifically including any policy regarding copyright infringement" or that "Patriot is an owner of RCN." FAC ¶ 81. The Court, of course, should assess all of the allegations in Plaintiffs' Complaint, as required by *Iqbal* and *Twombly*, and not the cherry-picked facts that Patriot selects for its Motion.

## A.    Contributory Infringement.

"To establish a claim of contributory infringement, a plaintiff must show: (1) a third party directly infringed the plaintiff's copyright; (2) the defendant knew that the third party was directly infringing; and (3) the defendant materially contributed to or induced the infringement." *Leonard v. Stemtech Int'l Inc*., 834 F.3d 376, 387 (3d Cir. 2016) (citing *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)).  Plaintiffs have pleaded plausible allegations that Patriot had knowledge of the infringement and materially contributed to the third parties' misconduct.

### 1.    Plaintiffs have pleaded facts establishing Patriot's knowledge of the infringing conduct.

Patriot's direction and management of RCN, in the specific areas relevant to this suit (executive, legal, and compliance functions, and in particular making all policy decisions regarding copyright infringement) establish that Patriot had actual knowledge of, or was willfully blind to, subscribers' copyright infringement. Patriot's only argument with respect to the knowledge element of a claim for contributory infringement is that Plaintiffs rely on "conclusory allegations."  Mot. at 7.  But the Complaint includes a bevy of factual allegations that plausibly plead Patriot's knowledge:

- "Defendants received more than five million notices [of infringement,]" FAC ¶ 5;

- Patriot's management of RCN occurs "at and through [RCN's] corporate headquarters," FAC ¶ 13;

- "Patriot effectively makes all policy decisions for RCN, specifically including any policy regarding copyright infringement," FAC ¶ 81; and

- "Patriot directed RCN's response to allegations of copyright infringement occurring on the RCN network, including RCN's decision not to terminate repeat copyright infringers." *Id.*

*See also* Factual Background § B, *supra*.  As discussed in Plaintiffs' opposition to RCN's motion to dismiss, it is well settled that receipt of the Rightscorp notices establishes actual knowledge.  Moreover, the allegations of Patriot's active involvement in the management and operation of RCN, especially with regard to copyright infringement on RCN's network, further satisfy the knowledge element for Plaintiffs' claim of contributory infringement against Patriot.  *See Star Pac. Corp.*, 2011 WL 2413150, at *5 (defendant "actively participated in SAC–NJ's management and operation. Hence, he was aware that SAC–NJ sold products and merchandise bearing SPC's copyrighted designs. Therefore, he materially contributed to SAC–NJ's infringing activities.").

### 2. Plaintiffs have pleaded facts establishing Patriot's material contribution to the infringement.

Patriot contends that "material contribution" "is not an independent basis for contributory liability," and that Plaintiffs must instead allege that Patriot "induced

or encouraged" RCN subscribers to infringe.  Mot. at 8-9.  But as explained in Plaintiffs' opposition to RCN's motion to dismiss, at Argument § IV.B.1, Third Circuit law is clear that a plaintiff may satisfy this element of a claim for contributory infringement by establishing that the defendant *either* materially contributed to, *or* induced, the infringement at issue.  *See Leonard*, 834 F.3d at 387; *see also Durant v. duPont Publ'g, Inc.*, No. CV189794MASDEA, 2019 WL 1433620, at *2 (D.N.J. Mar. 29, 2019) (Shipp, J.) (contributory infringement requires that "the defendant materially contributed to or induced the infringement").[6]  As discussed below, Patriot materially contributed to the infringement through its management of RCN, including specifically RCN's copyright policies, and its participation in the decision not to terminate repeat infringers.

Patriot also argues that it cannot be held liable for contributory infringement because  it does not provide the "site and facilities" for any direct infringement.  Mot. at 9.  But none of the case law cited by Patriot holds that the provision of the site and

---

[6] Even if allegations of inducement were required to establish material contribution (which they are not), Plaintiffs have alleged that "Patriot directed RCN's response to allegations of copyright infringement occurring on the RCN network, including RCN's decision not to terminate repeat copyright infringers."  FAC ¶ 81.  This fact is more than sufficient to support the reasonable inference that Patriot induced copyright infringement, by providing a haven for known infringers to continue their unlawful conduct free from repercussions.  And to the extent Patriot contends that Plaintiffs must allege an "affirmative act by Patriot to induce" infringement, Mot. at 9, Patriot's decision not to terminate repeat infringers is an affirmative act.  FAC ¶¶ 81-82.

facilities is a requirement of a claim for contributory infringement.  In any event, as manager and part-owner of RCN, Patriot does in fact provide the "site and facilities" to known repeat infringers.  Patriot also develops and administers the policies and practices that allowed such customers' continued access to RCN's service, even in the wake of Defendants' receipt of millions of notices of those users' wrongful conduct.  *See* Factual Background § C.  In particular, Plaintiffs have alleged that "Patriot directed RCN's response to allegations of copyright infringement occurring on the RCN network, including RCN's decision not to terminate repeat copyright infringers."  FAC ¶ 81.  These facts are more than sufficient to draw a reasonable inference that Patriot materially contributed to the infringement.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) ("There is no dispute that Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials.").

Similarly incorrect is Patriot's argument that Plaintiffs fail to show that Patriot's conduct "bear[s] some direct relationship to the infringing acts" or that Patriot "act[ed] in concert with the [direct] infringer[s]."  Mot. at 9.  Plaintiffs have pleaded that Patriot granted known serial infringers continued access to RCN's internet services.  Patriot therefore "knowingly t[ook] steps that [were] substantially certain to result in such direct infringement."  *Perfect 10*, 508 F.3d at 1171.  Patriot

had the legal right and the practical ability to implement a policy that would terminate the accounts of subscribers who were repeat infringers.  Having failed to do so, Patriot cannot avoid liability for contributory infringement.  *BMG Rights Management (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 976 (E.D. Va. 2016) (finding material contribution where defendant "ignored specific notices of infringing activity and continued to provide material support to its users' infringement of [Plaintiffs'] works despite its ability to suspend or terminate customers with the push of a button").

### B.    Vicarious Liability.

To establish a claim for vicarious liability: "a plaintiff must prove that the defendant had (1) the right and ability to supervise or control the infringing activity; and (2) a direct financial interest in such activities."  *Leonard*, 834 F.3d at 388. Plaintiffs' factual allegations against Patriot easily meet this standard.

### 1.    Plaintiffs have pleaded facts establishing that Patriot had the right and ability to supervise the infringing activity.

Plaintiffs allege that Patriot controls and directs RCN's activities, and thus has the right and ability to stop the infringing conduct of RCN's subscribers.  Patriot asserts that Plaintiffs fail to state a claim by alleging Patriot's control in merely conclusory fashion, and by providing no facts showing that Patriot has the ability to

control infringers on RCN's network.  Mot. at 11.  But once again, Patriot omits

multiple allegations that refute its arguments:

- Patriot runs the key executive management functions for RCN, FAC ¶¶ 111, 124;

- "Defendants failed to terminate the accounts of repeat infringers or take any other meaningful action to curb this ongoing theft.  Instead, Defendants continued to provide known infringing customers with RCN's internet services," *id.* ¶ 5;

- "By ignoring the repeat infringement notifications and refusing to take action against repeat infringers, and instead providing those customers with ongoing internet service, Defendants made a deliberate decision to contribute to known copyright infringement," *id.* ¶ 72;

- "Patriot effectively makes all policy decisions for RCN, specifically including any policy regarding copyright infringement," *id.* ¶ 81; and

- "Patriot directed RCN's response to allegations of copyright infringement occurring on the RCN network, including RCN's decision not to terminate repeat copyright infringers."  *Id.*

These allegations more than suffice under this Court's precedents.  In *Hemingway's*

*Café*, for example, BMI sued the owner and manager that oversaw and operated the

café which played the infringing music.  The Court found that the owner and

manager had the "right and ability to direct and control the activities of

Hemingway's on the three days in question, and had a direct financial interest in

Hemingway's"—facts which the Court found were sufficient to grant summary

judgment to the plaintiff.  2017 WL 2804951, at *5.  The same reasoning applies to

Patriot, which had control over RCN's conduct and had a financial interest in

allowing infringement to continue, as discussed above. *See also J & J Sports Prods., Inc. v. Cruz*, No. CIV.A. 14-2496, 2015 WL 2376290, at *4 (E.D. Pa. May 18, 2015) (holding defendant liable based on her "role in the company" because "she had the ability to supervise the violative activity (whether she did or not), and […] financial benefits flowed to her because of the violative conduct."); *Broad. Music, Inc. v. Miller Associates, Inc.*, No. CIVA 04-1711, 2006 WL 3064107, at *6 (W.D. Pa. Oct. 25, 2006) (holding officers individually liable because they "have primary responsibility for the operation and management of the company, and have the right and ability to supervise its activities.").

Patriot further asserts that "[t]he only actual Patriot conduct identified in the Complaint" is Plaintiffs' allegation that Patriot "formulat[es] and implement[s] the business policies, procedures, and practices that provide repeat infringers with continued internet service through RCN, without consequence." Mot. at 11-12 (quoting *id.* ¶ 82). Relying on *Perfect 10*, Patriot contends that even if this conduct is proven true, it does not plausibly demonstrate control because it does not show that Patriot has the ability to stop the infringement. 508 F.3d at 1175. This conclusion is nonsensical. Plaintiffs have alleged that Patriot was the decision-maker for the policies that gave the green light to the direct infringers; although Patriot chose to allow infringement to continue, it could have chosen to take steps to stop or limit the infringement. The Court should not credit Patriot's argument to the

contrary.  Indeed, the Ninth Circuit has held that "[t]he ability to block infringers'
access to a particular environment for any reason whatsoever is evidence of the right
and ability to supervise." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023
(9th Cir. 2001).[7]  *See also Arista Records v. Usenet.com, Inc.*, 633 F. Supp. 2d 124,
157 (S.D.N.Y. June 30, 2009) (quoting *A&M Records*, 239 F.3d at 1023).  And in
*Cox*, a case brought by music copyright owners against another ISP for conduct
similar to RCN's and Patriot's, the court observed that "Cox also provides a crucial
service to the infringements alleged in this case, which gives Cox the practical ability
to stop or limit infringement."  *BMG Rights Management (US) LLC v. Cox
Commc'ns, Inc.*, 149 F. Supp. 3d 634, 675 (E.D. Va. 2015).  The court concluded
that "[i]t is therefore a reasonable inference that the result of an internet service
provider exercising its ability to suspend or terminate account holders stops or limits
infringement."  *Id.* at 674.  That is precisely what Plaintiffs have alleged, and it is
sufficient to state a claim against Patriot.

> **2.     Plaintiffs have pleaded facts establishing that Patriot had a
> direct financial interest in allowing known repeat infringers
> continued access to RCN's internet service.**

To establish a direct financial benefit, a plaintiff need only show that "there is
a causal relationship between the infringing activity and any financial benefit a

---

[7]*As amended* (Apr. 3, 2001), *aff'd* 284 F.3d 1091 (9th Cir. 2002).

defendant reaps." *Ellison v. Robertson,* 357 F.3d 1072 (9th Cir 2004).  The financial benefit need not be "directly tied to [the] sale of particular infringing items." *Fonovisa, Inc. v. Cherry Auction, Inc.* 76 F.3d 259, 263 (9th Cir. 1996).  As discussed more fully in Plaintiffs' opposition to RCN's motion to dismiss at Argument § III.A, which Plaintiffs incorporate by reference here, a plaintiff can satisfy the financial benefit element by showing that the availability of infringing material acts a draw for customers, even if it is not a significant draw.  *Arista Records, Inc. v. Flea World, Inc.*, No. 03-2670 (JBS), 2006 WL 842883, at *12 (D.N.J. Mar. 31, 2006) (citing *Fonovisa, Inc.*, 76 F.3d at 263).  *See also Leonard*, 834 F.3d at 389 ("Financial benefit exists where the availability of infringing material acts as a draw for customers.") (quoting *Ellison*, 357 F.3d 1072, at 1078-79 (9th Cir. 2004)).  Plaintiffs have pleaded that the ability of RCN customers to use its high internet speeds "without facing any repercussions from RCN and Patriot, acts as a powerful draw for RCN's subscribers, who utilize RCN's service to download infringing music files using BitTorrent."  FAC ¶ 99.  *See also id.* ¶ 7 ("[Patriot's and RCN's] failure to adequately police RCN's infringing subscribers was also a draw for customers to purchase RCN's internet services and to use those services to infringe Plaintiffs' copyrighted sound recordings … [and] attracted those subscribers to use RCN's service to do so.").

24

Moreover, the infringer-friendly termination policy that Patriot helped develop and implement was *itself a draw* for infringing subscribers. That was the conclusion in *Charter Communications*, where Plaintiffs alleged that Charter's "failure to stop or take other action in response to notices of infringement *is a draw to current and prospective subscribers* to purchase and use Defendant's internet service to pirate Plaintiffs' copyrighted works." *Warner Bros. Records Inc. v. Charter Commc'ns, Inc.*, No. 19-cv-00874-RBJ-MEH, 2019 WL 5387099, at *5 (D. Colo. Oct. 21, 2019). The Magistrate Judge's Report and Recommendation found such allegations sufficient to state a claim, denying Charter's motion to dismiss. The same reasoning applies to Patriot. Plaintiffs have alleged that "subscribers who sought to engage in online infringement knew that they could do so on RCN's network with impunity, which attracted those subscribers to use RCN's service to do so." FAC ¶ 100.

Patriot argues that Plaintiffs allege no facts that can prove that Patriot actually sees any of the money earned through infringement. Mot. at 10. But "evidence of financial gain is not necessary to prove vicarious liability as long as the service provider has an economic incentive to tolerate infringing conduct." *Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 12-CV-6646 AJN, 2015 WL 1402049, at *42 (S.D.N.Y. Mar. 25, 2015). Regardless, Plaintiffs have alleged that Patriot receives revenue from infringing customers that it would forego if it

terminated them, supplying the company with a strong financial incentive to allow unlimited infringement. *See* FAC ¶ 8 ("By continuing to provide known repeat infringers with the internet service they use to commit their infringement, Defendants obtained a direct financial benefit from the subscribers' infringing activity in the form of monthly subscription fees that they would not have received if they had terminated those subscribers' accounts."); *id.* ¶ 126 ("By virtue of its ownership interest in and control over RCN, Patriot enjoys a direct financial benefit in RCN infringing customers' wrongful activity, in the same manner as does RCN."). As explained in Plaintiffs' opposition to RCN's motion to dismiss, that incentive establishes a financial benefit for purposes of stating a claim.

In other words, Patriot, like RCN, profits from tolerating and facilitating the infringement, by refusing to terminate repeat infringing subscribers, and by reaping ongoing fees from such customers.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Patriot's Motion. [8]

---

[8] However, if the Court finds any of the allegations insufficient, Plaintiffs respectfully request that the Court allow Plaintiffs to amend their Complaint, rather than dismiss it with prejudice.

Dated: February 18, 2020                  Respectfully submitted,

                                          *s/ Thomas R. Curtin*
                                          Thomas R. Curtin
                                          George C. Jones
                                          **McElroy, Deutsch, Mulvaney**
                                          **  & Carpenter, LLP**
                                          1300 Mount Kemble Ave., P.O. Box 2075
                                          Morristown, NJ 07962-2075
                                          Telephone: (973) 401-7117
                                          Facsimile: (973) 425-0161
                                          tcurtin@mdmc-law.com
                                          gjones@mdmc-law.com

                                          Robert B. Gilmore (admitted *pro hac vice*)
                                          Philip J. O'Beirne (admitted *pro hac vice*)
                                          Michael A. Petrino (admitted *pro hac vice*)
                                          Kevin L. Attridge (admitted *pro hac vice*)
                                          Shawna Bray (admitted *pro hac vice*)
                                          **Stein Mitchell Beato & Missner LLP**
                                          901 15th Street NW
                                          Washington, DC 20005
                                          Telephone: (202) 737-7777
                                          Facsimile: (202) 296-8312
                                          rgilmore@steinmitchell.com
                                          pobeirne@steinmitchell.com
                                          mpetrino@steinmitchell.com
                                          kattridge@steinmitchell.com
                                          sbray@steinmitchell.com

                                          ***Attorneys for Plaintiffs***