# McElroy, Deutsch, Mulvaney & Carpenter, LLP
**ATTORNEYS AT LAW**

1300 MOUNT KEMBLE AVENUE
P.O. BOX 2075
MORRISTOWN, NEW JERSEY 07962-2075
(973) 993-8100
FACSIMILE (973) 425-0161

THOMAS R. CURTIN
Direct Dial: (973) 401-7117
tcurtin@mdmc-law.com

June 26, 2020

**VIA ECF**

Hon. Zahid N. Quraishi, U.S.M.J.
Clarkson S. Fisher Federal Building
 and U.S. Courthouse
402 E. State Street
Trenton, New Jersey 08608

> Re: *UMG Recordings, Inc. et al. v. RCN Telecom Services, LLC et al.*
> Civil Action No. 19-17272 (MAS) (ZNQ)

Dear Judge Quraishi:

This firm, along with our co-counsel Stein Mitchell Beato & Missner LLP, represents plaintiffs in the referenced matter. Pursuant to Local Rule 37.1(a)(1), we write concerning a discovery dispute related to Defendant RCN Telecom Services, LLC's (along with its affiliated company defendants, "RCN") Objections and Answers to Plaintiffs' First Set of Interrogatories.

In this case, Plaintiffs assert secondary copyright infringement claims against RCN and its management company, Patriot Media Consulting, LLC ("Patriot"), for their facilitation of massive online infringement of Plaintiffs' copyrighted sound recordings by RCN's internet customers. The current discovery dispute relates primarily to highly relevant information that is central to the case, but that RCN has refused to produce:

1. Information and documents concerning infringement notices, and RCN's handling of copyright infringement, for the full period of time relevant to this matter, 2011 to the present; RCN refuses to provide such information and materials from before 2016. *See* Ex. 1, RCN's Objections and Responses to Plaintiffs' 1st Interrogs., Interrogs. Nos. 6, 8, 9, and 11; and

2. Infringement notices (and related information) sent to RCN by all companies involved in monitoring and identifying online copyright infringement; RCN refuses to provide such notices and information from companies other than Rightscorp and MarkMonitor. *See id.*, Interrog. No. 6.

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
June 26, 2020
Page 2

Notably, RCN's sibling internet service provider, Grande Communications, was required to produce this very same information in a substantially identical case brought by many of these same Plaintiffs, *UMG Recordings, Inc., et al v. Grande Communications Networks LLC*, No. 17-cv-00365 (W.D. Tex.) ("*Grande*"). Indeed, the *Grande* court relied on this information in ruling against Grande on summary judgment. RCN has raised no valid objections and should likewise be required to produce this information.

In addition, Plaintiffs raise a third disputed issue:

3. Allowing in-house litigation counsel with the Recording Industry Association of America ("RIAA") access to confidential and attorneys' eyes only discovery under a protective order.

RIAA is the recording industry's trade association, and its attorneys have responsibility for coordinating and assisting RIAA members with certain copyright infringement litigation matters, including this action. In the *Grande* case, RCN's sibling company and its counsel agreed to a protective order that allowed RIAA's in-house counsel access to confidential and attorneys' eyes only materials. RCN has refused to agree to the same arrangement here, but has provided no sound basis for its position. As discussed below, Plaintiffs respectfully request that the Court approve a protective order along the same lines as in the *Grande* case, so that Plaintiffs are not needlessly hamstrung in litigating this case.

The parties' counsel have met and conferred in writing and telephonically on June 11, 2020. On the issues identified above, RCN has indicated that it persists in its objections, requiring Plaintiffs to seek the Court's intervention.[1]

**1. Infringement Notices and Handling of Copyright Infringement Pre-2016.**

Infringement notices and information concerning RCN's handling of copyright infringement by its subscribers, for the time period before 2016, are plainly relevant to numerous issues, including Defendants' knowledge of infringement by RCN subscribers (an element for contributory infringement); Defendants' capabilities in responding to infringement notices, and Defendants' financial benefits from permitting infringing subscribers to continue using RCN's internet service (elements for vicarious liability); Defendants' supposed entitlement to the safe harbor defense afforded internet service providers ("ISP") under the Digital Millennium

---

[1] During the meet and confer process, Plaintiffs identified numerous other deficiencies with RCN's interrogatory responses: Defendants' interposing vague and unexplained objections; pointing to unspecified documents yet to be produced; even omitting the required verifications for the responses. RCN agreed that by July 10, 2020, it would supplement its responses in various respects to address these deficiencies. Plaintiffs reserve the right to raise further concerns if those supplemented responses remain inadequate.

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
June 26, 2020
Page 3

Copyright Act ("DMCA"); and Defendants' willfulness in knowingly permitting subscribers' infringement for pecuniary gain (relevant for statutory copyright damages).[2]

In *Grande*, RCN's sibling ISP also objected to providing any discovery from more than three years before the date of the complaint (there, 2013). But the Court rejected that argument, granting Plaintiffs' requested discovery and holding that "[i]nformation on how Grande handled DMCA issues prior to 2013 could be relevant to demonstrating Grande's knowledge of its obligations under the statute, and could be circumstantial evidence that Grande was aware of infringing conduct on its system, and actually had taken action on it before the time frame at issue here." *Grande*, 2018 WL 4627276, at *3 (W.D. Tex. Sept. 26, 2018). Indeed, in granting Plaintiffs summary judgment on the defendant's DMCA safe harbor defense, and denying the defendant's own motion for summary judgment, the *Grande* court repeatedly relied on evidence that pre-dated the three-year limitations look back period that RCN tries to invoke here, while also permitting Plaintiffs to invoke the discovery rule at trial. *See, e.g., Grande*, 384 F. Supp. 3d 743, 755, 757, 769 (W.D. Tex. 2019). And in its recent pretrial ruling on the parties' motions *in limine*, the *Grande* court once again rejected this same argument by the defendant. *Grande*, Order on Motions *in Limine* [Dkt. 347] at 8.

The logical and well-reasoned rulings from *Grande* apply equally here. As we know from public filings in the *Grande* case, key policy decisions were made prior to 2016 regarding Grande's repeat copyright infringement policies. Grande is managed by Patriot—which also manages RCN. RCN and Patriot therefore likely have relevant information about infringement on RCN's network from that same period. The request for information from 2011 to present seeks relevant information and is appropriately tailored to the needs of the case. Plaintiffs should be permitted discovery into RCN's pre-2016 infringement knowledge and practices.

**2. Infringement Notices Sent to RCN by Companies Other Than Rightscorp and MarkMonitor.**

Plaintiffs also are entitled to information about copyright infringement notices that RCN received, regardless of the source. Unfortunately, however, RCN has refused to produce such information unless it relates to notices from Rightscorp (the entity that identified the infringement of the works in suit at issue in this case) or MarkMonitor (another entity that is similar to Rightscorp and that has performed infringement detection services for the recording industry). The information Plaintiffs seek is plainly relevant. A key issue in this case will be the extent to which any of RCN's users can be characterized as "repeat infringers" within the meaning of the DMCA's safe harbor, and whether RCN and Patriot properly identified and acted

---

[2] In order to be entitled to the DMCA's safe harbor protections, an ISP must "adopt[ ] and reasonably implement[ ] ... a policy that provides for the termination in appropriate circumstances of subscribers and account holders ... who are repeat infringers[.]" 17 U.S.C. § 512(i)(1)(A).

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
June 26, 2020
Page 4

against repeat infringers. Courts have held that infringement notices from all sources are relevant to this inquiry. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) (The DMCA "requires an assessment of the service provider's 'policy,' not how the service provider treated a particular copyright holder. Thus, [defendants'] response to adequate non-party notifications is relevant in determining whether they reasonably implemented their policy against repeat infringers."). The entire set of infringement notices that RCN received, and RCN's practices with respect to that entire set, bear upon Defendants' knowledge of, and response to, repeat infringers, and thus are directly relevant to evaluating Defendants' anticipated DMCA safe harbor response.

The same issue arose in *Grande*. After Plaintiffs moved to compel "the complete records of infringement from Grande's 'abuse system' database," the defendant there withdrew its objections to producing information and documents about all infringements, not just of Plaintiffs' works. *Grande*, 2018 WL 4627276, at *3. The information proved highly relevant to the issue of the DMCA safe harbor: on summary judgment, the court rejected the defendant's DMCA safe harbor defense not only because of the extensive evidence of infringement that Rightscorp detected, but also based on the "hundreds of thousands" of notices "from entities other than Rightscorp," holding that "[e]ven if the Court were to accept Grande's arguments related to the Rightscorp notices, the summary judgment evidence shows that Grande failed to terminate a single customer despite the receipt of several hundred thousand other copyright infringement notices. Therefore, summary judgment in favor of Plaintiffs' on this issue is still appropriate…." *Grande*, 384 F. Supp. 3d at 758. Moreover, the *Grande* court rejected the defendant's attempt to exclude evidence of other companies' infringement notices, even *after* the defendant had lost its DMCA safe harbor defense, agreeing with Plaintiffs that such evidence was "probative of Grande's knowledge of (and/or willful blindness to) infringement on its network" and "relevant to understanding Grande's economic incentives for allowing unlimited infringement on its system." *Grande*, Order on Motions *in Limine* [Dkt. 347] at 11.

For all of these same reasons, the Court should require RCN to provide information and documents concerning all of the infringement by its subscribers, not just limited to the infringement identified by Rightscorp or MarkMonitor.

**3. RIAA attorneys' access to confidential and attorneys' eyes only discovery under a protective order.**

RIAA is the recording industry's United States trade association. Among other things, RIAA provides legal counsel to, and works with, its member record companies to bring copyright infringement lawsuits, including this case. RIAA lawyers serve as counsel for Plaintiffs, helping to coordinate litigation efforts, providing legal advice, and discussing legal strategy. Plaintiffs seek to have RIAA attorneys receive access to discovery materials produced in this case to aid Plaintiffs in prosecution of their suit.

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
June 26, 2020
Page 5

      There is nothing new about Plaintiffs' position. In fact, in the *Grande* case, RCN's sibling ISP and its counsel agreed to the very same arrangement: the stipulated protective order in that case, ***agreed to by the defendant***, permitted RIAA's in-house counsel responsible for the litigation to be given access to confidential information. *See Grande*, Confidentiality and Protective Order [Dkt. 41] ¶ 2.b. Now, however, RCN and its counsel have changed their tune for no principled reason. RCN has indicated that it will only agree to allow RIAA in-house counsel to access confidential or attorneys' eyes only material only "if plaintiffs/RIAA agree that RIAA will be treated as a party for purposes of discovery and trial testimony." Plaintiffs' counsel asked in writing, and during the parties' June 11 meet and confer telephone call, for Defendants' counsel to explain precisely what this would mean and what discovery they believe they cannot obtain from RIAA as a nonparty, but opposing counsel failed to offer the requested explanation or identification. While the basis for Defendants' position on this issue remains unclear, it is certainly not founded on any reasonable concern that RIAA will not respond to discovery requests. Indeed, in *Grande,* RIAA produced extensive documents and data, provided a detailed privilege log, and furnished two witnesses who sat for day-long depositions. Plaintiffs respectfully request that the Court follow the same approach that was agreed to in *Grande*, and permit RIAA in-house counsel access to confidential and attorneys' eyes only material under the stipulated protective order that the parties otherwise are prepared to submit.

*   *   *

      Plaintiffs are available for a telephonic conference with the Court and Defendants at the Court's convenience. Thank you in advance for your consideration and attention to this matter.

Respectfully yours,

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

*s/ Thomas R. Curtin*

THOMAS R. CURTIN

cc:   All counsel (via ECF and e-mail)