**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
ATTORNEYS AT LAW

1300 MOUNT KEMBLE AVENUE
P.O. BOX 2075
MORRISTOWN, NEW JERSEY 07962-2075
(973) 993-8100
FACSIMILE (973) 425-0161

THOMAS R. CURTIN
Direct Dial: (973) 401-7117
tcurtin@mdmc-law.com

July 31, 2020

**VIA ECF**

Hon. Zahid N. Quraishi, U.S.M.J.
Clarkson S. Fisher Federal Building
 and U.S. Courthouse
402 E. State Street
Trenton, New Jersey 08608

Re:  *UMG Recordings, Inc. et al.  v. RCN Telecom Services, LLC et al.*
Civil Action No. 19-17272 (MAS) (ZNQ)

Dear Judge Quraishi:

This firm, along with our co-counsel Stein Mitchell Beato & Missner LLP, represents Plaintiffs in the referenced matter.  Pursuant to Local Rule 37.1(a)(1), we write regarding a discovery dispute between the parties concerning Defendants' Objections and Responses to Plaintiffs' First Set of Requests for Production ("RFPs") (attached hereto as Exhibit A).  Plaintiffs previously raised with the Court several of these same issues with respect to Defendants' Objections and Responses to Plaintiffs' First Set of Interrogatories.  *See* Plaintiffs' letter of June 26, 2020 (Dkt. No. 72) and Defendants' July 10, 2020 letter (Dkt. No. 75).  The parties have met and conferred on these issues multiple times in writing and telephonically.  Plaintiffs request a conference with the Court to address Defendants' discovery deficiencies.

**1. Defendants' Improper Efforts to Limit Discovery to 2016 to the Present**

In response to 33 RFPs, Defendants have stated that they will limit their response to "the period of 2016 to present."[1]  As Plaintiffs have previously explained in their letter regarding Defendants' interrogatory responses, this objection is unwarranted.  Information related to pre-2016 infringement on RCN's network, including Defendants' knowledge of and response to (or failure to respond to) that infringement, is relevant to numerous claims and defenses in this case, including the scope of actionable infringement, Defendants' eligibility for the safe harbor defense under the DMCA, Defendants' liability for contributory and vicarious infringement, and the extent to which Defendants' infringement was willful (which is directly relevant to the amount of statutory damages that may be awarded under 17 U.S.C. § 504).

---

[1] RFPs 4, 5, 19, 20, 21, 22, 23, 24, 28, 29, 30, 31, 33, 34, 37, 43, 44, 50, 52, 53, 54, 55, 58, 61, 62, 63, 64, 65, 66, 69, 72, 73, and 85.

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
July 31, 2020
Page 2

Notably, in the *Grande* case, the court denied Grande's efforts to impose the same time limitation on discovery that RCN seeks to impose here. That case is directly on point not only because it involved precisely the same legal claims and defenses, but also because RCN and Grande are owned by the same parent company (TPG Capital), operated by the same management company (Patriot), and appear to have been governed by the same executives and policies in responding to copyright infringement. Although the *Grande* case was filed in 2017, the court allowed Plaintiffs to take discovery on infringement dating back to 2010. The court made clear that Plaintiffs were not limited to a three-year period for purposes of discovery. *See UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, No. 17-cv-00365, 2018 WL 4627276, at *3 (W.D. Tex. Sept. 26, 2018) ("Information on how Grande handled DMCA issues prior to [three years before the complaint] could be relevant to demonstrating Grande's knowledge of its obligations under the statute, and could be circumstantial evidence that Grande was aware of infringing conduct on its system, and actually had taken action on it before the time frame at issue here."). Indeed, evidence from the prior time period was central to the court's analysis of the issues on summary judgment including its decision to deny Grande the protection of the DMCA safe harbor. *See, e.g.*, *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 755 (W.D. Tex. 2019) (relying on evidence of Grande's policy with respect to copyright infringement "[p]rior to 2010," and on evidence that "Grande did not terminate a single infringing customer from October 2010 until May 2017," even though "during that period Grande received over a million copyright infringement notices"). In particular, Grande's "utter failure to terminate any customers at all over a *six-and a-half-year period* despite receiving over a million infringement notices and tracking thousands of customers as repeat infringers" was critical evidence in the court's analysis. 384 F. Supp. 3d at 755 (emphasis added).

Defendants have tried to distinguish the *Grande* case by arguing that "the narrow issue [in *Grande*] was whether the plaintiffs were entitled to an order compelling the defendant to produce its copyright infringement and DMCA policies that were in effect more than three years before suit was filed." Dkt. 75, at 4. But that is simply untrue. Plaintiffs in *Grande* moved to compel substantially more information than merely the policies themselves. *Grande*, 2018 WL 4627276, at *3 (noting that Plaintiffs were moving to compel on "Interrogatories 6, 14 and 25 [and] 30(b)(6) topics 7, 25-28, 37-38, 45"). And Grande in fact produced not only its earlier policy documents, but also data, internal emails and documents, and witness testimony, concerning infringement and DMCA policies and practices going all the way back to 2010. There is no sound basis for a different resolution of the issue here.[2]

---

[2] Thus, in this case, discovery of pre-August 2016 infringement notices, Defendants' handling of such notices, the infringing subscribers associated with those notices, and Defendants' revenues and profits derived from those infringing subscribers—topics directly at issue in the interrogatory responses Plaintiffs have identified as deficient—all are directly relevant to Plaintiffs' claims concerning infringement of their copyrighted sound recordings and to Defendants' DMCA safe harbor defense.

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
July 31, 2020
Page 3

Defendants are also incorrect that discovery of pre-2016 infringement should not be allowed because "such infringement is no longer actionable." Dkt. 75 at 3. Infringement that pre-dates the statute of limitations period may be actionable under the discovery rule, which the Third Circuit has held applies in copyright infringement cases. *See William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009) (discovery rule tolls copyright infringement claims until "the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim."). *See also Grande,* 384 F. Supp. 3d at 768 (rejecting essentially the same discovery rule argument that RCN makes here). Defendants' citation to *Petrella v. Metro-Goldwyn-Mayer, Inc.* provides no support for their claim that earlier infringement is no longer actionable. Defendants ignore that the Supreme Court in *Petrella* (1) stated that it was not passing on whether the discovery rule applies, (2) observed that nine Courts of Appeal have adopted the discovery rule for copyright infringement claims, and (3) specifically cited the Third Circuit's *William A. Graham* decision. 572 U.S. 663, 670 n.4 (2014). *See also SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 962 (2017) (citing *Petrella* and again observing that the Court has not passed on the question of whether the Copyright Act's statute of limitations is subject to the discovery rule). *William A. Graham* is still the law in this Circuit; Defendants' citation to the Second Circuit's decision in *Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir. 2020) is unavailing.

2. **Defendants' Refusal to Provide Documents Related to Other Infringement Notices or Other Works**

With respect to 13 RFPs that seek information related to infringement notices that RCN received, Defendants have refused to produce *any* documents or have limited their production to documents concerning only (1) Rightscorp notices (and an arbitrary subset of MarkMonitor notices) or (2) the specific works in suit.[3]

Defendants' objections are wholly without merit.[4] Defendants' knowledge of copyright infringement on RCN's network—of any work from any source—is directly relevant to Defendants' knowledge and willful blindness (one of the elements for contributory infringement), as well as willfulness for copyright statutory damages. *Grande*, 2018 WL 6624205, at *7, *9 (W.D. Tex. Dec. 18, 2018), *report and recommendation adopted*, 384 F. Supp. 3d 743 (W.D. Tex. 2019) (evidence of infringement from multiple sources "show[ed] that Grande was aware of its subscribers' infringing conduct and failed to take steps to stop it.").

Just as important, this discovery goes to the heart of Defendants' asserted DMCA safe harbor defense. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) (The DMCA "requires an assessment of the service provider's 'policy,' not how the service provider

---

[3] RFPs 4, 7, 9, 19, 27, 32, 38, 39, 40, 43, 45, 46, 67, and 68.

[4] Defendants have also asserted burden objections for each of these RFPs, but have provided no factual support for those assertions.

## McElroy, Deutsch, Mulvaney & Carpenter, LLP

Hon. Zahid N. Quraishi, U.S.M.J.
July 31, 2020
Page 4

treated a particular copyright holder. Thus, [defendants'] response to adequate non-party notifications is relevant in determining whether they reasonably implemented their policy against repeat infringers."). In *Grande*, the court allowed discovery into precisely the same information, and then on summary judgment found that the evidence was highly relevant to the ISP's asserted DMCA safe harbor defense: "Even if the Court were to accept Grande's arguments related to the Rightscorp notices, the summary judgment evidence shows that Grande failed to terminate a single Customer despite the receipt of several hundred thousand other copyright infringement notices." 384 F. Supp. 3d at 758.

Indeed, during the parties' Wednesday, July 15, 2020 meet and confer teleconference, counsel for Defendants confirmed that, in the scenario in which an RCN subscriber receives multiple infringement notices, but only one of the notices is from Rightscorp or MarkMonitor, RCN still considers the subscriber to be a repeat infringer under the DMCA, and that any DMCA safe harbor defense would not focus exclusively on how RCN responded to notices from Rightscorp (or MarkMonitor). Thus, notices that RCN received from entities other than Rightscorp are necessarily relevant to RCN's eligibility for the DMCA safe harbor (i.e., whether it reasonably implemented a repeat infringer policy). *See* 17 U.S.C. § 512(i)(1)(A). Defendants nonetheless stated that they stand on their relevance objection and will limit their production of documents to those from post-August 2016, which concern only (1) Rightscorp notices and MarkMonitor notices sent at the direction of the RIAA and (2) the specific works in suit.

Defendants' admission during the parties' meet and confer underscores that discovery concerning *all* copyright infringement notices, regardless of sender or source, or copyrighted work identified, is centrally relevant to the DMCA safe harbor defense that Defendants have indicated they will be asserting—just as the case law indicates. *Grande* demonstrates the unreasonableness of Defendants' stance in this case. There, the court ordered RCN's affiliate to provide discovery on the DMCA defense, *Grande*, 2018 WL 4627276, at *3; the defendant withdrew additional objections to providing discovery regarding other notices and other works, *id.*; the discovery provided was highly probative of the defense (which was rejected on defendant's motion for summary judgement), *Grande*, 384 F. Supp. 3d at 758; and the information produced was ruled admissible at trial, *Grande* Order on MILs, at 8, 14-15 [Dkt. 347]. The same scope of discovery to obtain similar, highly relevant, evidence, should be allowed here. Accordingly, the Court should reject Defendants' objections and require them to produce documents concerning copyright infringement regardless of source/sender or copyrighted work.

### 3. Defendants' Refusal to Provide Discovery on Terminations for Reasons Other Than Copyright Infringement

Defendants have refused to provide any discovery regarding the suspension or termination of RCN customers for reasons other than copyright infringement.[5] Plaintiffs are

---

[5] RFPs 49, 50, 56, 57, 59, and 60.

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
July 31, 2020
Page 5

entitled to discovery on the number of customers whose accounts were suspended or terminated, per month, and the reason for that suspension or termination, as this information is probative of key issues in this case. For example, Plaintiffs seek information about the number of subscribers RCN has terminated for non-payment—evidence that the courts in *Grande* and *Sony v. Cox* both permitted and that featured prominently in the latter case's trial. In order to justify RCN's decision not to terminate subscribers for copyright infringement, Defendants (like Cox and Grande) have argued that access to the internet is so important that termination of service is a drastic measure that should be used sparingly, if at all. But the frequency with which Defendants terminate subscribers for non-payment and other reasons is directly relevant to this argument. In *Grande*, the court agreed with Plaintiffs that the evidence is relevant to present "the jury with the full picture: that Grande routinely deprives customers of internet service when they don't pay Grande." *Grande*, Order on MILs, at 16 [Dkt. 347]. In *Sony v. Cox*, the Court likewise permitted this evidence at trial, finding that "the broader evidence of subscriber termination decisions by Cox are relevant." *Sony Music Entertainment v. Cox Communications, Inc.*, No. 1:18-cv-950-LO-JFA, 12/3/19 Order [Dkt. 626], at 1-2. What is more, evidence that Defendants terminated customers when *their* property or services were being stolen, but refused to do so when *others'* property was being stolen, is highly probative of Defendants' willfulness, an element for heightened statutory damages under the Copyright Act. In sum, Plaintiffs respectfully ask that the Court follow the reasoning and decisions of the courts in *Grande* and *Sony v. Cox*, and require Defendants to produce such information in discovery.

### 4. Defendants' Refusal to Produce Any Documents From or Concerning Patriot

Defendants' refusal to produce *any* documents from, or concerning, Defendant Patriot,[6] is facially improper. Plaintiffs have asserted two claims against Patriot (contributory infringement and vicarious liability), and the documents requested are directly relevant to those claims. Defendants effectively seek to give to themselves a stay of discovery as to Patriot while the motions to dismiss are pending. But Defendants have not moved for such a stay; Plaintiffs' claims against Patriot are actionable for the reasons explained in Plaintiffs' opposition to Patriot's motion to dismiss; and Patriot has plainly relevant discovery, given its central role in managing and decision-making for RCN. Plaintiffs respectfully request that the Court reject Patriot's wholesale refusal to participate in discovery, and order Patriot to produce the documents that Plaintiffs have requested.

### 5. Defendants' Refusal to Provide Documents Regarding Defendants' Ownership, Valuation, and Corporate Structure

Other than agreeing to produce organization charts, Defendants have asserted blanket objections to producing documents concerning Defendants' ownership, their ownership's knowledge of copyright infringement on RCN's network, Defendants' corporate structure, and

---

[6] RFPs 94-97 specifically refer to Patriot, although the other requests are equally applicable to and discoverable from Patriot.

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
July 31, 2020
Page 6

Defendants' valuation.[7]  These objections are clearly improper, as the information is plainly relevant to Plaintiffs' claims against both RCN and Patriot and the damages related to those claims.

In *Grande*, discovery revealed that the prior owner of both Grande and RCN, Abry Partners, directed a change in handling copyright infringement on the Grande service shortly after acquiring its ownership in 2009: previously, Grande suspended and terminated the service of infringing customers; but after Abry Partners took over, Grande abandoned that policy and instead allowed unlimited infringement without repercussions.  That policy change furthered ownership's goal of reducing "churn" (the number of subscribers who leave an ISP's network) and improved the bottom line significantly: when Grande was sold to its current owner, TPG Capital, in 2016, it fetched a purchase price more than three times what Abry had paid.  Plaintiffs strongly suspect that this same scenario played out with RCN, which was acquired by Abry and sold to TPG at the same time, and operated by the same management company (Patriot) as Grande.  Discovery on these topics is directly relevant to RCN's policies and practices, and economic incentives, for allowing infringement, which bears on Defendants' knowledge, direct financial benefit, and willfulness.

*     *     *

Plaintiffs are available for a telephonic conference with the Court and Defendants at the Court's convenience. Thank you in advance for your consideration and attention to this matter.

Respectfully yours,

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

*s/ Thomas R. Curtin*

THOMAS R. CURTIN

Attachment
cc:     All counsel (via ECF and e-mail)

---

[7] RFPs 86-92.