

**Edward F. Behm, Esquire**
Direct **T** 267.780.2030  **F** 215.405.9070
ebehm@atllp.com

August 14, 2020

**VIA ECF**

The Honorable Zahid N. Quraishi
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

    Re:   *UMG Records, Inc., et al. vs. RCN Telecom Services, LLC, et al.*
           Civil Action No. 19-17272-MAS-ZNQ

Dear Judge Quraishi:

This firm represents Defendants in the above-referenced matter. On July 31, 2020, Plaintiffs filed a letter brief with the Court regarding several disputes between the parties concerning RCN's objections and responses to Plaintiffs' Requests for Production. The Court granted Defendants a deadline of August 14, 2020 to file their response.

Defendants respectfully submit this response and request oral argument.

**I.**    **Pre-2016 Discovery.**

For the same reasons stated in Defendants' letter brief regarding pre-2016 information sought through Plaintiffs' interrogatories (ECF No. 75), Defendants also disagree that this information is discoverable here with respect to Plaintiffs' requests for production. The Court decided in its August 5, 2020 Order (the "Order") that pre-2016 information is relevant and may be actionable. ECF No. 83. Defendants respectfully disagree and urge the Court to review this issue in light of the Supreme Court's recent holding in *Petrella*.

Both the Court and Plaintiffs cite the Third Circuit *Graham* case which was decided over a decade ago, prior to the holding in *Petrella*. The *Graham* case states that the "discovery rule" applies to copyright cases. However, Plaintiffs misrepresent how the discovery rule applies to this dispute. The discovery rule is only relevant to determining whether an action is timely filed. *See William A. Graham Co. v. Haughey*, 568 F.3d 425, 428 (3d Cir. 2009) (under the discovery rule, the "cause of action for each act of infringement did not accrue until [plaintiff] discovered, or with reasonable diligence

should have discovered, the injury underlying its claim").

Contrary to Plaintiffs' assertions, the discovery rule does not in any way impact the length of the damages period in this case. As explained in *Petrella*, a copyright plaintiff is only ever entitled to recover damages for the three years preceding the filing of their suit—the discovery rule does not provide a mechanism for extending that period. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671-672 (2014) (17 U.S.C. § 507(b) allows plaintiffs "to gain retrospective relief running only three years back from the date the complaint was filed").

The Court's Order did not address *Petrella*, and Defendants respectfully submit that based on *Petrella*, Plaintiffs are only entitled to seek damages for alleged copyright infringement that occurred in the three years preceding the filing of their complaint. *Id.* at 671-672.

Other Circuit Courts addressing *Petrella* have limited plaintiffs to the three-year damages recovery period—even in situations where the discovery rule applies. *See, e.g., Sohm v. Scholastic Inc.*, 959 F.3d 39, 51–52 (2d Cir. 2020) (irrespective of when a copyright infringement claim accrues—for example due to the discovery rule—damages are only recoverable for infringements that occur within three years of the filing of the complaint). In *Scholastic*, the court reviewed both the discovery rule and *Petrella* and held that they "must apply the discovery rule to determine when a copyright infringement claim accrues, but a three-year lookback period from the time the suit is filed to determine the extent of the relief available." *Id.* at 52. Many district courts have come to similar conclusions. *See, e.g., Park v. Skidmore, Owings & Merrill LLP*, No. 1:17-cv-4473, 2019 WL 9228987, at *3 (S.D.N.Y. Sept. 30, 2019) ("[T]he Copyright Act provides for a three-year lookback period – a plaintiff can bring a suit for any infringing actions in the three years before the filing date, but cannot recover damages for infringements occurring more than three years before filing."); *Wu v. John Wiley & Sons, Inc.*, No. 1:14-cv-6746, 2015 WL 5254885, at *7 (S.D.N.Y. Sept. 10, 2015) ("Following *Petrella*, Wu can recover damages only for any Wiley infringing acts that occurred [not more than three years prior to filing the action]."); *Fischer v. Forrest*, No. 1:14-cv-1304, 2017 WL 128705, at *7 (S.D.N.Y. Jan. 13, 2017), *report and recommendation adopted*, 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017).

Based on the foregoing, Defendants urge this Court to follow *Petrella* and deny Plaintiffs' request to compel the production of materials that are ultimately irrelevant to any issue in this case. To the extent the Court is persuaded that the evidence Plaintiffs seek is nevertheless relevant to RCN's potential safe harbor defense; Defendants recently informed Plaintiffs that they do not intend to assert any DMCA safe harbor defense for the period before June 2016. Defendants' decision not to assert a safe harbor prior to 2016 stands as further evidence that the information sought by Plaintiffs is irrelevant to any issue in this case.

Defendants have already agreed to produce RCN's pre-June 2016 copyright infringement and DMCA policies and have already produced all of the emails that RCN received from Rightscorp regarding alleged copyright infringement, which date back to

2011. Defendants have also produced documents sufficient to identify all of the customers it terminated under RCN's DMCA policy. This information more than satisfies Plaintiffs' needs and no further pre-2016 discovery should permitted.

## II. Plaintiffs Are Not Entitled to Irrelevant Copyright Infringement Allegations from Third Parties.

Plaintiffs' allegations of infringement against RCN are based exclusively on a specific set of copyrights and a specific set of notices transmitted to RCN by Rightscorp. Despite this, Plaintiffs seek the production of documents regarding alleged infringement of copyrights not asserted in this case and of notices generated and transmitted to RCN by disinterested third parties.

The only possible relevance of these materials pertains to RCN's safe harbor defense, which RCN intends to assert if this case proceeds. When and if that defense is advanced, RCN intends to assert that its safe harbor defense first accrued in June of 2016. For this reason, RCN requests that the Court enter an Order requiring that RCN only produce materials regarding third-party allegations of copyright infringement from June 2016 forward.

Plaintiffs assert in their letter brief that RCN's knowledge of copyright infringement of non-asserted copyrights based on notices transmitted by disinterested third parties is somehow relevant to the knowledge and willful blindness elements of Plaintiffs' case. *That is incorrect*. The knowledge and willful blindness issues that will be addressed in this case must be resolved based exclusively on the specific instances of copyright infringement asserted by Plaintiffs and on the notices of infringement pertaining to those copyrights—namely the Rightscorp notices Plaintiffs hold out as their exclusive evidence of infringement. RCN's knowledge of other alleged infringement— premised on other copyrights and allegedly supported by the receipt of notices from third-party monitoring companies other than Rightscorp—has no relevance to the issues presented in this case. S*ee BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 312 (4th Cir. 2018) ("contributory infringement requires knowledge of, or willful blindness to, *specific instances of infringement*" therefore, "the court's willful blindness instruction should similarly require a conclusion that Cox consciously avoided learning about *specific instances of infringement*, not merely that Cox avoided confirming the fact that Cox users were infringing BMG's copyrights in general") (emphasis added); *see also Sony Music Entm't v. Cox Commc'ns, Inc*., No. 1:18-cv-950, 2019 WL 9088258, at *9 (E.D. Va. Nov. 15, 2019) ("In essence, 'generalized knowledge' of infringement somewhere on an ISP's network is insufficient to establish contributory infringement liability, and 'the proper standard requires a defendant to have specific enough knowledge of infringement that the defendant could *do* something about it.'") (citing *BMG Rights Mgmt*., 881 F.3d at 311-312).

For the foregoing reasons, RCN respectfully requests that the Court limit its production of third-party infringement materials to the period from June 2016 forward.

### III. Plaintiffs Are Not Entitled to Irrelevant Non-DMCA Related Customer Terminations.

Documents concerning suspensions or terminations of customer accounts for reasons unrelated to copyright infringement are simply not relevant to any issue in this case. The fact that such evidence was discovered in cases, and admitted at trials, in which RCN did not participate should not be determinative of this issue. RCN respectfully requests that this Court meaningfully and *independently* assess whether evidence that RCN terminated customers for non-payment has any bearing on the copyright infringement issues to be decided in this case. The answer to that question must be "no."

The only possible relevance such evidence might have had to the case is RCN's *ability* to terminate subscribers. But RCN does not dispute that it can terminate subscribers and is willing to stipulate to that fact. With that one potential shred of relevance addressed, there is simply no reason to allow Plaintiffs to take extensive discovery of RCN terminations conducted for reasons wholly unrelated to copyright infringement.

Plaintiffs suggest in their letter brief that RCN will follow Grande's lead by arguing that terminations are a drastic measure that should be used "sparingly." That is a gross mischaracterization of the argument Grande presented in its separate litigation. To be clear, the issue is not one of numerosity—as Plaintiffs wrongly suggest—but rather one of *evidentiary support* and *verifiability*. RCN intends to argue that it is not appropriate to terminate a subscriber based exclusively on the receipt of an allegation transmitted over the internet, but rather, only after receiving conclusive *evidence* of infringement that is capable of *independent validation*. This issue will be resolved through an analysis of the legitimacy of the Rightscorp system and notices, not based on the number of subscribers RCN terminated for non-payment.

Plaintiffs' comparison of action taken when Defendants' property is "being stolen" versus Plaintiffs' property "being stolen" is similarly inapposite. When RCN terminates a customer for non-payment, RCN knows with 100% certainty that the customer has not paid their bill. By contrast, RCN has no way of knowing or independently verifying that a customer accused of copyright infringement committed that infringement. Of course, Plaintiffs will attempt to prove at trial that RCN did have knowledge of actual instances of infringement, but that factual question will be resolved based on evidence of alleged copyright infringement—not based on RCN's decision to terminate subscribers for failing to pay their bill.

Simply put, the number of subscribers that RCN terminated for non-payment is not relevant to any issue properly before the Court in this case and the Court should not require RCN to produce such clearly irrelevant materials.[1]

---

[1] As a point of clarification, Plaintiffs include RFP No. 50 in their letter brief under this topic (fn. 5); however, Defendants did not refuse to produce this information. Defendants agreed to

### IV. Defendants Have Not Refused to Produce Documents Concerning Patriot.

Plaintiffs' assertions with respect to Patriot's participation in the discovery process are baseless. Indeed, the entirety of Plaintiffs' Section 4 comprises four sentences of attorney argument based on false information (*i.e.*, that Patriot has refused to "participate in discovery"). Defendants have not refused to produce any documents concerning Patriot. In fact, in response to the vast majority of Plaintiffs' document requests, Defendants indicated that they would produce all relevant documents that exist and are in either RCN's or Patriot's possession, custody or control. *See, e.g.,* ECF No. 80-1 (Defs. Resp. to RFPs) at RFP Nos. 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 25, 26, 28, 29, 30, 31, 33, 36, 37, 43, 50, 52, 53, 54, 55, 58, 61, 62, 63, 64, 65, 66, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 85, 92, 93, 98, 99, 100, 101. Even for RFP Nos. 94-96, which Plaintiffs cite in footnote 6, Defendants confirmed in email correspondence that they do not intend to withhold any responsive documents that may exist. *See* Ex. 1 (July 23, 2020 email correspondence).

In sum, there is no basis for Plaintiffs to assert that Patriot is refusing to cooperate in discovery. For this reason, Court intervention is simply not necessary.

### V. Plaintiffs Are Not Entitled to Confidential Corporate Documents Relating to Irrelevant Parties.

Plaintiffs' accusation that Defendants are withholding relevant documents relating to the identified categories of requests is simply not true. In fact, for several of these requests, Defendants have willingly agreed to produce any responsive documents, should they exist.

As evidenced from email correspondence between the parties, Defendants clearly explained to Plaintiffs that, with respect to RFP Nos. 86 and 87, a search for documents had been conducted and no responsive documents were identified. Defendants agreed to supplement their responses to state as much. Counsel for Defendants also stated that Defendants are not currently aware of any emails responsive to Plaintiffs' requests. *See* Ex. 1 at section 6 (July 23, 2020 email correspondence).

With respect to RFP Nos. 88-91, Defendants stand on their objections, as each of these requests seek documents that are highly confidential and not relevant to any issue in this case. RFP Nos. 88-89 seek contracts and other documents sufficient to show the transaction by which RCN was purchased by ABRY Partners, and later TPG, including purchase prices and other consideration paid. This information is highly confidential and has absolutely no bearing on any issue in this case. Indeed, Plaintiffs cannot articulate a reason *why* these documents are relevant, other than to satisfy some unfounded

---

produce responsive, non-privileged documents and also agreed to supplement their RFP response if any documents are being withheld pursuant to any objections. Further, RFP Nos. 56-57 are not related to this same issue of non-copyright terminations and should not be included in any Order from the Court. Moreover, for these two RFPs, Defendants offered to meet and confer about narrowing or clarifying the scope of those requests, so Defendants do not believe Court intervention is required.

ARMSTRONG TEASDALE LLP

"suspicion" they have based on a gross mischaracterization of what occurred in the *Grande* case.

RFP Nos. 90-91 seek "any valuations of RCN and Patriot." Despite Defendants' request to narrow these requests, Plaintiffs have flatly refused to clarify their meaning of "valuation," or to apply any temporal boundaries to their request. In any event, this information is highly confidential and has no bearing on any issue in this case. In their letter brief, Plaintiffs were unable to articulate a cogent reason why this information is relevant to this case. Additionally, RCN has agreed to supplement Interrogatory No. 12 to state the purchase price TPG paid to acquire RCN. This information should be more than sufficient and moots Plaintiffs' rationale for seeking production of highly confidential documents.[2]

## Conclusion

Defendants respectfully submit that Plaintiffs' requests for relief should be denied without further proceedings. In the alternative, Defendants request that the Court order Plaintiffs to seek relief by formal motion prior to compelling any additional discovery.

Counsel for Defendants are available for a teleconference or videoconference on these matters at the Court's convenience.

Respectfully Submitted,

*/s/ Edward F. Behm, Jr.*

Edward F. Behm, Jr.

CC:   All counsel of record via ECF

---

[2] As a point of clarification, Plaintiffs include RFP No. 92 in their letter brief under this topic (fn. 7); however, Defendants did not refuse to produce this information. In email correspondence between the parties, counsel for Defendants confirmed that Defendants will produce any responsive documents that exist. *See* Ex. 1 at section 6.