# M<small>C</small>E<small>LROY</small>, D<small>EUTSCH</small>, M<small>ULVANEY</small> & C<small>ARPENTER</small>, LLP
**ATTORNEYS AT LAW**

1300 MOUNT KEMBLE AVENUE
P.O. BOX 2075
MORRISTOWN, NEW JERSEY 07962-2075
(973) 993-8100
FACSIMILE (973) 425-0161

THOMAS R. CURTIN
Direct Dial: (973) 401-7117
tcurtin@mdmc-law.com

August 21, 2020

**VIA ECF**

Hon. Zahid N. Quraishi, U.S.M.J.
Clarkson S. Fisher Federal Building
 and U.S. Courthouse
402 E. State Street
Trenton, New Jersey 08608

      Re:    *UMG Recordings, Inc. et al. v. RCN Telecom Services, LLC et al.*
             Civil Action No. 19-17272 (MAS) (ZNQ)

Dear Judge Quraishi:

      This firm, along with our co-counsel Stein Mitchell Beato & Missner LLP, represents Plaintiffs in the referenced matter. We write in reply to Defendants' August 14, 2020 letter (Dkt. No. 86), which addressed Plaintiffs' letter of July 31, 2020 (Dkt. No. 80) concerning Defendants' Objections and Responses to Plaintiffs' First Set of Requests for Production ("RFPs").

      On August 5, 2020, between the date of Plaintiffs' initial letter and the date of Defendants' response, the Court issued a Letter Order (Dkt. No. 83) ("Order") that overruled Defendants' objections to Plaintiffs' Interrogatories. Those objections mirror some of Defendants' RFP objections at issue here, and the Court's reasoning in its Order applies with equal force to the present disputes.
      Recognizing that the Court's Order moots some of their RFP objections, Defendants now seek reconsideration of the Court's Order and try to distinguish the present disputes from those already ruled on by the Court. Defendants' offer no new arguments or authority that would justify this Court reversing its prior rulings. Plaintiffs respectfully request that the Court overrule Defendants' RFP objections as set forth in our original letter.

    **1.  There Is No Sound Basis for Reversing This Court's Ruling That Pre-2016 Infringement Evidence Is Discoverable.**

      Despite the Court's ruling that pre-2016 evidence is discoverable, Defendants persist in refusing to produce documents from before "the period of 2016 to present."[1] The Court considered and rejected such a limitation in the context of Plaintiffs' Interrogatories for two

---

[1] *See* Plfs' Ltr, Dkt. 80, at 1-3.

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
August 21, 2020
Page 2

independent reasons. First, the Court concluded that "the pre-2016 instances of copyright infringement may be actionable under the discovery rule." Order at 2.[2] Second, the Court recognized that, even if not independently actionable, evidence of pre-2016 infringement and RCN's handling of it "may bear on Defendants' knowledge of infringement by RCN's subscribers, the benefit they derived from infringing subscribers, and their capabilities in responding." *Id*. at 2.

The exact same rationale applies to Plaintiffs' RFPs. The documents that Plaintiffs seek—concerning copyright infringement allegations and notices before 2016 and how Defendants handled them—are relevant both as evidence of potentially actionable infringement and independently as probative of Defendants' knowledge of infringement, capabilities to respond to infringement, willfulness in allowing repeat infringers to continue to use their network, and other issues central to this case.

Defendants suggest that pre-2016 information is not relevant because they are not claiming entitlement to the DMCA safe harbor before June 2016. But Defendants' position does not render pre-2016 information irrelevant. Indeed, as Plaintiffs explained at length in our July 31 letter, the *Grande* court concluded that information from the prior seven years was relevant and discoverable. Plaintiffs will not repeat those arguments in full here. Needless to say, evidence related to what Defendants knew about infringement on RCN's network and what action they took in response to such infringement is relevant to numerous claims and defenses in this case, including the scope of actionable infringement, Defendants' liability for contributory and vicarious infringement, and the extent to which Defendants' infringement was willful (which is directly relevant to the amount of statutory damages that may be awarded under 17 U.S.C. § 504). And even if Defendants are not claiming entitlement to the DMCA safe harbor for the time period before June 2016, Defendants' eligibility for the safe harbor cannot be viewed as a snapshot in time; rather, it must be viewed in the context of Defendants' knowledge and conduct over time. Again, for all of these reasons, the *Grande* court rejected Defendants' efforts to impose similar time limits on this same discovery.

In addition, Defendants yet again invoke the Supreme Court's decision in *Petrella v. Metro-Goldwyn-Mayer, Inc.,* 572 U.S. 663, 671-672 (2014), but now claim that it somehow supports the discovery limitation that Defendants advance because it issued after the Third Circuit opinion in *William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009). This argument completely misses the point. As Plaintiffs have already explained, and Defendants continue to ignore, the Supreme Court in *Petrella* (1) stated that it was not passing on whether the discovery rule applies, (2) observed that nine Courts of Appeal have adopted the discovery rule for copyright infringement claims, and (3) specifically cited the Third Circuit's *William A. Graham* decision. 572 U.S. 663, 670 n.4 (2014). *Petrella* is a laches decision that has no bearing on the proper scope of discovery, and plainly does not upset the application of the discovery rule here.

---

[2] *Citing William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009).

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
August 21, 2020
Page 3

Defendants then fall back on the Second Circuit's decision in *Sohm v. Scholastic Inc.*, 959 F.3d 39 (2d Cir. 2020), yet there remains nothing in that decision to support Defendants' position. *Sohm* does not remotely say what Defendants claim and does nothing to support their cribbed approach to discovery. Notably, *Sohm* affirmed the application of the discovery rule within the Second Circuit for determining when a claim for copyright infringement accrues. *Id.* at 50-51. The holding does not address what discovery is available. Moreover, Defendants' interpretation of *Sohm* would effectively eliminate the discovery rule and apply a de facto injury rule. In fact, the only case to cite this holding of *Sohm* rejected Defendants' indefensible reading and recognized the controlling distinction between what infringements are relevant and what effect the statutory period has on the damages available:

> Defendant misunderstands this holding when arguing that a plaintiff can recover only for *infringements* occurring in the previous three years. Such a ruling would replace the discovery rule adopted by the Fourth Circuit with an injury rule. If a plaintiff can only recover for *infringements* occurring in the past three years—rather than *damages incurred* in the past three years—then a claim would have to be discovered at the exact moment of infringement for the plaintiff to fully recover for that infringement. The Court rejects that this was the Supreme Court's intent in announcing the *Petrella* retrospective relief rule.

*Werner v. BN Media, LLC*, No. 2:19CV610, 2020 WL 4728814, at *3 (E.D. Va. Aug. 7, 2020).[3]

To be clear, Plaintiffs will offer evidence of the infringement of each of the asserted works within the applicable statute of limitations period, and thus *Sohm* will ultimately be irrelevant even on the question of available damages. Regardless, the decision does nothing to alter this Court's ruling that pre-2016 information is relevant here for many issues other than damages, including "Defendants' knowledge of infringement by RCN's subscribers, the benefit they derived from infringing subscribers, and their capabilities in responding." Order at 2. The Court was right to reject Defendants' misguided reading of *Petrella* and *Sohm* the first time, and should do so again.

**2. There Is No Sound Basis for Reversing This Court's Ruling That Infringement Notices from All Sources Are Discoverable.**

The Court's Order rejected RCN's attempt to limit its interrogatory responses to infringement notices only from certain sources. Order at 3. Again, RCN seeks reconsideration of that ruling. RCN asserts that only the Rightscorp notices are relevant to Defendants' actual knowledge (or willful blindness) of infringement. This argument makes no sense for several

---

[3] Defendants misleadingly claim that "many district courts have come to similar conclusions" as *Sohm*. But none of these cases involved a limitation on discovery, let alone the categorical discovery barrier that Defendants advance here.

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
August 21, 2020
Page 4

reasons. First, pre-June 2016 notices from entities other than Rightscorp may include evidence of infringement of the works at issue in this case. Merely because Plaintiffs have alleged that Rightscorp has detected infringement does not mean that evidence of infringement detected by other entities is irrelevant; to the contrary, such evidence would support and reinforce Plaintiffs' claims. Second, Defendants misstate the law regarding the knowledge required for RCN to be liable for contributory infringement. As Plaintiffs detailed in the motion to dismiss briefing, actual knowledge is not required; constructive knowledge is sufficient.[4] As the *Grande* court concluded, notices from sources other than Rightscorp about infringement of any copyrighted works are probative of what Defendants reasonably should have known was occurring on their network. *See Grande*, 2018 WL 6624205, at *7, *9 (W.D. Tex. Dec. 18, 2018), *report and recommendation adopted*, 384 F. Supp. 3d 743 (W.D. Tex. 2019) (evidence of infringement from multiple sources "show[ed] that Grande was aware of its subscribers' infringing conduct and failed to take steps to stop it."); *Grande*, 384 F. Supp. 3d at 758 ("Even if the Court were to accept Grande's arguments related to the Rightscorp notices, the summary judgment evidence shows that Grande failed to terminate a single Customer despite the receipt of several hundred thousand other copyright infringement notices."). Third, notices from other sources identifying the same repeat infringers that Rightscorp identified are probative of the reliability of the Rightscorp system. Fourth, pre-June 2016 notices from all sources, regarding all infringement, are relevant to demonstrate the willfulness of Defendants' conduct, especially coupled with Defendants' admission that they did not have a policy in place providing for the termination of repeat infringers during this period.

The Court should reject Defendants' arbitrary limitation on the notices it intends to provide in discovery and order responses to Plaintiffs' RFPs regardless of the source or date of the relevant evidence.

### 3. Evidence of RCN's Termination of Customer Accounts for Non-Payment and Other Reasons Is Discoverable.

Defendants make no effort to refute the well-reasoned opinions cited by Plaintiffs that hold that evidence of an ISP's practice of terminating subscribers for reasons other than copyright infringement are not only relevant in contributory infringement cases, but admissible at trial.[5] Instead, Defendants ask this Court to ignore the holdings in *Grande* and *Cox* and accept Defendants' unsupported assertion that its decision to terminate non-paying customers is immaterial. As Plaintiffs explained, and these other courts have held, an ISP's commitment to vigorously policing its customers to protect its own financial well-being while turning a blind

---

[4] *See* Dkt. No. 52 at 18-19 ("'Actual knowledge is not required; constructive knowledge of infringement is sufficient to meet this burden.' *Broad. Music Inc. v. Hemingway's Cafe, Inc.*, 2017 WL 2804951, at *4 (D.N.J. June 28, 2017). 'Plaintiffs need only prove that Defendants had constructive knowledge of infringement. Contributory infringement requires that the secondary infringer know or have reason to know of direct infringement.' *Flea World*, 2006 WL 842883, at *14 (citation omitted).").

[5] *See* Dkt. 80 at 4-5.

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
August 21, 2020
Page 5

eye to widespread infringement by those same customers is directly relevant to willfulness and the statutory damages factors under the Copyright Act. Moreover, RCN's termination of customers for non-payment or other reasons is highly relevant to the extent Defendants argue that internet access provides a critical service to customers and that subscribers' accounts should therefore be terminated only as a last resort; evidence of the frequency of terminations for non-payment would undermine the credibility of that argument (and if Defendants refuse to produce evidence of terminations for non-payment and other reasons, then they should be foreclosed from making any arguments in this case along those lines). In addition, Defendants' premature arguments regarding the weight of this admissible evidence has no bearing on whether such evidence is discoverable in the first place.

### 4. Defendant Patriot Has Finally Agreed to Participate in Discovery.

Defendants claim that in their RFP responses they committed to producing "all relevant documents that exist and are in **either** RCN's or Patriot's possession, custody or control." Dkt. No. 86 at 5 (emphasis added). In fact, the RFP responses are devoid of any such clarity, and state the opposite—that Defendants do not agree to produce documents in Patriot's possession responsive to discovery requests aimed specifically at Patriot.[6] Defendants' statements during the meet and confer process, including its continued refusal to produce documents responsive to requests directed specifically at Patriot, did not resolve the parties' dispute.

To the extent that Defendants' August 14 letter to the Court finally acknowledges that they will produce relevant, responsive documents from Patriot in response to Plaintiffs' RFPs, it appears that intervention by the Court may not be necessary. Based on this representation, Plaintiffs will review the forthcoming productions purporting to respond to these RFPs and address any deficiencies at that time. Plaintiffs reserve all rights with respect to Patriot's responses to discovery.

### 5. Ownership, Valuation, and Corporate Structure Documents Are Plainly Relevant.

RFP Nos. 88-91 seek information on the valuation of RCN and the transactions by which RCN was acquired over time. As Plaintiffs explained, this information is probative of the economic incentives of, and benefits realized by, Defendants' decisions regarding how to address infringing subscribers. In fact, Defendants' admission that they terminated no subscribers before June 2016 (and then none throughout all of 2017) tend to prove Plaintiffs' point. Discovery in *Grande* revealed that Grande abandoned a termination policy following the acquisition by Abry Partners. Plaintiffs are entitled to explore the same issues here, including the extent to which the

---

[6] Dkt. No. 80-1 at 4 ("Except where otherwise noted, the use of 'Defendants' in the following responses and objections means at least one of RCN and Patriot. For instance, any statement that "Defendants" will produce responsive documents is not an admission that such documents exist and are in the possession, custody, or control of both RCN and Patriot."); *see* responses to RFPs 94-96.

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
August 21, 2020
Page 6

refusal to terminate repeat infringers was a central strategy in Defendants' efforts in increase the value of their business by retaining subscription fees from these infringers. Other Defendant ISPs, including Grande, have produced comparable information in analogous cases. This evidence is plainly relevant to the factors[7] to be considered in assessing statutory damages and Defendants make no meaningful effort to demonstrate otherwise.

*     *     *

Plaintiffs are available for a telephonic conference with the Court and Defendants at the Court's convenience. Thank you in advance for your consideration and attention to this matter.

Respectfully yours,

McElroy, Deutsch, Mulvaney & Carpenter, LLP

*s/ Thomas R. Curtin*

Thomas R. Curtin

cc:     All counsel (via ECF and e-mail)

---

[7] *See e.g. Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 473–74 (S.D.N.Y. 2001) ("In awarding statutory damages, the courts may consider, among other factors, the expenses saved and the profits earned by the defendant, the revenues lost by the plaintiff, the deterrent effect on the defendant and third parties, the defendant's cooperation in providing evidence concerning the value of the infringing material, and the conduct and attitude of the parties.").