**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

UMG RECORDINGS, INC., *et al*.,

                   Plaintiffs,

                   v.

RCN TELECOM SERVICES, LLC, *et al.*,

                   Defendants.

Civil Action No. 19-17272 (MAS) (ZNQ)

**MEMORANDUM OPINION**

---

**SHIPP, District Judge**

       This matter comes before the Court upon Defendants RCN Telecom Services, LLC; RCN Telecom Services of New York, L.P.; RCN Capital Corp.; RCN Telecom Services of Philadelphia, LLC; RCN Telecom Services of Massachusetts, LLC; Starpower Communications, LLC; RCN Management Corporation; RCN ISP, LLC; RCN Digital Services, LLC; RCN NY LLC 1; RCN Telecom Services (Lehigh), LLC; RCN Telecom Services of Illinois, LLC; 21st Century Telecom Services, Inc.; and RCN Cable TV of Chicago, Inc.'s (collectively, "RCN" or the "RCN Defendants") Motion to Dismiss (ECF No. 15), and upon Defendant Patriot Media Consulting, LLC's ("Patriot") (with "RCN" the "Defendants") Motion to Dismiss (ECF No. 30). Plaintiffs UMG Recordings, Inc.; Capitol Records, LLC; Sony Music Entertainment; Arista Records LLC; Arista Music; LaFace Records LLC; Sony Music Entertainment US Latin LLC; Volcano Entertainment III, LLC; Zomba Recording LLC; Atlantic Recording Corporation; Bad Boy Records LLC; Elektra Entertainment Group Inc.; Fueled by Ramen LLC; Maverick Recording Company; The All Blacks U.S.A. Inc.; Warner Music Nashville LLC; Warner Records Inc.;

Warner Records/SIRE Ventures, LLC; and WEA International Inc. (collectively, "Plaintiffs") opposed Defendants' Motions (ECF Nos. 52, 53), to which Patriot and RCN replied (ECF Nos. 61, 62).

The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, RCN's Motion to Dismiss is denied and Patriot's Motion to Dismiss is granted. Counts Three and Four of the Amended Complaint are dismissed without prejudice.

## I.    BACKGROUND[1]

### A.    Factual History

#### 1.    The Parties

Plaintiffs are a collection of record companies that produce, manufacture, distribute, sell, license, and are copyright holders of, the great majority of all copyrighted commercial sound recordings in this country, including recordings from popular recording artists like Aerosmith, Bruce Springsteen, One Direction, Beyoncé, John Legend, and more. (Am. Compl. ¶¶ 49–50, ECF No. 9; *see also* List of Copyrighted Recordings, Ex. A to Am. Compl., ECF No. 9-1.)[2] The RCN Defendants are Internet Service Providers ("ISPs") that provide internet services in a large number of major metropolitan regions. (Am. Compl. ¶ 3.) RCN offers its customers high-speed internet access with varying levels of internet speeds offered at corresponding price points. (*Id.* ¶ 62.) Patriot is a management consulting firm that provides certain management services, including

---

[1] For the purpose of this motion to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to the Plaintiffs. *See Phillips v. City of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2] The List of Copyrighted Recordings includes: (1) the name of the Plaintiff who owns the copyright; (2) the artist who created the sound recording; (3) the title of the sound recording; and (4) the registration number from the United States Copyright Office.

making and implementing policy decisions, for RCN. (*Id.* ¶¶ 81–82; *see also* Patriot's Moving Br. 3, ECF No. 30-1.)

### 2.    Online Infringement of Copyrighted Works

The record industry and other content-owning industries are currently grappling with the significant problem of online piracy. (Am. Compl. ¶ 55.) BitTorrent networks, a form of peer-to-peer file sharing, are frequently used to distribute copyrighted works. (*Id.*) "BitTorrent systems allow users to join a 'swarm' of collaborating host computers to download and upload copyrighted works from each other simultaneously." (*Id.*) When a user attempts to download a specific file, "BitTorrent software identifies multiple computers hosting the identical file, takes small pieces of the requested file from each of those host computers, and downloads them simultaneously onto the requester's computer where they are reassembled into one file." (*Id.*) "These pieces become immediately available for further distribution and download to other infringing users." (*Id.*) This system allows for large files or groups of files to be quickly downloaded and distributed. (*Id.* ¶ 56.) Plaintiffs aver that in a 2013 report, "NetNames estimated that 99.97% of non-pornographic files distributed by BitTorrent systems infringe[d] copyrights." (*Id.*)

Rightscorp, Inc. ("Rightscorp") is an independent copyright enforcement company that developed a technology to monitor BitTorrent systems for infringing activities. (*Id.* ¶ 57.) Indeed, copyright holders have hired Rightscorp to do just that. (*Id.* ¶¶ 57, 58.) Rightscorp's software detects a host computer offering content and then logs certain identifying information including, *inter alia*, the date and time of the download, the IP address and port number of the host computer, the host computer's ISP, the suspected location of the host computer, and information about the infringing file. (*Id.* ¶¶ 57, 68.) "Rightscorp's system also has the capability to acquire entire files

from the infringing host computers." (*Id.* ¶ 57.) Rightscorp will then notify the ISP of the suspected infringement, and request the ISP notify its account holder of the infringement as well. (*Id.* ¶ 58.) Indeed, Rightscorp has requested RCN forward such notices to its account holders. (*Id.*; *see also* Compilation of Notices, Ex. 1 to RCN Mot., ECF No. 15-3.) These notices, *inter alia*, (1) inform the account holder that their ISP has forwarded them the notice; (2) inform the account holder their account "used to download, upload or offer for upload copyrighted content in a manner that infringes on the rights of the copyright owner"; (3) identify the file that was infringed upon; (4) warn the account holder that repeated violations could result in a suspension of service; (5) warn the account holder that they could face civil liability; (6) inform the account holder that Rightscorp represents the copyright holder; and (7) indicate that Rightscorp has been "authorized to offer a settlement solution" to avoid "costly and time-consuming litigation." (*See generally* Compilation of Notices.)

### 3. Copyright Infringement by RCN's Customers

To date, "Rightscorp has sent RCN more than five million infringement notices, which identified tens of thousands of RCN's subscriber accounts that were engaged in repeated acts of copyright infringement." (*Id.* ¶ 66.) Specifically, "Rightscorp notified RCN that 36,733 of its customers had engaged in repeated infringement; 10,628 of its customers had engaged in infringement at least 50 times; 6,913 of its customers had engaged in infringement at least 100 times; 1,960 of its customers had engaged in infringement at least 500 times; and 966 of its customers had engaged in infringement at least 1,000 times." (*Id.*) Each notice sent to RCN by Rightscorp "requested that RCN forward the notice to the corresponding subscriber, because only RCN, as the ISP, could identify and contact the account holder." (*Id.* ¶ 68.) In addition to sending the notices, Rightscorp, using its software, "repeatedly obtained a copy of the infringing file that

was the subject of [the] infringement notice." (*Id.* ¶ 69.) In addition to the individual notices, Rightscorp also provided RCN with "weekly infringement summaries detailing the notices sent to RCN that week, as well as access to an online dashboard that allowed RCN to access the Rightscorp records." (*Id.* ¶ 70.)

Plaintiffs aver that despite these notices, RCN "failed to take any meaningful action to discourage" the copyright infringement "because internet customers generate high profit margins for RCN." (*Id.* ¶¶ 72, 73.) Plaintiffs further allege that any anti-piracy policy implemented by RCN was "a sham" because no "policy that provided for the termination of repeat infringers" was ever adopted or enforced. (*Id.* ¶ 77.) As to Patriot's role, Plaintiffs allege that Patriot "is an owner of RCN" and that it "effectively makes all policy decisions for RCN, specifically including any policy regarding copyright infringement." (*Id.* ¶ 81.) Plaintiffs contend this includes RCN's policy of providing "repeat infringers with continued internet service . . . without consequence." (*Id.* ¶ 82.) Plaintiffs aver that because Patriot "provided management and general counsel services to RCN," it is "equally liable." (*Id.*)

## B. Procedural History

On August 27, 2019, Plaintiffs filed their original Complaint. (ECF No. 1.) On November 22, 2019, Plaintiffs filed an Amended Complaint alleging four counts against Defendants. (Am. Compl., ECF No. 9.) All of Plaintiffs' allegations in the Amended Complaint arise under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.* (*See generally id.*) Specifically, the Amended Complaint alleges: Count One, against RCN, for contributory copyright infringement (*id.* ¶¶ 84–95); Count Two, against RCN, for vicarious copyright infringement (*id.* ¶¶ 96–107); Count Three, against Patriot, for contributory copyright infringement (*id.* ¶¶ 108–20); and Count Four, against Patriot, for vicarious copyright infringement (*id.* ¶¶ 121–132). On January

21, 2020, RCN and Patriot filed their Motions to Dismiss. (ECF Nos. 15, 30.) On February 18, 2020, Plaintiffs opposed (ECF Nos. 52, 53) and on March 11, 2020, Defendants replied (ECF Nos. 61, 62).

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original).

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's [well-pleaded] factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "[M]ere restatements of the elements of [a] claim [ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## III.   PARTIES' POSITIONS

### A.   RCN's Position

RCN argues that Plaintiffs' Amended Complaint fails to state a claim alleging direct infringement by any RCN subscriber and similarly fails to state a claim for contributory or vicarious copyright infringement as to RCN itself. (*See generally* RCN Moving Br., ECF No. 15-1.) RCN argues that Plaintiffs have failed to satisfy the knowledge element of a contributory infringement claim because "Rightscorp's emails are the sole basis for RCN's alleged knowledge of infringement." (*Id.* at 9.) RCN characterizes Rightscorp's email notifications as "conclusory . . . unsupported and unverifiable" and aver that they provide "no evidence or information that would enable RCN to verify Rightscorp's allegations." (*Id.* at 9–10.) Although Rightscorp's notices state that they are notices under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §§ 101, *et seq.*, RCN contends the emails did not comply with the DMCA. (RCN Moving Br. 11.) RCN further argues that Plaintiffs have failed to adequately allege that RCN took any active steps to promote infringement or that RCN offered its internet services with the intent to encourage infringement. (*Id.* at 12–14.) Because internet service has substantial non-infringing uses, RCN argues that they did not provide a product which materially contributed to the alleged infringement, and the elements of a contributory infringement claim have, therefore, not been met. (*Id.* at 14–19.)

As to vicarious infringement, RCN argues that although they can terminate subscribers, they do not have the ability to actually stop infringers from committing acts of infringement, as subscribers can always access the internet through other means. (*Id.* at 31–33.) RCN also contends that the mere receipt of a monthly service fee does not demonstrate a direct relationship between the alleged infringing activity and RCN's financial interests. (*Id.* at 29.) Nor is there factual basis

for the assertion that anyone subscribed to RCN's internet service because of the ability to infringe copyrighted works, or that any infringers had knowledge of RCN's "infringer-friendly" policy. (RCN Reply Br. 3–4, ECF No. 62.)

In opposition, Plaintiffs argue that they have sufficiently pleaded direct acts of infringement committed by RCN subscribers and that RCN "had actual or constructive knowledge of, or was willfully blind to" its subscribers' infringement. (Pls.' RCN Opp'n Br. 14–15, ECF No. 52.) Plaintiffs contend that, contrary to RCN's assertions, the Rightscorp notices satisfy the actual knowledge standard. (*Id.* at 15.) Plaintiffs argue that the five million Rightscorp notices that were sent to RCN are similarly sufficient to constitute constructive knowledge of infringement. (*Id.* at 19.) Plaintiffs aver that, at a minimum, the quantity of notices show that RCN was "willfully blind" to the infringement and, therefore, Plaintiffs have stated a claim for contributory infringement. (*Id.*)

As to vicarious infringement, Plaintiffs argue they have sufficiently pleaded that RCN received a financial benefit from the infringement by alleging that RCN's policy of not punishing infringement was a "draw" that made them more appealing to new subscribers. (*Id.* at 26.) Plaintiffs similarly argue that RCN derived a financial benefit by failing to punish subscribers who repeatedly engaged in infringement. (*Id.* 27–28.) Plaintiffs further contend that RCN had both the ability and the right to supervise and control its subscribers because it had the ability to terminate subscriber accounts or revoke their access to RCN's service. (*Id.* at 29.)

### B.    Patriot's Position

Patriot contends that Plaintiffs have failed to allege a plausible theory under which it would be permissible to hold "Patriot secondarily liable for copyright infringement allegedly committed by RCN's subscribers." (Patriot Moving Br. 4, ECF No. 30-1.) In support, Patriot points to a

decision from the District Court for the Western District of Texas where the court rejected nearly identical claims against Patriot made by these very same Plaintiffs. (*Id.* (citing *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC* ["*Grande I*"], No. A-17-CA-365-LY, 2018 WL 1096871, at *1 (W.D. Tex. Feb. 28, 2018), *report and recommendation adopted*, No. 1:17-CV-365-LY, 2018 WL 2182282 (W.D. Tex. Mar. 26, 2018), and *report and recommendation adopted*, No. 1:17-CV-365-LY, 2018 WL 1905124 (W.D. Tex. Mar. 28, 2018)). Patriot argues that Plaintiffs' allegations are entirely based on the alleged conduct of the ISP, in this case RCN, and not Patriot itself. (Patriot Moving Br. 5.) Patriot avers that "Plaintiffs are seeking to hold Patriot secondarily liable for RCN's alleged secondary liability, which amounts to impermissible 'tertiary' liability." (*Id.* at 5–6.)

As to Plaintiffs' claim for contributory infringement, Patriot argues that Plaintiffs have failed to state a claim because Plaintiffs have not plausibly alleged "that Patriot induced or encouraged direct infringement, or that it did so with knowledge of such infringement." (*Id.* at 6–7.) Patriot notes that Plaintiffs have "allege[d] no facts showing that Patriot had any knowledge of Rightscorp's emails." (*Id.* at 7.) To the extent Plaintiffs allege that Patriot had knowledge of instances of subscribers being repeated infringers, Patriot characterizes such allegations as "conclusory" and "unsupported by any facts." (*Id.*) As to Plaintiffs' claims for vicarious infringement, Patriot argues this claim fails because Plaintiffs' have not plausibly alleged that Patriot has a direct financial interest in the infringing activity nor that it has the necessary level of control over the alleged infringers. (*Id.* at 10.) Patriot also contends that Plaintiffs' claims made "upon information and belief" are without factual basis and are boilerplate and conclusory, and therefore do not satisfy the pleading requirements of the Federal Rules. (Patriot Reply Br. 4–5, ECF No. 61.)

In opposition, Plaintiffs argue that Patriot's citation to *Grande* is inapplicable in this case because:

> Plaintiffs have significantly enhanced their allegations here to include the facts that Patriot is an owner of RCN; Patriot directed RCN's policies of allowing unlimited infringement on its network; these Patriot-directed policies attracted and kept infringing users as paying subscribers on RCN's network; and Patriot reaped a direct financial benefit from that infringement as a result.

(Pls.' Patriot Opp'n Br. 2–3, ECF No. 53.) Plaintiffs' further argue that Patriot's claim of "tertiary liability" "cannot be squared with well settled law in the Third Circuit and other courts." (*Id.* at 3.) Plaintiffs contend they have adequately alleged Patriot's knowledge and material contribution to secondary copyright infringement and, in support, point to the Rightscorp emails and Patriot's influence over RCN's policies. (*Id.* at 3–4.)

## IV.   **DISCUSSION**

"Contributory and vicarious infringement are theories of secondary liability for copyright infringement that 'emerged from common law principles and are well established in the law.'" *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376, 386 (3d Cir. 2016) (quoting *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). "Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *Id.* (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001), *as amended* (Apr. 3, 2001), *aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002)). "Thus, to prove a claim of contributory or vicarious infringement, a plaintiff must first show direct infringement by a third party." *Id.* However, "[a] plaintiff does not need to sue the third party to file suit against a defendant under theories of secondary liability." *Broad. Music Inc. v. Hemingway's Cafe, Inc.*, No. 15-6806, 2017 WL 2804951, at *4 (D.N.J. June 28, 2017) (citing *Arista Records, Inc. v. Flea World, Inc.*, 356 F. Supp. 2d 411, 416 (D.N.J. 2005)). The Court,

therefore, begins by considering whether Plaintiffs have adequately pleaded direct infringement by a third party.

### A. Plaintiffs Have Adequately Pleaded Direct Infringement by a Third Party

"To prove direct infringement, a plaintiff must show that (1) it owns a valid copyright; (2) another party copied elements of its work without authorization; and (3) that party engaged in volitional conduct." *Leonard*, 834 F.3d at 386–87 (citing *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005)); *see also Broad. Music Inc.*, 2017 WL 2804951, at *3 ("To establish copyright infringement under the Copyright Act, a plaintiff must demonstrate: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work.") (internal quotation and citation omitted). "When asserting ownership of a copyright, the existence of a copyright registration certificate issued from the United States Copyright Office is prima facie evidence of the validity of the party's copyright and of the facts stated in the certificates, including ownership of the copyright." *Flea World, Inc.*, 2006 WL 842883, at *8 (citation omitted). "Copying refers to the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106, including the rights to distribute and reproduce copyrighted material." *Kipcon, Inc. v. D. W. Smith Assocs., LLC*, No. 17-3190, 2017 WL 5129888, at *3 (D.N.J. Nov. 6, 2017) (quoting *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005)). "Volitional conduct occurs when a party engages in 'the act constituting infringement.'" *Leonard*, 834 F.3d at 387 (citing *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 551 (4th Cir. 2004)). "[T]he lines between direct infringement, contributory infringement[,] and vicarious liability are not clearly drawn." *Broad. Music Inc.*, 2017 WL 2804951, at *4. Generally, however, "contributory liability is based on the defendant's failure to stop its own actions which

facilitate third-party infringement, while vicarious liability is based on the defendant's failure to cause a third party to stop its directly infringing activities." *Id.*

### 1.    Plaintiffs Own Valid Copyrights

Here, the Court finds Plaintiffs have adequately pleaded they own a valid copyright and that a third party infringed on that copyright. Plaintiffs attach, as an exhibit to their Amended Complaint, a partial list of sound recordings for which they own the copyright and plausibly allege that RCN's subscribers illegally downloaded and distributed those recordings without authorization. (*See* List of Copyrighted Recordings; *see generally* Am. Compl.) The List of Copyrighted Recordings includes: (1) the name of the Plaintiff who owns the copyright; (2) the artist who created the sound recording; (3) the title of the sound recording; and (4) the registration number from the United States Copyright Office. (*See generally* List of Copyrighted Recordings.) This information is prima facie evidence of the validity of Plaintiffs' copyrights. *See Flea World, Inc.*, 2006 WL 842883, at *8.

### 2.    Plaintiffs Plausibly Allege Infringement of Their Distribution and Reproduction Rights

Under 17 U.S.C. § 106(1), (3), "the owner of copyright under this title has the exclusive rights . . . (1) to reproduce the copyrighted work . . . [and] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer." An individual who violates these exclusive rights is an infringer. *See Napster, Inc.*, 239 F.3d at 1014 ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights. Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights.").

Accepting the allegations of the Amended Complaint as true and construing the facts in Plaintiffs' favor, the Court finds Plaintiffs have adequately pleaded an infringement of their distribution rights. RCN argues that the "alleged acts—making files available to others for

download—are not direct infringement of the distribution right, but are rather secondary infringement of the copyright owner's reproduction right." (RCN Moving Br. at 34–35.) RCN argues that imposing liability upon them would amount to "impermissible tertiary liability." (*Id.* at 36.) This assertion, however, fails to fully account for the allegations of the Amended Complaint. Indeed, Plaintiffs specifically allege "Rightscorp also repeatedly obtained a copy of the infringing file that was the subject of an infringement notice, . . . Rightscorp obtained tens of thousands of these audio files, including copies of each of the Copyrighted Sound Recordings listed in Exhibit A, within the applicable statute of limitations period." (Am. Compl. ¶ 69.) At the pleading stage, the Court finds this allegation sufficient. Indeed, "[c]ourts have consistently relied upon evidence of downloads by a plaintiff's investigator to establish both unauthorized copying and distribution of a plaintiff's work." *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.* ["*Cox II*"], 199 F. Supp. 3d 958, 972 (E.D. Va. 2016), *aff'd in part, rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018); *Arista Records LLC v. Usenet.com, Inc.*, 633 F.Supp.2d 124, 149–150 n.16 (S.D.N.Y. 2009) ("Defendants' argument that [downloads by Plaintiffs' investigators] are not proof of unauthorized copying because Plaintiffs had 'authorized' the downloads by their investigators is without merit. Courts routinely base findings of infringement on the actions of plaintiffs' investigators." (collecting cases)); *Warner Bros. Records Inc. v. Walker*, 704 F. Supp. 2d 460, 467 (W.D. Pa. 2010) (holding that downloads by MediaSentry [a third-party service used to detect infringement] "establish[ed] unauthorized distribution as to those nine recordings"); *Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1216 (D. Minn. 2008) ("[D]istribution to MediaSentry can form the basis of an infringement claim."); *Universal City Studios Prods. LLLP v. Bigwood*, 441 F. Supp. 2d 185, 190 (D. Me. 2006) ("[B]y using [a peer-to-peer network] to make copies of the Motion Pictures available to thousands of people over the

internet, [d]efendant violated Plaintiffs' exclusive right to distribute the Motion Pictures."); *see also UMG Recordings, Inc. v. Grande* ["*Grande II*"], 384 F. Supp. 3d 743, 765 (W.D. Tex. 2019) (rejecting defendant's argument regarding tertiary liability and holding that "the [c]ourt concludes a theory of direct liability properly applies to [the ISP's] customers, either through making infringing materials available, or through actual dissemination of infringing materials. Therefore, by providing the services permitting their customers' alleged direct infringement, [the ISP] is potentially liable as a secondary infringer"). The Court finds, accordingly, that Plaintiffs' have adequately pleaded that RCN subscribers' violated Plaintiffs' distribution rights.

The Court similarly finds that Plaintiffs have adequately pleaded a violation of their reproduction rights. RCN argues that Plaintiffs have failed to plausibly plead a violation of reproduction rights because they do not allege facts "that an RCN subscriber actually copied copyrighted material—*i.e.*, downloaded it from another BitTorrent user—using RCN's network." (RCN Moving Br. 34.) This, too, misstates the allegations of the Amended Complaint. Rather, Plaintiffs specifically allege that RCN's subscribers "utilize RCN's service to download infringing music files using BitTorrent protocols." (Am. Compl. ¶ 99.) Plaintiffs further allege that RCN's subscribers "download and distribute Plaintiffs' copyrighted works illegally through RCN's service." (*Id.*) The Court finds the allegations of the Amended Complaint sufficient at the pleading stage. *See Bigwood*, 441 F. Supp. 2d at 190 ("[B]y downloading files containing the Motion Pictures, [d]efendant infringed [p]laintiffs' exclusive right of reproduction.") Because the Court finds Plaintiffs have adequately pleaded that direct infringement by a third party occurred, the Court turns to the merits of the parties' remaining arguments.

B.     **RCN's Motion to Dismiss**

The Court now turns to the remaining arguments of RCN's Motion to Dismiss. Plaintiffs bring Counts One and Two of the Amended Complaint against RCN for contributory and vicarious infringement. (*See generally* Am. Compl.)

### 1.     Plaintiffs Have Adequately Pleaded Contributory Infringement

"One infringes contributorily by intentionally inducing or encouraging direct infringement." *Grokster*, 545 U.S. at 930. "To establish a claim of contributory infringement, a plaintiff must show: (1) a third party directly infringed the plaintiff's copyright; (2) the defendant knew that the third party was directly infringing; and (3) the defendant materially contributed to or induced the infringement." *Leonard*, 834 F.3d at 387 (citing *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) ("[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer."); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007) ("[U]nder *Grokster,* an actor may be contributorily liable for intentionally encouraging direct infringement if the actor knowingly takes steps that are substantially certain to result in such direct infringement."). Because the Court has already found Plaintiffs adequately pleaded third party infringement, the Court turns to the remaining two factors.

#### i.     Knowledge Requirement

"Contributory infringement requires that the secondary infringer know or have reason to know of direct infringement." *Flea World, Inc.*, 2006 WL 842883, at \*14 (D.N.J. Mar. 31, 2006) (internal quotations omitted) (citing *Napster, Inc.*, 239 F.3d at 1020). The knowledge requirement "has been interpreted to include 'both those with actual knowledge and those who have reason to

know of direct infringement.'" *Tanksley v. Daniels*, 259 F. Supp. 3d 271, 295 (E.D. Pa. 2017) (quoting *Parker v. Google*, 422 F. Supp. 2d 492, 499 (E.D. Pa. 2006)), *aff'd*, 902 F.3d 165 (3d Cir. 2018)). "Actual knowledge is not required; constructive knowledge of infringement is sufficient to meet this burden." *Broad. Music Inc.*, 2017 WL 2804951, at *4 (quotations omitted). "In addition, turning a 'blind eye' to infringement is the equivalent of knowledge." *Flea World, Inc.*, 2006 WL 842883, at *14 (quoting *In re Aimster Copyright Litig.*, 334 F.3d 643, 649 (7th Cir. 2003)); *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) ("Willful blindness is knowledge, in copyright law (where indeed it may be enough that the defendant *should* have known of the direct infringement[)] . . . , as it is in the law generally.") (internal citation omitted); *see also Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) (holding that a defendant may "be held liable as a 'contributory' infringer if it were shown to have had knowledge, or reason to know, of the infringing nature of the records"). "A person is 'willfully blind' or engages in 'conscious avoidance' amounting to knowledge where the person was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.* ["*Cox I*"], 149 F. Supp. 3d 634, 673 (E.D. Va. 2015), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018) (*quoting Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012)). "[C]ourts have held that the knowledge element for contributory infringement is met in those cases where a party has been *notified* of specific infringing uses of its technology and fails to act to prevent such uses, or willfully blinds itself to such infringing uses." *Cox II*, 199 F. Supp. 3d at 979 (citation omitted).

Here, the Court finds Plaintiffs have made allegations sufficient to satisfy the knowledge requirement at the pleading stage. As to actual knowledge, Plaintiffs aver that the five million notices sent to RCN by Rightscorp that provided the IP address of the user, the date and time of

the activity, and the name of the infringed upon content is sufficient to confer actual knowledge to RCN. (Pls.' RCN Opp'n Br. 19.) Plaintiffs similarly argue that, at a minimum, such notices gave RCN "reason to know" that widespread infringement was being committed by its subscribers and, therefore, that RCN had constructive knowledge of infringement. (*Id.*) As to willful blindness, Plaintiffs allege that "[b]y ignoring the repeat infringement notifications and refusing to take action against repeat infringers, and instead providing those customers with ongoing internet service, Defendants made a deliberate decision to contribute to known copyright infringement." (*Id.* at 20; *see also* Am. Compl. ¶ 65 ("the notices gave RCN the specific identities of its infringing subscribers, by referring to their unique Internet Protocol or "IP" addresses"); *id.* ¶ 89 ("RCN had the means to withhold that assistance upon learning of specific infringing activity by specific users, but failed to do so, purposefully ignoring and turning a blind eye to the flagrant and repeated infringement by its subscribers")).

Construing the facts in the light most favorable to Plaintiffs, the Court finds Plaintiffs have adequately alleged that RCN had knowledge of the infringement. *See Cox II*, 199 F. Supp. 3d at 979 (finding that the "jury could reasonably conclude that Rightscorp captured infringing activity on Cox's network, and that had Cox received the notices they would have satisfied the knowledge requirement"); *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 91 (2d Cir. 2016) (holding that "at trial the plaintiffs could prevail by demonstrating that MP3tunes's failure to track users who created links to infringing content identified on takedown notices or who copied files from those links evidenced its willful blindness to the repeat infringing activity of its users"); *see also Jalbert v. Grautski*, 554 F. Supp. 2d 57, 68 (D. Mass. 2008) ("Although the defendant must have knowledge of the infringing activity, the defendant need only have known of the direct

infringer's activities, and need not have reached the legal conclusion that those activities infringed a copyrighted work.") (internal quotation omitted).

### ii. Material Contribution or Inducement

"One who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin*, 443 F.2d at 1162. "[U]nder *Grokster*, an actor may be contributorily liable for intentionally encouraging direct infringement if the actor knowingly takes steps that are substantially certain to result in such direct infringement." *Perfect 10, Inc.*, 508 F.3d at 1171. To satisfy the "material contribution or inducement" requirement of the third element, there must be "conduct that encourages or assists the infringement." *Tanksley*, 259 F. Supp. 3d at 296 (quoting *Gordon v. Pearson Educ., Inc.*, 85 F. Supp. 3d 813, 819 (E.D. Pa. 2015)). "[P]roviding the site and facilities for known infringing activity is sufficient to establish contributory liability." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996) (citing with approval *Columbia Pictures Industries, Inc. v. Aveco, Inc.,* 800 F.2d 59 (3rd Cir.1986)); *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011) (holding that a defendant who "provided machinery or goods that facilitated infringement" can be contributorily liable); *see also* 2 William F. Patry, Copyright Law & Practice 1147 (stating that "[m]erely providing the means for infringement may be sufficient" to incur contributory copyright liability).

"For example, a defendant who is peripherally involved in infringement, such as one who provides online payment services for transactions involving infringement, does not 'materially contribute' to infringement." *Arista Records LLC*, 784 F. Supp. 2d at 432. "In contrast, where a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system that party knows of and contributes to direct infringement

and may be liable for contributory copyright infringement." *Id.* (internal citations and quotations omitted). Indeed, "a computer system operator can be held contributorily liable if it has *actual* knowledge that *specific* infringing material is available using its system and can take simple measures to prevent further damage to copyrighted works, yet continues to provide access to infringing works." *Perfect 10, Inc.*, 508 F.3d at 1172 (internal quotations and citations omitted) (emphasis in original).

RCN argues that Plaintiffs' argument that RCN materially contributed to infringement is precluded by the *Sony* Rule because its internet service "has substantial noninfringing uses." (RCN Moving Br. 16.) In *Sony*, the Court held that "the sale of copying equipment, like the sale of other articles of commerce, does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes. Indeed, it need merely be capable of substantial noninfringing uses." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984). In *Sony*, "[r]espondents alleged that some individuals had used Betamax video tape recorders (VTR's) to record some of respondents' copyrighted works which had been exhibited on commercially sponsored television and contended that these individuals had thereby infringed respondents' copyrights." *Id.* at 420. "Respondents further maintained that petitioners were liable for the copyright infringement allegedly committed by Betamax consumers because of petitioners' marketing of the Betamax VTR's." *Id.*

As a preliminary matter, the Court notes that the technology and manner of alleged infringement at issue in *Sony* is markedly different than the use of BitTorrent protocols that is alleged here. Second, the Supreme Court in *Grokster*, and various District and Circuit Courts, have subsequently added context to the *Sony* Rule and have applied it to new and emerging technologies in a less rigid fashion than RCN argues for here. In *Grokster*, the Supreme Court held that "*Sony*

barred secondary liability based on *presuming or imputing intent* to cause infringement solely from the design or distribution of a product capable of substantial lawful use, which the distributor knows is in fact used for infringement." *Grokster*, 545 U.S. at 933 (emphasis added). "*Sony's* rule limits imputing culpable intent as a matter of law from the characteristics or uses of a distributed product. But nothing in *Sony* requires courts to ignore evidence of intent if there is such evidence, and the case was never meant to foreclose rules of fault-based liability derived from the common law." *Id.* at 934–35; *Grande II*, 384 F. Supp. 3d at 766 ("The *Grokster* Court was clear that liability for contributory infringement was still to be analyzed by reference to those 'rules of fault-based liability derived from the common law.'") "[W]here evidence goes beyond a product's characteristics or the knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting infringement, *Sony's* staple-article rule will not preclude liability." *Grokster*, 545 U.S. at 935; *see also Cox Commc'ns, Inc.*, 881 F.3d at 307 ("[C]ontrary to [the ISP's] argument, the fact that its technology can be substantially employed for a noninfringing use does not immunize it from liability for contributory copyright infringement."). Ultimately, the *Grokster* Court reversed the Ninth Circuit's ruling, noting that the Circuit Court had "read *Sony's* limitation to mean that whenever a product is capable of substantial lawful use, the producer can never be held contributorily liable for third parties' infringing use of it . . . . [t]his view of *Sony*, however, was error." *Id.* at 934.

On a motion to dismiss, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges*, 404 F.3d at 750. With that standard in mind, and construing the facts in the Plaintiffs' favor, the Court finds Plaintiffs have adequately pleaded the material contribution or inducement element. Plaintiffs have alleged that "RCN facilitated, encouraged, and materially contributed to such infringement by continuing to provide its network and the facilities necessary

20

for its subscribers to commit repeated infringements." (Am. Compl. ¶ 89.) "At the same time, RCN had the means to withhold that assistance upon learning of specific infringing activity by specific users, but failed to do so, purposefully ignoring and turning a blind eye to the flagrant and repeated infringement by its subscribers." (*Id.*) Indeed, other courts have found an ISP's failure to take remedial action against repeat copyright infringers is tantamount to encouraging infringement. *See Grande II*, 384 F. Supp. 3d at 767 (Noting that "liability may be imposed for intentionally encouraging infringement through specific acts. . . . The specific act in question here is the continued provision of internet services to customers. Thus[,] this is not a case of mere refusal to act. [The ISP] acted affirmatively by continuing to sell internet services and continuing to provide internet access to infringing customers.") (internal quotations and citations omitted)[3]; *Perfect 10, Inc.*, 508 F.3d at 1172 (holding that contributory "liability that may be imposed for intentionally encouraging infringement through specific acts," "intent may be imputed," and that "a service provider's knowing failure to prevent infringing actions could be the basis for imposing contributory liability"); *Cox Commc'ns, Inc.*, 881 F.3d at 308 (same).[4]

---

[3] Similar to the instant case, the ISP in *Grande II* had received over one million notices from a third-party company that provided services similar to those offered by Rightscorp. *Grande II*, 384 F. Supp. 3d at 768.

[4] "Distilling these principles into a rule of liability, service providers like Grande can be held contributorily liable if [they] ha[ve] *actual* knowledge that *specific* infringing material is available using its system, and can take simple measures to prevent further damages to copyrighted works, yet continue[ ] to provide access to infringing works." *Grande II*, 384 F. Supp. 3d at 768 (quoting *Perfect 10, Inc.*, 508 F.3d at 1172).

Because the Court finds that Plaintiffs have adequately pleaded the elements of contributory infringement, RCN's Motion, to the extent it seeks dismissal of that count, is denied.[5],[6]

### 2.      Vicarious Infringement

Vicarious infringement occurs when one "profit[s] from direct infringement while declining to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930. "To establish vicarious infringement, a plaintiff must prove that the defendant had (1) the right and ability to supervise or control the infringing activity; and (2) a direct financial interest in such activities." *Leonard*, 834 F.3d at 388 (citing *Grokster*, 545 U.S. at 930 & n.9; *Am. Tel. and Tel. Co. v. Winback and Conserve Program*, 42 F.3d 1421, 1441 (3d Cir. 1994)); *see also Grande II*, 384 F. Supp. 3d at 752 n.1 ("Vicarious infringement occurs when a defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement.") (internal quotation omitted).

---

[5] The Court finds RCN's citations to *Cobbler Nevada, LLC v. Thomas Gonzalez* and *Malibu Media v. Park* unconvincing. First, *Cobbler* did not address whether a large ISP can be held liable for contributory infringement. *See Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018). Second, as discussed in *Grande II*, the facts of *Cobbler* are inapposite to those presented here. "[The ISP's] reliance on [*Cobbler*], is misplaced. [*Cobbler*] involved an individual subscriber who failed to prevent users of his internet subscription from infringing the plaintiff's copyright. . . . [and] focused on the fact that it was an individual internet subscriber at issue, who paid for internet services to an adult care home he operated, in contrast to the actual ISP defendant in this case." *Grande II*, 384 F. Supp. 3d at 767. Finally, although it is a case from this District, *Malibu* is readily distinguishable as it involved an unopposed motion for default judgment filed against the alleged individual subscriber of an IP address, who was proceeding pro se. *Malibu Media v. Park*, No. 17-12107, 2019 WL 2960146, at *4 (D.N.J. July 9, 2019). Although *Malibu* references *Cobbler*, RCN fails to persuasively articulate its application to the facts of the instant case.

[6] RCN cites no binding authority from the Third Circuit in support of its arguments.

###### i.        Right or Ability to Supervise

"The requirement that a defendant have the right to supervise or control is not limited to traditional agency relationships such as master-servant or employer-employee." *Leonard*, 834 F.3d at 388. "Indeed, vicarious infringement liability has been imposed on a person or entity 'even in the absence of an employer-employee relationship . . . if [the person or entity] has the right and ability to supervise the infringing activity.'" *Id.* (alterations in original) (quoting *Gershwin*, 443 F.2d at 1162). "[U]nder *Grokster,* a defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc.*, 508 F.3d at 1173; *Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 12-6646, 2015 WL 1402049, at *41 (S.D.N.Y. Mar. 25, 2015) ("A defendant is liable for vicarious copyright infringement by 'profiting from direct infringement while declining to exercise a right to stop or limit it.'" (quoting *Usenet.com, Inc.*, 633 F. Supp. 2d at 156)). "The ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise." *Napster, Inc.*, 239 F.3d at 1023; *see also Usenet.com, Inc.*, 633 F. Supp. 2d at 157 (finding that defendant's ability to "to terminate, suspend or restrict users' subscriptions, thereby limiting their access to uploading or downloading content to or from [d]efendant's servers" was evidence of defendant's right or ability to supervise).

RCN points to two cases in support of its argument that it lacked the right or ability to supervise the actions of its users. First, RCN points to *Perfect 10*, where the plaintiffs argue that Google was vicariously liable for the infringing activities committed by third-party websites. *Perfect 10*, 508 F.3d at 1173. The Ninth Circuit affirmed in part the district court's denial of plaintiff's request for a preliminary injunction, noting, "Perfect 10 has not shown that Google has contracts with third-party websites that empower Google to stop or limit them from reproducing,

displaying, and distributing infringing copies of Perfect 10's images on the Internet." *Id*. RCN

further points to *Perfect 10, Inc. v. Visa International Service Association*, where the Ninth Circuit

found:

> Just like Google, Defendants could likely take certain steps that may
> have the indirect effect of reducing infringing activity on the Internet
> at large. However, neither Google nor Defendants has any ability to
> directly control that activity, and the mere ability to withdraw a
> financial "carrot" does not create the "stick" of "right and ability to
> control" that vicarious infringement requires.

494 F.3d 788, 803 (9th Cir. 2007). The Court, however, finds these two cases readily

distinguishable. First, neither Google nor Visa were being sued as ISPs, and Visa, as a payment

provider, is even further removed. Second, RCN has the ability to control, supervise, or terminate

the accounts of its subscribers. Indeed, the various courts that have considered similar allegations

against ISPs have found that ISPs have the right or ability to control the infringement of their

subscribers. *See, e.g.*, *Cox I*, 149 F. Supp. 3d at 674 ("[The ISP] has the contractual right to

condition the availability of its internet access to users who do not use that service to violate

copyrights. If users listen when [the ISP] exercises that power, infringement stops. If users do not

and [the ISP] terminates them, that also stops or at least limits infringement."); *Grande I*, 2018

WL 1096871, at *10 ("Grande can stop or limit the infringing conduct by terminating its

subscribers' internet access. This is clearly sufficient to state a claim on the first element of

vicarious liability.").

Here, Plaintiffs allege that RCN "has the right and ability to supervise and control the

infringing activities that occur through the use of its service." (FAC ¶ 99.) RCN Defendants argue

that at most they can terminate subscribers, thereby having an indirect effect on the infringing

activity, but they do not have the right and ability to control the infringement by actually stopping

alleged infringers from committing acts of infringement. (RCN's Moving Br. 31, 33.) RCN's

arguments, for the reasons stated above, are unconvincing. The Court finds that Plaintiffs have adequately pleaded the right or ability to supervise prong of vicarious infringement.

### ii.      Direct Financial Interest

"Financial benefit exists where the availability of infringing material acts as a draw for customers." *Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007) (quotation and citation omitted). "The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). "Thus, the central question of the 'direct financial benefit' inquiry in this case is whether the infringing activity constitutes a draw for subscribers, not just an added benefit." *Id.* However, "[t]here is no requirement that the draw be 'substantial.'" *Parker*, 242 F. App'x at 837. Indeed, "[t]he case law indicates that the presence of infringing music does not need to be a significant draw to establish vicarious liability, only that infringing music must be 'a' draw." *Flea World, Inc.*, 2006 WL 842883, at *12. "[E]vidence of financial gain is not necessary to prove vicarious liability as long as the service provider has an economic incentive to tolerate infringing conduct." *Escape Media Grp., Inc.*, 2015 WL 1402049, at *42 (citing *Capitol Records, Inc. v. MP3tunes, LLC*, 2013 WL 1987225, at *10 (S.D.N.Y. May 14, 2013)).

Recent district court decisions deciding motions to dismiss have been divided on the application of this standard; some require a pleading that the infringing action to be *a* draw, while others require it to be *the* draw. *Compare Warner Records Inc. v. Charter Commc'ns, Inc.*, No. 19-874, 2020 WL 1872387, at *4 (D. Colo. Apr. 15, 2020) ("If subscribers are attracted to Charter's services in part because of the ability to infringe on plaintiffs' copyrighted materials in particular, this is sufficient to show that the materials were 'a draw.'" (citing *Perfect 10, Inc. v.*

*Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017)), *with UMG Recordings, Inc. v. Bright House Networks*, LLC, No. 19-710, 2020 WL 3957675, at *4 (M.D. Fla. July 8, 2020) ("[T]he plaintiff must be prepared to show and must, therefore, allege that the availability of infringing content 'provide[s] the main customer "draw" to the [service].'" (quoting *Adobe Sys. Inc. v. Canus Prods., Inc.*, 173 F. Supp. 2d 1044, 1051 (C.D. Cal. 2001)).

RCN points to *Grande I*, where the district court granted the defendant's motion to dismiss UMG's claim for vicarious infringement, and argues this Court should find similarly. *See Grande I*, 2018 WL 1096871, at *10. In *Grande I*, the plaintiffs only allegation regarding a direct financial incentive was that "the availability of music—and particularly UMG's music—acts as a powerful draw for user[]s of Grande's service, who use that service to download infringing music files using BitTorrent protocols." *Id.* (citation omitted). The court found this allegation was insufficient to establish the "direct financial interest" prong of vicarious infringement. *Id.* The court wrote,

> There are no allegations that Grande's actions in failing to adequately police their infringing subscribers is a draw to subscribers to purchase its services, so that they can then use those services to infringe on UMG's (and others') copyrights. Instead UMG only alleges that the existence of music and the BitTorrent protocol is the draw. But that would impose liability on every ISP, as the music at issue is available on the Internet generally, as is the BitTorrent protocol, and is not something exclusively available through Grande's services.

*Id.*

In opposition, Plaintiffs point to their Amended Complaint and argue that, unlike in *Grande I*, they have made such an allegation in this matter.

> The ability of subscribers to download and distribute Plaintiffs' copyrighted works illegally through RCN's service, without limit, has served as a valuable draw for infringing subscribers, and has allowed RCN to attract, retain and charge higher fees to those

26

> subscribers. Upon information and belief, RCN's failure to adequately police its infringing subscribers was also a draw for customers to purchase RCN's internet services and to use those services to infringe the Copyrighted Sound Recordings. Upon information and belief, subscribers who sought to engage in online infringement knew that they could do so on RCN's network with impunity, which attracted those subscribers to use RCN's service to do so.

(Am. Compl. ¶ 99.) RCN argues that these allegations are conclusory and fail to meet the pleading standards of the Federal Rules. (RCN Moving Br. 28.)

On a motion to dismiss, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges*, 404 F.3d at 750. Here, construing the allegations of the Amended Complaint in Plaintiffs' favor, and considering the lack of binding or persuasive authority on the issue of direct financial benefit, the Court finds RCN has failed to meet its burden at this stage of the litigation. The Court, accordingly, denies RCN's motion to the extent it seeks dismissal of Plaintiffs' claim for vicarious infringement.

### C.      Patriot's Motion to Dismiss

The Court now turns to the remaining arguments of Patriot's Motion to Dismiss. Plaintiffs bring Counts Three and Four of the Amended Complaint against RCN for contributory and vicarious infringement. (*See generally* Am. Compl.)

Patriot points the Court to *Grande I*, where the District Court for the Western District of Texas dismissed similar claims against Patriot. *See Grande I*, 2018 WL 1096871, at *11. That court held "UMG's claims against Patriot are a very poorly disguised attempt to ignore Grande's corporate form, and to impose liability on Patriot solely because it provides services to Grande." *Id.* "The relationship between the alleged direct infringers and Patriot is too attenuated to support a claim against Patriot." *Id.* The court subsequently denied UMG's request to file an amended complaint. *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC ["Grande III"]*, No. A-

17-CA-365-LY, 2018 WL 4501535 (W.D. Tex. Sept. 20, 2018), *report and recommendation adopted*, No. A-17-CV-365-LY, 2018 WL 6588575 (W.D. Tex. Oct. 15, 2018). In so doing, the court held that "[t]hough there is more detail in the proposed amendment, these allegations are 'more of the same' when compared to the original complaint." *Id.* at *4. "Nothing in the new allegations changes the fact that Grande is the entity that provided internet access to the subscribers, and Grande (albeit with employees provided by Patriot) made the decisions of which Plaintiffs complain." *Id.* The court further noted that "[a] minority ownership interest in an entity does not make one liable for acts of the entity, and Plaintiffs still fall far short of stating a claim to disregard the Grande corporate form." *Id.* at *4 n.1. Plaintiffs counter Patriot's argument by averring that they "have significantly enhanced their allegations" in the instant matter and now allege, *inter alia*, that Patriot is an owner of RCN and "Patriot directed RCN's policies of allowing unlimited infringement on its network." (Pls.' Patriot Opp'n 2.)

The Court disagrees and finds Plaintiffs' allegations as to Patriot insufficient to state a claim. Unlike RCN, Patriot is not an ISP. Rather, Plaintiffs allege that Patriot "provides management services to RCN." (Am. Compl. ¶ 3.) Even in this action, Plaintiffs have only included threadbare allegations as to actual actions taken by Patriot. (*See generally* Am. Compl.). Plaintiffs, for example, allege:

> 81. Upon information and belief, Patriot is an owner of RCN, and Patriot effectively makes all policy decisions for RCN, specifically including any policy regarding copyright infringement. Upon information and belief, Patriot directed RCN's response to allegations of copyright infringement occurring on the RCN network, including RCN's decision not to terminate repeat copyright infringers.
>
> 82. Upon information and belief, Patriot's infringing conduct includes, among other things, formulating and implementing the business policies, procedures, and practices that provide repeat infringers with continued internet service through RCN, without

28

consequence. Because it provided management and general counsel services to RCN, and because it directed RCN's copyright policies, Patriot is equally liable for RCN's failure to comply with its legal responsibilities and for the copyright infringement that resulted from those failures.

83. Upon information and belief, Patriot engaged in this conduct because of its financial interest in the amount of revenue RCN generated from continuing to provide internet service to known infringing users.

The Court finds these formulaic labels and conclusions insufficient to state a claim.

As to contributory infringement, Plaintiffs, for example, fail to plausibly allege that Patriot had actual knowledge of the infringement notices sent by Rightscorp or knowledge of the infringement committed by RCN's subscribers. Plaintiffs have similarly failed to allege sufficient facts as to Patriot for any potential knowledge of infringement to be imputed to them. Instead, Plaintiffs merely assert, unconvincingly, that "[u]pon information and belief, through its role in providing management services to RCN, Patriot, too, had actual and ongoing specific knowledge of these repeat infringements." (Am. Compl. ¶ 71.) Plaintiffs also fail to plausibly allege that Patriot induced, encouraged, or materially contributed to any direct infringement. (*See generally id.*) As to vicarious infringement, Plaintiffs fail to plausibly allege facts that Patriot had the right or ability to control the conduct of RCN's subscribers or that Patriot directly profited from infringement. (*See generally id.*)

"[C]onclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *UPMC Shadyside*, 578 F.3d at 210 (internal quotation omitted) (citation omitted). Given the inadequacy of Plaintiffs' allegations against Patriot, the Court finds they have failed to state a claim for either contributory or vicarious infringement. Patriot's Motion to Dismiss is therefore granted.

**V.**     **CONCLUSION**

For the reasons set forth above, RCN's Motion to Dismiss is denied and Patriot's Motion to Dismiss is granted. The Court will enter an Order consistent with this Memorandum Opinion.


<u>s/ Michael A. Shipp</u>
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: August 31, 2020