UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(609) 989-2105

CHAMBERS OF
ZAHID N. QURAISHI
UNITED STATES MAGISTRATE JUDGE

U.S. COURTHOUSE
402 E. STATE STREET, RM 6052
TRENTON, NJ 08608

September 10, 2020

**LETTER ORDER**

Re:   **UMG Recordings, Inc. v. RCN Telecom Services, LLC**
      Civil Action No. 19-17272 (MAS) (ZNQ)

Dear Counsel:

This matter comes before the Court upon further discovery disputes between the parties. (Pls.' July 31, 2020 Letter, ECF No. 80; Defs.' Aug. 14 2020 Letter, ECF No. 86; Pls.' Aug. 21, 2020 Letter, ECF No. 87.) Plaintiffs[1] are record companies that produce, distribute, sell, and license commercial sound recordings. (Compl. ¶ 2, ECF No. 1.) Defendant RCN[2] is an internet service provider ("ISP"), and Defendant Patriot Media Consulting, LLC ("Patriot") provides management services to RCN. (*Id.* ¶ 3; Defs.' July 10, 2020 Letter 1, ECF No. 75.) Plaintiffs claim RCN and Patriot (collectively, "Defendants") facilitated massive online infringement of copyrighted sound recordings by RCN's subscribers. (Pls.' June 26, 2020, Letter 1, ECF No. 72.) Plaintiffs initially raised three issues to the Court: (1) whether RCN must produce information and documents concerning copyright infringement notices and RCN's handling of copyright infringement from before 2016; (2) whether RCN must produce infringement notices and related information from companies other than Rightscorp and MarkMonitor; and (3) whether in-house counsel for an industry trade group, the Recording Industry Association of America ("RIAA"), may have access to confidential and attorneys' eyes-only information under a proposed protective order. (*Id.* at 1–2.) The Court addressed those issues in its August 5, 2020 Letter Order. (ECF No. 83.) In response to Defendants arguments on those issues, Plaintiffs raised three new disputes: (1) Defendants improperly refused to provide discovery regarding the termination of RCN subscribers for reasons other than copyright infringement; (2) Defendants refused to produce any documents related to Patriot; and (3) Defendants refused to provide documents other than organizational structure regarding Defendants' ownership. (Pls.'

---

[1] "Plaintiffs" refers to Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, Sony Music Entertainment, Arista Records LLC, Arista Music, LaFace Records LLC, Volcano Entertainment III, LLC, Zomba Recording LLC, Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Maverick Recording Company, The All Blacks U.S.A., Inc., Warner Records Inc., Warner Records/Sire Ventures, Inc., and WEA International, Inc.

[2] "RCN" refers to Defendants RCN Telecom Services, LLC, RCN Telecom Services of New York, L.P., RCN Capital Corp., RCN Telecom Services of Philadelphia, LLC, RCN Telecom Services of Massachusetts, LLC, Starpower Communications, LLC, RCN Management Corporation, RCN ISP, LLC, RCN Digital Services, LLC, RCN NY LLC 1, RCN Telecom Services (Lehigh), LLC, RCN Telecom Services of Illinois, LLC, 21st Century Telecom Services, Inc., and RCN Cable TV of Chicago, Inc.

July 31, 2020 Letter 4–5.)

After receiving the parties' arguments on the first set of disputes, the Court ordered Defendants to comply with Plaintiffs' narrowed requests and produce information and documents concerning copyright infringement notices and RCN's handling of copyright infringement from before 2016, and to produce infringement notices and related information from companies other than Rightscorp and MarkMonitor. (Aug. 5, 2020 Letter Order 4.) On the first issue, addressing Defendants' objections, the Court reasoned "the pre-2016 instances of copyright infringement may be actionable under the discovery rule, *William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009), and, even if they are not, the Court finds the requested information . . . is relevant and proportional to the needs of this case," adding "the information may bear on Defendants' knowledge of infringement by RCN's subscribers, the benefit they derived from infringing subscribers, and their capabilities in responding." (*Id.* at 2.) The Court further noted, borrowing the "yet" from Defendants' letter, that "although 'yet' asserted, such information would bear on Defendants' entitlement to the DMCA's safe harbor defense." (*Id.* at 2–3.) On the second issue, the Court opined that the copyright infringement notices may be relevant to Defendants' safe harbor defense and ordered production. (*Id.* at 3.) Defendants now ask the Court to reconsider those determinations. (Defs.' Aug. 14, 2020 Letter 1–3.)

**1. Discovery of Certain Pre-2016 Information and Documents**

First, Defendants urge the Court to reconsider its decision on the discoverability of the pre-2016 information and documents concerning copyright infringement notices and RCN's handling of copyright infringement in light of *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671–72 (2014). (*Id.* at 1–2.) Defendants argue that *Petrella* makes it clear that a copyright plaintiff is only ever entitled to damages from three years preceding the complaint. (*Id.* at 2.) To the extent the Court finds the information relevant to Defendants' potential safe harbor defense, Defendants tell the Court that they have "recently informed Plaintiffs that they do not intend to assert any DMCA safe harbor defense for the period before June 2016." (*Id.*)

In response, Plaintiffs highlight that the Court's original ruling did not rest upon the actionability of pre-2016 infringement, noting the Court found the information probative of Defendants' knowledge of infringement, the benefit derived from infringing subscribers, and Defendants' capabilities in responding. (Pls.' Aug. 21, 2020 Letter 2.) Without repeating their original arguments, Plaintiffs assert the information is relevant to a litany of issues in this case, including the scope of actionable infringement, Defendants' liability for contributory and vicarious infringement, and the extent to which Defendants' infringement was willful. (*Id.*) Turning to *Petrella*, Plaintiffs argue it is a laches decision that does not bear on the proper scope of discovery and does not upset the Court's application. (*Id.*)

The Third Circuit considered in *Graham* whether to apply the discovery rule or the injury rule to determine when a claim under the Copyright Act accrues; that is, whether a claim accrues when a plaintiff discovers or should have discovered the injury, or whether a claim accrues at the time of injury. *Graham*, 568 F.3d at 433. The Court adopted the discovery rule, stating "Congress provided no directive mandating use of the injury rule" and the "use of the discovery rule comports with the text, structure, legislative history and underlying policies of the Copyright Act." *Id.* at 437. In *Petrella*, the United States Supreme Court considered whether the doctrine of laches could cut short the three-year statutorily mandated period,

holding it could not bar a copyright infringement claim accruing within that timeframe. 572 U.S. at 667. Summarizing the law, the Court explained the Copyright Act's "limitations period generally begins to run at the point when 'the plaintiff can file suit and obtain relief,'" "thus [a claim] arises or 'accrue[s]' when an infringing act occurs." *Id.* at 670 (quoting *Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (internal quotation marks omitted)) (second alteration in original). The Court further noted that, "[a]lthough [it has] not passed on the question, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'" *Id.* at 670 n.4 (quoting *Graham*, 568 F.3d at 433 (internal quotation marks omitted)) (citing W. Patry, Copyright § 20:19 (2013) ("The overwhelming majority of courts use discovery accrual in copyright cases.")). The United States Supreme Court did not explicitly pass on whether the discovery rule could be applied to the Copyright Act, and this Court has continued to apply *Graham*. *See e.g.*, *Woodson v. Atl. City Bd. of Educ.*, No. 19-14572, 2020 WL 1329918, at *4 (D.N.J. Mar. 23, 2020); *Am. Bd. of Internal Med. v. Rushford*, No. 14-6428, 2017 WL 1024267, at *4 (D.N.J. Mar. 16, 2017). It would thus appear that *Graham* is still good law in this Circuit.

Regardless, the Court recognized the uncertainty surrounding the continued viability of the discovery rule in its August 5, 2020 Letter Order and, in the interests of definitively settling the dispute, explicitly provided alternative grounds for its ruling. To repeat them, the Court found the requested information, even if no longer actionable, "may bear on Defendants' knowledge of infringement by RCN's subscribers, the benefit they derived from infringing subscribers, and their capabilities in responding." (Aug. 5, 2020 Letter Order 2.) Wide latitude is generally afforded in discovery and it is incumbent on the party objecting to discovery to provide sufficient reason to deny or limit the request. *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 191 (D.N.J. 2010). The Court is and was presented with arguments as to why the information sought is not relevant and, after considering those arguments, was persuaded by Plaintiffs who articulated understandable reasons for seeking information and documents concerning copyright infringement notices and RCN's handling of copyright infringement. The Court finds no reason to reconsider the August 5, 2020 Letter Order.

### 2. Copyright Infringement Notices

Second, regarding this Court's prior ruling that Defendants must produce infringement notices and related information from companies other than Rightscorp and MarkMonitor, Defendants ask the Court to impose a temporal limit and exclude any documents or information from before June 2016. (Defs.' Aug. 14, 2020 Letter 3.) Defendants reiterate that Plaintiffs' claims are based exclusively on notices sent by Rightscorp and assert the only possible relevance of the notices from third parties is with respect to Defendants' safe harbor defense, which they will not assert as to pre-June 2016 infringement. (*Id.* at 3.) Defendants contend that the other notices will not have any bearing on Defendants' knowledge or willful blindness to copyright infringement because the case must be resolved on the notices upon which the claims are based. (*Id.*)

Plaintiffs respond that the other notices may include evidence of infringement of the works at issue in this case and are therefore relevant. (Pls.' Aug. 21, 2020 Letter 4.) Plaintiffs further argue actual knowledge of infringement is not required, that constructive knowledge is sufficient and the other

infringement notices may be probative of what Defendants should have known was occurring on their network. (*Id.*) They add that the information is probative of the reliability of the system and Defendants' willfulness, given their admission that they did not have a policy in place to terminate repeat infringers. (*Id.*)

A claim for contributory infringement requires actual knowledge or reason to know of the infringement, the latter of which includes willful blindness. *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, No. 19-17272, 2020 WL 5204067, at *7–8 (D.N.J. Aug. 31, 2020). While Plaintiffs will have to prove Defendants were aware or should have been aware of the specific instances of copyright infringement about which they complain, that does not mean evidence of willful ignorance to repeat infringers is not probative of the issue. *See EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 91 (2d Cir. 2016). Further, the Court agrees the information may be relevant to other issues, including the reliability of the system for detecting copyright infringement. The Court will not limit the request to post-June 2016 notices.

### 3. Customer Terminations

Plaintiffs complain Defendants have refused to provide any discovery regarding the suspension or termination of RCN customers for reasons other than copyright infringement. (July 31, 2020 Letter 4.) They argue information related to subscriber termination is relevant because ISPs tend to argue termination of internet service is a drastic action, used sparingly, if at all. (*Id.* at 5.) Further, Plaintiffs assert, the frequency with which RCN terminates service for nonpayment—that is, when its services are being stolen—is highly relevant when compared to the frequency of termination when others' property is stolen. (*Id.*)

Defendants contend "[t]he fact that such evidence was discovered in cases, and admitted at trials, in which RCN did not participate should not be determinative of this issue," and implore the Court to meaningfully and independently consider the relevance here. (Defs.' Aug. 14, 2020 Letter 4.) Defendants assert that the only possible relevancy of the information sought would simply be to demonstrate RCN's ability to terminate subscribers, to which RCN is willing to stipulate. (*Id.*) Defendants state that the numerosity of copyright allegations is irrelevant because it is only appropriate to terminate a subscriber when there is conclusive evidence of infringement—not mere allegations. (*Id.*) The comparison to nonpayment, Defendants contend, is inapposite because RCN is certain of nonpayment. (*Id.*)

The Court finds the information relevant and discoverable. The Court agrees with Plaintiffs that data regarding the number of subscribers terminated for alleged infringement versus those terminated for other reasons is probative of willfulness. While Defendants demonstrate that the significance of such data may be tempered by the trustworthiness of the notices, it does not render it irrelevant to the matter.

### 4. Discovery Related to Patriot

Next, Plaintiffs claim Defendants have refused to produce any documents related to Patriot. (July 31, 2020 Letter 5.) Plaintiffs explain that they "have asserted two claims against Patriot (contributory

4

infringement and vicarious liability), and the documents requested are directly relevant to those claims." (*Id.*) Plaintiffs opine that Defendants are trying to stall while the motion to dismiss is pending. (*Id.*) Defendants respond that they have not refused these requests and will produce all relevant documents that exist and are in either RCN or Patriot's possession. (Defs.' Aug. 14, 2020 Letter 5.) Plaintiffs agree that, for the moment, the Court's intervention is not necessary. (Pls.' Aug. 21, 2020 Letter 5.)

### 5. Information Related to the Structure and Historic Valuation of RCN

Lastly, Plaintiffs ask the Court to overrule Defendants' objections to producing documents concerning Defendants' ownership, their ownership's knowledge of copyright infringement on RCN's network, Defendants' corporate structure, and Defendants' valuation. (Pls.' July 31, 2020 Letter 5–6.) Plaintiffs explain that in a similar case discovery revealed that the prior owner of Grande Communications Networks, Abry Partners—which is also the prior owner of RCN—directed a change in handling copyright infringement shortly after acquiring Grande. (*Id.* at 6.) Specifically, Plaintiffs describe how Grande suspended and terminated the service of infringing customers, but stopped after Abry Partners took over and sought to reduce "churn." (*Id.*) Plaintiffs "strongly suspect that this same scenario played out with RCN, which was acquired by Abry and sold to TPG at the same time, and operated by the same management company (Patriot) as Grande." (*Id.*)

Defendants respond that they are only objecting to Requests 88–91. (Defs.' Aug. 14, 2020 Letter 5.) First, as to Requests 88–89, Defendants contend the transaction documents related to Arby Partners' and TPG's purchase of RCN, including the purchase price and other consideration paid, are highly confidential and have no bearing on this lawsuit. (*Id.*) Second, as to Requests 90–91, Defendants claim that Plaintiffs asked for "any valuations of RCN and Patriot," and have refused to clarify what that means. (*Id.* at 6.) Additionally, Defendants submit the information is highly confidential and irrelevant to this matter. (*Id.*) Defendants also note that, in their interrogatory answers, they disclosed how much TPG paid to acquire RCN. (*Id.*)

Plaintiffs respond that they are seeking information on the valuation of RCN and the transaction by which it was acquired over time. (Pls.' Aug. 21, 2020 Letter 5.) That information, they contend, is probative of the economic incentives of, and benefits realized by, Defendants' decisions related to subscriber infringement. (*Id.*)

The Court agrees with Plaintiffs. The information sought regarding the structure, purchase history, and historic valuations of RCN is relevant to establishing their theory of the case and, thus, proving their claims of contributory infringement. Proof of an increase in RCN's value coupled with proof that Arby Partners implemented a more permissive policy towards subscriber infringement would be highly relevant to Plaintiffs' claims. Thus, the Court will order compliance.

In sum, for the reasons stated above, and for other good cause shown,

1. The Court declines to reconsider its August 5, 2020 Letter Order.

2. The Court declines to impose a temporal limit on Plaintiffs' request for infringement notices and

5

related information from companies other than Rightscorp and MarkMonitor.

3. Defendants' objections to discovery relating to the suspension or termination of RCN customers for reasons other than copyright infringement are **OVERRULED**.

4. Defendants' objections to producing documents concerning Defendants' ownership, their ownership's knowledge of copyright infringement on RCN's network, Defendants' corporate structure, and Defendants' valuation are **OVERRULED**.

5. Further, having reconsidered its August 5, 2020 Letter Order, and being presented no reason to alter its ruling, the Court orders Defendants to comply with said Order.

                                                                   ZAHID N. QURAISHI
                                                                   UNITED STATES MAGISTRATE JUDGE