Edward F. Behm, Esquire
Direct **T** 267.780.2030  **F** 215.405.9070
ebehm@atllp.com

September 28, 2020

**VIA ECF**

The Honorable Zahid N. Quraishi
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

    Re:    *UMG Records, Inc., et al. vs. RCN Telecom Services, LLC, et al.*
             Civil Action No. 3:19-cv-17272-MAS-ZNQ

Dear Judge Quraishi:

      This firm represents Defendants (collectively, "RCN") in the above-referenced matter. We submit this letter pursuant to Local Rule 37.1(a)(1) to seek resolution of several discovery disputes arising out of Plaintiffs' refusals to provide information and documents in response to RCN's discovery requests. Plaintiffs' interrogatory answers are attached hereto as Exhibits A–C, and Plaintiffs' responses to requests for production are attached as Exhibit D.[1]

      In its prior discovery orders, the Court granted Plaintiffs' requests for broad discovery in this matter. *See* ECF Nos. 83, 93. Plaintiffs' positions on their own discovery obligations cannot be reconciled with that scope of discovery. As set forth in detail below, Plaintiffs refuse to provide fundamental information regarding the nature and basis of their claims against RCN—information they should have compiled in connection with any pre-filing investigation—and refuse to provide various other categories of information that are directly relevant to their allegations against RCN.

      The parties have met and conferred on these issues multiple times in writing and telephonically, but they continue to be at issue.

### 1. Plaintiffs' Refusal to Identify Their Alleged Evidence of Infringement

      The Court should compel Plaintiffs to answer RCN's Interrogatories 1 and 3, which merely ask Plaintiffs to identify their evidence of infringement of the works in suit.

---

[1] There are three distinct groups of Plaintiffs—Sony, Universal, and Warner—and each group served separate responses and objections to RCN's interrogatories, whereas Plaintiffs responded collectively to RCN's requests for production.

Plaintiffs' refusal to provide this information is wholly inconsistent with their broad requests for discovery from RCN.

In this case, Plaintiffs are seeking to hold RCN, an internet service provider, secondarily liable for infringement of nearly 2,000 sound recordings. Plaintiffs claim that RCN is secondarily liable because it did not terminate the internet access of subscribers after receiving emails from non-party Rightscorp, Inc. accusing those subscribers of copyright infringement.

In support of their claims, Plaintiffs have produced: (1) millions of notices of alleged copyright infringement sent to RCN by Rightscorp, some of which allegedly concern the works in suit, and some of which do not; (2) approximately 47,000 digital audio files allegedly downloaded from users of RCN's network, some of which are claimed to be copies of the works in suit, and some of which clearly are not; and (3) nearly 20,000 pages of copyright registrations and other documents intended to show that a named Plaintiff owns each of the works in suit.

Interrogatory No. 1 therefore asks Plaintiffs to identify, separately for each of the works in suit, their evidence of copyright infringement. This is information that Plaintiffs must already possess as a result of their pre-filing investigation. Specifically, Interrogatory No. 1 asks Plaintiffs to identify: **(a)** the documents that establish Plaintiffs' ownership of each work, **(b)** the documents that establish registration of that work with the Copyright Office, **(c)** the exclusive right allegedly infringed, **(d)** the emails from Rightscorp to RCN alleging infringement of that work, **(e)** the digital audio files that are alleged to be copies of that work, and **(f–g)** any other digital evidence obtained by Rightscorp regarding alleged infringement of that work. *See, e.g.*, Ex. A at 5–6. In a similar vein, Interrogatory No. 3 asks Plaintiffs to identify which of the roughly 4.6 million Rightscorp emails produced by Plaintiffs relate to the works in suit.

Plaintiffs refuse to provide any substantive response. In effect, Plaintiffs point to the millions of pages of documents they produced and say "figure it out yourself." *See, e.g.*, Ex. A at 5–10 (Interrogatory No. 1), 11–12 (Interrogatory No. 3). Obviously, if Plaintiffs were alleging infringement of a single work, they would be required to answer this interrogatory as written. Plaintiffs' decision to assert 2,000 copyrights does not relieve them of their basic discovery obligations. Indeed, it would be absurd if Plaintiffs could get away with providing _less_ information in a case involving 2,000 copyrights than they would have to disclose in a case involving a single copyright.

Additionally, Plaintiffs' reliance on Rule 33(d) is plainly improper because "the burden of deriving or ascertaining the answer" is _not_ "substantially the same for either party." *See In re G-I Holdings Inc.,* 218 F.R.D. 428, 438 (D.N.J. 2003) ("The option afforded by Rule 33(d) is not a procedural device for avoiding the duty to give information."). Plaintiffs already know which of the 4.6 million Rightscorp notices relate to the works in suit. They must have evaluated that issue when identifying the Plaintiffs that would join the case and the works that would be asserted. For the same reason, Plaintiffs also know which of the roughly 47,000 audio files are alleged to be copies of

the works in suit. And of course, Plaintiffs claim to own the sound recordings at issue, so they are clearly in a better position to identify which documents demonstrate that a particular Plaintiff owns a particular work. *See* Fed. R. Civ. P. 33(d)(1) (records must be identified "in sufficient detail to enable the interrogating party to locate and identify them *as readily as the responding party could*") (emphasis added).

The Court should therefore order Plaintiffs to answer Interrogatory No. 1 as written—*i.e.*, separately for each of the works in suit—and order Plaintiffs to provide a substantive response to Interrogatory No. 3.

### 2. Plaintiffs' Refusal to Produce Communications with Rightscorp and Other Related Documents

Non-party Rightscorp is a central figure in this case because Plaintiffs are relying almost entirely on evidence provided by Rightscorp to prove copyright infringement. As a result, evidence regarding Rightscorp's technical capabilities and preservation of relevant data is highly relevant, as is evidence regarding the relationship (financial and otherwise) between Rightscorp and Plaintiffs/RIAA.[2]

*Communications with Rightscorp*

Plaintiffs' communications with Rightscorp on these and other subjects are responsive at least to RCN's Requests for Production 9 and 173. Plaintiffs have indicated that they intend to withhold all communications with Rightscorp on grounds of privilege, except for some isolated exchanges that took place before RIAA engaged Rightscorp in connection with Plaintiffs' lawsuit against Grande Communication.

Plaintiffs' position is facially unreasonable and unsupportable. Plaintiffs broadly refer to attorney-client privilege, the work product doctrine, the joint defense privilege, the common interest privilege, and so on (*see* Ex. D at 178–79), but apart from producing the agreement between Rightscorp and RIAA concerning this case, Plaintiffs have not provided any documents or information establishing that every communication with Rightscorp—irrespective of the timing and subject matter—is privileged. In fact, it is extremely unlikely that every single communication with Rightscorp is in fact privileged. For example, if Rightscorp were merely conveying factual information about its system to Plaintiffs or RIAA, such a communication would not be protected by any potentially applicable privilege.

It is also unclear whether Plaintiffs intend to log withheld communications with Rightscorp. At a minimum, given the significance of these documents, the Court should order Plaintiffs to promptly produce a privilege log reflecting any withheld communications with Rightscorp so that RCN can meaningfully evaluate the legitimacy of Plaintiffs' privilege claims. RCN's efforts to obtain further discovery from and regarding Rightscorp will be severely hampered so long as these issues remain unresolved.

---

[2] RIAA, Plaintiffs' trade association, purchased evidence from Rightscorp on Plaintiffs' behalf.

*Agreements with Rightscorp*

Relatedly, the Court should order Plaintiffs to produce documents responsive to Request for Production No. 33, which seeks all agreements between Plaintiffs/RIAA and Rightscorp, and any documents that refer to such agreements. Plaintiffs refuse to produce anything other than the agreement between RIAA and Rightscorp pertaining to this case, apparently on grounds of relevance, burden, and privilege. *See* Ex. D at 35–36.

Plaintiffs' objections to Request No. 33 are meritless—agreements between Plaintiffs/RIAA and Rightscorp are directly relevant to Rightscorp's credibility and bias, and they may also contain relevant information regarding the nature and extent of the evidence Rightscorp is capable of delivering. It should go without saying that RCN is entitled to understand the full scope of Plaintiffs' financial relationship with Rightscorp, Plaintiffs' star witness in this matter.

*Payments to Rightscorp*

For the same reasons, the Court should overrule Plaintiffs' objections to Request for Production No. 146, which seeks documents regarding money paid to Rightscorp by RIAA. *See* Ex. D at 150–51. This includes, for example, communications with Rightscorp about its compensation in this case, communications among Plaintiffs and RIAA on that subject, and documents actually evidencing payment to Rightscorp. These documents are likewise relevant at least to Rightscorp's bias and credibility, and there is no reason to believe they are privileged.

*Documents concerning Rightscorp's Errors*

These requests seek documents that refer to or reflect any actual, claimed, or potential inaccuracy in a copyright infringement notice sent by Rightscorp. Responsive documents are obviously highly relevant to the accuracy and reliability of Rightscorp's system. Plaintiffs initially indicated that they will not produce any responsive documents. *See* Ex. D at 91–93. Then, in the parties' meet-and-confer, Plaintiffs suggested that no such documents exist (although it is unclear how Plaintiffs could know that with any certainty prior to searching custodial email).

In any event, Plaintiffs have not withdrawn their meritless objections to these requests. The Court should therefore overrule Plaintiffs' objections and order them to produce any responsive documents in their possession, custody, or control.

For the foregoing reasons, the Court should order Plaintiffs to produce documents responsive to Requests for Production Nos. 9, 33, 88–89, 146, and 173.

### 3. Plaintiffs' Withholding of Documents and Information Relating to MarkMonitor

The Court should order Plaintiffs to produce information and documents regarding MarkMonitor, the company that monitors ISP networks for copyright infringement on

their behalf.  This issue implicates RCN's Interrogatories 4 and 6 and Requests for Production Nos. 19, 21, 29, 31, 34, 44, 79, 80, 90, 91, 93, and 95.

As described above, Plaintiffs' claims against RCN rely exclusively on evidence purportedly collected by Rightscorp.  Plaintiffs purchased this evidence from Rightscorp after the fact—they have never directly or indirectly hired Rightscorp to monitor any ISP's network.

Instead, Plaintiffs—through their trade association RIAA—hired and continue to employ **MarkMonitor**, Rightscorp's competitor, to send copyright infringement-related emails to ISPs.  In recent copyright infringement litigation against an ISP, Plaintiffs touted MarkMonitor as "the gold standard in antipiracy work."[3]  Both MarkMonitor and Rightscorp have sent copyright infringement allegations to RCN, including overlapping allegations regarding songs at issue in this case.  Interestingly, MarkMonitor, whom RIAA actually engaged to monitor RCN's network, sent *far fewer* emails to RCN than Rightscorp.

Evidence regarding MarkMonitor's system and Plaintiffs' dealings with MarkMonitor are therefore highly relevant.  MarkMonitor sent notices to RCN and other ISPs on Plaintiffs' behalf, so its system and capabilities are direct evidence of what Plaintiffs and RIAA consider to constitute sufficient, actionable evidence of copyright infringement.  For instance, filings from Plaintiffs' *Grande* litigation indicate that Plaintiffs require MarkMonitor to preserve and deliver certain types of digital evidence that Rightscorp affirmatively destroys.  *See* Supp. Br. ISO Mot. for Sanctions at 2–3 (ECF No. 284), No. 1:17-cv-365 (W.D. Tex.).  Moreover, because MarkMonitor and Rightscorp both monitored RCN's network for infringement of the same works, with differing results, the similarities and differences between the two systems are relevant to the accuracy of Rightscorp's allegations.

*Interrogatory No. 4*

For the reasons set forth above, the Court should also order Plaintiffs to answer Interrogatory No. 4.  Interrogatory No. 4 simply asks Plaintiffs to identify the MarkMonitor emails sent to RCN regarding the works in suit.  Plaintiffs improperly invoke Rule 33(d) in response, indicating that they will produce emails sent by MarkMonitor to RCN but will not identify the emails related to the works in suit.  *See* Ex. A at 12–13.  In other words, Plaintiffs intend to make RCN sift through the evidence to ascertain information that Plaintiffs already know.  This is improper.  *See In re G-I Holdings Inc.,* 218 F.R.D. at 438 ("The option afforded by Rule 33(d) is not a procedural device for avoiding the duty to give information.").

*Interrogatory No. 6*

---

[3] Dec. 2, 2019 Trial Tr. at 39:24–40:9 (ECF No. 628), *Sony Music Entm't v. Cox Commc'ns, Inc.*, No. 1:18-cv-950 (E.D. Va.).

  Plaintiffs have refused to provide any substantive response to Interrogatory No. 6, which asks Plaintiffs to describe the differences between the Rightscorp and MarkMonitor systems "in terms of the categories of information or data from BitTorrent users that the respective systems detect, collect, analyze, or store." *See* Ex. A at 18–20.

  By agreeing to produce the MarkMonitor emails, Plaintiffs acknowledge their clear relevance, yet Plaintiffs are effectively refusing to provide any information about the basis of MarkMonitor's allegations. Given that Plaintiffs have litigated copyright infringement cases based on Rightscorp and MarkMonitor evidence, Plaintiffs clearly have detailed, direct knowledge of both systems' capabilities. The Court should order Plaintiffs to provide this highly relevant information.

  In addition, Plaintiffs' reliance on Rule 33(d)—a broad reference to "the publicly-available filings, orders, and deposition and trial transcripts in *Sony v. Cox*"—is wholly improper. *See* Ex. A at 20. Under Rule 33(d), the responding party must "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Plaintiffs' answer comes nowhere close to satisfying this standard.

*RFPs 19, 21, 29, 31, 34, 44, 48–50, 79, 80, 90, 91, 93, and 95*

  These requests for production seek documents regarding Plaintiffs' and RIAA's dealings with MarkMonitor, including requests for proposals to MarkMonitor, agreements with MarkMonitor, documents addressing or reflecting technical details and capabilities of MarkMonitor's system, and expert reports and deposition testimony from other litigations regarding MarkMonitor's system. For the reasons discussed above, the Court should order Plaintiffs to produce these relevant documents.

  During the Parties' meet-and-confer, Plaintiffs indicated that they will not undertake any effort to collect documents relating to MarkMonitor. Plaintiffs also stated that they will not produce any emails regarding MarkMonitor, even if responsive to search terms provided by RCN. Plaintiffs also confirmed during the meet-and-confer that they intend to withhold two specifically-identified reports assessing MarkMonitor's system, which Plaintiffs produced in other litigation.[4]

  Again, the requested documents are direct evidence of what Plaintiffs consider to be legitimate, actionable evidence of copyright infringement. Moreover, Plaintiffs recently litigated a case based on MarkMonitor evidence, so they can hardly claim that it would be unduly or unfairly burdensome to gather and produce this evidence. The Court should overrule Plaintiffs' objections and order them to produce documents in response to the identified requests for production.

---

[4] RIAA commissioned these reports—performed by Stroz Freidberg and Harbor Labs—because Plaintiffs "would not have wanted to pick a vendor that had any questions about its ability to do the work that they were doing given the – given the seriousness of the work." Dec. 3, 2019 Trial Tr. at 346:20-347:3 (ECF No. 630), *Sony Music Entertainment, et al. v. Cox Communications, Inc., et al.*, No. 1:18-cv-950 (E.D. Va.).

### 4. Plaintiffs' Refusal to Provide Sales and Financial Information Regarding the Works in Suit

Although Plaintiffs are alleging infringement of nearly 2,000 different works, they refuse to provide any information regarding the value of those works. This is basic discovery in a copyright infringement case, and the Court should therefore overrule Plaintiffs' objections to RCN's Requests for Production Nos. 67, 71, 123–130, 134, 135, 140, 141, 142, and 149, and Interrogatories 10 and 11.

RCN seeks, at a bare minimum, documents or information sufficient to show the revenue generated by the works in suit, such as stream counts (*i.e.*, the number of times a song was played on a streaming service like Spotify over a certain period), revenue per stream, download sales volumes (*i.e.*, music sales from digital download platforms like iTunes), revenue per download, and corresponding information regarding profitability. Plaintiffs are only willing to identify information regarding their *total* U.S. revenues and profits. *See, e.g.*, Ex. A at 26–29 (Interrogatories 10 and 11).

In other words, Plaintiffs refuse to provide any information specific to the works in suit. Plaintiffs refuse to provide this information for two reasons: (1) they claim the requested information is not relevant; and (2) they claim the requested information is too burdensome to gather. Both objections are meritless.

Plaintiffs are seeking statutory damages, and "the value of the copyright" is one factor in the statutory damages analysis. *See, e.g.*, *Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 1:08-cv-02662, 2009 WL 2147843, at *6–*7 (D.N.J. July 15, 2009). Defendants are thus entitled to discovery regarding the value (or perceived value) of the works in suit. Again, this is basic discovery in a copyright infringement case.

Plaintiffs cannot credibly maintain that providing this discovery would be unduly burdensome. Plaintiffs have not identified any particular difficulty or unusual expense associated with gathering this information, and RCN understands that Plaintiffs track and have ready access to all of this information. The Court should therefore overrule Plaintiffs' objections to these discovery requests.

### 5. Plaintiffs' Refusal to Produce Documents Regarding the Copyright Alert System

Requests for Production Nos. 35–37 seek documents regarding how ISPs should respond to copyright infringement allegations, and Requests 36 and 37 are specifically directed to the Copyright Alert System. *See* Ex. D at 37–40. The Copyright Alert System was a set of DMCA procedures agreed to by Plaintiffs, RIAA, and certain ISPs (not including RCN), and it was in effect for a four-year period that overlaps with the damages period in this case.

These documents are relevant because they bear directly on Plaintiffs' view of how ISPs should address copyright infringement issues and the reasonableness of RCN's

DMCA policy. For example, Plaintiffs contend in this case that RCN should have terminated the account of any "repeat infringer" accused of copyright infringement more than one time, but under the Copyright Alert System, ISPs only had to forward infringement allegations once a week and were never required to permanently terminate subscriber accounts. The district court in *Cox II* therefore permitted discovery on this matter and denied Plaintiffs' request to exclude the resulting evidence from trial. *See* Nov. 19, 2019 Order at 7 (ECF No. 590), No. 1:18-cv-950 (E.D. Va.) ("Defendants are permitted to put on evidence about the Copyright Alert System . . . .").

The Court should therefore overrule Plaintiffs' objections and order them to produce documents responsive to Requests for Production Nos. 35–37, including documents regarding the Copyright Alert System.

### 6. Improper Objections to Individual Requests for Production

#### a. Request for Production No. 39 – Communications with Other ISPs

This request seeks communications between Plaintiffs and third-party ISPs regarding copyright infringement. In the parties' meet-and-confer, RCN made clear that it is not seeking production of automated copyright infringement allegations sent to ISPs (*e.g.*, emails sent to ISPs by third-party vendors such as MarkMonitor).

With this limitation, Plaintiffs acknowledge that responsive documents exist but they refuse to produce them on grounds of relevance. *See* Ex. D at 42–43. This objection is meritless. Plaintiffs' communications with other ISPs may reveal highly relevant information regarding Plaintiffs' views and policies as to how ISPs should respond to copyright infringement allegations aimed at users of their networks. The Court should overrule Plaintiffs' objections and order them to produce responsive documents.

#### b. Request for Production No. 60 – Copyright Infringement Vendor Guidance

In addition to MarkMonitor, Plaintiffs employ other third party vendors to identify and address copyright infringement issues on Plaintiffs' behalf—*e.g.*, to uncover unauthorized uses of Plaintiffs' sound recordings on social media and streaming video platforms. Request for Production No. 60 seeks documents reflecting any training, guidance, or requirements Plaintiffs have provided to these vendors concerning how to document or collect evidence of copyright infringement.

These documents are directly relevant to the copyright infringement issues in this case. For instance, if Plaintiffs require other vendors to collect and preserve evidence that Rightscorp ignores or destroys, that would tend to refute Plaintiffs' claims about the sufficiency of the evidence Plaintiffs bought from Rightscorp. The Court should overrule Plaintiffs' objections and require them to produce documents responsive to Request for Production No. 60.

## Conclusion

  RCN respectfully requests that the Court grant the relief requested in this letter. Counsel for RCN is available for a teleconference or videoconference on these matters at the Court's convenience.

             Respectfully Submitted,

             */s/ Edward F. Behm, Jr.*
CC: All counsel of record via ECF  Edward F. Behm, Jr.