# McElroy, Deutsch, Mulvaney & Carpenter, LLP
**ATTORNEYS AT LAW**

1300 MOUNT KEMBLE AVENUE
P.O. BOX 2075
MORRISTOWN, NEW JERSEY 07962-2075
(973) 993-8100
FACSIMILE (973) 425-0161

THOMAS R. CURTIN
Direct Dial: (973) 401-7117
tcurtin@mdmc-law.com

October 6, 2020

**VIA ECF**

Hon. Zahid N. Quraishi, U.S.M.J.
Clarkson S. Fisher Federal Building
 and U.S. Courthouse
402 E. State Street
Trenton, New Jersey 08608

      Re:    *UMG Recordings, Inc. et al. v. RCN Telecom Services, LLC et al.*
              Civil Action No. 19-17272 (MAS) (ZNQ)

Dear Judge Quraishi:

      This firm, along with our co-counsel Jenner & Block LLP and Stein Mitchell Beato & Missner LLP, represents Plaintiffs in the referenced matter. We write in opposition to Defendant RCN's September 28, 2020 letter brief (ECF 102), which seeks to compel further information in response to RCN's First Set of Interrogatories and First Set of Requests for Production ("RFPs").

      The relief requested in RCN's letter brief should be denied in its entirety. Plaintiffs filed this case against RCN to seek redress for RCN's involvement in the widespread infringement of Plaintiffs' copyrighted sound recordings occurring on RCN's internet services. It is RCN's conduct that is at the heart of this lawsuit; yet, through its nearly 200 discovery requests, RCN embarks on numerous fishing expeditions, seeking documents and information relating to other ISPs instead of RCN; other infringement monitoring services instead of Rightscorp, the monitoring service that Plaintiffs engaged for this case; and a broad swath of information from Plaintiffs that has little or nothing to do with RCN's secondary infringement liability and the remedies that Plaintiffs will seek (either statutory damages or disgorgement of RCN's profits from the infringement). RCN's purpose is clear: to distract from its own liability and impose needless burdens on Plaintiffs.

      In evaluating the merits of the arguments that RCN asserts, it is instructive to note that these very issues were raised before in a substantially similar action Plaintiffs are pursuing against RCN's sibling company, Grande Communications Networks, LLC. *See UMG Recordings, Inc. v. Grande Communications Networks, LLC*, No. 17-cv-00365 (W.D. Tex.) ("*Grande*"). Counsel for RCN also represents Grande in that action. Since the Court in *Grande* resolved the issues presently before the Court in Plaintiffs' favor, it is not surprising that RCN is entirely silent as to the prior litigation of these very issues. This Court should follow the *Grande*

# McElroy, Deutsch, Mulvaney & Carpenter, LLP

Hon. Zahid N. Quraishi, U.S.M.J.
October 6, 2020
Page 2

court's well-reasoned rulings with respect to the discovery Plaintiffs were to provide in that case, rulings which provide guidance on the proper scope of discovery for this substantially identical case.

1. **Plaintiffs' Ownership and Infringement Evidence (Interrogatories 1 & 3)**

RCN's argument that it needs the assistance of this Court in compelling further responses to Interrogatories 1 and 3 is not based on Plaintiffs' alleged failure to produce all requested data or information. RCN concedes that Plaintiffs have produced all information RCN has requested. Rather, RCN raises these interrogatories because it wants this Court to direct Plaintiffs to organize the evidence they have produced so that RCN does not have to review that evidence itself. The Federal Rules of Civil Procedure (the "Rules") impose no such burden on Plaintiffs.

Interrogatory 1 demands that Plaintiffs identify seven separate categories of information or documents for each work in suit, preferably "in table format." ECF 102-1 at 5. Similarly, Interrogatory 3 demands that Plaintiffs identify each infringement notice that Rightscorp sent to RCN related to every work in suit. *Id.* at 8. There are no existing documents containing that organization of information and Plaintiffs have no duty to create them. Indeed, since Plaintiffs have already produced all the documents relevant to RCN's requests, there is no reason RCN cannot create these analyses itself as easily as Plaintiffs could. Accordingly, Plaintiffs responded to Interrogatories 1 and 3 by invoking Rule 33(d) and identifying by Bates number the relevant documents. For example:

- Interrogatory 1 demanded that Plaintiffs identify the documents establishing that they own or exercise exclusive control over every work in suit. ECF 102-1 at 5. Plaintiffs identified by Bates number the contracts and other documents evidencing the chain of title for ownership of each such work. *Id* at 6-7.

- Interrogatory 1 also demanded that Plaintiffs identify the documents establishing that each work in suit is covered by a registered copyright. *Id.* at 5. Plaintiffs identified by Bates number the copyright registration certificates for the works in suit, each of which specifically refers by name and artist to the copyrighted sound recordings at issue. *Id.* at 7.

- Interrogatory 1 further demanded that Plaintiffs identify every infringement notice related to the works in suit that Rightscorp sent to RCN, as well as every infringing copy of the works in suit that Rightscorp downloaded directly from RCN's subscribers. *Id.* at 5. Plaintiffs identified by Bates number both the infringement notices that Rightscorp sent and the infringing audio files that Rightscorp collected, along with corresponding spreadsheets that summarize this extensive evidence on which Plaintiffs are relying. *Id.* at 8-10. The spreadsheet of Rightscorp email notices that Plaintiffs produced identified details such as the song name, artist name, and the specific information concerning the instances of infringement of each such work that

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
October 6, 2020
Page 3

> Rightscorp detected. A similar spreadsheet Plaintiffs produced identified the specifics of the audio files that Rightscorp downloaded from RCN subscribers, including the name of the track and identifying information about the circumstances of the download (*e.g.*, IP address, date and time, etc.) and the infringement notices associated with the infringing file.
>
> - Similarly, Interrogatory 3 demanded that Plaintiffs state the number of Rightscorp infringement notices "that allege infringement of one of the works in suit, and identify those notices (segregated by Work)." *Id.* at 11. In response, Plaintiffs identified by Bates number the range of documents that consist of the email notices Rightscorp generated and sent to RCN regarding RCN subscribers' infringement, and the accompanying summary spreadsheet of those notices. *Id.* at 12.

The core of RCN's position on this issue is its allegation that Plaintiffs may not properly respond to Interrogatories 1 and 3 by reference to produced documents as authorized by Rule 33(d). However, Rule 33(d) permits Plaintiffs to specify the records that can be reviewed to answer an interrogatory so long as "the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). That is precisely the circumstance here. Because Plaintiffs do not possess the information requested organized as RCN is demanding it be organized, both Plaintiffs and RCN are equally well positioned to review Plaintiffs' documents and spreadsheets and reorganize the information they contain in order to suit RCN's purposes. *See Grande*, 2018 WL 4627276, at *6 (W.D. Tex. Sept. 26, 2018) (concluding in a nearly identical context that "[t]he burden on the parties is equal"). RCN neither explains why Plaintiffs are differently positioned regarding this information, nor does it attempt to distinguish *Grande* or cite any legal precedent supporting its argument. Instead, it offers rank speculation that "[Plaintiffs] must have evaluated that issue" before filing the case. ECF 102 at 2. However, while Plaintiffs satisfied their obligation under Rule 11 to evaluate the evidence available to them before filing suit, Rule 33(d) addresses a separate issue, namely whether the parties are substantially equally positioned to create new analyses from, or reorganize the information contained in, the documents Plaintiff has produced. Clearly, both Plaintiffs and RCN are equally capable of undertaking that task.

It is important to underscore that Plaintiffs identified the specific documents corresponding to each category of information addressed in Interrogatories 1 and 3. That effort plainly satisfies Plaintiffs' obligation under Rule 33(d). *See Grande*, 2018 WL 4627276, at *6. Indeed, the *Grande* court rejected the same argument RCN raises here, holding instead that "Plaintiffs adequately responded to the interrogatories in issue by identifying the relevant documents" because "Plaintiffs responded by referencing document production including 1.3 million pages of Rightscorp email notices" and "identified each copyrighted work in the suit, the copyright holder, and the Rightscorp notices which they argue show each infringement and infringer." *Id.*

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
October 6, 2020
Page 4

Even the case RCN cites, *In re G-I Holdings Inc.*, makes clear that Plaintiffs' responses are proper and sufficient. There, this Court held that the responding party "has a 'duty to specify, by category and location' the records from which he knows the answers to the interrogatories can be found." 218 F.R.D. 428, 438 (D.N.J. 2003) (quoting *R.W. Thomas Const. Management Co., Inc. v. Corrugated Services, Inc.*, 1995 WL 592539 at *1 (E.D. Pa. 1995)). That is exactly what Plaintiffs did here. In contrast, the defendant in *In re G-I Holdings Inc.* responded to requests asking it to identify potential witnesses by pointing to *its entire document production*. 218 F.R.D. at 438-39 (directing the plaintiff to "60 boxes of documents" without any specific identification of the Bates number or description of the nature of the document). *See also Graco, Inc. v. PMC Global, Inc.*, No. CIV.A. 08-1304 FLW, 2011 WL 1114233, at **36-38 (D.N.J. Mar. 24, 2011) (citation to specific categories of documents, identified with particularity, were sufficient particularly where interrogatories called for cataloging of extensive evidence).

In sum, Plaintiffs' answers comply with Rule 33(d). There is no basis for compelling more from Plaintiffs; the Court should deny RCN's motion.

## 2. Communications with Rightscorp and Other Related Documents

Rightscorp is a third-party infringement detection company that discovered and documented the massive copyright infringement occurring on RCN's network. The evidence it gathered relating to that infringement is unquestionably relevant to Plaintiffs' claims, and Plaintiffs have already produced that evidence. However, RCN seeks to go further and demands documents related to Rightscorp that extend far beyond what is permissible under the Rules.

The scope of permissible discovery with regard to Rightscorp was litigated in *Grande*, and Plaintiffs have stated unambiguously that they will produce all non-privileged documents with or about Rightscorp, as they did in *Grande*. Plaintiffs informed RCN of this position multiple times, both in their written responses to RCN's document requests as well as in correspondence with RCN prior to RCN's filing its letter brief. Most recently, Plaintiffs told RCN on September 25, 2020, that "Plaintiffs will produce nonprivileged documents about Rightscorp in their possession, custody, or control, consistent with their production of such documents in *Grande* and in light of the *Grande* court's rulings regarding such materials." Ex. 1, Sept. 25, 2020 Gilmore Email to Howenstine, at 2. Plaintiffs further suggested that to avoid needless motion practice, RCN should consider reviewing Plaintiffs' full production regarding Rightscorp and then determine if there are specific issues that require resolution by the Court. *See id.* at 1.

Plaintiffs' production of documents to date is wholly consistent with the position it has repeatedly stated to RCN. Plaintiffs have already produced the more than four million Rightscorp infringement notices sent to RCN, as well as the tens of thousands of infringing audio files Rightscorp downloaded from RCN subscribers. As RCN well knows (because its same lawyers represented its sibling company), Plaintiffs produced numerous emails and other documents about Rightscorp in *Grande*, and have done so here as well. Similarly, the Recording Industry

# McElroy, Deutsch, Mulvaney & Carpenter, llp

Hon. Zahid N. Quraishi, U.S.M.J.
October 6, 2020
Page 5

Association of America (RIAA), Plaintiffs' trade association responsible for coordinating the conduct of this lawsuit (and *Grande*), produced numerous documents relating to Rightscorp in response to a nonparty subpoena that Grande served in the *Grande* case. Plaintiffs have advised RCN that if it served the RIAA with a similar subpoena in this case (which it has thus far failed to do), then it would produce those same documents in this action. *See* Ex. 2, July 17 Gottuso Email to Counsel at 2. Finally, in the *Grande* case, Rightscorp itself responded to a nonparty subpoena by producing its technology source code, hundreds of emails, and other documents. RCN can serve a similar subpoena and receive those materials in this case too. Thus, RCN has received (or will receive, if and when it serves appropriate subpoenas) a substantial volume of Rightscorp-related discovery from Plaintiffs, the RIAA, and Rightscorp.

Nevertheless, RCN has blatantly mischaracterized Plaintiffs' position and claimed that Plaintiffs assert "that every communication with Rightscorp—irrespective of the timing and subject matter—is privileged." ECF 102, RCN Ltr. at 3. That allegation is demonstrably false. As noted above, in *Grande* Plaintiffs produced many communications with Rightscorp that predated Plaintiffs' retention of Rightscorp as a litigation consultant, and have done so here.

RCN's objection is also premature, production is not yet completed and privilege logs have not yet been exchanged. RCN's objection cannot be made categorically as it has done in its letter brief. It is beyond good faith dispute that many of the requested materials and communications involving Rightscorp are indeed privileged, as the *Grande* court found. As RCN and its lawyers know, in *Grande* the RIAA produced a detailed privilege log identifying the materials withheld on privilege/work product grounds consistent with the court's order in that case. Tellingly, Grande never challenged any of the privilege designations on that log. A similar log will be provided in this case. Accordingly, RCN's challenges should consist, if at all, of objections to the assertion of privilege as to specific documents listed on that privilege log. That is exactly why Plaintiffs suggested that RCN review Plaintiffs' complete production and associated privilege log before raising this issue with the Court. *See* Ex. 1 at 1.

Plaintiffs are well within their rights to withhold the production of communications with and about Rightscorp that are privileged and/or constitute litigation work product. Under Rule 26(b)(3), the work product doctrine applies to "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). *See also In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003) (litigation consultant's materials and communications protected by work product). Further, "[t]he attorney-client privilege operates to protect from disclosure communications among the client, counsel, and in circumstances such as are present here, a third party . . . who was assisting [the party's] counsel in the formulation of legal advice." *Id.* at 668 (Garth, J., concurring).

Accordingly, courts in this district have protected as privileged communications among parties, their attorneys, and consultants or experts providing assistance to the attorneys in

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
October 6, 2020
Page 6

rendering their legal advice. For example, in *Legends Mgmt. Co., LLC v. Affiliated Ins. Co.*, the court found that communications among an insurer, its attorneys, and a third-party claims consultant, were protected by the attorney-client privilege, as such communications were necessary for the attorneys to provide advice to their clients regarding the facts of the case. *See* No. 216CV01608SDWSCM, 2017 WL 4227930, at *3 (D.N.J. Sept. 22, 2017) (citing *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414 (3d Cir. 1991)). Similarly, in *Sunnyside Manor, Inc. v. Twp. of Wall*, the court found that communications involving a real estate company, its attorneys, and a third-party zoning expert, remained protected from disclosure. *See* No. CIV.A. 02-2902 MCL, 2005 WL 6569572, at *2 (D.N.J. Dec. 22, 2005) ("The privilege attaches to agents and representatives of counsel whose services are necessary for effective representation of the client's interests.").

As in *Grande*, and like the consultants in the cases cited above, Rightscorp was retained by the RIAA, on Plaintiffs' behalf, to serve as a litigation consultant in this case. Plaintiffs, along with the RIAA and Rightscorp, were therefore aligned in investigating and pursuing litigation against RCN for facilitating the rampant infringement of Plaintiffs' copyrighted works. Accordingly, communications among the Plaintiffs, as well as among RIAA and Rightscorp, that seek, provide, or share legal advice, or communications that provide information and support that would enable Plaintiffs' attorneys (in-house, at the RIAA, and outside counsel) to render legal advice concerning RCN's wrongful conduct, are protected under the work product doctrine and attorney-client/common-interest privilege.[1]

Again, this issue was resolved in Plaintiffs' favor in the *Grande* case. The court in *Grande* rejected similar arguments made by RCN's sibling company and its lawyers challenging Plaintiffs' similar assertions of privilege:

> RIAA and Plaintiffs' claim of privilege is limited to communications between attorneys representing the Plaintiffs and Rightscorp representatives that post-date the execution of the Consulting Agreement, and that were either made in anticipation of this litigation, or relate to the litigation once it was filed. ***On the surface, it would appear that such communications are likely protected from disclosure by one or more of the attorney/client privilege, the work product doctrine, and the common legal interest doctrine. In light of this, the Court does not believe that denying the motion to compel will do an injustice or deprive Grande of any essential material***. ***And nothing herein prevents Grande from conducting discovery regarding the effectiveness of Rightscorp's software or systems in detecting actual copyright infringement—the main focus of the discovery aimed at Rightscorp.*** Indeed, it appears from many of the documents

---

[1] In *Grande*, the RIAA submitted a declaration from in-house counsel Victoria Sheckler supporting these privilege assertions. *See Grande*, ECF No. 136, Ex. A to RIAA Opp. to Mot. to Compel (Sheckler Decl.). A copy of the Sheckler Declaration is attached hereto as Exhibit 3. The RIAA would be happy to submit a similar declaration in this action upon request.

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
October 6, 2020
Page 7

> submitted on other motions in this case that Grande has conducted significant discovery on that very issue.

*Grande*, 2018 WL 4627668, at *3 (W.D. Tex. Sept. 26, 2018) (emphasis added). *See also Grande*, 2018 WL 4627276, at *2 (protecting as privileged and work product "communications among lawyers for the RIAA and Plaintiffs and Rightscorp from a very discrete time frame, when Rightscorp was hired in 2016 as a litigation consultant.").

RCN's arguments as to the particular sub-categories of Rightscorp-related materials likewise fail.

- **Agreements with Rightscorp**: Plaintiffs have already produced the litigation consultant agreement with Rightscorp for this case, and will produce the one for *Grande*, too. However, many of the communications relating to that agreement are privileged and/or work product for the reasons explained above.

- **Payments to Rightscorp**: The only payments to Rightscorp relating to this case (or *Grande*) were made pursuant to the litigation consulting agreements in those two cases. Plaintiffs have produced documentation showing those payments. There is no basis for RCN's request for any and all communications concerning those payments. Plaintiffs were not required to produce any such documents in *Grande*. Not only are any responsive documents likely to be privileged and/or work product, they are irrelevant: they do not bear on whether Rightscorp's technology effectively works to detect online infringement (it does, as other courts and juries have found), or whether Rightscorp used that technology to detect infringement by RCN subscribers, and notified RCN of that fact (Rightscorp did, for years before Plaintiffs retained Rightscorp or paid it a penny). To the extent that RCN wishes to argue (without any merit) that the payments to Rightscorp somehow are probative of Rightscorp's "bias and credibility," ECF No. 102 at 4, the amounts of such payments are sufficient for that purpose.

- **Documents concerning Rightscorp errors/inaccuracies**: As RCN concedes, *see* ECF No. 102 at 4, Plaintiffs stated in the parties' meet and confer, and repeat here, that they are unaware of any such documents. To the extent, however, that they discover a nonprivileged document in this category, they will produce it.

3. **Documents Relating to MarkMonitor, the Copyright Alert System, Communications with other ISPs, and Guidance from other Copyright Infringement Vendors**

Plaintiffs sued RCN based on Rightscorp's detection of copyright infringement by RCN subscribers, Rightscorp's documentation of that infringement, and the notices Rightscorp sent to RCN about that infringement. Given its inability to rebut that overwhelming and uncontradicted evidence demonstrating liability, RCN has sought to deflect attention from its conduct and

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
October 6, 2020
Page 8

engage in a fishing expedition for unrelated information about (a) other infringement detection companies other than Rightscorp that have nothing to do with this case; (b) other efforts to deter copyright infringement online that are not at issue in this case; (c) other ISPs that are not RCN; and (d) unrelated technical guidance offered to other infringement detection companies. RCN's discovery requests related to those topics are neither relevant nor proportional to the needs of the case. The *Grande* court denied requests to compel the very same discovery. The Court should do the same in this suit.

    **A. Other Infringement Detection Companies: MarkMonitor materials (Interrogatories 4 & 6; RFP Nos. 19, 21, 29, 31, 34, 44, 79, 80, 90, 91, 93, and 95).**[2]

MarkMonitor is a competitor of Rightscorp that also operates a copyright infringement monitoring system. Plaintiffs' liability case against RCN does not rely on any MarkMonitor notices or actions. Accordingly, any documents Plaintiffs might have about a different infringement monitoring company that may have detected other distinct instances of infringement, using a different detection system, have no conceivable relevance to the issues presented by this case. RCN's requests regarding MarkMonitor are an improper attempt by RCN to create a "trial within a trial" in which it can minimize the focus on RCN's conduct and instead focus on "what Plaintiffs and RIAA consider to constitute sufficient, actionable evidence of copyright infringement" or "the similarities and differences between [the Rightscorp and MarkMonitor systems]." ECF 102 at 5. Not only is such a diversion baseless and irrelevant, but discovery supporting this frolic is not proportional to the needs of the case. Responding to RCN's numerous document requests related to MarkMonitor will require Plaintiffs to undertake significant document collection, searching, and review efforts, all of which will cover a subject matter irrelevant to Plaintiffs' claims. Again, Plaintiffs will be proving their infringement case through ***Rightscorp's*** detection and gathering evidence of infringement on RCN's network. The Rightscorp system's technology—not the technology of any other system, such as MarkMonitor's—is the proper focus of the parties' discovery efforts. The *Grande* court recognized this in rejecting requests for discovery about MarkMonitor or other systems besides Rightscorp: because "***claims in this case are all based on the detection provided, and notices sent, by Rightscorp[.]***" *Grande*, 2018 WL 4627276, at *2 (emphasis added). The *Grande* court concluded that "***[d]ocuments related to other detection systems are not sufficiently related to this case to permit their discovery***." *Id.* at * 5 (emphasis added).

While RCN claims that Plaintiffs' willingness to produce infringement notice emails MarkMonitor sent to RCN is an admission that evidence related to MarkMonitor is relevant, *see*

---

[2] Plaintiffs additionally incorporate their Rule 33(d) argument, *infra* Section 1, to support their response to Interrogatory No. 4, which requests Plaintiffs to identify the MarkMonitor emails sent to RCN regarding the works in suit in the same vein as the information sought regarding the Rightscorp emails in Interrogatory No. 3. If and when RCN subpoenas the RIAA, the RIAA will produce the MarkMonitor notification emails, which is stated in Plaintiffs' response. *See*, *e.g.*, ECF 102-1 at 13. Identifying this particular range of documents will satisfy Plaintiffs' obligation under Rule 33(d).

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
October 6, 2020
Page 9

ECF 102 at 6, that argument is baseless. There is an obvious difference between MarkMonitor's notices—which like Rightscorp's notices are emails sent to RCN notifying it of copyright infringement by someone on its network—and broad discovery related to MarkMonitor that RCN would use improperly to compare the effectiveness of the two competing systems. As this Court recognized in compelling RCN to produce infringement notices from all sources, such notices, regardless of sender, are relevant to assist the Court and/or jury in determining whether RCN adopted and reasonably implemented a policy for terminating repeat infringers and is thus entitled to a safe harbor defense under the DMCA. *See* ECF 83, Aug. 5, 2020 Letter Order, at 3. RCN has affirmatively claimed a right to that defense in this action. *See* ECF 96 at 15-16. However, the limited and finite relevance of those notices does not apply to RCN's requests for what amounts to an audit of the MarkMonitor system itself and a comparison of its relative efficacy compared to the Rightscorp system. Those latter requests are baseless and irrelevant and are nothing more than RCN's tactical ploy to increase Plaintiffs' discovery burdens and deflect the focus of this case away from RCN's liability.

### B. Other Efforts to Deter Infringement: Copyright Alert System materials (RFP Nos. 35–37).

RCN seeks to compel production of a wide range of documents relating to the Copyright Alert System ("CAS"), a private agreement among a number of copyright holders, certain ISPs, and MarkMonitor. This information is totally irrelevant to this case, and its production was previously denied in *Grande*. Neither RCN nor Rightscorp was a party to the CAS agreement. The purpose of that experimental program was to educate consumers, deter online infringement, and direct consumers to lawful online sources of content. CAS was not intended to—and expressly did not—establish a legal or industry standard for ISP conduct regarding infringement. The creation of CAS, and of the Center for Copyright Information ("CCI"), a separate corporate entity that administered and oversaw CAS, involved dozens of individuals at several companies in multiple industries, not just the music industry. After several years of negotiations, the CAS signatories formalized their agreement in a July 6, 2011 MOU, which is public, and a number of implementation agreements, which are not. These agreements contain strict confidentiality provisions that govern the handling of the participating members' sensitive business information and records, as well as data relating to the CAS notice program.

These private contractual agreements that Plaintiffs entered into with parties other than RCN have no bearing on RCN's failure to uphold its own legal obligations. RCN was not involved with CAS in any way.  CAS did not attempt to establish—nor did it actually establish—an industry standard for ISPs with respect to copyright infringement or policies on terminating the accounts of infringing subscribers. Even if it had, courts—including the Third Circuit—have consistently held that defendants in infringement suits cannot rely on industry custom or standards to excuse themselves of their own legal obligations. *See*, *e.g.*, *Dun & Bradstreet Software Servs., Inc., v. Grace Consulting, Inc.*, 307 F.3d 197, 211 (3d Cir. 2002) ("A defense of industry custom and practice in the face of the protective provisions of the Copyright Act could undermine the purposes and objectives of the statute and reduce it to rubble.").

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
October 6, 2020
Page 10

In addition to being irrelevant, documents related to CAS are not proportional to the needs of this case. Production of these documents would be highly burdensome, as they are largely subject to CAS's complicated confidentiality provisions, disclosure of which would require seeking and obtaining the agreement of numerous other CAS signatories, including RCN's competitors. CAS was a complicated agreement among *thirty* diverse entities, including many nonparties. It was the result of a lengthy, multi-year negotiation process, and it remained in existence for several years before it was dissolved. The production of the materials sought by RCN would be a major undertaking, encompassing documents and communications spanning seven years and involving dozens of companies and individuals. These efforts would require searching for and producing millions of infringement notices—none of which were sent to RCN—along with the voluminous communications involved in the negotiation and creation of CCI. There is no justification for this massive side-show. In *Grande*, the court denied RCN's sibling company's attempt to force Plaintiffs and the RIAA to produce such materials, finding that information about MarkMonitor and CAS were "not sufficiently related to this case to permit their discovery." *Grande*, 2018 WL 4627276, at *5. RCN offers no reason why this Court should reach a different conclusion.

### C.  Other ISPs: Communications with other ISPs (RFP No. 39).

RCN also tries to deflect the focus of this case away from issues of its own legal liability and to impose needless burdens on Plaintiffs through its application to compel Plaintiffs to produce communications with ISPs other than RCN. RCN attempts to justify this fishing expedition by asserting that Plaintiffs' communications with other ISPs would reveal "Plaintiffs' views and policies as to how ISPs should respond to copyright infringement allegations aimed at users of their networks." ECF No. 102, at 8. However, RCN cannot circumvent accountability for its own misconduct by claiming that other ISPs acted in similar, or worse, fashion. Its behavior must be measured against its own legal obligations, not against the actions of others. *See Dun & Bradstreet Software Servs., Inc*, 307 F.3d at 211. Again, in *Grande*, the defendant ISP also sought information about other ISPs, but the court denied that request: "documents relating to these other ISPs were not relevant to whether Grande could be held liable for the actions of *its* subscribers on *its* system." 2018 WL 4627668, at *3 (emphasis in original). This Court should do likewise.

### D.  Other Technical Guidance: Vendor Requirements (RFP No. 60).

RCN's final attempt to deflect attention from its own conduct is its request for documents related to guidance Plaintiffs may have offered to other vendors regarding how to document evidence of copyright infringement. As with the other categories of irrelevant evidence discussed above, documents responsive to this request would shed no light on RCN's liability as a result of the specific instances of infringement identified and documented by Rightscorp. While RCN speculates that this evidence might help evaluate the reliability of other methods of infringement detection, that would at most create an irrelevant trial-within-a-trial comparing Rightscorp to other infringement detection systems not at issue, rather than addressing the underlying

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
October 6, 2020
Page 11

infringements identified by Plaintiffs. The Court should accordingly deny RCN's request for these categories of documents.

### 4. Sales and Financial Information For Each Work In Suit (Interrogatories 10 & 11; RFP Nos. 67, 71, 123–130, 134, 135, 140, 141, 142, & 149)

RCN seeks an order compelling production of highly detailed track-by-track revenue data—including "at a bare minimum" revenue generated through stream counts, revenue per stream, download sales volumes, revenue per download, and corresponding information regarding profitability—for each of the 1,985 works in suit. ECF 102 at 7. However, while RCN purportedly seeks this financial information to calculate Plaintiffs' actual damages, Plaintiffs have clearly stated that they are pursuing damages under one of two theories: either (i) RCN's profits from infringement, or (ii) statutory damages. Plaintiffs expressly stated as much in their discovery responses. Because Plaintiffs are not seeking to recover their own actual damages, the track-by-track revenue data requested by RCN is irrelevant.

RCN claims that even if Plaintiffs pursue statutory damages, track-by-track revenue data is relevant because "the value of the copyright" is a factor to be considered in a statutory damages award. *Id.* at 7. However, as the Supreme Court explained in *F.W. Woolworth Co. v. Contemporary Arts*, statutory damages need not bear a relationship to actual damages:

> The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy.

344 U.S. 228, 234 (1952). Thus, Plaintiffs here, like any copyright plaintiff eligible for statutory damages, can receive a large award even without showing actual damages.

Even if Plaintiffs' actual damages were theoretically relevant to statutory damages, that minimal relevance is outweighed significantly by the burden that would be imposed on Plaintiffs to gather the information RCN seeks and to create the calculations in the form RCN requests. Numerous courts—including the court in *Grande*—have rejected defendants' attempts to request detailed, track-by-track revenue data in infringement actions involving large numbers of works because such discovery is not proportional to the needs of the case. *See, e.g.*, *Grande*, 2018 WL 4627276, at *5 (denying Grande's RFP 31, which sought such information, as "overly broad and disproportionate to the needs of the case"); *Capitol Records Inc. v. MP3Tunes*, No. 07 Civ. 9931 (WHP), Dkt. 168 (S.D.N.Y. Apr. 12, 2010) (declining to compel production of historical profitability data, taking into consideration plaintiffs' election of statutory damages and the limited utility of this type of data in calculating actual damages); *Io Grp. Inc. v. GLBT Ltd.*, No. C-10-01282 MMC DMR, 2011 WL 3443773, at *3–4 (N.D. Cal. Aug. 8, 2011) (rejecting

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

Hon. Zahid N. Quraishi, U.S.M.J.
October 6, 2020
Page 12

defendant's motion to compel the production of profit and revenue data for infringed works, finding that this information is irrelevant to the issue of statutory damages).

Indeed, it is obvious from the face of RCN's request that a complete production by Plaintiffs would be extremely burdensome. RCN seeks detailed revenue data related to multiple types of digital exploitation of Plaintiffs' works (streams, downloads, etc.) from multiple platforms and other revenue sources. That information is highly dispersed among multinational companies and touches on many of the most sensitive aspects of Plaintiffs' businesses. Further, Plaintiffs do not generally maintain much of the requested financial information on a track-by-track basis in the regular course of business. While Plaintiffs do maintain certain aspects of raw revenue, this information is not kept in the format sought by RCN here, and is not centralized or easily searchable. To comply with RCN's demands, Plaintiffs would thus be obligated to dedicate significant resources, including diverting significant numbers of staff (whose work already is disrupted due to the ongoing impact of the COVID-19 pandemic), to collect and review relevant documents, and to ultimately generate the revenue data (if even available) in the format sought by RCN. In particular, it is essentially impossible for Plaintiffs to collect much of this data in a systematic or automated manner, due to the highly dispersed nature of the data and the large variety of databases involved, meaning the data would need to largely be collected manually for the nearly 2,000 works in suit.[3] RCN's per-work financial information requests accordingly ignore the realities of Plaintiffs' businesses and record-keeping practices, and these requests are thus unduly burdensome and not proportional to the needs of the case.

\* \* \*

Plaintiffs respectfully request that the Court deny the relief requested in RCN's letter brief in its entirety. Plaintiffs are available for a telephonic conference with the Court and RCN at the Court's convenience. Thank you in advance for your consideration and attention to this matter.

Respectfully yours,

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

*s/ Thomas R. Curtin*

THOMAS R. CURTIN

Attachments
cc:     All counsel (via ECF and e-mail)

---

[3] As this Court ordered, Plaintiffs have responded to RCN's letter brief on an expedited basis. Should the Court desire factual support for the explanations of burden alleged herein, Plaintiffs request the opportunity to submit declarations supporting the intuitive notion that generating and producing detailed track-level financial information for nearly 2,000 tracks poses an undue burden.