## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UMG RECORDINGS, INC., *et al.*,

          Plaintiffs,

      v.

RCN TELECOM SERVICES, LLC, *et al.*,

          Defendants.

and

RCN TELECOM SERVICES, LLC,

          Counterclaim Plaintiff,

      v.

UMG RECORDINGS, INC., *et al.*,

          Counterclaim Defendants.

Civil Action No. 19-17272
(MAS) (ZNQ)

**Motion Date: December 7, 2020**

**ORAL ARGUMENT
REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY PLAINTIFFS AND THE RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC. TO DISMISS COUNTERCLAIMS

Thomas R. Curtin
George C. Jones
McELROY, DEUTSCH, MULVANEY
 & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
(973) 993-8100

*[Additional counsel listed on next page]*

Andrew H. Bart (*pro hac vice*)
Jacob L. Tracer (*pro hac vice*)
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
(212) 891-1600

Robert B. Gilmore (*pro hac vice*)
Philip J. O'Beirne (*pro hac vice*)
Michael A. Petrino (*pro hac vice*)
Kevin L. Attridge (*pro hac vice*)
STEIN MITCHELL BEATO
 & MISSNER LLP
901 15th Street, N.W., Suite 700
Washington, DC 20005
(202) 737-7777

*Attorneys for Plaintiffs and Recording
Industry Association of America, Inc.*

# TABLE OF CONTENTS

INTRODUCTION.................................................................................1

FACTUAL BACKGROUND ..............................................................5

LEGAL STANDARD.......................................................................12

ARGUMENT ...................................................................................12

I.     THE DMCA PREEMPTS RCN'S COUNTERCLAIM...................................13

II.    RCN LACKS STANDING TO PURSUE A UCL CLAIM AGAINST PLAINTIFFS AND THE RIAA.................................................................18

    A.    The *Noerr-Pennington* Doctrine Immunizes Plaintiffs And The RIAA From Liability Arising Out Of Their Litigation Activities. ...............19

    B.    Plaintiffs And The RIAA Have Not Caused RCN Any Injury Relating To Its Processing Of Rightscorp's Notices. ........................................22

III.   RCN HAS FAILED TO PLEAD AN ENTITLEMENT TO ANY UCL REMEDY AGAINST PLAINTIFFS OR THE RIAA. ........................................24

    A.    RCN Has Failed To Plead Facts That Would Entitle It To Seek Restitution Under The UCL Against Plaintiffs And The RIAA As A Matter Of Law. .....................................................................................25

    B.    RCN Has Failed To Plead A Claim For Injunctive Relief Against Plaintiffs And The RIAA. .................................................................26

IV.   IN THE EVENT THAT RCN'S CLAIM AGAINST RIGHTSCORP SURVIVES A PLEADING CHALLENGE, IT SHOULD NONETHELESS BE STRICKEN FROM THIS ACTION. ................................................................................27

CONCLUSION................................................................................31

i

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*A.D. Bedell Wholesale Co. v. Philip Morris Inc.*,
   263 F.3d 239 (3d Cir. 2001) .......................................................... 18-19, 19, 20

*Aguilera v. Matco Tools Corp.*,
   No. 3:19-cv-01576-AJB-AHG,
   2020 WL 1188142 (S.D. Cal. Mar. 12, 2020) ............................................. 21, 25

*Am. Ins. Ass'n v. Garamendi*,
   539 U.S. 396 (2003) ................................................................... 13, 17

*Apple, Inc. v. Motorola Mobility, Inc.*,
   886 F. Supp. 2d 1061 (W.D. Wis. 2012) ...................................................... 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................... 11-12

*Beasley v. Lucky Stores, Inc.*,
   400 F. Supp. 3d 942 (N.D. Cal. 2019) ........................................................ 22

*BMG Rights Mgmt. L.L.C. v. Cox Commc'ns, Inc.*,
   199 F. Supp. 3d 958 (E.D. Va. 2016),
   *aff'd in part, rev'd in part on other grounds*,
   881 F.3d 293 (4th Cir. 2018) .................................................... 6, 8, 10

*Campbell v. Pa. Sch. Bds. Ass'n*,
   972 F.3d 213 (3d Cir. 2020) ................................................................ 18

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   973 P.2d 527 (Cal. 1999) ............................................................... 24, 25

*Churchill Downs, Inc. v. NLR Ent., L.L.C.*,
   No. 14-03342 (KM) (MAH), 2015 WL 5854134 (D.N.J. Oct. 5, 2015) .......... 29

*Cisneros v. U.D. Registry, Inc.*,
   39 Cal. App. 4th 548 (1995) ............................................................... 26

ii

*Columbia Pictures Indus. v. Prof'l Real Estate Invs., Inc.*,
   944 F.2d 1525 (9th Cir. 1991) ............................................................ 20

*In re Commonwealth's Motion to Appoint Counsel Against or
Directed to Defender Ass'n of Phila.*,
   790 F.3d 457 (3d Cir. 2015) ............................................................. 13

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000) ........................................................................ 13

*Emery v. Visa Internat. Serv. Ass'n*,
   95 Cal. App. 4th 952 (2002) ............................................................ 23

*FDIC v. Bathgate*,
   27 F.3d 850 (3d Cir. 1994) .............................................................. 29

*In re Firearm Cases*,
   126 Cal. App. 4th 959 (2005) .......................................................... 23

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-MD-2752, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ................... 24

*James R. Glidewell Dental Ceramics v. Keating Dental Arts, Inc.*,
   No.: SACV 11-1309-DOC(ANx),
   2013 WL 655314 (C.D. Cal. Feb. 21, 2013) ..................................... 21

*Kwikset Corp. v. Superior Court*,
   246 P.3d 877 (Cal. 2011) ........................................................... 22, 24

*Lenz v. Universal Music Corp.*,
   No. 07-cv-3783, 2008 WL 962102 (N.D. Cal. Apr. 8, 2008) .................... 14, 17

*Madrid v. Perot Sys. Corp.*,
   130 Cal. App. 4th 440 (2005) ................................................. 24-25, 26

*Malibu Media, L.L.C. v. Doe*,
   238 F. Supp. 3d 638 (M.D. Pa. 2017) ............................................. 20

*Merchs. Mut. Ins. Co. v. 215 4th St., L.L.C.*,
   No. 19-cv-9206 (ES), 2020 WL 634149 (D.N.J. Feb. 10, 2020) .................... 11

*Online Policy Grp. v. Diebold, Inc.*,
   337 F. Supp. 2d 1195 (N.D. Cal. 2004) ................................................ 14, 16, 17

*Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus.*,
   508 U.S. 49 (1993) ...................................................................... 19, 20

*S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*,
   181 F.3d 410 (3d Cir. 1999) ...................................................... 8, 10, 12

*Sosa v. DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) ............................................................ 19

*Stevens v. Vodka & Milk, L.L.C.* ,
   No. 17-cv-8603 (JSR),
   2018 U.S. Dist. LEXIS 43666 (S.D.N.Y. Mar. 12, 2018) ................... 14, 16-17

*TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*,
   No. 14-cv-341, 2016 WL 7049263 (C.D. Cal. Aug. 9, 2016) ......................... 21

*Transvision Techs. Holding, Inc. v. Knight*,
   No. 1:04-cv-2086-LJM-TAB,
   2005 WL 2373835 (S.D. Ind. Sept. 26, 2005) .................................... 28

*UMG Recordings, Inc. v. Grande Commc'ns Networks, L.L.C.*,
   384 F. Supp. 3d 743 (W.D. Tex. 2019) ............................................. 11

*UMG Recordings, Inc. v. Grande Commc'ns Networks, L.L.C.*,
   No. A-17-CA-365-LY, 2019 WL 4738915 (W.D. Tex. Sept. 27, 2019) .......... 10

*United States v. Berk & Berk*,
   767 F. Supp. 593 (D.N.J. 1991) ....................................................... 29

*WE, Inc. v. City of Phila., Dep't of Licenses & Inspections*,
   174 F.3d 322 (3d Cir. 1999) ............................................................ 19

## Statutes

17 U.S.C. § 505 ......................................................................... 25

17 U.S.C. § 512 ................................................................... *passim*

Calif. Bus. & Prof. Code § 17204 ...................................................... 17, 22

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................... 11

Fed. R. Civ. P. 13 ................................................................................... 28

Fed. R. Civ. P. 14 ........................................................................... *passim*

Fed. R. Civ. P. 20 ................................................................................... 28

**Other**

Wright & Miller, Federal Practice & Procedure § 1446 ........................................ 29

## INTRODUCTION

Plaintiffs UMG Recordings, Inc., *et al.* ("Plaintiffs") initiated this lawsuit to address the actions of Defendants RCN Telecom Services, LLC, *et al.* ("RCN") in facilitating and profiting from the massive infringement of Plaintiffs' copyrighted sound recordings by the subscribers of RCN's internet services.

Beginning in 2011, a company called Rightscorp, Inc. ("Rightscorp") began investigating and documenting the widespread practice of RCN subscribers using BitTorrent, an anonymous peer-to-peer file-sharing service, to illegally copy and distribute copyrighted works—particularly sound recordings. Rightscorp traced a significant number of the infringements to RCN's subscribers and sent notices to RCN identifying the specific infringements. It is undisputed that Rightscorp is unaffiliated with Plaintiffs and did not take these actions pursuant to any agreement with or direction from Plaintiffs. Rather than addressing Rightscorp's notices or making any attempt to stop its customers from infringing Plaintiffs' copyrights, RCN turned a blind eye to this conduct and continued profiting from the monthly fees it received by providing high-speed internet services to subscribers it knew to be violating copyright law.

Faced with the damning evidence proving its liability and the absence of any valid defense, RCN has desperately sought a way to turn the focus of this case away from its own actions and resulting liability. The counterclaim alleged in its

First Amended Answer and Counterclaims (the "Counterclaim") is its latest effort to do just that.  While RCN purports to allege a good faith claim under California's Unfair Competition Law ("UCL") against Plaintiffs, the Recording Industry Association of America, Inc. (the "RIAA") (Plaintiffs' trade association), and Rightscorp, the Counterclaim is actually nothing more than a disingenuous attempt to deflect attention from RCN's manifest liability. Based on the Counterclaim, RCN seeks to introduce a circus of extrinsic issues that are irrelevant to Plaintiffs' claims—such as Rightscorp's business model and Plaintiffs' contractual dealings with internet service providers ("ISPs") that are not parties to this case.  But more importantly, as demonstrated herein, the Counterclaim itself is legally baseless for several reasons, each of which provides an independent basis to dismiss the Counterclaim against Plaintiffs and the RIAA.  Thus, the Court should reject RCN's effort to create a costly and irrelevant sideshow, and dismiss the Counterclaim with prejudice.

*First*, the Counterclaim is preempted by the Digital Millennium Copyright Act ("DMCA"), which regulates the relationship between copyright owners like Plaintiffs and online service providers like RCN.  Most significantly for purposes of the present case, the DMCA enacted 17 U.S.C. § 512 ("Section 512"), which is an integrated legislative structure that carefully balances the rights and remedies available to ISPs related to claims of infringement on their networks, and the

burdens on copyright owners related to monitoring online infringement and notifying ISPs when it occurs. Principles of conflict preemption preclude applications of state law that would interfere with the balance Congress struck in Section 512. RCN's effort to create new remedies for ISPs and impose new burdens on copyright owners under the UCL is preempted because it is an attempt to do just that.

*Second*, RCN cannot satisfy the UCL's distinct—and narrow—standing requirement. Any private plaintiff suing under the UCL must allege it lost money or property as a result of the alleged unfair competition. Yet neither of the two injuries RCN alleges are cognizable against Plaintiffs and the RIAA. While RCN claims it has been forced to incur legal costs as a result of defending against Plaintiffs' lawsuit, the *Noerr-Pennington* doctrine immunizes Plaintiffs and the RIAA from any liability related to their litigation activity. That doctrine ensures that parties seeking redress from the government (including by filing and prosecuting a lawsuit) cannot be sued for that conduct. Thus, RCN's legal costs do not confer standing under the UCL.

RCN also claims it has been injured because it has spent and must spend time and resources processing Rightscorp's infringement notices. However, the factual allegations in the Counterclaim foreclose any plausible inference that Plaintiffs or the RIAA caused any such loss. Indeed, RCN concedes that

Rightscorp's conduct in searching for infringement online and sending infringement notices was undertaken in the absence of any relationship between Rightscorp and either Plaintiffs or the RIAA.

*Third*, RCN fails to allege a right to any remedy under the UCL against Plaintiffs or the RIAA.  The only remedies available under that statute are restitution and injunctive relief.  To be eligible for restitution, the plaintiff must prove that a defendant "acquired" the money or property allegedly lost by the plaintiff.  Plainly, RCN does not and cannot allege that any counterclaim-defendant acquired anything RCN claims to have lost.  Further, to be entitled to injunctive relief, a plaintiff must allege and prove a threat of imminent harm.  While RCN alleges that Rightscorp continues to send it infringement notices, RCN does not and cannot allege that Righscorp is doing so at Plaintiffs' or the RIAA's behest.  Thus, they do not plausibly pose any ongoing threat to RCN related to Rightscorp's alleged activity.

*Finally*, in the event the Court dismisses RCN's Counterclaim against Plaintiffs and the RIAA but not against Rightscorp, the Court should exercise its discretion under Rule 14 of the Federal Rules of Civil Procedure (the "Rules") to strike RCN's claim against Rightscorp from this action.  If RCN's claim against Plaintiffs is dismissed, there will be no remaining counterclaim through which RCN can seek to join Rightscorp in this action under the lenient standard of Rule

20.   Instead, RCN's claim against Rightscorp will be a third-party complaint governed by Rule 14.   Under that Rule, RCN can pursue its claim against Rightscorp in this action only if it seeks secondary liability against Rightscorp that derives from the liability Plaintiffs seek against RCN.  RCN plainly cannot satisfy this standard and thus must litigate its claim against Rightscorp, if at all, in a separate action.

## FACTUAL BACKGROUND[1]

Plaintiffs are record companies that produce, manufacture, distribute, sell, and license the great majority of all legitimate commercial sound recordings in this country.  First Am. Compl. ("FAC") ¶ 2 (Nov. 22, 2019, Dkt. No. 9); First Am. Answer ("FAA") ¶ 2 (Oct. 5, 2020, Dkt. No. 104).  RCN is an ISP that provides internet services to millions of customers, primarily in the northeastern United States.  Counterclaim ¶ 41 (Oct. 5, 2020, Dkt. No. 104).

Plaintiffs initiated this action seeking redress for RCN's actions in contributing to and profiting from the widespread infringement of Plaintiffs' copyrighted sound recordings by RCN's subscribers who use RCN's high-speed

---

[1]  Unless otherwise noted, the facts described herein are drawn from RCN's Counterclaim, admissions RCN has made, and material that is subject to judicial notice.  Plaintiffs and the RIAA accept the facts alleged in RCN's Counterclaim as true only for the purpose of this motion to dismiss.

internet services to access an anonymous peer-to-peer file-sharing network called BitTorrent.  FAC ¶¶ 55-57, 63, 68 & 99.

The facts supporting Plaintiffs' claims are straightforward.  Rightscorp discovered millions of specific examples of infringing activity, and recorded the relevant details, including, *inter alia*, the internet protocol ("IP") address of each infringer, his or her ISP, the infringing content, and the suspected location of the host computer accessing BitTorrent.  FAC ¶ 57.  Rightscorp then collected this information into copyright infringement notices and sent them to the infringer's ISP.  FAC ¶¶ 57, 68; *see also* Defs.' Motion to Dismiss, Ex. 1 (Jan. 21, 2020, Dkt. No. 15-2) (set of "exemplary" Rightscorp notices).[2]  Since 2011, Rightscorp has sent millions of such infringement notices to RCN.  Counterclaim ¶ 67.  Yet RCN continued providing internet services to—and collecting subscription fees from— customers it knew had illegally and repeatedly infringed Plaintiffs' copyrights. FAC ¶¶ 4-5; *see also* Counterclaim ¶ 4.

---

[2] Although BitTorrent users operate anonymously, Rightscorp can track a user's IP address and then use that address to match the user to his or her ISP.  It is well established that only the ISP is capable of identifying a specific subscriber based on that subscriber's IP address.  *See, e.g.*, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 967 n.8 (E.D. Va. 2016) (recognizing that "[o]nly the ISP knows the identity of the subscriber associated with an IP address") (denying Cox's post-trial motions), *aff'd in part, rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018); *accord* FAC ¶ 68 (alleging that "only RCN, as the ISP, could identify" a subscriber based on an IP address).

It is undisputed that when Rightscorp began sending infringement notices to RCN in 2011, RCN had no policy whatsoever to address the conduct of subscribers who repeatedly engaged in copyright infringement.  It is also undisputed that RCN continued to operate without such a policy for five years, until June 2016.  *See* Ltr. from RCN to Judge Quraishi (Sept. 10, 2020, Dkt. No. 94) (conceding that RCN had no policy to terminate the accounts of repeat copyright infringers from January 2010 through May 2016); Counterclaim ¶ 48 (alleging that RCN first adopted such a purported policy in 2016).  It is obvious why RCN ignored its subscribers' outrageous conduct: the same subscribers who were engaging in copyright infringement were also paying monthly subscription fees to RCN.  Thus, while terminating the accounts of repeat infringing subscribers might reduce the harm being inflicted on Plaintiffs and other copyright owners, it would also reduce RCN's revenues.  So, RCN made the self-serving decision to look the other way.

That decision may have been the more immediately profitable path for RCN, but it had significant legal consequences.  The DMCA provides ISPs like RCN with an affirmative defense in certain circumstances to claims of secondary liability for copyright infringement by users on their networks.  However, that defense (often called a safe harbor) is expressly conditioned on the ISP taking certain actions, most notably for purposes of this case, the duty to adopt and reasonably implement "a policy that provides for the termination in appropriate

circumstances of subscribers . . . who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). RCN's failure to adopt and implement such a repeat infringer termination policy enabled it to collect subscriber fees from infringers but left RCN open to potential liability. For years, RCN's revenues grew and the gamble appeared to pay off.

However, in December 2015 the risks created by RCN's decision to not even attempt to qualify for a DMCA defense escalated dramatically. That month, a music publishing company[3] called BMG Rights Management ("BMG") won a $25 million jury verdict against another ISP, Cox Communications ("Cox"), on claims for secondary copyright infringement that are virtually identical to those asserted here. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958 (E.D. Va. 2016) (denying Cox's post-trial motions), *aff'd in part, rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018).[4] Further, BMG built its case on

---

[3] Recorded music involves two distinct copyrights: one in the sound recording, and one in the musical composition embodied in the sound recording. Generally, record labels—like the Plaintiffs in this case—own sound recording copyrights and music publishing companies own musical composition copyrights.

[4] Because RCN's Counterclaim references other litigation involving Rightscorp, *see* Counterclaim ¶¶ 13, 96, the Court may consider relevant judicial decisions in resolving Plaintiffs' and the RIAA's motion to dismiss. A court resolving a motion to dismiss "may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). Specifically, the Court may "examine" these decisions to determine if they "contradict[] the complaint's legal conclusions or factual claims." *Id.*

specific instances of infringement uncovered and documented by Rightscorp. *See id.* at 967-68. Cox—like RCN—had received millions of infringement notices from Rightscorp dating back to 2011. *See id.* at 968. Significantly, Cox—also like RCN—did not have an adequate repeat infringer termination policy. *See id.* at 966-67.

A few months after the verdict, BMG sent a letter to RCN requesting a meeting to discuss the widespread infringement occurring on RCN's network by RCN's subscribers. RCN responded in June 2016 by finally adopting a repeat infringer termination policy and *suing BMG*, seeking a declaratory judgment of non-infringement. *See generally RCN Telecom Services, LLC v. BMG Rights Mgmt. (US) LLC*, No. 16-cv-4417 (S.D.N.Y.).

BMG and RCN eventually settled that dispute for a confidential amount. However, widespread infringement continued on RCN's network. Rightscorp continued to detect that infringement and document it. Rightscorp approached the RIAA and provided the RIAA with the evidence proving the infringements of the copyrights of the RIAA's member companies (*i.e.*, Plaintiffs) that are at issue here. *See* Counterclaim ¶ 75. After obtaining this proof, Plaintiffs initiated this lawsuit.

Plaintiffs' lawsuit is an open-and-shut case of secondary copyright infringement, similar to those successfully litigated (against Cox) or being litigated (against RCN's sibling company, Grande Communications ("Grande")) based on

9

evidence discovered and collected by Rightscorp.  *See Cox*, No. 14-cv-1611 (E.D. Va.); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, No. 17-cv-365 (W.D. Tex.).  Nevertheless, RCN took the position that Plaintiffs failed to state a claim for relief.  *See* Defs.' Motion to Dismiss (Jan. 21, 2020, Dkt. No. 15).  When the Court denied RCN's motion to dismiss, *see* Order (Aug. 31, 2020, Dkt. No. 89), RCN responded by filing its Counterclaim, alleging that Plaintiffs, the RIAA, and Rightscorp engaged in fraudulent and unfair business practices in violation of California's UCL.  *See* Counterclaim ¶¶ 117-23.  RCN bases this claim on its allegation that Rightscorp failed to preserve sufficient evidence to verify the accuracy of its notices.  *See id.* ¶¶ 75-91, 95.

Significantly, RCN ignores multiple court decisions addressing these same alleged flaws in Rightscorp's infringement detection system and concluding that Rightscorp's evidence is admissible, sufficient to survive summary judgment, and capable of supporting a jury verdict.  Most notably, in reaching its verdict, the jury in *BMG v. Cox* rejected Cox's argument at trial that Rightscorp's evidence was unreliable because it did not collect all the forensic data it possibly could have. Further, in resolving post-trial motions, the court expressly credited Rightscorp's notices and their "significant evidentiary value" in documenting infringement on BitTorrent.  *Cox*, 199 F. Supp. 3d at 972.

Similarly, Grande raised the same exact critiques of Rightscorp that RCN alleges here, moving for evidentiary sanctions on the basis of alleged spoliation, but the magistrate judge in that case denied that motion. *See Grande*, No. 17-cv-365, 2019 WL 4738915, at *2 n.1 & *3-4 (W.D. Tex. Sept. 27, 2019). The district court in *Grande* also credited the reliability of Rightscorp's notices in holding as a matter of law that Grande was not entitled to a DMCA defense and denying Grande's motion for summary judgment. *See* 384 F. Supp. 3d 743, 757-58 (W.D. Tex. 2019). That case is scheduled to proceed to trial in May 2021, where the jury will hear evidence about Rightscorp's notices and be entitled to consider that evidence in rendering a verdict.

While RCN also alleges that Rightscorp continues to send it infringement notices to this day, *see* Counterclaim ¶ 124, RCN concedes that Rightscorp does not do so on behalf of Plaintiffs or the RIAA, *see id.* ¶¶ 73, 74, 96. Indeed, RCN acknowledges that Plaintiffs and the RIAA have never retained Rightscorp to monitor online infringement or send infringement notices for them. *See id.* Thus, RCN's pleading confirms that Rightscorp has at all times operated independently of Plaintiffs and the RIAA when it sent and allegedly continues to send RCN infringement notices.

## LEGAL STANDARD

When considering a motion to dismiss a counterclaim under Rule 12(b)(6), a court "undertakes the same analysis as it would for claims in a complaint." *Merchants Mutual Ins. Co. v. 215 4th St., LLC*, No. 19-cv-9206 (ES), 2020 WL 634149, at *1 (D.N.J. Feb. 10, 2020) (granting motion to dismiss counterclaim). Accordingly, a court must determine whether a counterclaim-plaintiff has pled "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). In undertaking this inquiry, a court may consider the counterclaim-plaintiff's pleading as well as any materials of which the court can take judicial notice, such as "public records, including judicial proceedings." *S. Cross Overseas Agencies, Inc.*, 181 F.3d at 426.

## ARGUMENT

RCN's Counterclaim is fatally flawed in several obvious ways, each of which independently compels dismissal with prejudice. *First*, the Counterclaim is preempted by 17 U.S.C. § 512, enacted as part of the DMCA. *Second*, RCN does not have statutory standing to pursue a UCL claim against Plaintiffs or the RIAA. *Third*, RCN fails to plead it is entitled to a UCL remedy against Plaintiffs or the RIAA.

## I.     THE DMCA PREEMPTS RCN'S COUNTERCLAIM.

Federal law fully regulates the relationship between content owners and online service providers ("OSPs")—including ISPs like RCN—that operate networks on or through which copyrighted material is distributed. That integrated regulatory structure is contained in Section 512, enacted as part of the DMCA, and is based on a carefully negotiated balancing of the competing interests of copyright owners and OSPs in the online marketplace. In order to give full effect to this considered and calibrated congressional balance, attempts to use state laws to modify or augment Section 512's regulatory structure are preempted as a matter of law. Because RCN's attempt to use the UCL as a basis for its Counterclaim would interfere with the deliberate balance Congress struck in Section 512, it is preempted and should be dismissed with prejudice.

State law is preempted when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 457, 476 (3d Cir. 2015) (internal quotations omitted). This principle, known as "conflict" preemption, has been invoked by the Supreme Court when the application of state law would be at odds with the "congressional calibration" of policies employed to achieve a federal goal. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 380 (2000) (preempting state sanctions law

that applied a different amount of pressure on foreign nation than federal sanctions law addressing the same nation); *see also Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 423-24 (2003) (preempting California statute that took a "different tack" to regulate an issue that was regulated federally).  This result is mandated regardless of whether it is possible to comply with both state and federal regulations. *See Crosby*, 530 U.S. at 380.   Further, conflict preemption applies regardless of whether the federal or state policy is subjectively deemed preferable. *See Garamendi*, 539 U.S. at 427.

These principles are dispositive in resolving this motion, because applying the UCL in the manner RCN alleges would unilaterally expand the rights of OSPs without any consideration for how such an expansion affects the overall balance struck by Congress in the DMCA.  In enacting Section 512, Congress sought to create a comprehensive statutory framework for combating online copyright infringement that was designed to "provide strong incentives for service providers and copyright owners to cooperate to detect and deal with copyright infringements."  H.R. Rep. No. 105-796 at 72 (1998) (Conf. Rep.).  Thus, the legislative choices Congress made in Section 512 reflect a "dominant" federal interest "assumed to preclude enforcement of state laws on the same subject." *Stevens v. Vodka & Milk, LLC*, No. 17-cv-8603, 2018 U.S. Dist. LEXIS 43666, at *7 (S.D.N.Y. Mar. 12, 2018) (internal quotations omitted).  The strength of the

14

federal interest in maintaining the balance of rights and remedies enumerated in Section 512 is manifest both because copyright law is "overwhelmingly controlled by Congress" generally and because the specific policies reflected in Section 512 are "creations entirely of federal law." *Id.* at \*6-7.

Accordingly, multiple courts have applied conflict preemption to preclude applications of state law that would interfere with the proper functioning of Section 512. *See Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1205-06 (N.D. Cal. 2004) (applying conflict preemption because Section 512 provided the exclusive remedies available to OSP); *see also Lenz v. Universal Music Corp.*, No. 07-cv-3783, 2008 WL 962102, at \*4 (N.D. Cal. Apr. 8, 2008) (following *Diebold*).

The foundation for the congressional balancing of the interests of OSPs and copyright owners was the creation of a series of "safe harbor" affirmative defenses that OSPs could invoke in response to claims of secondary liability for copyright infringement occurring on their networks. *See* 17 U.S.C. § 512(a)–(d). Congress expressly conditioned eligibility for those safe harbors on certain conditions, some of which apply to all of the safe harbors and some of which apply only to certain safe harbors. *See id.*; 17 U.S.C. § 512(i).

From the earliest stages of negotiating and drafting the DMCA, Congress anticipated that OSPs operating within the new regulatory regime would receive notices from copyright owners identifying infringements on the OSPs' networks.

Congress expressly wanted to "remove possible disincentives" for OSPs to take action in response to such notices in order "to cooperate with copyright owners by taking steps to prevent infringement."   H.R. Rep. No. 105-551 Part 1 at 26 (Judiciary Rep.).   To effectuate these goals, Congress expressly considered what rights and remedies should be available to OSPs in the event they received "information indicating infringement" and relied on that information.   *Id.*   That consideration required Congress to balance a copyright owner's desire to be able to notify OSPs of infringing material and an OSP's desire to minimize potential consequences if it relied on such infringement notices.

The result of that balancing was Section 512(f), which created a private right of action for OSPs to sue when they receive and rely on false infringement notices. *See* 17 U.S.C. § 512(f); *accord Diebold*, 337 F. Supp. 2d at 1206 (recognizing that "Congress carefully balanced the competing interests" at stake in drafting Section 512(f)).   In deciding to give OSPs a private right of action, Congress determined that such a claim would only be permitted when the OSP was "relying" on a misrepresentation in an infringement notice "in removing or disabling access to the material or activity claimed to be infringing."   17 U.S.C. § 512(f).

RCN does not allege a claim under Section 512(f), and for an obvious reason: it cannot in good faith claim that it ever relied on a Rightscorp notice to remove or disable access to any infringing material.   Indeed, RCN specifically

alleges that none of Rightscorp's infringement notices ever complied with its DMCA policy and concedes that when notices do not comply with that policy, the only action it takes in response to those notices is to catalog them in its internal "DMCA System." Counterclaim ¶¶ 51-55, 99. These allegations foreclose any possibility that RCN could claim an entitlement to relief under Section 512(f).

Unable to invoke the express remedy that Congress provided to address an OSP's receipt of allegedly false infringement notices, RCN instead seeks to supplement that remedy by claiming a right to relief under state law. However, conflict preemption precludes such a result. *See Stevens*, 2018 U.S. Dist. LEXIS 43666, at \*5-7; *Diebold*, 337 F. Supp. 2d at 1206; *Lenz*, 2008 WL 962102, at \*4. Indeed, if RCN's Counterclaim were viable, it would supplement the legal remedies available to OSPs beyond those specifically provided in Section 512(f) and subject copyright owners notifying such OSPs of infringement to potential penalties not found in federal law. A private litigant may not second guess the wisdom of Congress's choice in balancing Section 512(f) as it did by seeking to invoke supplementary rights under state law that would afford further rights to OSPs and thus tilt the overall balance reached by Congress. It is simply beyond the power of state law to modify or augment the carefully integrated federal regime. *See Garamendi*, 539 U.S. at 427. Because RCN seeks to apply state law

17

in a manner that stands as an obstacle to the proper functioning of Section 512, the Counterclaim is preempted and should be dismissed with prejudice.

## II. RCN LACKS STANDING TO PURSUE A UCL CLAIM AGAINST PLAINTIFFS AND THE RIAA.

RCN asserts its Counterclaim under California's UCL.  *See* Counterclaim ¶¶ 115-26.   However, RCN is demonstrably unable to satisfy multiple preconditions to relief under that statute.

Chief among them is the UCL's statutory standing provision, which requires private plaintiffs to have "lost money or property as a result of the unfair competition" alleged.  Calif. Bus. & Prof. Code § 17204.  However, the facts alleged in the Counterclaim demonstrate that RCN cannot satisfy this requirement with regard to Plaintiffs and the RIAA.  RCN's claim against them must therefore be dismissed.

RCN alleges that it has been injured in two narrow ways: (1) by allegedly incurring legal costs in evaluating Rightscorp's notices and defending itself against Plaintiffs' copyright claims, and (2) by allegedly devoting "time and resources" to processing Rightscorp's infringement notices through RCN's internal systems. Counterclaim ¶ 117.  Neither set of allegations, even if true, is legally sufficient to give RCN standing to pursue a UCL claim against Plaintiffs or the RIAA.

## A.    The *Noerr-Pennington* Doctrine Immunizes Plaintiffs And The RIAA From Liability Arising Out Of Their Litigation Activities.

The *Noerr-Pennington* doctrine immunizes Plaintiffs and the RIAA from incurring any liability as a result of developing, filing, and prosecuting Plaintiffs' copyright infringement lawsuit against RCN.   Thus, RCN is precluded from invoking the legal costs it has incurred in responding to that protected activity as a basis to allege standing under the UCL.

The *Noerr-Pennington* doctrine "shields constitutionally protected conduct from civil liability."  *Campbell v. Pa. Sch. Bds. Ass'n*, 972 F.3d 213, 218 (3d Cir. 2020).   Specifically, it provides civil immunity to parties that petition the government for redress—including by petitioning the judiciary for relief by filing and prosecuting a lawsuit—for all conduct related to that petitioning.  *See A.D. Bedell Wholesale Co. v. Philip Morris Inc.*, 263 F.3d 239, 250-51 (3d Cir. 2001) (describing scope of doctrine).

The doctrine is broad.  It not only immunizes petitioning conduct (*i.e.*, litigation), it also immunizes conduct that is "incidental to litigation," such as preparing and sending pre-litigation demand letters and negotiating settlement agreements.  *Id.* at 252-53; *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 935 (9th Cir. 2006).  Such protection is necessary "to preserve the breathing space required for the effective exercise" of a party's First Amendment petitioning rights.  *Sosa*, 437 F.3d at 933.

19

While the *Noerr-Pennington* doctrine arose in the context of antitrust disputes, courts at all levels of the federal judiciary, including the Supreme Court, have extended the doctrine "to offer protection to citizens' petitioning activities in contexts outside the antitrust area." *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 326-27 (3d Cir. 1999). Most significantly, for purposes of the instant action, the Supreme Court has specifically applied the doctrine to immunize parties pursuing claims of copyright infringement from liability associated with the prosecution of those claims. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 51-52 (1993) [hereinafter "*PRE*"]. In fact, courts have applied the doctrine to immunize parties from *all* potential claims of civil liability arising out of the petitioning activity, including state-law claims of unfair competition. *See id.* at 52 (applying doctrine to dismiss state unfair competition counterclaims[5]); *Malibu Media, LLC v. Doe*, 238 F. Supp. 3d 638, 643-45 (M.D. Pa. 2017) (same).

In alleging that its legal costs incurred defending against Plaintiffs' copyright claims in this lawsuit constitute an injury under the UCL, RCN seeks to impose exactly the type of liability on Plaintiffs and the RIAA that the Supreme Court prohibited in *PRE*. *See* Counterclaim ¶ 117 (alleging that RCN's injury

---

[5] While the Supreme Court's opinion in *PRE* refers to the relevant counterclaims only as "various state-law infractions," 508 U.S. at 52, the circuit court opinion below makes clear that those infractions included alleged violations of "state . . . unfair competition laws." *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1527 (9th Cir. 1991).

involves "its defense of [Plaintiffs'] claims in this matter); *id.* ¶ 75 (alleging that the RIAA is "assist[ing Plaintiffs] in bringing this lawsuit"). Indeed, the actions of Plaintiffs in filing and prosecuting a lawsuit *is* precisely the type of First Amendment petitioning activity the *Noerr-Pennington* doctrine was designed to protect. *See A.D. Bedell*, 263 F.3d at 250-51.[6]

More specifically, it is well settled that *Noerr-Pennington* immunity precludes a party from using its legal costs as a basis to satisfy the UCL's statutory standing requirement. *See Aguilera v. Matco Tools Corp.*, No. 19-cv-1576, 2020 WL 1188142, at *7-8 (S.D. Cal. Mar. 12, 2020) (applying *Noerr-Pennington* doctrine to dismiss UCL claim for lack of standing when alleged injury consisted of legal costs); *TCL Communications Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*, No. 14-cv-341, 2016 WL 7049263, at *2-4 (C.D. Cal. Aug. 9, 2016) (same); *James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, No. 11-cv-1309, 2013 WL 655314, at *14 (S.D. Cal. Feb. 21, 2013) (same); *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1077 (W.D. Wis. 2012) (same). Thus, because Plaintiffs and the RIAA are entitled to *Noerr-Pennington* immunity

---

[6] To the extent RCN alleges that the RIAA caused any separate injury by acquiring Rightscorp's infringement evidence, *Noerr-Pennington* immunity still applies because RCN acknowledges that the RIAA did so in order for Plaintiffs to bring this suit. *See* Counterclaim ¶ 75. Such activity is clearly linked to this litigation and thus protected by the *Noerr-Pennington* doctrine. *See A.D. Bedell*, 263 F.3d at 252-53 (holding that non-petitioning activity "incidental to litigation" is protected).

for any alleged injury caused by bringing this action, RCN is precluded from invoking its legal costs as an economic injury sufficient to satisfy the UCL's standing requirement.  *See Aguilera*, 2020 WL 1188142, at *7-8; *TCL Communications*, 2016 WL 7049263, at *2-4.

As a result, RCN's UCL claim premised on this injury should be dismissed with prejudice.  *See Aguilera*, 2020 WL 1188142, at *8.

### B.   Plaintiffs And The RIAA Have Not Caused RCN Any Injury Relating To Its Processing Of Rightscorp's Notices.

As noted above, RCN's Counterclaim also claims injury relating to the "time and resources" RCN allegedly spent processing Rightscorp's allegedly fraudulent notices.  *See* Counterclaim ¶ 117.  However, that allegation also fails to confer statutory standing to sue Plaintiffs or the RIAA under the UCL.

The UCL standing requirement compels plaintiffs to allege and ultimately demonstrate that they have been injured "as a result of" the alleged unfair competition.  Calif. Bus. & Prof. Code § 17204.  The words "as a result of" mean "caused by."  *Kwikset Corp. v. Sup. Ct.*, 246 P.3d 877, 887 (Cal. 2011); *see also Beasley v. Lucky Stores, Inc.*, 400 F. Supp. 3d 942, 959 (N.D. Cal. 2019) (requiring a UCL plaintiff to show its alleged "economic injury was the result of, *i.e.*, caused by, the unfair business practice or false advertising that is the gravamen of the claim").  However, RCN's own allegations foreclose any possibility that Plaintiffs

or the RIAA caused RCN to spend time or resources processing Rightscorp's infringement notices.

RCN expressly pleads, as it must, that neither Plaintiffs nor the RIAA have ever retained Rightscorp to send infringement notices on their behalf. *See* Counterclaim ¶¶ 73, 74, 96. The inescapable corollaries of that fact are that RCN knows Rightscorp is not and has never been an agent of Plaintiffs or the RIAA in sending notices, and that RCN knows Rightscorp acted independently from those entities when it detected infringements on BitTorrent and then notified ISPs of those infringements. Thus, it is undisputed that Plaintiffs and the RIAA *did not* cause Rightscorp to send notices to RCN and *did not* cause RCN to respond to such notices.

In a last-ditch effort to mend this fatal flaw, RCN alleges that Rightscorp has sent notices to RCN with the "knowledge and consent" of Plaintiffs and the RIAA. Counterclaim ¶¶ 96, 117. But that bald assertion falls far short of satisfying the UCL's causation requirement. As a threshold matter, given RCN's acknowledgement that Rightscorp does not act and indeed has never acted on behalf of Plaintiffs or the RIAA when sending notices, *see* Counterclaim ¶¶ 73, 74, Rightscorp is concededly not the agent of either Plaintiffs or the RIAA in sending notices. Accordingly, neither Plaintiffs nor the RIAA can have any potential liability simply because they allegedly knew about Rightscorp's activity. Further,

given RCN's admission that neither Plaintiffs nor the RIAA ever retained Rightscorp to monitor RCN (or any other ISP), the allegation that Plaintiffs and the RIAA "consented" to Rightscorp's conduct is a legal non-sequitur.

The law squarely rejects RCN's position on this issue. The UCL requires that any attempt to establish a defendant's liability "must be based on his personal participation in the unlawful practices and unbridled control over" those practices. *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (Ct. App. 2002) (internal quotations omitted); *see also In re Firearm Cases*, 126 Cal. App. 4th 959, 983 (Ct. App. 2005) (firearm dealers had no liability under UCL for misuse of firearms by third parties they did not control). Accordingly, even if Plaintiffs and the RIAA knew about Rightscorp's activities (or even consented, whatever that term means in the absence of any contractual relationship), RCN's concession that Plaintiffs and the RIAA did not control those activities deprives RCN of standing to sue those parties under the UCL and compels dismissal of RCN's Counterclaim.

## III. RCN HAS FAILED TO PLEAD AN ENTITLEMENT TO ANY UCL REMEDY AGAINST PLAINTIFFS OR THE RIAA.

RCN's Counterclaim should also be dismissed as a matter of law for the simple reason that RCN has failed to allege it is entitled to any remedy available under the UCL. The UCL offers private plaintiffs like RCN two and only two remedies: restitution and injunctive relief. *See Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Ca. 1999); *In re Yahoo! Inc. Customer*

24

*Data Sec. Breach Litig.*, No. 16-MD-2752, 2017 WL 3727318, at \*20 (N.D. Cal. Aug. 30, 2017).  RCN's allegations fail to allege facts creating a plausible right to either remedy from Plaintiffs or the RIAA.  Thus, RCN has failed to state a claim against them.

### A.    RCN Has Failed To Plead Facts That Would Entitle It To Seek Restitution Under The UCL Against Plaintiffs And The RIAA As A Matter Of Law.

RCN has failed to plead facts that would entitle it to the remedy of restitution.  Entitlement to restitution under the UCL "requires both that money or property have been lost by a plaintiff, on the one hand, *and that it has been acquired by a defendant*, on the other."  *Kwikset Corp.*, 246 P.3d at 895 (emphasis added).  That rule exists because restitution under the URL "is limited to the *return* of property or funds in which the plaintiff has an ownership interest."  *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 453 (2005) (emphasis added) (dismissing complaint that failed to allege any gain by defendant).

That rule mandates dismissal of all UCL restitution claims against Plaintiffs and the RIAA.  RCN does not and cannot allege that any counterclaim-defendant "acquired" any of the loss that RCN alleges it incurred.  With regard to the time RCN allegedly spent processing Rightscorp's notices, such an allegation would be nonsensical.   Further, RCN cannot plausibly allege that any counterclaim-defendant acquired its legal costs; presumably, RCN's lawyers have acquired that

money or will do so.  *See Aguilera*, 2020 WL 1188142, at *8 (holding that because plaintiff's legal costs "were not paid to" defendant, restitution was not available under the UCL).[7]

### B.   RCN Has Failed To Plead A Claim For Injunctive Relief Against Plaintiffs And The RIAA.

To seek injunctive relief under the UCL, a plaintiff must plausibly plead that the supposed wrongful acts are "likely to be repeated in the future."  *Madrid*, 130 Cal. App. 4th at 465 (quoting *Cisneros v. U.D. Registry, Inc.*, 39 Cal. App. 4th 548 (Ct. App. 1995)).  However, under the facts alleged in RCN's Counterclaim, it would be impossible for Plaintiffs or the RIAA to harm RCN on an ongoing basis.

RCN specifically seeks an injunction to stop Rightscorp from sending it additional infringement notices that do not comply with its DMCA policy.  *See* Counterclaim ¶¶ 123-126 & Request for Relief ¶ (C).  However, as shown above, Rightscorp is an independent actor that neither Plaintiffs nor the RIAA control.

---

[7] RCN's attempt to recover its legal costs under the UCL is also preempted by federal copyright law.  Recovery of legal costs associated with litigating a copyright lawsuit is governed by the Copyright Act and subject to the standard articulated therein.  *See* 17 U.S.C. § 505 (permitting the court to award attorneys' fees in a copyright action "in its discretion").  For the reasons discussed above, conflict preemption prohibits RCN from recovering those costs under a different standard by litigating a claim under state law.  *See supra* Argument § I (describing conflicts preemption).  Moreover, to the extent RCN alleges its legal costs include what it has spent to prosecute its UCL claim, recovery of those costs is separately prohibited under the UCL as a matter of law.  *See Cal-Tech*, 973 P.2d at 539 (holding that UCL plaintiffs "may not receive . . . attorney fees").

*See supra* Argument § II.B; Counterclaim ¶¶ 73-74.  Neither Plaintiffs nor the RIAA can stop Rightscorp from sending infringement notices to RCN because Rightscorp is not sending the notices on their behalf.  Whether Rightscorp continues to send RCN infringement notices in the future and in what format has nothing to do with Plaintiffs or the RIAA.  Thus, RCN has not plausibly pled it is entitled to any injunction against Plaintiffs or the RIAA.

## IV. IN THE EVENT THAT RCN'S CLAIM AGAINST RIGHTSCORP SURVIVES A PLEADING CHALLENGE, IT SHOULD NONETHELESS BE STRICKEN FROM THIS ACTION.

In the event the Court dismisses RCN's Counterclaim against Plaintiffs and the RIAA, but does not dismiss the Counterclaim against Rightscorp, the Counterclaim against Rightscorp should be stricken as an improper third-party pleading pursuant to Rule 14.  Any party may move to strike such a claim.  *See* Fed. R. Civ. P. 14(a)(4).

Plaintiffs initiated this lawsuit to address RCN's role in knowingly contributing to and profiting from the massive infringement of Plaintiffs' copyrighted sound recordings by RCN's subscribers on RCN's network.  RCN has no valid defense to the claims asserted.  Thus, RCN's strategy from the earliest stages of this litigation has been to distract attention away from its own conduct and instead attempt to convert this case into an unrelated audit of Rightscorp's business practices.  RCN took this approach in moving to dismiss Plaintiffs'

claims,[8] in serving manifestly overbroad discovery,[9] and now in pursuing a legal claim against Rightscorp.[10]   Critically, RCN has done so despite *conceding* that Plaintiffs have nothing to do with Rightscorp's business practices.   *See* Counterclaim ¶ 74.

Recognizing that any attempt to file a third-party complaint against Rightscorp in this action would fail to satisfy the stringent requirements of Rule 14 (as discussed below), RCN made the calculated choice to assert its claim against Plaintiffs in addition to Rightscorp in order to frame its claim against Rightscorp as a counterclaim.  RCN made that tactical decision to enable it to make the argument that adding Rightscorp in this action is proper under Rule 20's more lenient standard for permissive joinder.  *See* Counterclaim ¶ 39 (invoking Rule 20).[11] Indeed, Rule 20 permits a counterclaim-plaintiff to join a third party so long as the third party's alleged liability arises out of the same transaction or occurrence at issue in the counterclaim.  *See* Fed. R. Civ. P. 20(a)(2).

---

[8] *See* Defs.' Mtn. to Dismiss at 1-2 (Jan. 21, 2020, Dkt. No. 15-1) (focusing on Rightscorp's business).

[9] *See* Ltr. from RCN to Judge Quraishi at 3-4 (Sept. 28, 2020, Dkt. No. 102) (seeking to compel additional discovery related to Rightscorp).

[10] *See* Counterclaim ¶¶ 65-97 (alleging facts related to Rightscorp's business).

[11] The Rules separately permit counterclaim-plaintiffs to join third parties to counterclaims pursuant to Rule 20.  *See* Fed. R. Civ. P. 13(h).

28

However, as clearly demonstrated above, RCN does not and cannot plead a viable counterclaim against Plaintiffs.  That substantive failure also has a procedural side effect: without a plausible claim against Plaintiffs, RCN has no counterclaim to which it can join Rightscorp under Rule 20.  *See Transvision Technologies Holding, Inc. v. Knight*, No. 04-cv-2086, 2005 WL 2373835, at *2 (S.D. Ind. Sept. 26, 2005) (holding that Rule 20 does not govern joinder of claim against third party that is "not part of a counterclaim").

Instead, if RCN's claim against Plaintiffs is dismissed, RCN's ability to add Rightscorp to this action must be analyzed under the stricter standard of Rule 14, which governs third-party practice.  That Rule only permits a defendant to implead a third party "who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1).  To satisfy this standard, it is irrelevant whether the defendant's claim against the third party "arises out of the same facts" as the plaintiff's claim against the defendant.  *See United States v. Berk & Berk*, 767 F. Supp. 593, 604 (D.N.J. 1991); Wright & Miller, *Federal Practice & Procedure* § 1446 (concluding that the fact that a third-party claim "arises from the same transaction or set of facts as the original claim is not enough").  Rather, the third-party defendant's liability must be "derivative" of the liability alleged against the defendant in the underlying action.  *F.D.I.C. v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994) (dismissing third-party complaint); *see also Churchill Downs, Inc. v. NLR*

*Entm't*, No. 14-cv-3342 (KM), 2015 WL 5854134, at \*6 (D.N.J. Oct. 5, 2015) (requiring that third-party plaintiff plead "a claim of secondary liability" to proceed under Rule 14); Wright & Miller, *Federal Practice & Procedure* § 1446 (describing the attempt "to transfer to the third-party defendant the liability asserted against defendant" as the "crucial characteristic" of a proper Rule 14 claim).

It is beyond dispute that RCN does not and cannot allege any legal theory or relationship between itself and Rightscorp that would make Rightscorp liable to RCN for any judgment Plaintiffs obtain against RCN.  To the contrary, RCN's purported claim against Rightscorp is effectively a fraud or tort claim arising out of Rightscorp's independent business practices.  Rule 14 prohibits litigating such a claim in the same action as Plaintiffs' claims against RCN.

Had RCN, in the first instance, alleged its claim against Rightscorp in a standalone third-party complaint, Rule 14 plainly would have barred RCN's pleading.  RCN cannot avoid that result simply because it packaged that claim with a facially deficient counterclaim against Plaintiffs.  Accordingly, if the Counterclaim is dismissed as to Plaintiffs and the RIAA, RCN should not be permitted to litigate its claim against Rightscorp in this lawsuit.

**CONCLUSION**

For the reasons stated above, RCN's Counterclaim should be dismissed with prejudice.  In the event the Court dismisses RCN's Counterclaim against Plaintiffs and the RIAA but not against Rightscorp, the Court should strike RCN's third-party claim against Rightscorp.

Dated:  November 6, 2020          Respectfully submitted,

*/s/ Thomas R. Curtin*
Thomas R. Curtin
George C. Jones
McELROY, DEUTSCH, MULVANEY
 & CARPENTER, LLP
1300 Mount Kemble Ave, P.O. Box 2075
Morristown, NJ 07962-2075
Tel: (973) 993-8100
Fax: (973) 425-0161
tcurtin@mdmc-law.com
gjones@mdmc-law.com

Andrew H. Bart (*pro hac vice*)
Jacob L. Tracer (*pro hac vice*)
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Tel: (212) 891-1600
Fax: (212) 891-1699
abart@jenner.com
jtracer@jenner.com

Robert B. Gilmore (*pro hac vice*)
Philip J. O'Beirne (*pro hac vice*)
Michael A. Petrino (*pro hac vice*)
Kevin L. Attridge (*pro hac vice*)
STEIN MITCHELL BEATO
 & MISSNER LLP
901 15th Street, N.W., Suite 700
Washington, DC 20005
Tel: (202) 737-7777
Fax: (202) 296-8312
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com
kattridge@steinmitchell.com

*Attorneys for Plaintiffs and Recording*
*Industry Association of America, Inc.*