# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

UMG RECORDINGS, INC., *et al.*,

          Plaintiffs,

   v.

RCN TELECOM SERVICES, LLC, *et al.*,

          Defendants.

and

RCN TELECOM SERVICES, LLC,

          Countercomplaint-Plaintiff,

   v.

UMG RECORDINGS, INC., *et al.*,
RECORDING INDUSTRY
ASSOCIATION OF AMERICA, INC.,
and RIGHTSCORP, INC.

          Countercomplaint-Defendants.

Civil Action No. 19-17272
(MAS) (ZNQ)

**Return Date: January 4, 2021**

**ORAL ARGUMENT
REQUESTED**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY
## RIGHTSCORP, INC. TO DISMISS COUNTERCOMPLAINT

Brian J. Levine
The Law Office of Brian J. Levine
75 North Bridge Street
Somerville, NJ 08876

*Attorney for Rightscorp, Inc.*

## <u>TABLE OF CONTENTS</u>

I.     **INTRODUCTION AND BACKGROUND** ................................................. 3

II.    **LEGAL STANDARD** .................................................................. 4

A.    Pleading Requirements ................................................................ 4

B.    California's Unfair Competition Law................................................ 6

III.   **ARGUMENT**................................................................................. 8

A.    The Countercomplaint Should Be Dismissed In Its Entirety For Failure To Comply With FRCP 9(b) ............................................................ 8

    1.    Rule 9(b) Applies to RCN's Entire Countercomplaint. ............. 8

    2.    RCN Has Not and Cannot Meet This Heightened Burden ........ 9

    3.    RCN's Vague Spoliation Claims Do Not Support the UCL Claim. .................................................................................. 13

    4.    RCN Fails to Adequately Allege Any Unfair Conduct. .......... 15

B.    Dismissal is Warranted Because RCN Lacks Standing Under The UCL. ... 18

    1.    RCN Cannot Establish Causation Because It Does Not Claim to Have Relied on Anything Rightscorp Has Allegedly Done. ... 19

    2.    Rightscorp Did Not Cause RCN to Create Its "System" To Address Copyright Infringement Claims.. .............................. 20

    3.    RCN Cannot Identify A Cognizable Loss Related to Maintaining the System............................................................ 22

    4.    Rightscorp Did Not Harm RCN By Notifying RCN Of Copyright Infringement On Its Network................................. 22

    5.    Plaintiff's Spoliation Theory Fails for Lack of Causation and Injury. ................................................................................... 25

    6.    The *Noerr-Pennington* Doctrine Immunizes Rightscorp From Claims Relating To This Litigation. ...................................... 26

C.    RCN Is Not Entitled To Restitution................................................ 26

D.    RCN's Countercomplaint Is Conflict-Preempted By The DMCA.............. 27

IV.   **CONCLUSION** ........................................................................ 28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Nw. Mut. Life Ins. Co.*,
  172 F.3d 467 (7th Cir. 1999) ............................................................. 11

*Alvarez v. of N.A.*,
  313 Fed. Appx. 465 (3d Cir. 2008) ..................................................... 5

*Asberry v. Money Store*,
  218CV01291ODWPLAX, 2018 WL 6834309 (C.D. Cal. Dec. 27,
  2018) ................................................................................................. 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................ 4, 5

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  199 F. Supp. 3d 958 (E.D. Va. 2016), *aff'd in part, rev'd in part on
  other grounds*, 881 F.3d 293 (4th Cir. 2018) ......................... 2, 12, 13

*U.S. ex rel. Bogina III v. Medline Indus., Inc.*,
  809 F.3d 365 (7th Cir. 2016) ............................................................ 11

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997) ............................................................. 6

*Cel-Tech Commun., Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ................................................................ 15, 17

*Citizens United v. Fed. Election Comm'n*,
  558 U.S. 310 (2010) .......................................................................... 23

*Clapper v. Amnesty Int'l USA*,
  133 S. Ct. 1138 (2013) ...................................................................... 23

*In re Commonwealth's Motion to Appoint Counsel Against or*
  *Directed to Defender Ass'n of Phila.*,
  790 F.3d 476 (3d Cir. 2015)................................................................ 27

*Daro v. Superior Court*,
  151 Cal. App. 4th 1079 (2007), *as modified on denial of reh'g*
  (July 3, 2007) ...................................................................................... 25

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of California*,
  SACV150736DOCDFMX, 2018 WL 10072961 (C.D. Cal. May 1,
  2018) .................................................................................................... 24

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350 (Cal. App. 4th Dist. 2010).......................... 17

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ............................................................. 16

*Engel v. Novex Biotech, LLC*,
  2015 WL 846777 (N.D. Cal. Feb. 25, 2015) ...................................... 15

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir.2007)...................................................................5

*In re Galena Biopharma, Inc. Securities Litig.*,
  336 F. Supp. 3d 378 (D.N.J. 2018) .................................................... 11

*GlenFed, Inc. Sec. Litig.*,
  42 F.3d 1541 (9th Cir. 1994), *superseded by statute on other*
  *grounds as stated in Johnson v. Wal-Mart Stores, Inc.*, 544 F.
  App'x 696 (9th Cir. 2013) ............................................................... 6, 9

*Haley v. Macy's, Inc.*,
  263 F. Supp. 3d 819 (N.D. Cal. 2017)............................................... 12

*Hall v. Time Inc.*,
  158 Cal. App. 4th 847 (Cal. App. 4th Dist. 2008), *as modified* (Jan.
  28, 2008) .......................................................................................... 6, 7

*Hauk v. JP Morgan Chase Bank USA*,
  552 F.3d 1114 (9th Cir. 2009) ........................................................... 15

*Institutional Inv'rs Group v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)......................................................................9

*Johansson v. C. Garden & Pet Co.*,
  804 F. Supp. 2d 257 (D.N.J. 2011).........................................................8

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................................ 8, 9

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ........................................................................ 26

*Kowalsky v. Deutsche Bank Natl. Tr. Co.*,
  CV1407856CCCJBC, 2017 WL 4842376 (D.N.J. Oct. 25, 2017)................... 14

*Kwan v. SanMedica International*
  854 F.3d 1088 (9th Cir. 2017) ............................................................. 14

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ............................................................. 6, 18, 20

*Lazar v. Hertz Corp.*,
  69 Cal. App. 4th 1494 (1999) ............................................................ 16

*Madrid v. Perot Sys. Corp.*,
  130 Cal. App. 4th 440 (Cal. App. 3d Dist. 2005) .............................. 26

*Mayron v. Google LLC*,
  54 Cal. App. 5th 566 (Cal. App. 6th Dist. 2020), reh'g denied (Oct.
  2, 2020), review filed (Oct. 21, 2020) ............................................... 23

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009) ....................................................................... 24

*Mladenov v. Wegmans Food Markets, Inc.*,
  124 F. Supp. 3d 360 (D.N.J. 2015)........................................................6

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*
  107 Cal. App. 4th 1336 (2003) .......................................................... 14

*Organon Inc. v. Mylan Pharms., Inc.*,
  293 F. Supp. 2d 453 (D.N.J. 2003) ........................................................5

*Parilla v. IAP Worldwide Servs., VI, Inc.,*
    368 F. 3d 269 (3d Cir. 2004)................................................................... 19

*In re Qualcomm Litig.,*
    No. 17-CV-00108-GPC-MDD, 2017 WL 5985598 (S.D. Cal. Nov.
    8, 2017) ............................................................................................... 19

*RCN Telecom Services, LLC v. BMG Rights Mgmt. (US) LLC,*
    No. 16-cv-4417 (S.D.N.Y.), Dkt. No. 45 (Sept. 16, 2016).................... 19, 20, 22

*In re Riddell Concussion Reduction Litig.,*
    77 F. Supp. 3d 422 (D.N.J. 2015) ............................................... 10, 18

*Robinson v. HSBC Bank USA,*
    732 F. Supp. 2d 976 (N.D. Cal. 2010) ............................................... 24

*Rojas v. Bosch Solar Energy Corp.,*
    443 F. Supp. 3d 1060 (N.D. Cal. 2020) ............................................. 24

*Route v. Mead Johnson,*
    2013 WL 658251 (C.D. Cal. Feb. 21, 2013) .................................... 15

*Scripps Clinic v. Super. Ct.,*
    108 Cal. App. 4th 917 (Cal. App. 4th Dist. 2003)............................. 17

*Stanley v. Bayer Healthcare, LLC,*
    2012 WL 1132920 (S.D. Cal. Apr. 3, 2012)..................................... 15

*Theme Promotions, Inc. v. News Am. Mktg. FSI,*
    546 F.3d 991 (9th Cir. 2008) ............................................................ 26

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.,*
    No. CIV 08-939 (DRD), 2009 WL 2940081 (D.N.J. Sept. 11,
    2009) .................................................................................................. 18

*Travelers Indem. Co. v. Cephalon, Inc.,*
    620 Fed. Appx. 82 (3d Cir. 2015)............................................... 6, 10

*Travelers Prop. Cas. Co. of Am. v. Centex Homes,*
    11-3638-SC, 2013 WL 4528956 (N.D. Cal. Aug. 26, 2013)............................ 18

*Two Jinn, Inc. v. Gov't Payment Serv., Inc.,*
    233 Cal. App. 4th 1321 (2015) ........................................................ 24

*UMG Recordings, Inc. v. Grande Commc'ns, LLC*,
    384 F. Supp. 3d 743 (W.D. Tex. 2019) ........................ 2, 13

*Vess v. Ciba–Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...................................8

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2d Cir. 2013).........................................3

*Von Koenig v. Snapple Bev. Corp.*,
    713 F. Supp. 2d 1066 (E.D. Cal. 2010) ......................... 16

*Yourish v. California Amplifier*,
    191 F.3d 983 (9th Cir. 1999) ................................... 11

**Statutes**

17 U.S.C. § 512(i)(1)(A) .................................................3

Bus. & Prof. Code, § 17200 ....................................... 6, 17

Bus. & Prof. Code, § 17204 ....................................... 7, 21

Bus. & Prof. Code § 17208 ....................................... 20, 22

California's Unfair Competition Law ............................. *passim*

DMCA ....................................................................... *passim*

DMCA Section 512(a) ............................................... 3, 21

Truth in Lending Act................................................. 16

Rightscorp is a California based technology company engaged in the business of detecting online copyright infringement. Countercomplaint ("CC") ¶ 65. Displeased by the amount of infringement Rightscorp has detected on the RCN network, RCN fashioned a single fraud-based claim for violation of California's Unfair Competition Law ("UCL"). RCN's Countercomplaint is replete with vague allegations that Rightscorp, plaintiffs, and the RIAA have flooded RCN with fraudulent copyright infringement notices and somehow destroyed evidence along the way. *See, e.g.*, CC ¶¶ 1, 11, 13, 78, 81. RCN's vague claims of mass fraud cannot support a viable UCL claim and must be dismissed.

RCN's Countercomplaint is fatally flawed because it lacks the particularity required to sustain a UCL claim. The gravamen of RCN's claim is that the notices of infringement provided by the Countercomplaint Defendants are fraudulent. CC ¶ 123. Notably, RCN fails to identify even a single deceptive statement in any of the millions of notices provided by Rightscorp. Nor does RCN allege any facts to support its amorphous claims of destroyed evidence. In fact, RCN fails to attach even *one* allegedly false infringement notice to its Countercomplaint. Rather, the claim is anchored in non-specific and conclusory allegations made on "information and belief." RCN has not met its heightened burden under Rule 9(b).

Dismissal is warranted for several additional reasons. First, RCN lacks standing to bring a UCL claim because it has not identified the required economic

injury allegedly caused by Rightscorp. RCN does not claim to have relied on any of the allegedly misleading notices sent by Rightscorp—this alone is fatal to RCN's claim. Second, the Countercomplaint is devoid of any necessary facts to support an award of restitution, i.e., that Rightscorp improperly obtained money that previously belonged to RCN. Third, as explained in detail by Plaintiffs and the RIAA, the Countercomplaint is conflict-preempted by the DMCA. *See* Mem. of Law in Support of Motion by Plaintiffs and the RIAA to Dismiss Countercomplaint, Dkt. 122-1 (Nov. 6, 2020) [hereinafter "Pls.' Br."] at 13–18.

RCN is certainly free to take reasonable third-party discovery of Rightscorp, its code, its system, and how it detects infringement in an effort defend against the copyright infringement claims. Perhaps RCN will succeed where other ISPs have failed in challenging the accuracy and legitimacy of Rightscorp's infringement detection system.[1] But what RCN attempts here is a bridge too far—it cannot convert an infringement defense into an affirmative claim by alleging a massive and fraudulent scheme without any of the required specifics or factual support. The Countercomplaint should be dismissed.

---

[1] Rightscorp requests that the Court take judicial notice of other decisions finding Rightscorp's system to be valid, including *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 969 (E.D. Va. 2016), *aff'd in part, rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018) and *UMG Recordings, Inc. v. Grande Commc'ns, LLC*, 384 F. Supp. 3d 743, 757–58 (W.D. Tex. 2019). *See also* Section 3(a)(2), *infra*.

## I.     INTRODUCTION AND BACKGROUND

When Congress enacted the DMCA in 1998, it struck a balance between the interests of copyright owners and ISPs like RCN.  In particular, the DMCA provides certain "safe harbor" protections from liability for ISPs, but only if the ISPs meet certain requirements.  *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2013).  As relevant here, Section 512(a) of the DMCA provides a safe harbor to internet service providers that adopted and reasonably implemented a policy for the termination of repeat infringers on their network. 17 U.S.C. § 512(a); *see also* 17 U.S.C. § 512(i)(1)(A).

Rightscorp detects online copyright infringement and notifies ISPs like RCN of infringement occurring on its network.  Although the Countercomplaint does not attach any of Rightscorp's infringement notices, examples of the notices are available at ECF 15-3, and are incorporated by reference into the Countercomplaint. *See*, *e.g.*, CCP ¶ 1. Each notice includes extensive details about the alleged copyright infringement, including the infringing customer (by IP address), the work infringed, the date and time of the infringement, Rightscorp's contact information, and other technical information related to the infringement.

Although Rightscorp began sending these infringement notices to RCN in 2011, RCN admits that it did not develop its policy for handling such notices until 2016.  CC ¶ 48.  RCN refers to its policy as the "DMCA Policy," but its policy does

not implement any specific requirement of the DMCA, rather, the policy creates arbitrary requirements on top of it. *See id.* ¶ 51. RCN claims that "None of Rightscorp's emails to RCN regarding alleged copyright infringement complied with RCN's DMCA policy," meaning, by its own admission, RCN has not considered any of the letters that Rightscorp has provided. *Id.* ¶ 99; *see also* ¶ 53 ("Unless an email alleging copyright infringement meets [RCN's] requirements, RCN will not consider the accusation in determining whether to take the drastic step of permanently terminating a customer's internet access.").

Having admitted that it has not considered any of Rightscorp's notices, RCN now contends that Rightscorp's notices have caused RCN economic losses and constitute a fraudulent and unfair business practice that violates the UCL. *See* CC ¶¶ 115–126. As explained further below, the Countercomplaint makes broad and non-specific claims that Rightscorp, Plaintiffs, and the RIAA are engaged in a scheme to pepper RCN with fraudulent notices of infringement. There are simply no specific facts that RCN has asserted to support a claim under California's Unfair Competition Law. *Id.* ¶ 115 *et seq.* Dismissal is warranted.

## II.    LEGAL STANDARD

### A. Pleading Requirements

In order to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and to survive a motion to dismiss under Rule 12(b)(6), a

Countercomplaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Organon Inc. v. Mylan Pharms., Inc.*, 293 F. Supp. 2d 453, 456–57 (D.N.J. 2003) (the same standards apply to motions to dismiss complaints and counter-complaints). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the counterclaimant must plead "sufficient factual matter" to allow the court to draw the reasonable inference that the opposing party is liable for the misconduct alleged. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Conclusory allegations need not be accepted as true and cannot themselves state a claim. *Twombly*, 550 U.S. at 555–57.

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires plaintiffs to allege the "date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir.2007) (citation omitted). The Countercomplaint must contain facts "which will enable the court to draw an inference of fraud," and allegations in the form of conclusions or impermissible speculation as to the existence of fraud are insufficient. *Alvarez v. of N.A.*, 313 Fed.

App'x. 465, 467–68 (3d Cir. 2008) (citation omitted).[2] Rule 9(b) serves to give defendants "notice of the claims against them, provide[] an increased measure of protection for their reputations, and reduce[] the number of frivolous suits brought solely to extract settlements." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).

## B. California's Unfair Competition Law

The Countercomplaint's sole cause of action is under California's Unfair Competition Law (UCL), which permits civil recovery for "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Calif. Bus. & Prof. Code, § 17200; *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 851–52 (Cal. App. 4th Dist. 2008), *as modified* (Jan. 28, 2008); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 321 (2011). Here, RCN only purports to bring claims for fraud and unfairness—it does not contend that Rightscorp has

---

[2] *See also Travelers Indem. Co. v. Cephalon, Inc.*, 620 Fed. Appx. 82, 86 (3d Cir. 2015) ("Plaintiffs' conclusory allegations that Cephalon's marketing and promotion … were deceptive, improper, false or misleading do not satisfy that burden."); *GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549-53 (9th Cir. 1994), *superseded by statute on other grounds as stated in Johnson v. Wal-Mart Stores, Inc.*, 544 F. App'x 696 (9th Cir. 2013) (to satisfy Rule 9(b), a plaintiff must plead evidentiary facts giving rise to an inference that the allegedly fraudulent statements were false when made); *Mladenov v. Wegmans Food Markets, Inc.*, 124 F. Supp. 3d 360, 374 (D.N.J. 2015).

done anything unlawful. *See, e.g.*, CC ¶ 117 (solely alleging "unfair and fraudulent business practices.").

In 2004, California voters changed the standing requirements for a UCL claim to create a two-pronged test: a private plaintiff must allege that it (1) "has suffered injury in fact," and (2) "has lost money or property as a result of such unfair competition." Calif. Bus. & Prof. Code, § 17204; *Hall*, 158 Cal. App. 4th at 851–52. "In Proposition 64, as stated in the measure's preamble, the voters found and declared that the UCL's broad grant of standing had encouraged '[f]rivolous unfair competition lawsuits [that] clog our courts[,] cost taxpayers' and 'threaten[ ] the survival of small businesses . . . .'" Prop. 64, § 1, subd. (c) ("Findings and Declarations of Purpose"). "[I]njury in fact" is an "actual or imminent invasion of a legally protected interest, in contrast to an invasion that is conjectural or hypothetical." *Id.* at 853 (quoting Black's Law Dict.). The "causation requirement," in turn, "requires a showing of a causal connection or reliance on the alleged misrepresentation." *Id.*

The Countercomplaint falls woefully short of satisfying the requirements of both Rule 8 and 9, including in establishing UCL standing. These and other fatal deficiencies are discussed below.

### III.   ARGUMENT

#### A. The Countercomplaint Should Be Dismissed In Its Entirety For Failure To Comply With FRCP 9(b).

##### 1.   Rule 9(b) Applies to RCN's Entire Countercomplaint.

Whenever a claim is "grounded in fraud" or "sounds in fraud," then "that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103–1104 (9th Cir. 2003) (applying Rule 9(b) to entire UCL claim); *accord Johansson v. C. Garden & Pet Co.*, 804 F. Supp. 2d 257, 263 (D.N.J. 2011). Courts routinely apply Rule 9(b) to UCL fraud claims as well as related claims stemming from the same course of conduct. *See, e.g., Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

The Countercomplaint clearly sounds in fraud. RCN claims that Rightscorp engaged in "fraudulent business practices" based on the allegation that Rightscorp submitted false notices and concealed the supposed truth that its system was flawed and that it had destroyed evidence concerning the accuracy of its notices. *See* CC ¶¶ 1, 39, 117–123.[3]   The Countercomplaint does not distinguish between its "unfairness" and "fraud" allegations—rather, the UCL claim as a whole is based on

---

[3] *See also id.* ¶¶ 98, 106, 107, 114 (describing Rightscorp's conduct as "misleading"); ¶ 5 ("Rightscorp's process for detecting copyright infringement is a sham . . . built on . . . a cavalier approach to—if not outright disregard for—the truth."); ¶¶ 68–69 (accusing Rightscorp of intentionally sending notices to customer it knows did not violate the law in order to settle).

8

a uniform course of conduct. *See*, *e.g.*, *id.* ¶¶ 117–126 (generally alleging "unfair and fraudulent business practices). As a result, Rule 9(b) applies to RCN's entire UCL claim, even RCN's vague allegations to "unfairness". *Kearns*, 567 F.3d at 1127 ("Because [the complaint] alleges a unified fraudulent course of conduct, his claims [including his UCL unfairness claim] . . . are grounded in fraud. His entire complaint must therefore be pleaded with particularity.")

### 2.   RCN Has Not and Cannot Meet This Heightened Burden.

In order to satisfy Rule 9(b), a complaint must provide the "who, what, when, where and how" of the alleged fraudulent conduct. *In re Rockefeller Ctr. Props., Inc.*, 564. *Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2009) (internal citation omitted). Although the entire Counterclaim is based on RCN's claim that Rightscorp engages in a fraudulent notice scheme, RCN fails to allege the specific representations that it claims is misleading (the "*what*"), details concerning *where* and *when* it was misled, and facts to support its claim that the representations were false or deceptive (the "*how*"). Each of these deficiencies is, in itself, an independent basis for dismissal under Rule 9(b).

RCN claims to have received "millions" of notice letters from Rightscorp (CC ¶¶ 1, 10, 16), but it does not identify a single inaccuracy in any specific letter, such as a single instance where Rightscorp sent a notice of violation for conduct that RCN determined was not a violation. *Id.* ¶ 10. Nor does the Counterclaim attach a

copy of any of the Rightscorp notices at issue, or specify any notices on which RCN acted, the dates and times on which RCN took such actions, or any of the other particular circumstances concerning the injury RCN claims to have incurred as a result of anything Plaintiffs or RIAA did. RCN's conspicuous failure to plead such facts falls well short of its obligations under Rule 9(b). *See Travelers Indem. Co. v. Cephalon, Inc.,* 620 Fed. Appx. 82, 86 (3d Cir. 2015) (affirming dismissal under Rule 9(b) where plaintiffs "fail[ed] to allege [the contents of the allegedly misleading] statements and materials"); *In re Riddell Concussion Reduction Litig.,* 77 F. Supp. 3d 422, 434 (D.N.J. 2015) (dismissing fraud and state statutory deception claim, where the plaintiff failed to identify the specific statements that were false and on which the plaintiff claimed to have relied) (collecting cases).

RCN also fails to allege facts to support its claim that Rightscorp's (unspecified) statements are actually misleading. Instead, RCN merely alleges—on nothing but undisclosed "information and belief"—that the letters *may* be deceptive because Rightscorp did not take sufficient steps to substantiate them. *See, e.g.,* ¶ 103 ("On information and belief, Rightscorp never verified that a given song was the subject of a registered U.S. copyright"); ¶ 105 ("On information and belief, Rightscorp never verified that its clients actually owned any relevant copyrights"); ¶ 69 (same). This is insufficient. Rule 9 requires RCN to "'state with particularity all facts on which that belief is formed'; that is, it must describe the sources of

information with particularity, including the who, what, when, where and how of the sources, as well as the who, what, when, where, and how of the information conveyed by those sources." *In re Galena Biopharma, Inc. Securities Litig.*, 336 F. Supp. 3d 378, 388 (D.N.J. 2018) (citing *Institutional Inv'rs Group v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) ("if an allegation is made on information and belief, [the complaint must specify] all facts supporting that belief with particularity") (internal citation and quotation marks omitted); *see also U.S. ex rel. Bogina III v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016) ("[O]n information and belief' can mean as little as 'rumor has it that . . . ."); *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999); *Yourish v. California Amplifier*, 191 F.3d 983, 994 (9th Cir. 1999) ("Plaintiffs merely identify certain statements that they claim were misrepresentations, without providing particularized facts about the circumstances constituting the fraud.  If such unsupported general claims were sufficient [under Rule 9] plaintiffs could eliminate the falsity requirement entirely . . . .").  The Countercomplaint is devoid of any alleged fact that would satisfy this heightened pleading standard, necessitating dismissal under Rule 9(b).

Moreover, the Countercomplaint appears to concede that RCN ***cannot*** produce such factual support for its claim.  RCN recognizes that at least some of Rightscorp's notices are accurate. CC ¶ 121 ("some of Rightscorp's allegations may be legitimate . . . .").  Yet, RCN claims, "RCN cannot verify the legitimacy of

11

copyright infringement accusations it receives" without investigating such claims, which it does not claim to have done for any notice. CC ¶ 49. Where, as here, the complaining party does not specify—and apparently does not even know—which representations are false or deceptive, its claim fails under Rule 9(b). *See Haley v. Macy's, Inc.*, 263 F. Supp. 3d 819, 823 (N.D. Cal. 2017) ("Plaintiffs concede some prices may not be false or deceptive. [] Without more, therefore, Defendants cannot identify the transactions involving purportedly misleading prices in order to mount a defense against Plaintiffs' allegations.").

RCN's pleading deficiencies are especially telling given that multiple federal courts have found Rightscorp's infringement system to be accurate and reliable, which this Court should take judicial notice thereof. In *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 969 (E.D. Va. 2016) [hereinafter "*Cox*"], *aff'd in part, rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018), "a large focus of the trial was on the operation of Rightscorp's software" and at trial the ISP defendant, Cox, "probed multiple grounds on which to doubt Rightscorp's system." *Cox*, 199 F. Supp. 3d at 969–70. Nevertheless, the result was a wholesale endorsement of Rightscorp's technology: a $25 million jury verdict in BMG's favor.

The trial court even acknowledged that the infringement notices Rightscorp sent to Cox had "significant evidentiary value" supporting the jury's verdict. *Id.* at 972.[4]

Similarly, in *UMG Recordings, Inc. v. Grande Commc'ns, LLC*, 384 F. Supp. 3d 743, 757–58 (W.D. Tex. 2019), the ISP defendant, Grande, attacked the reliability of Rightscorp's system and evidence and made that issue the centerpiece of its motion for summary judgment. The court found "unpersuasive" Grande's argument that Rightscorp's notices failed to demonstrate appropriate circumstances justifying termination of subscribers' accounts. *Id.* at 757.

### 3. RCN's Vague Spoliation Claims Do Not Support the UCL Claim.

RCN's theory that Rightscorp "intentionally destroyed evidence"—also based on "information and belief", CC ¶ 90—fails for the same reasons above.

As an initial matter, however, stand-alone spoliation claims are "barred by California law," *Asberry v. Money Store*, 218CV01291ODWPLAX, 2018 WL 6834309, at *3 (C.D. Cal. Dec. 27, 2018) (collecting cases), and Rightscorp is not aware of a single UCL case that has succeeded based on a theory of spoliation. The Court does not need to hear an entire case to decide this single discovery issue. The

---

[4] While the Fourth Circuit remanded the case for a new trial, the court's decision was based on an erroneous jury instruction with no relationship to Rightscorp or its evidence. *See Cox*, 881 F.3d at 309–12. After remand, the case settled before it could be retried.

Federal Rules provide a procedure for RCN to pursue its spoliation theory, along with numerous remedies to RCN if it is successful, including adverse inferences, sanctions and in extreme cases, dismissal.  Fed. R. Civ. P. 37.

Even if RCN could base its UCL claim on this spoliation theory, however, the allegations still fail to satisfy Rule 9(b).  Although the Countercomplaint repeatedly claims that Rightscorp willfully deleted "evidence of copyright infringement" (*See, e.g.*, CC ¶ 1, 5, 10), it does not identify any specific document that RCN claims was deleted.  Nor does it allege any facts, much less particular facts, plausibly supporting its claim that such evidence was actually deleted.  RCN does not claim, for example, to have requested such evidence from Rightscorp in order to investigate an infringement—rather, the face of the Countercomplaint suggests that RCN rejected all of Rightscorp's notices out-of-hand.  CC ¶ 100; *see also Kowalsky v. Deutsche Bank Natl. Tr. Co.*, CV1407856CCCJBC, 2017 WL 4842376, at *2 (D.N.J. Oct. 25, 2017) (dismissing claim where "Plaintiff has failed to articulate any facts entitling him to relief for fraudulent concealment based upon spoliation.").

Nor can RCN state a claim based on the theory that, because of spoliation, Rightscorp's notices lack substantiation.  *See* First Amended Complaint ("FAC") ¶¶ 17, 34, 37, 42.  California law makes clear that a plaintiff cannot bring a UCL claim based on the defendant's alleged lack of substantiation for its statements. *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*, 107 Cal. App. 4th

1336, 1344 (2003); *Kwan v. SanMedica International* 854 F.3d 1088, 1096 (9th Cir. 2017) ("*King Bio*'s holding is firmly established law in California"); *see also Route v. Mead Johnson,* 2013 WL 658251 at *5–*6 (C.D. Cal. Feb. 21, 2013) (dismissing claims based on allegation of falsity, despite being couched as "falsity" claims; "[u]nless Plaintiff can . . . provide additional, specified factual basis for her claims that defendant's representations about probiotics are false, her claims fail as a matter of law."); *Engel v. Novex Biotech, LLC*, 2015 WL 846777 (N.D. Cal. Feb. 25, 2015) ("If Plaintiff wishes to bring claims alleging that Defendants' advertisements are false and misleading, then he must do so based on actual facts showing this, not simply an assertion that Defendants' substantiation is inadequate."); *Stanley v. Bayer Healthcare, LLC*, 2012 WL 1132920 at *2–*4 (S.D. Cal. Apr. 3, 2012) ("Private individuals may not bring an action demanding substantiation for advertising claims . . . . The alleged lack of substantiation does not render claims false and misleading under the UCL or CLRA.").

### 4.      RCN Fails to Adequately Allege Any Unfair Conduct.

RCN's unfairness claim is expressly prohibited by the UCL's "Safe Harbor" defense, which exists where the business practice at issue is authorized by statute. *Cel-Tech Commun., Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 183 (1999) ("Acts that the Legislature has determined to be lawful may not form the basis for an action under the unfair competition law."); *Hauk v. JP Morgan Chase*

*Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009) (finding that safe harbor applied when credit card issuer complied with disclosure provisions of the Truth in Lending Act); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 964 (9th Cir. 2016) (same, for net weight disclosure requirement for cosmetics); *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1999) ("A business practice cannot be unfair if it is permitted by law."). "[W]here there is a law that expressly authorizes the activity . . . it, in essence, preempts broader consumer protection claims." *Von Koenig v. Snapple Bev. Corp.*, 713 F. Supp. 2d 1066, 1076 (E.D. Cal. 2010).[5]

As discussed in Section I, *supra*, the entire DMCA safe harbor regime for ISPs is premised on ISPs like RCN receiving infringement notices and adopting and reasonably implementing policies to terminate the accounts of repeat infringing subscribers in appropriate circumstances. 17 U.S.C. § 512(i)(1)(A). Rightscorp's notices not only provided infringement information to RCN, but did so in a detailed manner that identified the infringing customer (by IP address), the work infringed, and other technical information related to the infringement. *See* ECF 15-3. RCN does not and cannot claim otherwise. RCN's unfairness claim is therefore barred.

Even without the safe harbor, however, RCN's unfairness claim fails. RCN relies on an old and rejected test by alleging that Rightscorp's conduct is "immoral,

---

[5] Rightscorp makes this argument in the alternative to its federal preemption argument below.

unethical, oppressive, and unscrupulous." CC ¶¶ 14, 119.  This test has been repeatedly rejected in the wake of the California Supreme Court's decision in *Cel-Tech Commun., Inc.*, 20 Cal. 4th at 185, which held that the "immoral, unethical, oppressive, and unscrupulous" was "too amorphous and provide[d] too little guidance to courts and businesses.  *See also Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (Cal. App. 4th Dist. 2010) ("reject[ing]" previous test as "a vague test of unfairness"); *Scripps Clinic v. Super. Ct.*, 108 Cal. App. 4th 917, 940 (Cal. App. 4th Dist. 2003) ("*Cel-Tech* narrowed the expansive earlier interpretations of the term 'unfair'").[6]

Under *Cel-Tech*, the applicable test "require[s] that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition."  20 Cal. 4th at 233. While the Countercomplaint states that Rightscorp's conduct "violates the policy and spirit of one or more laws," it does not identify any such laws.  CC ¶ 119. Because RCN has not identified anything that Rightscorp has allegedly violated other than RCN's own arbitrary formatting requirement, its claim for unfairness must be dismissed.

---

[6] A minority of courts continue to apply to the "immoral" test in the consumer class action context, but such cases are irrelevant here.

17

Finally, even under RCN's proposed standard, RCN's claim fails because it is premised on the same unified course of conduct that underlies its fraud claims, and RCN has not alleged such claims with sufficient particularity under Rule 9(b). *See, e.g. Travelers Prop. Cas. Co. of Am. v. Centex Homes*, 11-3638-SC, 2013 WL 4528956, at *4 (N.D. Cal. Aug. 26, 2013) ("Travelers' [UCL] unfairness claim rises and falls with its fraud claims and is therefore duplicative and unnecessary.").

### B. Dismissal is Warranted Because RCN Lacks Standing Under The UCL.

As set forth above, the Countercomplaint is devoid of facts to support its broad allegations, and therefore should be dismissed on its face under Rule 9(b). Even if RCN could overcome those fatal pleading deficiencies, however, its UCL claim should still be dismissed for lack of statutory standing.

To establish UCL standing, RCN must establish both causation and resulting injury. *See Kwikset*, 51 Cal. 4th at 321; *see also* Section II(B), *supra*. In the context of fraud-based claims, these requirements are governed by Rule 9(b). *In re Riddell*, 77 F. Supp. 3d at 436; *see also In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, No. CIV 08-939 (DRD), 2009 WL 2940081, at *13 (D.N.J. Sept. 11, 2009) (dismissing statutory deceptive acts claim where plaintiff failed to allege with particularity the circumstances of its claimed injury in reliance on the deception).

The Countercomplaint devotes a mere paragraph to RCN's alleged losses incurred by RCN. *See* CC ¶ 117. It does not include any facts to suggest that RCN

18

suffered harm that was caused by Rightscorp.  Regardless of whether Rightscorp acted deceptively (it did not), RCN's claim must be dismissed.

### 1. RCN Cannot Establish Causation Because It Does Not Claim to Have Relied on Anything Rightscorp Has Allegedly Done.

To establish causation in a fraud-based UCL case, the plaintiff must claim to have actually relied on the deceptive act, because "reliance is the causal mechanism of fraud." *In re Qualcomm Litig.*, No. 17-CV-00108-GPC-MDD, 2017 WL 5985598, at *4 (S.D. Cal. Nov. 8, 2017) (citation omitted).  The reliance requirement applies any time the claims sound in fraud, "irrespective of whether the claims are asserted under the fraud or unfairness prong of the U.C.L." *Id.* at *4 (citing *L.A. Taxi Cooperative v. Uber*, 114 F. Supp. 3d 852, 867 (N.D. Cal. 2015)).

Although RCN's counterclaim indisputably sounds in fraud, *see* Section III(A)(1), *supra*, RCN does not allege that it relied on the truthfulness or accuracy of the Rightscorp notices.  Just the opposite: for the last many years, RCN has publicly criticized Rightscorp's notices as being "flawed" and "unreliable," and admitted that it does not forward Rightscorp's notices to its users. *See, e.g., RCN*, No. 16-cv-04417-PKC, Complaint for Declaratory Judgment (S.D.N.Y. filed June 14, 2016) (arguing that the notices were "inherent[ly] flaw[ed]" and admitting that it was "[unable] to evaluate the extraordinary volume of automated notices

transmitted by Rightscorp.");[7] *see also* CC ¶ 109 ("Rightscorp's allegations are known to be unreliable"); ¶ 53 ("Unless an email alleging copyright infringement meets [RCN's] requirements, RCN will not consider the accusation in determining whether to take the drastic step of permanently terminating a customer's internet access."); ¶ 99 ("None of Rightscorp's emails to RCN regarding alleged copyright infringement complied with RCN's DMCA policy.").

RCN cannot meaningfully claim to have relied on notices it has rejected for years. *See also Kwikset*, 246 P.3d at 887.

### 2.    Rightscorp Did Not Cause RCN to Create Its "System" To Address Copyright Infringement Claims.

RCN claims to have been injured through the costs involved in "creating" its system, CC ¶ 117, but such claims are barred by the UCL's four-year limitations period. *See* Calif. Bus. & Prof. Code § 17208. RCN filed its Countercomplaint on October 5, 2020, and RCN implemented its system before October 2016. *See* Ltr. from RCN to Judge Quraishi (Sept. 10, 2020, Dkt. No. 94) (conceding that RCN had no policy to terminate the accounts of repeat copyright infringers from January 2010 through May 2016). RCN has also conceded that it began processing notices through

---

[7] RCN is bound by these statements in its declaratory judgment complaint as judicial admissions. "Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them." *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F. 3d 269, 275 (3d Cir. 2004). Rightscorp disputes RCN's allegations.

its system shortly thereafter, and in no event later than September 2016. *See RCN Telecom Services, LLC v. BMG Rights Mgmt. (US) LLC*, No. 16-cv-4417 (S.D.N.Y.), Dkt. No. 45 (Sept. 16, 2016), Amd. Compl. ¶¶ 90, 110.[8]   Because RCN filed its Countercomplaint more than four years after creating its system, the creation of the system (and costs associated therewith) cannot provide the basis for RCN's UCL standing.

Moreover, RCN does not and cannot plead facts supporting a plausible inference that it created its system "as a result of" the infringement notices Rightscorp sent to RCN. Calif. Bus. & Prof. Code § 17204.  The Countercomplaint concedes that while Rightscorp began sending notices to RCN in 2011, *see* CC ¶ 67, RCN did not create its system until 2016, *see id.* ¶ 48.  The only plausible explanation for this timing is that the RCN implemented the System because BMG's $25 million jury verdict against Cox raised alarm bells at RCN that an ISP could be held liable for the copyright infringement of its subscribers, and not to address the Rightscorp notices it had been receiving and ignoring for years.  RCN concedes that it receives

---

[8] In a federal court pleading filed in September 2016, RCN alleged that it was entitled to a DMCA safe harbor defense because it "terminates subscribers" pursuant to its Policy.  *RCN Telecom Services, LLC v. BMG Rights Mgmt. (US) LLC*, No. 16-cv-4417 (S.D.N.Y.), Dkt. No. 45 (Sept. 16, 2016), Amd. Compl. ¶¶ 90, 110.  RCN was represented in that action by the same counsel representing RCN here.  RCN's allegation that it was actively terminating subscribers in September 2016 through its Policy could not possibly have been true if RCN had not begun processing infringement notices through its System before then.

infringement notices from multiple monitoring entities in addition to Rightscorp. CC ¶ 99.  Thus, even without Rightscorp, RCN would have needed to create the system if it wanted to take advantage of a potential safe harbor under DMCA Section 512(A).

### 3.      RCN Cannot Identify A Cognizable Loss Related to Maintaining the System.

RCN also alleges it incurs ongoing costs to "maintain" its system, CC ¶ 117, any such costs are not attributable to Rightscorp.  RCN describes those alleged costs only generally.  *See id.* ¶ 56 (alleging the existence of "substantial ongoing costs associated with operating and maintaining the [DMCA] System").  Given that RCN receives infringement notices from multiple monitoring entities, CC ¶ 99, it would need to expend resources to ensure its system remains operational, regardless of whether some of the notices are from Rightscorp.  The Counterclaim offers no theory at all as to how RCN's system maintenance costs are attributable specifically to Rightscorp.

### 4.      Rightscorp Did Not Harm RCN By Notifying RCN Of Copyright Infringement On Its Network.

The Counterclaim also suggests that RCN was damaged as a result of having to review Rightscorp's infringement notices.

Any of these costs incurred before October 5, 2016 are time-barred by the UCL's four-year statute of limitations. *See* Calif. Bus. & Prof. Code § 17208.[9] The Counterclaim does not allege that RCN has spent any time evaluating Rightscorp's letters since it initially determined that Rightscorp failed to comply with RCN's policy in September 2016.  *See also* CC ¶¶ 53, 99.  Thus, the Counterclaim does not allege any cognizable loss as required to establish UCL standing.

Even if RCN did review Rightscorp's notices, which it admits it did not, CC ¶¶ 53, 99, it did so because the DMCA requires it to do so in order to enjoy protection under its safe harbor provision.  Rightscorp cannot have injured RCN by exercising its right to notify RCN of such violations.

Nor can RCN manufacture standing by requiring copyright holders to jump through hoops not imposed by the DMCA.  *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151 (2013) (a plaintiff "cannot manufacture standing merely by inflicting harm on [himself]. . . ."); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) (plaintiffs lacked standing to challenge election reform law because

---

[9] For example, RCN argued in September 2016—more than four years before the statute of limitations here—that Rightscorp failed to comply with its Policy's formatting requirements. *See RCN Telecom Services, LLC v. BMG Rights Mgmt. (US) LLC*, No. 16-cv-4417 (S.D.N.Y.), Dkt. No. 45 (Sept. 16, 2016), Amd. Compl. ¶ 48.

injury stemmed from plaintiffs' "personal choice" rather than from the statute).  For example, RCN does not explain how it has been injured by Rightscorp's alleged failure to submit the letter in PGP format, CC ¶¶ 99–100. *See, e.g. Mayron v. Google LLC*, 54 Cal. App. 5th 566, 574 (Cal. App. 6th Dist. 2020), reh'g denied (Oct. 2, 2020), review filed (Oct. 21, 2020) (alleged failure to satisfy Automatic Renewal Law's technical disclosure requirements insufficient to establish standing).

Finally, RCN cannot recover the costs (if any) related to "reviewing" Rightscorp's letters, as "pre-litigation costs do not establish standing to bring a UCL claim because they are not an economic injury caused by the business practices" at issue. *Two Jinn, Inc. v. Gov't Payment Serv., Inc.*, 233 Cal. App. 4th 1321, 1334 (2015) (citing *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 989 (N.D. Cal. 2010)) (internal quotation marks omitted).  "Plaintiffs cannot establish standing to pursue a UCL claim based on expenses incurred in order to bring their UCL claim," as this would render meaningless "the requirement that individuals show they lost money or property 'as a result' of the challenged practice." *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 989 (N.D. Cal. 2010).  Accordingly, pre-litigation expenses, such as costs incurred to "investigate the nature, scope and extent of Defendant's conduct," do not establish injury under the UCL. *Two Jinn*, 233 Cal.

App. 4th at 1334 (internal quotation marks omitted).[10]  Thus, to the extent RCN did spend any time review Rightscorp's notices, such investigation constituted pre-litigation expenses that to not establish UCL standing.

### 5.  Plaintiff's Spoliation Theory Fails for Lack of Causation and Injury.

RCN also does not allege injury or causation for its alleged spoliation argument, because it does not claim that it would have acted differently if Rightscorp had maintained the allegedly destroyed evidence—rather, it appears that RCN would have ignored the notices regardless.  *See CC* ¶¶ 53, 99; *see also Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007), *as modified on denial of reh'g* (July 3, 2007) ("That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law.").

---

[10] *See also Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 643 (2009) ("[I]t would contort the statutory language to conclude that the preemptive expenditure of fees for this litigation means that Sprint's alleged unlawful practices had caused 'damage' [under California's CLRA] at the time the lawsuit was filed."); *Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of California*, SACV150736DOCDFMX, 2018 WL 10072961, at *8–9 (C.D. Cal. May 1, 2018) ("Plaintiffs' allegations about unnecessary collections costs and spending money to learn the truth are insufficient to establish that they have standing to bring a UCL claim."); *Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1083 (N.D. Cal. 2020) (same).

6.   **The *Noerr-Pennington* Doctrine Immunizes Rightscorp From Claims Relating To This Litigation.**

As Plaintiffs and the RIAA explained, the *Noerr-Pennington* doctrine bars RCN from claiming its legal costs associated with defending against Plaintiffs' copyright infringement claims as an economic loss to confer standing under the UCL. *See* Pls.' Br. at 19-22. Rightscorp joins that portion of the motion filed by Plaintiffs and the RIAA. To the extent RCN alleges that such costs also support its UCL claim against Rightscorp, Rightscorp is entitled to the same *Noerr-Pennington* immunity to which Plaintiffs and the RIAA are entitled. *See id.*

**C. RCN Is Not Entitled To Restitution.**

Rightscorp also joins the portion of the motion filed by Plaintiffs and the RIAA explaining why RCN cannot recover any monetary award as restitution as a matter of law. *See* Pls.' Br. at 25–26. Restitution, as the California Supreme Court has time and again held, only permits a court to restore money to plaintiffs that the defendant obtained from them by unlawful means. *See, e.g.*, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) (sustaining demurrer: "The remedy sought by plaintiff in this case is not restitutionary because plaintiff does not have an ownership interest in the money it seeks to recover from defendants. . . . Any award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff."); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1009 (9th

26

Cir. 2008) (holding that the district court did not abuse its discretion in denying Theme's motion for restitution since the "'restitution' amount identified by Theme is not entirely restitutionary in nature" and how evidence failed to support a finding that Theme had a property interest in all of News' profits); *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 453 (Cal. App. 3d Dist. 2005) (concluding at demurrer stage that complaint failed to allege viable UCL restitution claim).

Here, RCN fails to allege (1) that Rightscorp improperly obtained money that (2) previously belonged to RCN. RCN does not allege that Rightscorp acquired any of the costs RCN allegedly incurred creating its System, evaluating Rightscorp's notices, or litigating against Plaintiffs' claims. RCN's request for restitution must therefore be stricken from the Countercomplaint.

### D. RCN's Countercomplaint Is Conflict-Preempted By The DMCA.

Principles of conflict preemption prohibit applying state law when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 476 (3d Cir. 2015) (internal quotations omitted). Plaintiffs and the RIAA explained why these principles bar RCN from pursuing its Countercomplaint. *See* Pls.' Br. at 13–18. Rightscorp joins that portion of the motion filed by Plaintiffs and the RIAA.

RCN's Countercomplaint accordingly must be dismissed with prejudice against all Countercomplaint-defendants, including Rightscorp.

## IV.    <u>CONCLUSION</u>

RCN's Countercomplaint should be dismissed with prejudice.

Dated:  December 11, 2020          Respectfully submitted,

                                                   _/s/ Brian J. Levine_
                                                   Brian J. Levine

                                                   *Attorney for Rightscorp, Inc.*