**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| UMG RECORDINGS INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RCN TELECOM SERVICES, LLC, et al.,<br><br>Defendants. | Civil Action No. 19-17272 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon two Motions to Dismiss Counterclaims. The first motion is Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, Sony Music Entertainment, Arista Records LLC, Arista Music, LaFace Records LLC, Sony Music Entertainment US Latin LLC, Volcano Entertainment III, LLC, Zomba Recording LLC, Atlantic Recording Corporation, Bad Boy Records LLC, Elektra Entertainment Group Inc., Fueled By Ramen LLC, Maverick Recording Company, The All Blacks U.S.A., Inc., Warner Music Nashville LLC, Warner Records Inc., Warner Records/Sire Ventures LLC, WEA International Inc., and Recording Industry of America's ("RIAA") (collectively "Plaintiffs" or "UMG") Motion to Dismiss Counterclaims. (ECF No. 122.) Defendants RCN Telecom Services, LLC, RCN Telecom Services of New York, L.P., RCN Capital Corp., RCN Telecom Services of Philadelphia, LLC, RCN Telecom Services of Massachusetts, LLC, Starpower Communications, LLC, RCN Management Corporation, RCN ISP, LLC, RCN Digital Services, LLC, RCN NY LLC 1, RCN Telecom Services (Lehigh), LLC, RCN Telecom Services of Illinois, LLC, 21st Century Telecom Services, Inc., and RCN Cable TV

of Chicago, Inc. (collectively "Defendants" or "RCN") opposed (ECF No. 135), and Plaintiffs replied. (ECF No. 139.) The second motion is Counterclaim Defendant Rightscorp's Motion to Dismiss Counterclaims. (ECF No. 136.) RCN opposed (ECF No. 143) and Rightscorp replied. (ECF No. 144.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Court grants both Plaintiffs' and Rightscorp's Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

## I. BACKGROUND

Plaintiffs are record companies that produce, manufacture, distribute, sell, and license the majority of commercial sound recordings in the United States. (Pls.' Moving Br. 5, ECF No. 122-1.) Plaintiffs' Complaint alleges that RCN, an internet service provider ("ISP") with various subsidiaries across the northeast United States, and its parent company, Patriot Media Consulting Inc. ("Patriot"), encouraged and profited from widespread copyright infringement by their end users. (Compl. 3–5, ECF No. 1.) Plaintiffs brought an action against Defendants and Patriot[1] for Contributory Copyright Infringement under 17 U.S.C. § 101 et seq. and Vicarious Copyright Infringement under 17 U.S.C. § 101 et seq., seeking injunctive relief and damages. (*Id.* at 5.)

Defendants responded with a counterclaim alleging that Plaintiffs and Rightscorp (collectively "Counterclaim Defendants") violated California's Unfair Competition Law ("UCL") by "sending millions of unsupported emails accusing RCN's customers of BitTorrent-based copyright infringement, while intentionally destroying the evidence necessary to determine whether any of those accusations were true." (Am. Answer and Countercompl. at 17, ECF No.

---

[1] Patriot's Motion to Dismiss was granted on August 31, 2020. (ECF No. 89.)

2

104.) Defendants assert that, "the RIAA and the [r]ecord [l]abels have partnered with Rightscorp to assert copyright infringement claims against RCN." (*Id.* at 18.)

Rightscorp is a technology company engaged in the business of detecting online copyright infringement. (*Id.* at 33; Rightscorp's Moving Br. 1, ECF No. 136-1.) According to Rightscorp, when it detects an instance of infringement it records the IP address of the user, the date and time, the name of the copyrighted material, the owner of the copyright, and sends an infringement notification to the ISP of the subscriber via e-mail, asking the ISP to forward the notice to its subscriber. (Am. Answer and Countercompl. 33; Rightscorp's Moving Br. 3.) Plaintiffs and RCN agree that Plaintiffs have never hired Rightscorp to monitor or send infringement notifications on their behalf. (Am. Answer and Countercompl. 35; Pls.' Moving Br. 23.) According to RCN, however, Rightscorp has contracted with Plaintiffs to provide them infringement notifications sent to RCN to use as evidence in this action and other copyright actions. (Defs.' Opp'n Br. 8–9, ECF No. 135.) RCN alleges that Rightscorp began sending RCN infringement notifications in or around 2011. (Am. Answer and Countercompl. 33.)

### A. Rightscorp's Infringement Notifications

Defendants allege that "[n]one of Rightscorp's emails to RCN regarding alleged copyright infringement complied with RCN's [Digital Millennium Copyright Act ("DMCA")] policy" or "industry-standard practices." (Am. Answer and Countercompl. 30, 43.) This includes the requirement that "each notification be in a [Pretty Good Privacy encryption] format or a compatible standard and must be digitally signed to verify the identity of the sender." (*Id.* at 30.)

Because they do not comply with RCN's DMCA policy, Rightscorp's notifications to RCN allegedly trigger an automated response from RCN "informing Rightscorp that the email was non-compliant and directing Rightscorp to RCN's DMCA policy. (*Id.* at 43.) Nevertheless, Rightscorp,

3

according to Defendants, has continued to send RCN non-compliant email allegations for years." (*Id.*) Non-compliant infringement notifications are catalogued in RCN's DMCA System. (*Id.* at 31.)

RCN further alleges that Rightscorp destroys, or fails to preserve, crucial evidence of the infringement, "making it impossible for RCN to vet the accuracy of any particular accusation." (Defs.' Opp'n Br. 10.) RCN alleges that Rightscorp fails to preserve the same data collected by the monitoring entity that serves the RIAA, including, "[t]he percentage of file shared; [a]ll network packets exchanged with the target IP address during communication session; [a] log of all control communication with the target; and [a]ll bitfield data." (Am. Answer and Countercompl. 41.) RCN claims that "Rightscorp's destruction of this evidence violated the RIAA's, the [r]ecord [l]abels', and Rightscorp's duties to preserve relevant evidence" in anticipation of litigation. (*Id.* at 42.)

## B. RCN's Alleged Damages

According to Defendants, RCN "has incurred—and continues to incur—substantial expense in connection with its DMCA System. The design and implementation of RCN's DMCA System required a significant investment of employee time and other resources, and there are substantial ongoing costs associated with operating and maintaining the System." (*Id.* at 31.) RCN also claims to have incurred costs:

> in evaluating and protecting itself against the accusations at issue includ[ing], but . . . not limited to, litigation costs . . . . RCN has also incurred legal costs associated with evaluating the proper response to Rightscorp's notices and with respect to various discrete aspects of RCN's DMCA system.

(Defs.' Opp'n Br. 29.) RCN seeks as a remedy for these alleged harms:

> [a]n order under California Business & Professions Code § 17203 permanently enjoining Counterclaim Defendants from sending, or consenting to, directing, or otherwise authorizing the sending of, copyright infringement allegations to RCN

4

> without (1) complying with RCN's DMCA policy with respect to each email containing an allegation of copyright infringement, and (2) storing and preserving all information or data upon which such allegation is based, at least until the right to pursue any corresponding legal claim has expired.

(Am. Answer and Countercompl. 51.) RCN also requests restitution under California Business & Professions Code § 17203, and "reasonable attorneys' fees, costs, and expenses in connection with this action." (*Id.* at 51–52.)

In response, Counterclaim Defendants contend that (1) Defendants' suit is preempted by Section 512 of the DMCA; (2) RCN lacks standing under California's Unfair Competition Law; and (3) "RCN fails to allege a right to any remedy under the UCL against Plaintiffs or the RIAA." (Pls.' Moving Br. 2–4.)

## II.    LEGAL STANDARD

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation and citation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the

plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

### III. DISCUSSION

#### A. Rule 9(b)

As a threshold matter, Rightscorp and RCN[2] dispute whether the Court must apply the heightened standard of Federal Rule of Civil Procedure 9(b) to RCN's UCL claim. Rule 9(b) requires that, when fraud is alleged, "a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citations and internal quotation marks omitted).

Rightscorp argues that Rule 9(b) applies to RCN's entire counterclaim because RCN's UCL claim "sounds in fraud." (Rightscorp's Moving Br. 8) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097 (9th Cir. 2003); *accord Johansson v. C. Garden & Pet Co.*, 804 Supp. 2d 257, 263 (D.N.J. 2011)). Rightscorp points to RCN's allegation that Rightscorp and UMG engaged in "fraudulent business practices," and its accusations that Rightscorp potentially submitted false notices and destroyed evidence concerning the accuracy of its notices. (Rightscorp's Moving Br. 8.) Rightscorp notes that RCN also describes Rightscorp's conduct as "misleading" and "a sham . . . built on . . . a cavalier approach to—if not outright disregard for—the truth." (Am. Answer and Countercompl. 18.) RCN counters that Rule 9(b) does not apply to its claim as a whole because "the gravamen of RCN's UCL claims is not fraud." (Defs.' Rightscorp Opp'n Br. 8, ECF No. 143.)

---

[2] UMG does not argue that Rule 9(b) applies to RCN's counterclaim. (*See generally* Pls.' Moving Br.)

6

Instead, RCN alleges, Plaintiffs' and Rightscorp's conduct is unfair because they have made it impossible for any party to determine whether their infringement notices are, in fact, fraudulent. (*Id.* at 9–10.)

The Court finds that while RCN's pleadings do allege that Counterclaim Defendants may have engaged in fraud, RCN does not "allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of [the UCL] claim." *Kearns*, 567 F.3d at 1125. Instead, RCN alleges that Counterclaim Defendants engaged in unfair business practices that *conceal* potential acts of fraud, including spoliation of evidence and sending large volumes of infringement notices without verifying their accuracy. (Am. Answer and Countercompl. 21.) RCN's allegations are thus not based exclusively on fraud, which would require that each act be pled with particularity. The appropriate approach in such circumstances is "to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). Accordingly, the Court will only apply Rule 9(b)'s heightened pleading standard to those aspects of RCN's claim alleging fraudulent conduct, and will not apply Rule 9(b) to the statutory standing analysis below.

**B.     Statutory Standing Under California's Unfair Competition Law**

Under California's Unfair Competition Law, California Business & Professions Code §17200, standing is "substantially narrower than federal standing under [A]rticle III." *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 886 (Cal. 2011). To satisfy this standing requirement, the California Supreme Court requires a plaintiff to "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e. economic injury, and (2) show that the economic injury was the result of, i.e., caused by the unfair business practice . . . that is the gravamen of the claim." *Aguilera v. Matco Tools Corp.*, No. 19-01576, 2020 WL 1188142, at *7 (S.D. Cal. Mar.

7

12, 2020) (emphasis omitted) (citing *Kwikset Corp.*, 246 P.3d at 885). RCN must therefore plead an economic injury caused by Rightscorp's allegedly unfair business practices.[3]

Here, the Court finds that RCN fails to adequately allege standing as to either Rightscorp or Plaintiffs because RCN has not pled a cognizable economic injury under the UCL. RCN asserts a number of claimed injuries based on Counterclaim Defendants' alleged conduct, none of which is sufficient to confer standing.

RCN alleges first that, "[t]o deal with the huge volume of email RCN receives regarding alleged instances of copyright infringement, RCN designed and implemented a system for processing, cataloguing, and informing customers of such allegations ("DMCA System")." (Am. Answer and Countercompl. 31.) RCN acknowledges that it receives infringement notifications from various monitoring entities including Rightscorp. (Am. Answer and Countercompl. 43.) At no point does RCN allege that it created its DMCA System specifically because of Rightscorp's infringement notifications or that Rightscorp's infringement notifications imposed any additional costs on RCN.

These costs cannot therefore be fairly attributable to either Rightscorp or Plaintiffs. "When a UCL action is based on an unlawful business practice . . . there must be a causal connection between the harm suffered and the unlawful business activity. That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law." *Daro v. Super. Ct.*, 151 Cal. App. 4th 1079, 1099 (2007).

---

[3] Because the Court finds that RCN has not pled a cognizable injury sufficiently to confer standing, it does not reach the question, briefed at length by the parties, whether Plaintiffs sufficiently participated in Rightscorp's allegedly wrongful conduct to be held liable. (*See* Pls.' Moving Br. 22–24; Defs.' Opp'n Br. 26–29; Pls.' Reply Br. 9–11.)

8

RCN also alleges that, "there are substantial ongoing costs associated with operating and maintaining the [DMCA] System." (Am. Answer and Countercompl. 31.) RCN does not specifically allege, however, that any of these costs are due to Rightscorp's infringement notifications. Such non-specific allegations are insufficient to confer statutory standing on RCN.

Finally, RCN claims that it "has also incurred and continues to incur substantial expense in evaluating and defending against Rightscorp's copyright infringement allegations, including its defense of the Record Labels' claims in this matter." (Am. Answer and Countercompl. 117.) While the parties do not brief the issue in detail, "California district courts are split on whether economic injury resulting from litigation can confer standing [under the UCL]." *TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktienbolaget LM Ericsson*, No. 14-0341, 2016 WL 7049263, at *3 (C.D. Cal. Aug. 9, 2016.)

One set of cases finds that "attorney's fees accrued in past actions brought alleging violation of the UCL are sufficient to establish standing." *See Khan v. K2 Pure Sols., LP*, 981 F. Supp. 2d 860, 863 (N.D. Cal.), *order vacated on reconsideration on other grounds*, No. 12-05526, 2013 WL 6235572 (N.D. Cal. Dec. 2, 2013); *see also Koller v. West Bay Acquisitions, LLC*, No. 12-00117, 2012 WL 2862440 (N.D. Cal. July 11, 2012); *Janti v. Encore Cap. Grp., Inc.*, No. 09-CV-1969, 2010 WL 3058260, at *7 (S.D. Cal. Aug. 3, 2010); *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-1392, 2009 WL 6527758, at *7–8 (S.D. Cal. Nov. 23, 2009).

None of these cases, however, included an analysis of the *Noerr-Pennington* doctrine. That doctrine provides absolute immunity from statutory liability when petitioning the government for redress. *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006); *accord Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993). Petitioning the government includes using courts to advocate for one's business and economic interests. *Cal. Motor Transp. Co. v.*

9

*Trucking Unlimited*, 404 U.S. 508, 510–11 (1972). In fact, the immunity extends "not only [to] petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit . . . .'" *Sosa*, 437 F.3d at 934 (quoting *Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*, 944 F.2d 1525, 1528–29 (9th Cir. 1991)).

"When courts have directly considered the doctrine, they have found that injury flowing solely from previous, protected litigation activity cannot be the basis of standing under the UCL." *TCL Commc'ns Tech. Holdings Ltd.*, 2016 WL 7049263 at *3. *See James R. Glidewell Dental Ceramics, Inc. v. Keating Dental Arts, Inc.*, No. 11-1309, 2013 WL 655314, at *13–14 (C.D. Cal. Feb. 21, 2013) ("[B]ecause [d]efendant's only attempt to establish economic injury rests on the allegation that [p]laintiff's lawsuit caused it to lose business, the [c]ourt finds that the . . . *Noerr-Pennington* doctrine appl[ies]"). *See also Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1076 (W.D. Wis. 2012) (finding the defendant immune from unfair competition claims when the purported injury was attorney's fees resulting from defending a patent litigation suit).

RCN does not dispute that the *Noerr-Pennington* doctrine precludes litigation costs as a basis for UCL standing. Instead, RCN asserts that its legal costs "include, but are not limited to, litigation costs." (Defs.' Opp'n Br. 29) (emphasis omitted). "For instance, RCN has also incurred legal costs associated with evaluating the proper response to Rightscorp's notices and with respect to various discrete aspects of RCN's DMCA system. These legal costs do not implicate *Noerr-Pennington*, as they were not connected to any pending or threatened litigation against RCN." (*Id.*)

The Court finds that these allegations are insufficient to establish that RCN suffered a cognizable injury as a result of Rightscorp's (or Plaintiffs') alleged misconduct. RCN has not alleged sufficient details for the Court to determine that these "legal costs associated with evaluating the proper response to Rightscorp's notices" were not investigation conducted in

preparation for filing the present counterclaim. *See Two Jinn v. Gov't Payment Serv., Inc.*, 223 Cal. App. 4th 1321, 1334 (2015) (finding pre-litigation investigation costs insufficient to support a UCL claim). Further, "[p]laintiffs cannot establish standing to pursue a UCL claim based on expenses incurred in order to bring their UCL claim. If they could, the requirement that individuals show they lost money or property 'as a result' of the challenged practice in order to have standing to sue under the UCL would be meaningless." *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 989 (N.D. Cal. 2010); *accord Cordon v. Wachovia Mortg.*, 776 F. Supp. 2d 1029, 1039 (N.D. Cal. 2011) ("[u]nder [p]laintiff's reasoning, a private plaintiff bringing a UCL claim automatically would have standing merely by filing suit."). Without facts showing that RCN suffered a qualifying injury in fact, the Court finds RCN has not established standing under the UCL. Accordingly, Counterclaim Defendants' Motions to Dismiss RCN's Counterclaim are granted.

Because the Court finds that RCN fails to state a claim as to either Plaintiffs or Rightscorp, it does not reach Counterclaim Defendants' additional arguments that RCN's claim is preempted by the DMCA, and that RCN fails to plead entitlement to a remedy under the UCL. (Pls.' Opp'n Br. 13–18, 24–26, ECF No. 122-1); (Rightscorp's Opp'n Br. 26–27; ECF No. 136-1.)

## IV. CONCLUSION

For the foregoing reasons, the Court grants Counterclaim Defendants' Motions to Dismiss based on lack of statutory standing, with leave to amend. The Court will enter an Order consistent with this Memorandum Opinion.

*/s/ Michael A. Shipp*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE