

Edward F. Behm, Esquire
Direct T 267.780.2030  F 215.405.9070
ebehm@atllp.com

August 13, 2021

**VIA ECF**

The Honorable Tonianne J. Bongiovanni
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

      Re:    *UMG Records, Inc., et al. vs. RCN Telecom Services, LLC, et al.*
             Civil Action No. 3:19-cv-17272-MAS-TJB

Dear Judge Bongiovanni:

      This firm represents Defendants (collectively, "RCN") in the above-referenced matter. We submit this letter pursuant to Local Rule 37.1(a)(1) to seek resolution of discovery disputes arising out of Counterclaim Defendant Rightscorp, Inc.'s refusals to provide information and documents in response to RCN's Requests for Production. Rightscorp's Amended Objections and Responses to RCN's First Set of Requests for Production are attached hereto as Exhibit A.

      Rightscorp is a central figure in this secondary copyright infringement case. All of Plaintiffs' alleged evidence of infringement comes from Rightscorp. Rightscorp claims to have detected the alleged acts of copyright infringement by users of RCN's network, and it sent email notices to RCN that, according to Plaintiffs, show RCN's knowledge of the infringement. *See, e.g.*, Am. Compl. ¶¶ 68, 71 (ECF No. 9). As a result, whether Rightscorp is able to detect copyright infringement accurately and reliably will be one of the most important issues at trial.

      Nevertheless, Rightscorp refuses to provide essential information bearing on the legitimacy of its notices. Rightscorp refuses to produce communications in which accused infringers disputed the accuracy of Rightscorp's notices, refuses to produce documents regarding its efforts to identify infringement of the specific works in suit, and refuses to produce documents concerning what information it chose to provide in—and withhold from—its copyright complaints.

The parties have met and conferred on these issues multiple times in writing and telephonically, but the parties were unable to reach a resolution.[1]

## Factual Background

Plaintiffs, the three major U.S. record labels, seek to hold RCN, an internet service provider ("ISP"), secondarily liable for its subscribers' alleged infringement of copyrighted music. Plaintiffs argue that RCN is secondarily liable because it did not terminate its subscribers' internet access after receiving unsubstantiated accusations of copyright infringement from Rightscorp. *See, e.g.*, Am. Compl. ¶¶ 8, 72 (ECF No. 9).

Plaintiffs' case is based on evidence Plaintiffs purchased from Rightscorp. Rightscorp operates a software system that allegedly detects when individuals are sharing copyrighted music files over peer-to-peer networks. For each alleged "detection," Rightscorp sends an email notice (also known as a "notice" or a "complaint") to the individual's ISP, accompanied by a request that the ISP forward the email to the customer. Rightscorp's emails include a link and contact information for Rightscorp, so that the accused infringer can respond and pay money to Rightscorp to settle the alleged infringement. Plaintiffs rely on Rightscorp's complaints to prove both direct infringement (as evidence of infringement by users of RCN's network) and secondary infringement (as evidence that RCN had knowledge of that infringement).[2] *See, e.g.*, *id.* ¶¶ 65–66.

Rightscorp sends huge volumes of these emails to RCN and most other ISPs in the United States, some of whom forward Rightscorp's emails to their customers. For example, Plaintiffs contend that Rightscorp has sent over five million email notices to RCN since 2011. *Id.* Thus, by its very nature, Rightscorp's business generates a significant volume of evidence of whether it can accurately and reliably detect copyright infringement—for example, communications with accused infringers who dispute Rightscorp's allegations.

Rightscorp's business practices are also a central issue in RCN's counterclaims for unlawful, unfair, and fraudulent business practices under Section 17200 of the California Business & Professions Code. *See* RCN's 2nd Am. Answer & Counterclaims (ECF No. 161). RCN alleges that Rightscorp knowingly made false infringement allegations and intentionally destroyed the evidence necessary to confirm or disprove its copyright complaints. *See, e.g.*, *id.* ¶¶ 5–12. RCN also alleges that Rightscorp intentionally and without any legitimate justification refused to comply with RCN's public Digital Millennium Copyright Act ("DMCA") policy, which requires senders of copyright infringement notices to digitally sign their notices to verify the sender's identity. *Id.* ¶¶ 101–106.

---

[1] RCN continues to attempt to meet and confer with Rightscorp regarding other aspects of Rightscorp's response to RCN's Requests for Production, including the sufficiency of Rightscorp's email collection and resulting document production.

[2] Plaintiffs needed to purchase this evidence from Rightscorp because Rightscorp did not send any copyright complaints on Plaintiffs' behalf. Rightscorp claims to have sent the complaints at issue on behalf of music publishers with related copyright interests.

1. **The Court Should Compel Rightscorp to Produce Documents Regarding False and Disputed Copyright Infringement Claims**

The Court should compel Rightscorp to produce documents regarding actual or alleged errors, defects, inaccuracies, and misrepresentations in its email notices to other ISPs, in addition to RCN. These documents are responsive to RCN's Requests for Production Nos. 11, 12, and 14. *See* Ex. A at 18, 20, 22. Requests 11 and 12 seek communications and other documents reflecting such errors, including communications with accused infringers, and Request 14 seeks documents sufficient to identify the individuals who have disputed Rightscorp's infringement claims.

These documents are plainly relevant to evaluating the accuracy and reliability of Rightscorp's detection system. Obviously, if a meaningful portion of Rightscorp's allegations are disputed, then that calls into question the legitimacy of its detection system and, therefore, Plaintiffs' ability to prove copyright infringement. *See, e.g.*, Am. Compl. ¶ 59 (alleging that "[t]he Rightscorp data is accurate and reliable"). These documents are also directly relevant to RCN's counterclaims, as they bear on whether Rightscorp knowingly made false infringement allegations. *See, e.g.*, 2nd Am. Answer & Counterclaims ¶¶ 116–117. Moreover, evidence that accused infringers disputed Rightscorp's allegations is particularly significant because Rightscorp has deleted virtually all of the data allegedly collected by its detection system, making it impossible to verify the accuracy of any individual copyright complaint. *See id.* ¶¶ 77–99.

Rightscorp is attempting to avoid producing any responsive documents by stating that it will only produce documents specifically related to accused infringers on RCN's network. *See* Ex. A at 18–21, 22–23. As Rightscorp is well aware, Rightscorp refused to digitally sign its email notices as required by RCN's DMCA policy, and so RCN did not pass along Rightscorp's complaints to its customers. 2nd Am. Answer & Counterclaims ¶ 105. As a result, no RCN user would have had any reason or opportunity to dispute Rightscorp's allegations. *See id.* Thus, by applying this improper narrowing, Rightscorp is refusing to produce any documents whatsoever.

Documents regarding errors and inaccuracies in Rightscorp's copyright complaints are no less relevant because they relate to accused infringers using the networks of other ISPs. The Rightscorp system operates the same irrespective of which ISP's network an accused infringer is using. Thus, all information concerning the accuracy of Rightscorp's "infringement" detections is relevant, regardless of whether RCN was involved. Plaintiffs intend to rely on Rightscorp's detections to prove direct and secondary infringement at trial, and RCN should be permitted to respond with evidence of how frequently, and in what circumstances, accused infringers have contended that Rightscorp's claims were erroneous.

Finally, producing these documents would not be unduly burdensome. Plaintiffs are seeking hundreds of millions of dollars in damages in this case, and they have hired Rightscorp to act as their "litigation consultant" in support of those claims. Plaintiffs are paying Rightscorp to present what Plaintiffs will characterize as forensically sound

evidence of copyright infringement. This includes payment for Rightscorp to provide documentary evidence as well as payment for Rightscorp's employees and representatives to testify in depositions and at trial in support of Plaintiffs' claims. Under the circumstances, it is entirely reasonable and fair for Rightscorp to produce evidence of those circumstances in which its allegations were questioned, disputed, or found to be inaccurate.

The Court should therefore order Rightscorp to produce documents responsive to RCN's Requests for Production Nos. 11, 12, and 14.

### 2. The Court Should Compel Rightscorp to Produce Documents Regarding the Works in Suit

RCN's Request for Production No. 22 seeks Rightscorp's internal documents and communications with clients or potential clients about the works in suit—*i.e.*, the songs listed in Exhibit A to Plaintiffs' First Amended Complaint (ECF No. 9-1). Rightscorp refuses to produce anything in response to this request.[3] *See* Ex. A at 30–32.

Rightscorp's principal objection to producing these documents is that they "will overwhelmingly, and possibly entirely, be protected from disclosure on privilege and work product grounds." *See id.* There is no reason to believe that Rightscorp's communications with clients and potential clients are privileged. Certainly, Rightscorp must do more to support such broad claims of privilege than baldly claim that everything responsive is privileged. *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305–06 (D.N.J. 2008) (the party asserting attorney-client privilege or work product protection "bears the burden" to show that it applies").

Furthermore, documents and communications regarding the works in suit are highly relevant for several reasons. For one, Rightscorp has not produced a shred of evidence that it had authority from any relevant rightsholder to send the copyright infringement notices at issue in this case. *See supra* n.2. In other words, although every Rightscorp complaint offered to settle the copyright infringement claim on behalf of a rightsholder, there is no evidence that Rightscorp had any such authority. Communications with actual and potential clients about the works in suit are directly relevant to that issue.

Additionally, Plaintiffs place great emphasis on the volume of copyright complaints Rightscorp sent to RCN—allegedly over five million. *See, e.g.*, Am. Compl. ¶¶ 5, 65, 66, 77. RCN is therefore entitled to understand whether Rightscorp made promises, or received instructions, about the number of complaints it would send about a given work or over a given time period. RCN will show that the number of complaints sent by Rightscorp has

---

[3] The only documents Rightscorp agreed to produce were previously produced by Plaintiffs—the email notices sent to RCN, audio files allegedly downloaded from users of RCN's network, and spreadsheets purporting to summarize those materials—but those materials are not responsive in any event. *See* Ex. A at 31–32.

ARMSTRONG TEASDALE LLP

no relationship to the volume or frequency of any actual instances of copyright infringement, and this evidence is highly relevant to that subject.

Finally, one factor in evaluating statutory damages—one form of damages Plaintiffs are seeking—is "the value of the copyright." *See Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 1:08-cv-02662, 2009 WL 2147843, at *6–*7 (D.N.J. July 15, 2009). Communications with clients about the importance of monitoring the internet for infringement of certain songs over others is relevant to this issue. Likewise, if a client thought it was only important to monitor a certain song for a short period of time—*e.g.*, directly following an album release that occurred years ago—that is relevant to assessing the value of the copyright today.

Thus, the Court should order Rightscorp to produce documents and/or communications responsive to RCN's Request for Production No. 22.

### 3. The Court Should Compel Rightscorp to Produce Documents Regarding the Form and Content of Its Copyright Infringement Complaints

RCN's Request for Production No. 42 seeks documents that refer to or reflect any discussion of the proper form or content of Rightscorp's copyright complaints. Rightscorp has stated that it will only produce such documents that "are specifically related to the alleged infringements over the RCN network and plaintiffs in this case," and based on that limitation, Rightscorp has produced nothing. *See* Ex. A at 51–52.

Evidence regarding the sufficiency of Rightscorp's copyright complaints—including what information Rightscorp chose to provide, decided to withhold, or determined it could not provide—is directly relevant to Plaintiffs' claims. This is because to prove their Count One for contributory copyright infringement, Plaintiffs must prove that RCN had knowledge of the specific instances of direct copyright infringement at issue in this case. *See, e.g.*, *Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007). Plaintiffs are relying solely on Rightscorp's copyright complaints to prove such knowledge.

Documents about the content of Rightscorp's email notices are also relevant to RCN's counterclaims. RCN contends that Rightscorp engaged in unfair business practices by failing to provide basic supporting information in its copyright complaints, such as the relevant copyright registration number (a prerequisite to any lawsuit for damages), the identity of the copyright owner, or any actual evidence that infringement had occurred. *See* 2nd Am. Answer & Counterclaims ¶¶ 108–111. Thus, documents bearing on the form and content of Rightscorp's email notices are relevant to the alleged unfairness of Rightscorp's business practices as well as to RCN's alleged knowledge of infringement.

Additionally, as noted above, RCN contends that Rightscorp's practice of flooding RCN with copyright complaints was an unfair business practice because Rightscorp refused to digitally sign its complaints to verify its identity. *Id.* ¶¶ 101–106. Industry standards promulgated by Plaintiffs (and others) require copyright complaints to be

digitally signed, and therefore virtually every sender of such notices—other than Rightscorp—does so, typically by using the widely accepted PGP format. *Id.* ¶¶ 102, 104. Thus, any internal discussion or consideration by Rightscorp of whether, when, or how to employ digital signatures is highly relevant both to Plaintiffs' claims and RCN's counterclaims. *See id.* at 101–106.

The Court should therefore order Rightscorp to produce documents responsive to Request for Production No. 42.

## Conclusion

RCN respectfully requests that the Court grant the relief requested in this letter. Counsel for RCN is available for a teleconference or videoconference on these matters at the Court's convenience.

        Respectfully Submitted,

        */s/ Edward F. Behm, Jr.*
        Edward F. Behm, Jr.

CC:    All counsel of record via ECF