# Law Office of Brian J. Levine

75 NORTH BRIDGE STREET
SOMERVILLE, NEW JERSEY 08876
Phone: (908) 243-0111   Fax: (908) 243-0222

www.bllawnj.com
blevine@bllawnj.com

BRIAN J. LEVINE [*]
LISA PEZZANO MICKEY [1]
(Of Counsel)

[*] Certified by the Supreme Court of
New Jersey as a Civil Trial Attorney

[1] Also Admitted in New York

August 27, 2021

*Via E-Filing Only*
The Honorable Tonianne J. Bongiovanni, U.S.M.J.
United State District Court of New Jersey
Clarkson S. Fisher Building
& U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

RE:   UMG Recordings, Inc. v. RCN Telecom Services, LLC v. Rightscorp, Inc., et als.
Docket No.:  3:19-cv-17272-MAS-ZNQ

Dear Magistrate Judge Bongiovanni:

As you know, my office represents Counterclaim-Defendant Rightscorp, Inc. ("Rightscorp") in regard to the above referenced matter. I have filed a motion to admit Michael J. Allan and John W. Toth *pro hac vice* with consent of our adversary, which is returnable on September 20, 2021. In the meantime, and in accordance with Your Honor's request, I respectfully submit this letter in response to the August 13, 2021 letter filed by Defendants RCN Telecom Services, LLC, et al. ("RCN"), concerning alleged deficiencies with Rightscorp's discovery to date.

Rightscorp has developed and implemented a system to detect infringement of music and movies by internet users of peer-to-peer file sharing technologies, most notably BitTorrent. The Rightscorp system allows it to collect the IP address of the ISP user engaged in otherwise anonymous and unauthorized file sharing. From the IP address, Rightscorp can identify the company providing internet service used to conduct the infringing activity. Once an infringement is detected, Rightscorp's system provides a written notification to the infringer's internet service provider, in this case RCN, with technical details of the infringing activity in an effort to stop the illegal activity from continuing. The Rightscorp infringement detection system has been fully tested and vetted in other matters.

The Honorable Tonianne J. Bongiovanni, U.S.M.J.
August 27, 2021
Page 2

As noted in more detail below, Rightscorp has produced a substantial amount of evidence including millions of infringement notices, source code related to the program used to detect the rampant infringement on RCN's network, databases reflecting evidence of infringement, correspondence and more. The discovery provided by Rightscorp to date, belies RCN's claim that "Rightscorp refuses to provide essential information bearing on the legitimacy of its notices." August 13, 2021 letter at p.1.

Despite Rightscorp's sizeable production, RCN would have the Court believe that it remains entirely in the dark as to the workings of Rightscorp's system and how infringement is detected. RCN is wrong. Notably, RCN's August 13 letter fails to inform the Court that its counsel has a deep understanding of Rightscorp, and the technology including the source code behind Rightscorp's infringement detection system. Indeed, RCN's counsel also represents RCN's sister company, Grande Communications, in a copyright infringement case involving Rightscorp infringement data. RCN's lawyers have poured over Rightscorp's code with the aid of skilled technical experts and have deposed Rightscorp and various of its employees at length.

Rightscorp's infringement data was also determined to be valid and used to support a verdict against Cox Communications where Cox was found by a Virginia jury to have willfully infringed over 1000 music copyrights. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, (E.D. Va. 2015) (summary judgment) and 199 F. Supp. 3d 958, (E.D. Va. 2016) (post-trial motions), *aff'd in part, rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018). Cox, like RCN here, tried to point the finger at Rightscorp with sweeping claims of inaccurate and unreliable data—all of which were rejected by the judge and the jury. Hours of Rightscorp testimony from that case related to the inner workings of the Rightscorp system are no doubt in the possession of RCN and its lawyers.

Like RCN's first failed attempt to make Rightscorp a party in this case, the additional discovery sought by RCN is meant to harass and burden Rightscorp, and distract from its own failures and liabilities. Setting aside the RCN bluster, and with some exceptions discussed below, the vast majority of additional material sought either does not exist or is not at all relevant to any claim or defense in this case and would be a substantial burden on Rightscorp. As such, RCN's request for additional discovery should be denied.

**1. Rightscorp Has Produced All Probative Documentation Related to Its Infringement Detection System**

Rightscorp already has produced an enormous amount of information and data in this proceeding concerning the operation of its online infringement detection technology:

- 4,665,884 notices of copyright infringement by users of RCN's internet service;
- 808 "Dashboard" summaries of infringement activity on RCN's network;
- 56,267 infringing files downloaded from RCN internet users;

The Honorable Tonianne J. Bongiovanni, U.S.M.J.
August 27, 2021
Page 3

- Three massive database files containing the data associated with the 4,665,884 email notices and the 56,267 downloaded files listed above, along with data for an additional 1.4 million instances of infringement detected on RCN's network by Rightscorp;
- The Rightscorp technology computer source code (including periodic updates to that code implemented over time); and
- 887 documents consisting of Rightscorp emails, PowerPoints, and similar materials, depicting and discussing the operation of Rightscorp's technology and the infringement it detects.

Despite its access to all technical data governing the design and implementation of Rightscorp's infringement detection system—data that will no doubt serve as the backbone for RCN's technical expert opinions—RCN wants more. RCN wants Rightscorp to scour its emails received from customers of any ISP, not just RCN, wherein the customer disputes that any infringement has taken place. *See* RFP 11, 12 and 13.

Rightscorp would be happy to produce any such emails from RCN customers, but to the best of Rightscorp's knowledge, none exist. Even if Rightscorp had the time and resources to review a voluminous amount of email to find such evidence of the type RCN seeks, *e.g.*, correspondence from users of *any other ISP* accused of infringement who claims they didn't do it, such evidence would have little to no probative value here.

To begin, it is unsurprising that, over the years, internet users try to deny that they engaged in online theft of copyrighted music and movies. But internet users' self-serving denials, or attempts to question or distract from their infringing activities, simply are not probative of whether Rightscorp's system actually works. What *is* probative is the information Rightscorp already has produced: the notices, downloaded files, and database summaries documenting the specifics of the infringement Rightscorp detected, as well as the source code that shows how the system operates, and other Rightscorp documents that describe and explain its technology's operation. How Rightscorp's system works will be the subject of substantial expert analysis and trial testimony here, as it was in past cases. Whether a customer of ISP "X" denied stealing music online will have no bearing on that analysis here.

The burden on Rightscorp to search for and collect such irrelevant information cannot be understated. Indeed, it would be enormously time consuming for Rightscorp to search through all of the communications it has received, over a ten-year period, to locate instances where an internet user denied or questioned Rightscorp's detection of the user's online infringement. As explained to counsel for RCN during the meet and confer process, Rightscorp does not have a dedicated tracking or cataloging system that organizes email or other communications from internet users. Lacking such a system, Rightscorp would need to undertake an enormously laborious manual review of its email records to identify any such communications.

The requested information is simply not probative to any claim or defense, and would be incredibly burdensome for Rightscorp to search for and produce. The request should thus be denied.

The Honorable Tonianne J. Bongiovanni, U.S.M.J.
August 27, 2021
Page 4

### 2. RCN's Request for Documentation Concerning the Works in Suit is Either Not in Rightscorp's Possession, or is Grossly Overbroad

RCN's RFP No. 22 seeks any documents or information related to the songs listed in Exhibit A to the Complaint, even though Rightscorp is not the owner or listed claimant on any of the works in suit. Despite the breadth of the demand, RCN's August 13 letter only points to three categories of information it seeks in response to RFP No. 22, none of which require an order compelling disclosure.

First, RCN claims that it wants to see the authority by which Rightscorp sends notices on behalf of its clients. While this authority was no doubt covered at length in prior Rightscorp depositions, Rightscorp is willing to produce representative samples of the agreements it has with customers to conduct its infringement detection business.[1]

Second, RCN seeks documentation related to "whether Rightscorp made promises, or received instructions, about the number of complaints it would send about a given work or over a given time period." To the best of Rightscorp's knowledge, no such documentation exists. If infringement of a particular work is ongoing, it will be detected and a notice of infringement will be sent. If no infringement is occurring, no notice will be sent.

Finally, RCN seeks documentation related to the "value of the copyright." Again, Rightscorp is not the owner or listed claimant of any of the copyrights at issue and does not possess information as to how those works are valued by the owner.

To the extent RCN seeks additional information apart from the three specific categories it identified in its August 13 letter, such a request should be summarily denied. The search and production of "All Documents and Things ... that refer to any of the songs listed in Exhibit A ..." (RFP No. 22) is wholly unreasonable. The production of "all documents" related to any song listed on Exhibit A would likely be voluminous and of little probative value to this case. Rightscorp has produced all notices of infringement of the songs listed in Exhibit A that were sent to RCN. In addition, given the breadth of this request, much of that documentation would be privileged and/or protected by the work product doctrine. Given the nature of its work—detecting and combating copyright infringement—Rightscorp necessarily has had numerous communications with various attorneys on a variety of topics over the years, and has served as a litigation consultant not just for these Plaintiffs and their trade association, the RIAA, but other entities as well.

### 3. RCN's Request for Information Related to the Form and Content of its Copyright Infringement Notices is Unwarranted

---

[1] To be clear, Rightscorp contracted with various music publishers, not the Plaintiff recording labels, to send infringement notices to RCN regarding the infringed works in suit (although Plaintiffs do own, or exclusively control, the sound recording copyrights concerning those works). That Rightscorp contracted with other companies, not Plaintiffs, regarding the infringement detection and notices, underscores why it is inappropriate to address RCN's allegations concerning Rightscorp's "authority" to send such notices, in this lawsuit.

The Honorable Tonianne J. Bongiovanni, U.S.M.J.
August 27, 2021
Page 5

Despite the fact that Rightscorp has produced millions of notices of infringement that speak for themselves in terms of the form and content of those notices, RCN again wants more. The notices of infringement contain substantial detail related to the detected infringement including, for example, the title of the work, the IP address of the RCN subscriber who engaged in the infringement, the date and time of the infringement, the port number of the infringer's computer, and a digital signature from Rightscorp. Despite all of this, RCN claims it lacks information as to the form and content. Even more surprising is that Rightscorp's notices and the content thereof have been the subject of extensive deposition and trial testimony, some of which RCN's lawyers conducted.

What RCN seems to be after is the privileged communications between Rightscorp and its counsel related to why the notices contain the information they contain. To be sure, RCN is not entitled to that information.

In addition to the privilege objection, Rightscorp's objection and response to RFP No. 42 stated that "Rightscorp will produce nonprivileged documents responsive to this Request, as long as the documents are specifically related to the alleged infringements over the RCN network and plaintiffs in this case and to the extent such documents are in Rightscorp's possession, custody, or control and are located after a reasonably diligent search." Rightscorp will modify that limiting objection and agree to search for relevant nonprivileged documents responsive to Request No. 42 that relate to infringement notices substantially the same as the notice sent to RCN. This should obviate RCN's concern with Rightscorp's response; thus resolving this dispute.[2]

If Your Honor would like to address any of the above in oral argument or telephonic conference, I would request that such conference be scheduled after the motion to admit Michael J. Allan and John W. Toth *pro hac vice* is decided.

Respectfully submitted,

BRIAN J. LEVINE

BJL/pct
cc:  Edward F. Behm, Jr., Esq.
     Richard L. Brophy, Esq.
     Zachary C. Howenstine, Esq.
     Margaret R. Szewczyk, Esq.
     Kyle Gottuso, Esq.

---

[2] Finally, it bears emphasis that the parties could have avoided burdening the Court with much of the dispute addressed in RCN's letter and this response, had RCN not precipitously filed its discovery letter but instead allowed the transition of Rightscorp's representation to new lead counsel, and the meet and confer process, to be completed.