## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, | Civil Action No. 19-17272 |
| Plaintiffs, | (MAS) (TJB) |
| v. | |
| RCN TELECOM SERVICES, LLC, *et al.*, | |
| Defendants. | |
| and | |
| RCN TELECOM SERVICES, LLC, | |
| Countercomplaint-Plaintiff, | **Return Date: October 4, 2021** |
| v. | **ORAL ARGUMENT** |
| UMG RECORDINGS, INC., *et al.*, RECORDING INDUSTRY ASSOCIATION OF AMERICA, INC., and RIGHTSCORP, INC. | **REQUESTED** |
| Countercomplaint-Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION BY RIGHTSCORP, INC., TO DISMISS AMENDED COUNTERCOMPLAINT

Brian J. Levine
*blevine@bllawnj.com*
Law Office of Brian J. Levine
75 North Bridge Street
Somerville, New Jersey 08876
(908) 243-0111

Michael J. Allan (*Pro Hac Vice*)
*mallan@steptoe.com*

John W. Toth (*Pro Hac Vice*)
*btoth@steptoe.com*
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-6749

*Attorneys for Counterclaim Defendant,*
*Rightscorp, Inc.*

## **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................1

II.  BACKGROUND ....................................................................................2

III. LEGAL STANDARD ...........................................................................4

    A.  Pleading Requirements......................................................................4

    B.  California's Unfair Competition Law .................................................5

IV. ARGUMENT........................................................................................6

    A.  RCN's amendments do not establish the economic injury the Court has already found lacking.........................................................7

        1.  RCN's legal expenses are not traceable to the alleged conduct. ........8

        2.  RCN's employee hours dedicated to administering its signature requirement are self-inflicted injuries, not traceable to Rightscorp. 11

    B.  RCN cannot manufacture a claim based on its arbitrary electronic signature requirement. ..........................................................12

    C.  RCN has not stated a claim based on Rightscorp's alleged destruction of evidence. .........................................................17

        1.  California law prohibits standalone spoliation claims.....................17

        2.  RCN has not identified any injury caused by the alleged destruction of evidence. .....................................................18

        3.  RCN cannot rescue its claim by recasting it as one for lack of substantiation. .................................................................20

    D.  RCN's theory that Rightscorp required a private investigator's license cannot support a claim under the "unlawful" prong of the California UCL................................................................20

        1.  Rightscorp does not require a private investigator license to operate its infringement monitoring software. .............................21

        2.  RCN has not alleged an injury caused by Rightscorp's declination to obtain a private investigator license. .................................24

        3.  RCN cannot state a claim under the California Unfair Competition Law premised on New Jersey's private detective law.....................26

    E.  RCN has not stated a claim under the "fraudulent" prong of the UCL. .27

1.  RCN has not satisfied the requirements of Rule 9. .........................27

2.  RCN has not alleged that it relied on the substance of any of
    Rightscorp's notices, much less a fraudulent one. ..........................29

3.  RCN cannot state a UCL claim based on alleged concealment of
    unidentified or potential fraud. ........................................................29

V.   Conclusion ....................................................................................................31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alvarez v. Ins. Co. of N. Am.*,
    313 F. App'x 465 (3d Cir. 2008) ....................................................5, 30

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016)..........................................6, 28

*Asberry v. Money Store*,
    218CV01291ODWPLAX, 2018 WL 6834309 (C.D. Cal. Dec. 27,
    2018) .......................................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................4

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    199 F. Supp. 3d 958 (E.D. Va. 2016), *aff'd in part, rev'd in part on
    other grounds*, 881 F.3d 293 (4th Cir. 2018)....................................21

*Capitol Recs. Inc. v. Thomas-Rasset*,
    No. CIV 06-1497(MJD/RLE), 2009 WL 1664468 (D. Minn. June
    11, 2009) .................................................................................27

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .....................................................................16

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013).......................................................................12

*Doe v. CVS Pharmacy, Inc.*,
    982 F.3d 1204 (9th Cir. 2020), *cert. granted in part on other
    grounds*, No. 20-1374, 2021 WL 2742790 (U.S. July 2, 2021) ........14

*Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*,
   830 F. App'x 377 (3d Cir. 2020) ........................................................................30

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of California*,
   SACV150736-DOCDFMX, 2018 WL 10072961 (C.D. Cal. May 1,
   2018) .................................................................................................................9

*Engel v. Novex Biotech, LLC*,
   2015 WL 846777 (N.D. Cal. Feb. 25, 2015) .....................................................20

*Foglia v. Renal Ventures Mgmt.*,
   LLC, 754 F.3d 153 (3d Cir. 2014) ....................................................................30

*Foster v. Reverse Mortg. Sols., Inc.*,
   No. CV1910039DSFFFMX, 2020 WL 4390374 (C.D. Cal. May
   13, 2020) ...........................................................................................................16

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) ...............................................................................5

*In re Grand Jury Investigation*,
   445 F.3d 266 (3d Cir. 2006) .............................................................................18

*Haley v. Macy's, Inc.*,
   263 F. Supp. 3d 819 (N.D. Cal. 2017).............................................................28

*Hall v. Time Inc.*,
   158 Cal. App. 4th 847 (Cal. App. 4th Dist. 2008), *as modified* (Jan.
   28, 2008) .............................................................................................................5

*Institutional Invs. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009) .........................................................................5, 30

*JaM Cellars, Inc. v. Vintage Wine Estates, Inc.*,
   No. 17-01133-CRB, 2017 WL 2535864 (N.D. Cal. June 12, 2017).............6, 29

*Kennard v. Rosenberg*,
   127 Cal. App. 2d 340 (1954) ............................................................................22

*Khan v. 7-Eleven, Inc.*,
   No. EDCV1400522DMGPLAX, 2015 WL 12781203 (C.D. Cal.
   May 6, 2015).....................................................................................................25

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ............................................................5

*Kwikset Corp. v. Super. Ct.*,
  61 Cal. 4th 310 (2011) ..........................................................19

*Malibu Media, LLC v. Pontello*,
  No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) .....................27

*Medina v. Safe-Guard Prods.*
  164 Cal. App. 4th 105 (2008) ...................................................25

*McConnell v. Fed. Election Comm'n*,
  540 U.S. 93 (2003), *overruled on other grounds by Citizens United
  v. Fed. Election Comm'n*, 558 U.S. 310 (2010) ..................................17

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.*,
  107 Cal. App. 4th 1336 (2003) ..................................................20

*Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*,
  9 Cal. 5th 279 (2020) ..........................................................14

*Orcilla v. Big Stir, Inc.*,
  244 Cal. App. 4th 982 (2016) ...................................................25

*Pestmaster Servs., Inc. v. Travelers Cas. & Sur. Co. of Am.*,
  No. CV135039JFWMRWX, 2013 WL 12147583 (C.D. Cal. Sept.
  10, 2013) ......................................................................18

*Poghosyan v. First Fin. Asset Mgmt., Inc.*,
  No. 119CV01205-DADSAB, 2020 WL 433083 (E.D. Cal. Jan. 28,
  2020) .........................................................................6, 29

*RCN Telecom Services, LLC v. BMG Rights Mgmt. (US) LLC*,
  No. 16-cv-4417 ..............................................................19, 29

*Red v. Gen. Mills, Inc.*,
  No. 215CV02232ODWJPR, 2015 WL 9484398 (C.D. Cal. Dec.
  29, 2015) ......................................................................12

*Robinson v. HSBC Bank USA*,
  732 F. Supp. 2d 976 (N.D. Cal. 2010) ...........................................11

*Rojas v. Bosch Solar Energy Corp.*,
  443 F. Supp. 3d 1060 (N.D. Cal. 2020) ............................................................. 10

*Schuchardt v. President of the United States*,
  839 F.3d 336 (3d Cir. 2016) .................................................................................. 4

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
  No. 3:19-CV-2284-H-KSC, 2020 WL 2214152 (S.D. Cal. May 7,
  2020) .................................................................................................................... 28

*Starkey v. Covenant Care, Inc.*,
  No. B156021, 2004 WL 206209 (Cal. Ct. App. Feb. 4, 2004) .......................... 18

*State v. Tatalovich*,
  129 Nev. 588 (2013) .....................................................................................23, 24

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
  17 Cal. 4th 553 (1998) ....................................................................................... 17

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ............................................................................... 6

*Taylor v. Bureau of Priv. Investigators & Adjusters of Cal.*,
  128 Cal. App. 2d 219 (1954) ............................................................................. 22

*Temple Cmty. Hosp. v. Superior Court*,
  20 Cal. 4th 464 (1999) ....................................................................................... 17

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ....................................................................................... 29

*Travelers Indem. Co. v. Cephalon, Inc.*,
  620 F. App'x. 82 (3d Cir. 2015) ....................................................................... 28

*Two Jinn v. Gov't Payment Serv., Inc.*,
  233 Cal. App. 4th 1321 (2015) ........................................................................... 9

*UMG Recordings, Inc. v. Grande Commc'ns, LLC*,
  384 F. Supp. 3d 743 (W.D. Tex. 2019) ............................................................. 21

*Viacom Int'l, Inc. v. YouTube, Inc.*,
  676 F.3d 19 (2d Cir. 2013) .................................................................................. 2

*White v. Wells Fargo Home Mortg.*,
  No. A140195, 2015 WL 4055329 (Cal. Ct. App. July 2, 2015) ........................ 12

*Zhang v. Super. Ct.*,
  57 Cal. 4th 364 (2013) ..................................................................................... 18

**Statutes**

17 U.S.C. § 512(i)(1)(A) .................................................................................... 2

Bus. & Prof. Code, § 17200 ............................................................................... 5

Cal. Bus. & Prof. Code § 7521 ......................................................................... 22

California Unfair Competition Law ........................................................ 1, 4, 5, 6, 31

*California Unfair Competition Law Premised on New Jersey's Private
  Detective Law* ............................................................................................. 26

Digital Millennium Copyright Act ................................................................... 1, 2

DMCA .................................................................................................... *passim*

DMCA Section 512(a) ........................................................................................ 2

N.J.S.A. § 45:19-10 ......................................................................................... 26

Unfair Competition Law .................................................................................. 26

**Other Authorities**

Fed. R. Civ. P. 9(b) ................................................................................... 5, 6, 28

Rule 8 ............................................................................................................... 4

*Rule 9* ....................................................................................................... 27, 28

## I.   INTRODUCTION

Intent on directing focus away from its liability for rampant copyright infringement occurring on its network, RCN—for the second time—wants to make Rightscorp a defendant. RCN's attempt to cure the deficiencies with its countercomplaint, however, continue to fail. Rightscorp's software detected infringement of copyrighted works on RCN's network and notified RCN of those infringements consistent with the statutory scheme set forth in the Digital Millennium Copyright Act. Faced with detailed notices outlining rampant and repeat infringement, RCN chose to ignore the notices Rightscorp provided.  Desperate for someone to blame for its inaction, RCN through its Second Amended Countercomplaint attempts to resuscitate its previously dismissed and entirely manufactured theory to blame *Rightscorp*. RCN's theory is legally incognizable and implausible, and none of the amended allegations change that.

RCN's initial countercomplaint asserted that Rightscorp violated the California Unfair Competition Law based on the formatting of its notices, the extent of data it retained in support of its notices, and speculative theories of fraud. The Court dismissed the countercomplaint because RCN failed to identify any economic injury traceable to the alleged conduct, as opposed to inactionable litigation and investigation expenses, but gave RCN leave to amend.

RCN's amendments have not solved the problem the Court identified. Nor has

1

RCN overcome the other flaws identified in RCN's prior motion. The countercomplaint should be dismissed without leave to amend.

## II.    BACKGROUND

When Congress enacted the Digital Millennium Copyright Act in 1998, it struck a balance between the interests of copyright owners and internet service providers like RCN. As part of that balance, the DMCA provides certain safe harbor protections from liability for internet service providers, but only if they meet certain requirements. *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 27 (2d Cir. 2013). As relevant here, Section 512(a) of the DMCA provides a safe harbor to internet service providers that have adopted and reasonably implemented a policy for the termination of repeat infringers on their network.  17 U.S.C. §512(a); *see also* 17 U.S.C. § 512(i)(1)(A).

RCN does not detect copyright infringement on its own network. (2d Am. Answer and Countercompl. ¶ 47.) The only way it learns about infringement is "after the fact, when it receives an accusation by email." (*Id.* ¶ 51.) The DMCA does not specify a format for informing an internet service provider of infringement on its network.

Rightscorp develops and operates software to detect piracy on the internet. (2d Am. Answer and Countercompl. ¶ 66.) When the software Rightscorp developed detects infringement, Rightscorp informs internet service providers like RCN of the

infringement it detected by the provider's customers. (*Id.*) And Rightscorp has provided information relating to its efforts to detect and inform ISPs of infringement to the RIAA and the record labels in this case. (*Id.* ¶ 76.)

Rightscorp has been sending notices to RCN for nearly a decade. (ECF No. 15-3 at 33 (notice dated 2013).)[1] Each of Rightscorp's notices includes extensive details about the copyright infringement it detected, including identifying the IP address of the computer used to commit the infringement, the title of the work infringed, the date and time of the infringement, Rightscorp's contact information. Each notice is signed by Rightscorp's CEO, whose assurance that Rightscorp is authorized to act on behalf of the owner of the copyrighted work is made under the penalty of perjury.

In 2016, RCN implemented a process to handle notices of copyright infringement and purportedly to terminate the internet access of customers accused of copyright infringement. (2d Amd. Answer and Countercompl. ¶ 49.) RCN's claims-handling process establishes certain requirements for notices of copyright infringement, purportedly designed "to establish certain minimum requirements aimed at determining whether an email alleging copyright infringement *may* be

---

[1] RCN attached examples of Rightscorp's notices as an exhibit to its motion to dismiss the complaint. (ECF No. 15-3.) These notices are appropriate for consideration on a motion to dismiss as judicial admissions and as incorporated by reference into the amended counterclaim.

legitimate." (*Id.* at ¶ 52.) Although RCN dubs this its "DMCA policy" these minimum requirements are RCN's own contrivance; the DMCA does not provide any requirements for the means of informing an internet service provider of copyright infringement by its customers. One of RCN's "requirements" is that emails informing RCN of copyright infringement must be digitally signed in a particular encryption format. (*Ibid.*)

RCN claims that Rightscorp's signature formatting constitutes an unfair business practice in violation of the California Unfair Competition law. RCN also argues that Rightscorp has intentionally destroyed evidence substantiating the accusations in its infringement notices, that Rightscorp needed a private investigator's license to operate its business, and that some speculative portion of Rightscorp's notices are false or fraudulent—all cast as predicate violations of the California Unfair Competition Law. For the reasons discussed below, and as stated in Rightscorp's prior motion to dismiss (ECF Nos. 136-1, 144), RCN's claims fail.

### III.   LEGAL STANDARD

#### A.   Pleading Requirements

To satisfy the pleading requirements of Rule 8, a countercomplaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations need not be accepted as true and cannot themselves state a claim. *Id.* at 555–57; *Schuchardt v.*

4

*President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016).

Where a countercomplaint alleges "fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this requirement, a claimant must plead the "date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citation omitted). Conclusions or impermissible speculation as to the existence of fraud are insufficient. *Alvarez v. Ins. Co. of N. Am.*, 313 F. App'x 465, 468 (3d Cir. 2008). When allegations of fraud are made on "information and belief", the complaint must "describe the sources of information with particularity, providing the who, what, when, where and how of the sources, as well as the who, what, when, where and how of the information those sources convey." *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).

## B.    California's Unfair Competition Law

RCN's sole claim is under California's Unfair Competition Law, which permits civil recovery, in pertinent part, for "any unlawful, unfair or fraudulent business act or practice . . . ." Calif. Bus. & Prof. Code, § 17200; *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 321 (2011); *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 851–52 (Cal. App. 4th Dist. 2008), *as modified* (Jan. 28, 2008). To state a claim under the UCL, a private litigant must satisfy a two-pronged test: (1) proving it "has

suffered injury in fact," and (2) "has lost money or property as a result of such unfair competition." This test, which was implemented as a result of a ballot measure in 2004, was intended to curb "frivolous unfair competition lawsuits" that clog courts, cost taxpayer money, and threaten small businesses. Prop. 64 § 1 subd. (c) ("Findings and Declarations of Purpose").

The risk of suffering speculative, unknown damages in the future is insufficient to establish the requisite economic injury to state a UCL claim. *Poghosyan v. First Fin. Asset Mgmt., Inc.*, No. 119CV01205-DADSAB, 2020 WL 433083, at *8 (E.D. Cal. Jan. 28, 2020); *JaM Cellars, Inc. v. Vintage Wine Estates, Inc.*, No. 17-01133-CRB, 2017 WL 2535864, at *4 (N.D. Cal. June 12, 2017) ("A UCL plaintiff must allege that it has suffered injury in fact, and not just possible future injury.").

Claims stated under the fraud prong of the UCL are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b), and must include an account of the time, place, and specific content of the false representations being alleged. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016).

## IV.    ARGUMENT

RCN's prior countercomplaint asserted that Rightscorp violated the California

6

Unfair Competition Law by not using RCN's preferred format for infringement notices, by not retaining certain information related to its notices, and by sending unspecified fraudulent notices. In granting Rightscorp's prior motion to dismiss, this Court recognized that RCN's countercomplaint had not alleged a causal connection between Rightscorp's alleged conduct and the economic injury RCN claimed to suffer. Specifically, the Court reasoned that RCN had failed to connect Rightscorp's alleged conduct to: (1) the cost of establishing its DMCA system, (2) the costs of operating and maintaining its DMCA system, and (3) the cost of defending against lawsuits based on Rightscorp's infringement notices. (ECF No. 159 at 8–9.) RCN's amended countercomplaint makes only conclusory and legally insufficient attempts to remedy that failure. And RCN has also done nothing to address the other flaws Rightscorp raised in its prior motion to dismiss.

This memorandum first explains why RCN's amendments fail to establish the economic injury required to state a claim under the UCL; it then addresses each of RCN's legal theories individually.

### A. RCN's amendments do not establish the economic injury the Court has already found lacking.

The bulk of RCN's amendments to its countercomplaint do not even attempt to address its failure to plead an actionable economic injury. Rather, most of the new and modified allegations address the relationship between Rightscorp and the other parties (*e.g.*, 2d Am. Answer and Countercompl. ¶¶ 93–94, 97–99, 107, 124–28), the

7

background of RCN's digital signature policy and superfluous allegations of willful violation of it (*id.* ¶¶ 102–06, 150), RCN's new theory under the "unlawful" prong of the UCL (*id.* ¶¶ 15, 133–44, 151)[2], or more conclusory allegations of fraud (*id.* ¶¶ 116–17)[3].

The only amendments that even purport to address RCN's economic injury still fail to allege a non-conclusory nexus to any actionable conduct by Rightscorp. (*See id.* ¶¶ 130–132, 152.)[4] Each such allegation is addressed in turn.

### 1.   *RCN's legal expenses are not traceable to the alleged conduct.*

As this Court has already determined, costs incurred to investigate the "nature scope and extent" of a defendant's conduct, including "pre-litigation" costs, cannot confer standing under the UCL. *See* ECF No. 159 at 10–11 (citing *Two Jinn v. Gov't Payment Serv., Inc.*, 233 Cal. App. 4th 1321, 1334 (2015)). In a feeble attempt to avoid that bar to its theory of economic injury, RCN states it has incurred legal costs "[s]eparate from any litigation costs" (2d Am. Answer and Countercompl. ¶ 132),

---

[2] As discussed in SectionIV.D.2, *infra*, RCN's new legal theory rests on the same flawed allegations of economic loss as RCN's other theories. (*See also* 2d Amd. Answer and Countercompl. ¶ 144.) To the extent the Court finds those theories fail, this new theory must also fail.

[3] These allegations are discussed in the context of RCN's claim under the fraudulent prong in Section IV.E, *infra*.

[4] Paragraphs 129, 147, and 150 also address RCN's alleged economic injury, but they are conclusory allegations not entitled to the presumption of truth.

but it still fails to offer "sufficient details for the Court to determine" that these expenses are not legally barred pre-litigation costs. ECF No. 159 at 10–11 (citing *Two Jinn*, 233 Cal. App. 4th at 1334).

Specifically, the costs RCN identifies are legal fees incurred to (1) analyze Rightscorp's copyright infringement notices, (2) develop RCN's DMCA policy, (3) "analyze the legal significance of Rightscorp's refusal to comply with RCN's digital signature requirement," and (4) "evaluate potential responses to Rightscorp's conduct and allegations." (*Id.* ¶ 130.) RCN also persists in its theory that it suffered an actionable economic injury in "evaluating and defending against Rightscorp's copyright infringement allegations, including its defense of the Record Labels' claims in this matter . . . ." (2d Am. Answer and Countercompl. ¶ 132.)[5]

The conclusory assertion that these allegations are "separate from any litigation costs," without *factual* allegations in support, is not entitled to the presumption of truth on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). RCN also misstates the test, which precludes standing based on *pre-litigation* expenses. *Two Jinn*, 233 Cal. App. 4th at 1334; *see also Dual*

---

[5] This allegation is not new, it is just transposed within the amended counterclaim. (*See* 1st Am. Answer and Countercompl. ¶ 117.)

*Diagnosis Treatment Ctr., Inc. v. Blue Cross of California*, SACV150736-DOCDFMX, 2018 WL 10072961, at *8–9 (C.D. Cal. May 1, 2018) ("Plaintiffs' allegations about unnecessary collections costs and spending money to learn the truth are insufficient to establish that they have standing to bring a UCL claim."); *Rojas v. Bosch Solar Energy Corp.,* 443 F. Supp. 3d 1060, 1083 (N.D. Cal. 2020) (same). Regardless of how RCN characterizes these legal expenses, none is traceable to any actionable conduct under the UCL.

As to the cost to have outside counsel analyze Rightscorp's notices, RCN has not distinguished those costs arising from the costs of analyzing notices from *any* rightsholder or monitoring service, much less how any distinction is due to Rightscorp's alleged misconduct in particular. That is not a viable basis for statutory standing. ECF No. 159 at 8 (quoting *Daro v. Super. Ct.*, 151 Cal. App. 4th 1079, 1099 (2007)).

The cost of hiring counsel to "assist with the development of RCN's DMCA policy (including specifically the digital signature requirement)" also is not traceable to Rightscorp. This Court has already held that RCN's costs in establishing its DMCA policy "cannot . . . be fairly attributable to . . . Rightscorp." *See* ECF No. 159 at 8. RCN's extraneous reference to its arbitrary digital signature requirement does not remedy the problem. Plainly, Rightscorp's alleged violation of that policy could not have caused RCN to incur expense in developing it. (Nor is it apparent

10

how any other accused conduct could have driven that expense.)

Nor are RCN's costs of hiring counsel to evaluate "potential responses to Rightscorp's conduct and allegations" or the "legal significance of Rightscorp's refusal to comply with RCN's digital signature requirement" viable bases for standing under the UCL. *Robinson* v. *HSBC Bank USA,* 732 F. Supp. 2d 976, 989 (N.D. Cal. 2010)) ("Plaintiffs cannot establish standing to pursue a UCL claim based on expenses incurred in order to bring their UCL claim . . . .").

> **2.      *RCN's employee hours dedicated to administering its signature requirement are self-inflicted injuries, not traceable to Rightscorp.***

The amended countercomplaint also alleges that RCN has devoted "employee work hours" to ensuring its claims-processing system can handle Rightscorp's notices that do not use RCN's preferred digital-signature format. (2d Am. Answer and Countercompl. ¶ 131.) It asserts, without any supporting facts, that some of these work hours would have been avoided if Rightscorp digitally signed its infringement notices using PGP or a comparable format. (*Id.*; *see also* ¶ 152.)

As explained in Section IV.B, *infra*, this purported injury is the result of RCN's decision to impose its own formatting requirement, which is not required or even suggested by the DMCA. Indeed, the DMCA does not establish *any* requirements for formatting, encryption, signatures, or any other mechanisms for identifying the source of an infringement notice. The cost of administering its self-

11

established criteria, to the extent it constitutes an injury at all, is a self-inflicted injury that cannot confer standing under the UCL. *Red v. Gen. Mills, Inc.*, No. 215CV02232ODWJPR, 2015 WL 9484398, at \*4 (C.D. Cal. Dec. 29, 2015); *White v. Wells Fargo Home Mortg.*, No. A140195, 2015 WL 4055329, at \*10 (Cal. Ct. App. July 2, 2015); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (a plaintiff "cannot manufacture standing merely by inflicting harm on [himself] . . . .").

None of RCN's new or recast theories of economic injury is sufficient to rescue RCN's counterclaim. That alone is a sufficient basis for dismissal.

As in its prior opposition brief, RCN can be expected to distract from its failure to plead an economic injury by hopping among its various theories of misconduct—none of which is actionable. To avoid that shell game, it is important to consider the alleged conduct and RCN's claimed economic loss in tandem with each category of alleged conduct, as below.

## B. RCN cannot manufacture a claim based on its arbitrary electronic signature requirement.

One of RCN's "minimum requirements" for determining whether an accusation of copyright infringement is "legitimate" is its requirement that notices be digitally signed, using PGP encryption or another comparable format (2d Am. Answer and Countercompl. ¶¶ 52, 102.) This requirement, which again finds no grounding in the DMCA, is purportedly in place in order "to verify the identity of

12

the sender" of copyright infringement notices. (2d Am. Answer and Countercompl. ¶¶ 52, 102.)

Rightscorp's notices are signed by Rightscorp's CEO. The notices provide a physical address, a phone number, and an email address so any recipient can contact Rightscorp. And Rightscorp swears under the penalty of perjury that it is authorized to act on behalf of the owner of the copyright in question. Relevant excerpts are reproduced below.

> We have a good faith belief that use of the material in the manner complained of herein is not authorized by the copyright owner, its agent, or by operation of law. In addition, we have a good faith subjective belief that the use does not constitute fair use. I swear, under penalty of perjury, that I am authorized to act on behalf of the owner of the exclusive rights that have been infringed. While the Copyright Owner is entitled to monetary damages from the infringing party under 17 U.S.C. Section 504, The Copyright Owner believes that it may be expeditious to settle this matter without the need of costly and time-consuming litigation.

> Very truly yours,
>
> Cecil Bond Kyte
>
> CEO
>
> Rightscorp, Inc.
> 3100 Donald Douglas Loop, North,
> Santa Monica, CA 90405
> Telephone: (888) 651-9252

(ECF No. 15-3 at 35–35 (emphasis added).)

RCN's amended countercomplaint alleges that Rightscorp has engaged in "unfair" business practices because its copyright notices did not use RCN's preferred mechanism for verifying the identity of the sender. (*Id.* ¶ 105). That is not actionable under the UCL.

13

As already discussed in Section IV.A, *supra*, RCN's preference for a particular format of digital signature—with no grounding in the applicable statutory scheme—cannot convert Rightscorp's notice format into an unfair business practice. Nor has RCN pled facts establishing that it suffered any economic injury traceable to Rightscorp's signature formatting—apart from unspecified expenses due to RCN's handling of notices that follow different formatting. To the extent RCN's claim relies on its arbitrary formatting preferences, it must be dismissed.

The California Supreme Court has acknowledged—but declined to resolve—a "split in authority" as to the test for "unfair" business practices under the UCL in cases "on behalf of consumers rather than competitors."[6] *See Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*, 9 Cal. 5th 279, 303 and n.10 (2020). California courts have alternatively considered: (1) whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law; (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (3) whether the practice's impact on the victim outweighs the reasons, justifications and motives of the alleged wrongdoer. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214 (9th Cir. 2020)

---

[6] The fact that RCN is neither a traditional consumer nor a competitor of Rightscorp's underscores its lack of statutory standing.

(citations and internal quotation marks omitted), *cert. granted in part on other grounds*, No. 20-1374, 2021 WL 2742790 (U.S. July 2, 2021). RCN's theory fails under any test.

Plainly, RCN cannot tether its digital-signature formatting requirement to any legal provision or a violation of an antitrust law or policy. Indeed, RCN acknowledges that emailed notices of copyright infringement are the only way it can police infringement on its network—a task it must undertake to claim the protections of the DMCA. (2d Am. Answer and Countercompl. ¶ 52.) Rightscorp's notices *give effect to* that statutory scheme. RCN's minimum requirements are obstacles to it.

Nor can RCN seriously contend that Rightscorp's practice of notifying it of infringement on its network, as contemplated by the DMCA, satisfies the "immoral" test. Rather, RCN will likely insist the determination of whether Rightscorp's practices are unfair involves a fact-bound balancing test weighing the impact to consumers against Rightscorp's justifications. Not so. RCN cannot survive a motion to dismiss on the bare assertion that Rightscorp's signature format is harmful; it must plead facts to that effect. And, of course, RCN must identify an economic loss that *it suffered* that is traceable to the accused conduct. It cannot.

RCN cannot identify *any* impact from Rightscorp's notice formatting either to itself or to its subscribers, besides the costs driven by its decision to administer the requirement in the first place. (*See* 2d Am. Answer and Countercompl. ¶¶ 57, 92,

131, 152.) RCN has not identified, for example, costs incurred to verify that Rightscorp in fact sent the notices in question, or costs due to misidentifying a Rightscorp notice. Nor has RCN identified a harm *to consumers*. It cannot. RCN's decision to implement a "DMCA policy" in an attempt to claim the protection of the safe harbor it provides was its prerogative, but the cost of implementing that policy is RCN's to bear. And RCN was free to unilaterally determine the format of notices it would consider under that policy, and those it would not. That, too, was RCN's expense to incur.

But RCN's claims-handling criteria has no bearing on whether notices that follow a different format give rise to "appropriate circumstances" to terminate users' service *under the law*. That is for the courts to decide. Nor can RCN use the UCL to enforce its self-determined picayune formatting requirements in the name of "unfair business practices" against third parties who simply provide notice of copyright infringement. The UCL is broad, but it is not *so* broad as to allow a plaintiff to manufacture tort liability based on its personal preferences. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999) (The unfair competition law "is not unlimited."); *Foster v. Reverse Mortg. Sols., Inc.*, No. CV1910039DSFFFMX, 2020 WL 4390374, at *9 (C.D. Cal. May 13, 2020) (rejecting UCL claim for "deliberately drawn-out and unsuccessful loss mitigation review process, resulting in harm to [Plaintiff] that outweighed the utility of

16

Defendants' actions"); *see also McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 228 (2003) (plaintiffs lacked standing because injury stemmed from plaintiffs' "personal choice" rather than from the statute), *overruled on other grounds by Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010).

RCN's transparent effort to chill meritorious efforts to curb copyright infringement should be rejected. The countercomplaint should be dismissed.

### C. RCN has not stated a claim based on Rightscorp's alleged destruction of evidence.

#### 1. *California law prohibits standalone spoliation claims.*

As RCN explained in its prior motion to dismiss (*see* ECF No. 136-1 at 13–14), destruction of evidence is not actionable under the UCL. RCN has done nothing to avoid that legal prohibition to its spoliation theory in its amended countercomplaint. RCN persists in its theory that Rightscorp has violated the UCL with its "destruction of all underlying evidence" for the infringement notices it sent to RCN. (2d Amd. Answer and Countercompl. ¶¶ 77–99, 150.)

Standalone spoliation claims are "barred by California law." *Asberry v. Money Store*, 218CV01291ODWPLAX, 2018 WL 6834309, at *3 (C.D. Cal. Dec. 27, 2018) (collecting cases); *see also Temple Cmty. Hosp. v. Superior Court*, 20 Cal. 4th 464, 471 (1999) (applying the bar to claims against a third party). "[T]he UCL cannot be used to state a cause of action the gist of which is absolutely barred under some other principle of law." *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17

Cal. 4th 553, 566 (1998) (citing *Safeco Ins. Co. v. Superior Court*, 216 Cal. App. 3d 1491, 1494 (Cal. Ct. App. 1990)); *Pestmaster Servs., Inc. v. Travelers Cas. & Sur. Co. of Am.*, No. CV135039JFWMRWX, 2013 WL 12147583, at *5 (C.D. Cal. Sept. 10, 2013) (dismissing UCL claim where "gist" of the claim was barred). And this principle has been applied to bar spoliation clams under the UCL. *Starkey v. Covenant Care, Inc.*, No. B156021, 2004 WL 206209, at *5 (Cal. Ct. App. Feb. 4, 2004) (non-precedential)[7] (citing *Cedars-Sinai Medical Center v. Superior Court*, 18 Cal. 4th 1 (1998)) ("[The UCL] may not be used to circumvent the absolute litigation privilege or in a derivative suit to curb discovery abuses.")). Thus, to the extent RCN's counterclaim rests on its spoliation theory, it is legally barred and should be dismissed.

### 2.    *RCN has not identified any injury caused by the alleged destruction of evidence.*

Even if California law permitted RCN to advance its spoliation theory, the law is clear that RCN needed to "demonstrate economic injury caused by the alleged unfair competition" in order to establish statutory standing under the UCL. *Zhang v.*

---

[7] The Third Circuit "does not prohibit citation to" non-precedential opinions. *In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006). Particularly in the absence of contrary authority (or any argument whatsoever) presented by RCN, this should be viewed as persuasive authority that California law would apply the prohibition on standalone spoliation claims to prohibit a standalone spoliation claim dressed up under the UCL.

*Super. Ct.*, 57 Cal. 4th 364, 382 (2013); *Kwikset Corp. v. Super. Ct.*, 61 Cal. 4th 310, 321 (2011). The Court already dismissed RCN's counterclaim for failure to meet that standard. RCN's amended countercomplaint still has not identified any injury flowing from the alleged destruction of evidence.

As with RCN's original countercomplaint, the amended countercomplaint alleges that RCN incurs expenses relating to its copyright claims processing system (2d Am. Answer and Countercompl. ¶ 57), but RCN still has not explained how those expenses relate to the alleged destruction of evidence, as opposed to the cost of adopting and implementing a policy it is required to operate in order to claim entitlement to the DMCA safe harbor. RCN has not, for example, pled that it ever attempted to verify the facts underlying a Rightscorp notice, much less sought supporting evidence that Rightscorp could not produce. Of course, it has not alleged an economic loss resulting from such actions either. It could not. RCN does not evaluate the merits of Rightscorp's notices at all; it only evaluates whether the notices comply with RCN's signature requirement. (2d Am. Answer and Countercompl. ¶¶ 54, 56, 101; ECF No. 143 at 30–31; *RCN Telecom Services, LLC v. BMG Rights Mgmt. (US) LLC,* No. 16-cv-4417, Am. Compl. ¶¶ 58, ECF No. 45 (S.D.N.Y. Sept. 16, 2016).) Plainly, RCN cannot claim injury from the alleged destruction of evidence it never intended or attempted to evaluate.

19

### 3.    *RCN cannot rescue its claim by recasting it as one for lack of substantiation.*

Rightscorp explained in its prior motion to dismiss that California law makes clear that a plaintiff cannot bring a UCL claim based on the defendant's alleged lack of substantiation for its statements. ECF No. 136-1 at 14–15 (collecting cases); *see e.g.*, *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharm., Inc.,* 107 Cal. App. 4th 1336, 1344 (2003); *Engel v. Novex Biotech, LLC,* 2015 WL 846777 (N.D. Cal. Feb. 25, 2015) ("If Plaintiff wishes to bring claims alleging that Defendants' advertisements are false and misleading, then he must do so based on actual facts showing this, not simply an assertion that Defendants' substantiation is inadequate."). RCN did not dispute the argument. Rather, RCN insisted it had "no application here." (ECF No. 143 at 19.) Yet, RCN's only attempt to identify an injury caused by Rightscorp's alleged destruction of evidence asserts that the alleged spoliation meant that "because Rightscorp knew that its individual allegations could never be vetted, it was emboldened to make allegations it could never prove and allegations that it knew were false." (2d Am. Answer and Countercompl. ¶ 117.) That is precisely the kind of allegation of lack of substantiation that California law prohibits.

### D.    RCN's theory that Rightscorp required a private investigator's license cannot support a claim under the "unlawful" prong of the California UCL.

RCN's new theory under the "unlawful" prong—that Rightscorp required a

license to operate its business—is nothing more than a pretextual jab at Rightscorp. Rightscorp has openly operated its business of collecting data via its proprietary software tool for more than a decade without a private investigator's license.[8] And the data it shares with rightsholders has been qualified in numerous courts. Rightscorp's software development and operation business is not the business of private investigation, so RCN has not stated an injury in fact. And RCN does not even allege an independent theory of economic harm caused by Rightscorp's declination to secure a private investigator's license. RCN's claim based on the "unlawful" prong of the UCL should be dismissed.

### 1. *Rightscorp does not require a private investigator license to operate its infringement monitoring software.*

RCN's countercomplaint alleges that Rightscorp's business amounts to the work of a private investigator under California law, which requires a license. (*Id.* ¶¶ 133–34.) In pertinent part, Section 7521 of the California Business and Professionals Code defines a private investigator as:

> a person other than an insurance adjuster . . . who, for any consideration whatsoever . . . engages in business or accepts employment to furnish, or agrees to make or makes, any

---

[8] Rightscorp requests that the Court take judicial notice of other decisions finding Rightscorp's system to be valid, including *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 969 (E.D. Va. 2016), *aff'd in part, rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018), and *UMG Recordings, Inc. v. Grande Commc'ns, LLC*, 384 F. Supp. 3d 743, 757-58 (W.D. Tex. 2019).

investigation for the purpose of obtaining, information with reference to: . . . (e) [s]ecuring evidence to be used before any court, board, officer, or investigating committee.

Cal. Bus. & Prof. Code § 7521. This statute does not apply.

This licensure requirement for private investigators is intended to protect the public interest. "It is reasonable that to protect the public, investigators should not be licensed who do not hesitate to commit a trespass by entering a person's home without the consent of the person in possession and over such person's protests." *Taylor v. Bureau of Priv. Investigators & Adjusters of Cal.*, 128 Cal. App. 2d 219, 225–26 (1954). But Section 7521 cannot be read so broadly as to cause absurd consequences, even where the strict letter of the statute supports such an interpretation. *Kennard v. Rosenberg*, 127 Cal. App. 2d 340, 345 (1954). The licensure requirement "was not intended by the legislature to place a limitation on the right of professional engineers to make chemical tests, conduct experiments and to testify in court as to the results thereof." *Id.* at 344. Nor could it prevent "a physician, geologist, accountant, engineer, surveyor or a handwriting expert" nor "a photographer . . . employed to take photographs of damaged premises for use in court" from practicing their professions without a private investigator's license. *Id.* No decision has held that monitoring infringement of intellectual property and providing data for use in litigation constitutes the practice of private investigation under California law, much less where the purported investigator is merely operating

22

software that it developed itself. Numerous decisions have held to the contrary.

In *Malibu Media, LLC v. Doe*, a California court held that a company that provided services to verify detected internet piracy by comparing clips downloaded from the internet with the copyrighted works did not require a private investigator's license. No. 2:16-CV-1733, 2017 WL 840652 (E.D. Cal. Mar. 3, 2017). Indeed, that decision noted the defendant's theory "border[ed] on the frivolous." *Id.* at *4.

Similarly, in *Manufacturing Automation and Software Sys., Inc.*, a software consultant who conducted an undercover investigation "to obtain information . . . for use in the litigation" concerning trade secret misappropriation by a software developer's former employees was held not to be a private investigator. Case No. 2:16-cv-8962, ECF No. No. 106 at 11 (C.D. Cal. Dec. 1, 2017). In view of the dearth of authority "holding that an informal undercover investigation . . . in the context of this intellectual property litigation requires a private investigator's license," the district court was "not persuaded that [the consultant] was required under California law to obtain a private investigator's license to undertake his investigation." *Id.* at 25.

To be sure, permitting Rightscorp to carry on its business and provide evidence in court would not invite anarchy. "[W]ork by forensic experts, even work not subject to other professional licensing requirements, is not unregulated." *State v. Tatalovich*, 129 Nev. 588, 592 (2013) (interpreting substantially similar Nevada

23

statute). Rather, the admissibility of Rightscorp's evidence remains "limited by the rules of the court, the judge's approval of [any] expert's qualifications [when relying on Rightscorp's evidence] to provide [his or her] opinion, and the judge's determination of what testimony, if any, to allow." *Id.* The Court should follow the weight of decisions on point and hold that RCN has failed to establish that Rightscorp requires a private investigator's license.

> **2.      *RCN has not alleged an injury caused by Rightscorp's declination to obtain a private investigator license.***

Assuming for the sake of argument that Rightscorp needed a private investigator license, RCN's amended countercomplaint has failed to allege an economic injury caused by Rightscorp's declination to obtain one.

As an initial matter, the only injury RCN identifies relating to its license theory is that "on information and belief, Rightscorp . . . would not have engaged in the unfair and fraudulent business practices described herein had Rightscorp and its representatives undertaken and been subject to the training and licensure requirements for private investigators in California and/or New Jersey. As alleged herein, these unfair and fraudulent business practices caused RCN to suffer economic injury." (2d Am. Answer and Countercompl. ¶ 144). In other words, RCN's alleged economic loss on its unlawful-prong theory simply incorporates by reference its economic loss allegations on its other theories. But RCN has failed to adequately plead causation as to those theories. (*See* Sections IV.A, IV.B, IV.C.2,

*supra*; Section IV.E.2, *infra*.)

Even so, RCN's theory is speculative and conclusory. It is not sufficient at the pleading stage merely to assert that a licensed investigator would never have undertaken the conduct RCN complains of. *Khan v. 7-Eleven, Inc.*, No. EDCV1400522DMGPLAX, 2015 WL 12781203, at *3 (C.D. Cal. May 6, 2015) (rejecting a UCL causal nexus claiming, "with no factual basis, a distinction between unlicensed and licensed private investigators by assuming that a licensed investigator would never cross the line into unlawful stalking. This inference, as Defendant points out, is speculative and cannot form the basis for a plausible UCL claim.") (citing *Xavier v. Philip Morris USA Inc.*, No. C 10-02067 WHA, 2010 WL 3956860, at *1 (N.D. Cal. Oct. 8, 2010)). RCN offers no factual basis whatsoever for its assertion that requiring Rightscorp to obtain a private investigator's license would have changed any of the accused conduct. It has not, for example, identified required training, professional standards, qualifying examinations or anything of the sort that would have curbed any of the accused conduct. A mere lack of licensure, without a resulting injury, is not sufficient under the UCL. *Medina v. Safe-Guard Prods.* 164 Cal. App. 4th 105, 115 (2008) (finding no UCL standing for claim based solely on insurance seller's unlicensed status) ;*Orcilla v. Big Stir, Inc.*, 244 Cal. App. 4th 982, 1013 (2016) ("A plaintiff fails to establish causation if he or she would have suffered 'the same harm whether or not a defendant complied with the law.'"); *Khan*

*v. 7-Eleven, Inc.*, No. 14-cv-522, 2015 WL 12781203, at *2 (C.D. Cal. May 6, 2015).

And RCN insists, in conclusory fashion, the other economic harms it suffered are not litigation expenses. (2d Am. Answer and Countercompl. ¶ 132.) It must assert that conclusion, because this Court has already correctly held that such expenses are not actionable under the UCL. ECF No. 159 at 10–11 (citing *Two Jinn*, 233 Cal. App. 4th at 1334). Yet, in rejecting litigation as the cause for those costs, RCN has pled itself out of a theory that it was harmed by Rightscorp's practice of gathering evidence "to be used before any court", as distinct from harm it would have suffered regardless of Rightscorp's licensure. RCN cannot identify an actionable economic harm traceable to Rightscorp's declination to obtain a private investigator's license. To the extent RCN's claim rests on that theory, it must be dismissed.

### 3.  *RCN cannot state a claim under the California Unfair Competition Law premised on New Jersey's private detective law.*

RCN also alleges that Rightscorp's conduct is unlawful under New Jersey's licensure requirements for private detectives, N.J.S.A. § 45:19-10. (2d Am. Answer and Countercompl. ¶ 141). RCN's theory that *California*'s Unfair Competition Law can provide a private right of action for a violation of a *New Jersey* law that does not provide one defies logic. And RCN would strain to identify any decision permitting a California UCL claim to stand based on another state's law.

To the extent there is any meaningful difference between the applicable

statutes, the Court need not even engage in the nested conflict-of-law analysis RCN's theory invites—the analysis is essentially the same for the UCL claim as for the predicate act. If the New Jersey private investigator law applies, the UCL doesn't. If California law applies, the New Jersey private detective law doesn't. RCN's mismatched claim fails either way. And to be sure, the New Jersey legislature declined to provide a private right of action, so New Jersey could not be said to have any interest in allowing its law to be asserted privately via California law.

Numerous decisions have declined to apply a state's private investigator licensure law to reach out-of-state conduct that merely touches the state via the internet. *E.g.*, *Capitol Recs. Inc. v. Thomas-Rasset*, No. CIV 06-1497(MJD/RLE), 2009 WL 1664468, at *2 (D. Minn. June 11, 2009) ("Merely monitoring incoming internet traffic sent from a computer in another state is insufficient to constitute engaging in the business of private detective within the state of Minnesota."); *Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013). This Court should not borrow California law to create a private right of action for a claimed violation of a New Jersey licensure law.

### E. RCN has not stated a claim under the "fraudulent" prong of the UCL.

#### 1. *RCN has not satisfied the requirements of Rule 9.*

RCN continues to assert that Rightscorp has committed a violation under the "fraudulent" prong of the UCL. (2d Am. Answer and Countercompl. ¶¶ 147–49.)

27

Even if Rule 9 does not apply to the entirety of RCN's counterclaim, to the extent its claim is stated under the fraud prong of the UCL, it must meet the particularity requirements of Federal Rule of Civil Procedure 9(b). *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-CV-2284-H-KSC, 2020 WL 2214152, at *9 (S.D. Cal. May 7, 2020) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)); *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016) (same).

In order to satisfy Rule 9(b), a complaint must provide the "who, what, when, where and how" of the alleged fraudulent conduct. *In re Rockefeller Ctr. Props., Inc.*, 564. *Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2009) (internal citation omitted). RCN has not identified a single inaccuracy in any specific notice it received from Rightscorp. RCN's conspicuous failure to plead such facts falls well short of its obligations under Rule 9(b). *See Travelers Indem. Co. v. Cephalon, Inc.,* 620 F. App'x. 82, 86 (3d Cir. 2015). Where, as here, the complaining party does not specify—and apparently does not even know—which representations are false or deceptive, its claim fails under Rule 9(b). *See Haley v. Macy's, Inc.*, 263 F. Supp. 3d 819, 823 (N.D. Cal. 2017) ("Plaintiffs concede some prices may not be false or deceptive. [] Without more, therefore, Defendants cannot identify the transactions involving purportedly misleading prices in order to mount a defense against Plaintiffs' allegations.").

28

### 2. *RCN has not alleged that it relied on the substance of any of Rightscorp's notices, much less a fraudulent one.*

To state a claim under the "fraudulent" prong of the UCL, "a plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009). RCN has not done so. By RCN's own admission, it never relied on the contents of Rightscorp's notices at all, much less on a *false* notice. (2d Am. Answer and Countercompl. ¶¶ 54, 56, 101; ECF No. 143 at 30–31; *RCN Telecom Services, LLC v. BMG Rights Mgmt. (US) LLC,* No. 16-cv-4417, Am. Compl. ¶¶ 58, ECF No. 45 (S.D.N.Y. Sept. 16, 2016).) RCN could not allege any injury resulting from reliance on a misrepresentation in Rightscorp's notices, because it never relied on any information in Rightscorp's notices. This is an essential element of a claim under the fraudulent prong of the UCL, and RCN's conspicuous failure to satisfy it warrants dismissal.

### 3. *RCN cannot state a UCL claim based on alleged concealment of unidentified or potential fraud.*

The Court characterized RCN's claim not as sounding in fraud but rather that Rightscorp's conduct enabled it to "*conceal* potential acts of fraud . . . ." (ECF. No. 159 at 7). Even if true, California law is clear that UCL standing cannot rest on the mere possibility of an injury. *Poghosyan v. First Fin. Asset Mgmt., Inc.*, No. 119CV01205DADSAB, 2020 WL 433083, at *8 (E.D. Cal. Jan. 28, 2020); *JaM*

*Cellars, Inc. v. Vintage Wine Estates, Inc.*, No. 17-01133-CRB, 2017 WL 2535864, at *4 (N.D. Cal. June 12, 2017) ("A UCL plaintiff must allege that it has suffered injury in fact, and not just possible future injury."). This makes sense: RCN cannot identify any economic injury it suffered caused by unspecified and unknown fraud— as would be required to state a claim under the UCL.

And the Third Circuit has held that "speculation as to the existence of fraud" cannot suffice. *Alvarez v. Ins. Co. of N. Am.*, 313 F. App'x 465 (3d Cir. 2008). "[D]escribing a mere opportunity for fraud" also "will not suffice." *Foglia v. Renal Ventures Mgmt.*, LLC, 754 F.3d 153, 158 (3d Cir. 2014).

RCN's amendment to allege "[o]n information and belief some portion of the Rightscorp copyright infringement complaints . . . are false or fraudulent" (2d Am. Answer and Countercompl. ¶ 116) cannot supply the missing factual support. The Third Circuit recently rejected nearly identical allegations. *Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 F. App'x 377, 386–87 (3d Cir. 2020) ("Upon information and belief" is a lawyerly way of saying that the Campaign does not know that something is a fact but just suspects it or has heard it."); *see also Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009).

Whether evaluated individually or taken together as an alleged scheme to conceal speculative fraud, RCN's theories cannot support a claim under the UCL. The counterclaim should be dismissed.

30

## V.   <u>CONCLUSION</u>

RCN still has not identified actionable conduct or an economic injury traceable to Rightscorp's accused conduct. That is fatal to its sole claim under the California Unfair Competition Law. The Court should dismiss RCN's countercomplaint.

RCN should not be given further leave to amend. RCN's feeble attempt to remedy the problems the Court already identified, and its utter failure to address the others that were not reached on the prior order, demonstrates that it simply cannot allege facts to support its claim against Rightscorp. And RCN's new private investigator theory not only fails as a matter of law, it also *contradicts* RCN's economic injury theory. RCN should not be given a third bite at the apple.

Dated:  August 31, 2021                    Respectfully submitted,


                                           */s/ Brian J. Levine*
                                           Brian J. Levine
                                           *blevine@bllawnj.com*
                                           Law Office of Brian J. Levine
                                           75 North Bridge Street
                                           Somerville, New Jersey 08876
                                           (908) 243-0111

                                           Michael J. Allan (*Pro Hac Vice*)
                                           *mallan@steptoe.com*
                                           John W. Toth (*Pro Hac Vice*)
                                           *btoth@steptoe.com*
                                           STEPTOE & JOHNSON LLP
                                           1330 Connecticut Avenue, NW
                                           Washington, DC 20036
                                           (202) 429-6749

                                           *Attorneys for Counterclaim Defendant,
                                           Rightscorp, Inc.*