

Edward F. Behm, Esquire
Direct T 267.780.2030  F 215.405.9070
ebehm@atllp.com

December 30, 2021

**VIA ECF**

The Honorable Tonianne J. Bongiovanni
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

    Re:    *UMG Records, Inc., et al. vs. RCN Telecom Services, LLC, et al.*
              Civil Action No. 3:19-cv-17272-MAS-TJB
              **ORAL ARGUMENT REQUESTED**

Dear Judge Bongiovanni:

      This firm represents Defendants (collectively, "RCN") in the above-referenced matter. We submit this letter pursuant to Local Rule 37.1(a)(1) to seek an order compelling Counterclaim-Defendant Rightscorp, Inc. (1) to allow RCN to inspect the databases in which Rightscorp stores evidence of alleged copyright infringements and (2) to provide initial disclosures.[1]

      In this case, Plaintiffs allege that RCN, an internet service provider ("ISP"), is secondarily liable for copyright infringement because it did not permanently terminate the internet access of subscribers after receiving emails from Rightscorp accusing those subscribers of copyright infringement. *See generally* Am. Compl. (ECF No. 9). For its counterclaims, RCN contends that Plaintiffs and Rightscorp engaged in unlawful, unfair, and fraudulent business practices by flooding RCN with illegitimate copyright complaints and destroying the evidence on which those complaints were ostensibly based. *See generally* 2nd Am. Answer & Countercls. (ECF No. 161).

      As a result, a central issue is whether Rightscorp can accurately and reliably detect, and provide competent evidence of, copyright infringement on RCN's network. Plaintiffs assert that "Rightscorp monitors BitTorrent systems and extracts information about the [alleged] infringing activity," and that this information is the basis of Rightscorp's copyright complaints. ECF No. 9, ¶¶ 57–58. That information includes data reflecting whether the BitTorrent user possesses all or part of a targeted music file, known as the "bitfield," as well as related information such as the user's IP address and the data and time of the alleged infringement. **Thus, an inspection of Rightscorp's databases is highly relevant to understanding how Rightscorp's system operates, to assessing the accuracy of Rightscorp's alleged detections, and to testing the veracity and completeness of its alleged infringement evidence.**

---

[1] As set forth in RCN's pending August 13, 2021 Discovery Letter (ECF No. 168), Rightscorp has refused to provide other categories of relevant documents and information.

RCN's request to inspect these databases is exceptionally reasonable. Plaintiffs intend to seek over **$200MM** in statutory damages in this case. Against that backdrop, RCN is merely requesting brief access for RCN's outside counsel and technical expert—several days at most—to the servers and databases housing the evidence on which Plaintiffs' entire case is based. RCN has also offered to make reasonable accommodations concerning the confidentiality of the subject material (*e.g.*, procedures comparable to those for accessing protected source code) and offered to discuss appropriate COVID-19 protocols. In response, Rightscorp declined to discuss any of these matters and instead flatly refused to provide RCN access to the original databases, under any circumstances.

With hundreds of millions of dollars potentially at stake, this endeavor is certainly "proportional to the needs of the case." This is especially true given that Rightscorp has previously been sanctioned for spoliation in one case and accused of spoliation in another, as discussed below.

As detailed below, the Court should enter an order compelling Rightscorp to permit this inspection within the next 60 days. RCN also seeks an order compelling Rightscorp to serve initial disclosures, which it has inexplicably failed to provide despite numerous requests.

## PROCEDURAL BACKGROUND

RCN has expended a significant amount of effort overcoming Rightscorp's attempts to avoid or delay this discovery.

RCN first proposed an inspection of Rightscorp's databases nearly 11 months ago, in a February 11, 2021 meet and confer, suggesting that RCN's review of the databases would streamline discovery. (Ex. A, 2/12/21 Email from Z. Howenstine). Over the following months, Rightscorp missed multiple self-imposed deadlines to respond to this proposal and repeatedly mischaracterized the nature and scope of RCN's request. (*See, e.g.*, Ex. B, 4/7/2021 Email Chain; Ex. C, 6/29/2021 Email Chain).

After months and months of follow-ups from RCN and several conferences with counsel for Rightscorp and Plaintiffs, Rightscorp finally conveyed its position on September 17, 2021. (Ex. D, 9/17/21 Email from M. Allan). Rightscorp refused to provide access to its databases and instead offered to create a new database, solely for purposes of this litigation and only containing data that Rightscorp deems relevant to RCN, and to allow RCN to inspect it at Rightscorp's counsel's offices. *See id.* RCN described why this proposal was insufficient and (again) offered to accommodate any concerns regarding burden, confidentiality, and COVID-19 risks. (Ex. D, 9/22/21 Email from Z. Howenstine). RCN invited further discussions while noting that the parties appeared to be at an impasse, and Rightscorp never responded. *See id.*

### 1. It Is Undisputed that Rightscorp's Databases[2] Contain Highly Relevant Information

The contents of the Rightscorp databases are critical evidence regarding the legitimacy of Plaintiffs' copyright infringement claims. To the extent there is *any* direct evidence of direct copyright infringement in this case, it is housed in Rightscorp's databases.

Rightscorp does not dispute that the contents of these databases are relevant and discoverable. In response to RCN's Request for Production No. 3, Rightscorp agreed to produce "all electronically-stored information in any form whatsoever, obtained from a user of RCN's network, including without limitation all bitfield, choke, have, and request data."[3] (Ex. E, Rightscorp's Am. Resp. to RCN's RFP at 8–9). As noted above, the bitfield shows whether a particular song file exists on a BitTorrent user's computer, and if so, what portion of the file. In a publicly-filed declaration, Gregory Boswell, Rightscorp's lead software developer, confirmed that Rightscorp obtains and uses bitfield data to determine whether a BitTorrent user is attempting to share a given song file. (Ex. F, 1/17/19 Boswell Decl. ¶ 6). In other words, the content of the bitfield determines whether Rightscorp sends a copyright complaint to an ISP. *See id.*

Thus, in sum, Rightscorp concedes (1) that it obtained bitfield data for each of the five million copyright complaints referenced in Plaintiffs' Complaint (ECF No. 9, ¶ 5), and (2) that this bitfield data is relevant in this case. Nevertheless, Rightscorp has not produced any bitfield data or any other data gathered from accused infringers on RCN's network. If Rightscorp preserved the bitfield or other data it collected from interactions with alleged infringers, then RCN is entitled to examine the data and its origin. If Rightscorp deleted all of this data, then RCN is entitled to inspect the databases to confirm that the data no longer exists and cannot be recovered, to attempt to ascertain the manner in which it was deleted, and to analyze how and where the system originally stored the data.

Furthermore, while Rightscorp has refused to allow RCN to inspect these databases, it has produced—or so it claims—select information *from* the databases. (Ex. D, 9/17/21 Email from M. Allan (representing that certain .csv files produced by Plaintiffs contain information exported from Rightscorp's databases). For this reason alone, RCN should be entitled to inspect the databases, to verify the accuracy and completeness of that information. Again, given what is at stake, this is a reasonable request.

---

[2] RCN refers to database*s*, plural, although it is unclear whether there is one master database at issue or several distinct databases. This may be semantics. In any event, RCN has made clear—and reiterates here—that it is seeking access to the SQL server and related database or databases that Rightscorp used and uses to store data obtained from individual BitTorrent users, through the operation of its system for detecting and notifying ISPs of alleged copyright infringements.

[3] The bitfield is the most significant category of data at issue, but that does not mean that the other categories are unimportant. Choke data, for example, shows whether a BitTorrent user is willing to share a given file (even if a user possesses a file, they can "choke" their connection to prevent uploads to other others). Choke data could therefore refute Plaintiffs' allegation that a particular user was attempting to distribute a copyrighted work to others.

### 2. Inspecting the Native Databases is Vital to Assessing the Accuracy of Rightscorp's Alleged Detections and the Reliability of Its Complaints

The databases at issue use structured query language ("SQL"), resulting in a relational database that allows the user to retrieve and organize all available information related to a data entry. The SQL databases also house "queries" and other instructions that, when executed manually or on a schedule, manipulate, move and pull data stored within the database. Thus, the only way that RCN can determine what information Rightscorp collects, preserves and potentially modifies regarding an instance of alleged infringement is to explore the native Rightscorp databases and the records of queries and other instructions housed therein. It is impossible to conduct a thorough analysis of the information Rightscorp claims to have collected from alleged infringers if portions of that data are missing.

Rightscorp's attempts to satisfy this request through alternative means are insufficient. It is simply inadequate for Rightscorp to cherry-pick and rearrange the contents of these relational databases[4] as an alternative. As noted above, Rightscorp has produced certain flat file spreadsheets that allegedly contain information exported from the relational databases at issue. None of these spreadsheets contain or reflect the full nature of the relationships between the data stored in the SQL relational database or the "queries" existing within the database for manipulating that data. Moreover, these flat file exports do not include the accused infringer's bitfield (showing whether the BitTorrent user had the file at issue) or choke data (showing the user's willingness to share the file with others), despite other evidence suggesting that some of these materials are captured and stored. (Ex. F, 1/17/19 Boswell Decl. ¶ 6).

Relying on flat-file exports generated by Rightscorp requires RCN to take Rightscorp at its word that (1) the data in the flat file was exported reliably and fully from the relational SQL database, (2) the spreadsheets are an accurate representation of other, underlying data stored in the databases, (3) that the information in the spreadsheets is the only relevant data Rightscorp possesses, and (4) that an inspection of the native databases is not necessary to fully understand how Rightscorp's system operates. Further, the spreadsheets differ from a SQL database in that one cannot query the spreadsheet to pull all of the data related to a specific exchange with a BitTorrent user.

Instead of permitting RCN to inspect its databases, Rightscorp is only willing to "create a duplicate copy of the native database that includes only information related to RCN." (Ex. D, 9/17/21 Email from M. Allan). As Rightscorp is well aware, this poses the same issues as the spreadsheets—it is a selective production of information without any way for RCN to verify its accuracy or completeness. It is entirely reasonable for RCN to request access to Rightscorp's actual SQL database, rather than relying on Rightscorp's selective exportations from it. Not to mention that creation of an entirely new database has the potential to sever many of the relational ties that exist between data housed in the existing database and would not include a full record of the "queries" and schedules for those queries that Rightscorp personnel used to manipulate data within the database.

---

[4] A relational database is a collection of multiple databases whose elements "relate" to elements in the other databases within the collection. This differs from a "flat file" database, which is a more traditional Microsoft Excel-type database having only rows and columns.

This inspection is particularly appropriate given Rightscorp's reputation. In a previous copyright infringement case against an ISP, the plaintiff was sanctioned based on Rightscorp's intentional destruction of evidence regarding the changes it made to its source code. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 984–86 (E.D. Va. 2016), *rev'd on other grounds*, 881 F.3d 293 (4th Cir. 2018). In another similar case, Rightscorp was accused of spoliating evidence, and although the court declined to grant sanctions, it was undisputed that Rightscorp had not retained the evidence in question, including bitfield data. *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, No. 1:17-cv-365, 2019 WL 4738915 (W.D. Tex. Sept. 27, 2019). Here, an inspection of Rightscorp's databases is the simplest, most reliable, and least burdensome way to assess Rightscorp's evidence of infringements and to determine what relevant evidence Rightscorp has maintained, whether relevant evidence has been destroyed, and if so, under what circumstances. Anything less than an inspection will require RCN and the Court to simply take Rightscorp at its word.

### 3. Rightscorp Has No Valid Argument for Refusing to Make the Databases Available for Inspection

Rightscorp has denied RCN's request to inspect Rightscorp's databases without providing a legitimate basis for its refusal—because it has none. RCN offered to make accommodations to alleviate concerns regarding confidentiality or burden, but Rightscorp refused to even discuss these matters. (Ex. D).

It would not be unduly burdensome to permit RCN to examine Rightscorp's databases. In fact, RCN's request is far less burdensome than the alternative Rightscorp proposed—creating an entirely new database, populated solely with information that Rightscorp deems relevant to this case. *See id.* Under Rightscorp's proposal, it would need to (1) eliminate any data that does not pertain to RCN, (2) create a copy of this limited set of data, and (3) make that information available for inspection. There is no guarantee such an approach would capture all potentially relevant information housed in the existing databases, especially including all evidence of the "queries" and other instructions and functions run by Rightscorp personnel to manipulate, move or pull data from the databases.

Plaintiffs' entire case—and its claim for hundreds of millions of dollars in damages—is founded solely upon Rightscorp's data. RCN respectfully submits that a full and fair opportunity to defend against Plaintiffs' claims includes the opportunity to inspect the databases that contain this evidence. Further, Plaintiffs and their trade association, RIAA, are compensating Rightscorp for its participation in this litigation. For all of these reasons, it is entirely reasonable to require Rightscorp to give RCN access to its databases for at most a few days. *See Lux Glob. Label Co., LLC v. Shacklett*, No. 2:18-cv-5061, 2020 WL 1700572, at *4 (E.D. Pa. Apr. 8, 2020) ("Considering the parties' relative access to information, [the proportionality] factor weighs in favor of [moving party] because [non-moving party has] access to all this information on the devices and in the accounts, [moving party] has none. Lastly, considering the importance of the discovery in resolving the issues and whether the burden would outweigh its likely benefit, this weighs very strongly in compelling the discovery: this discovery would factor significantly in the determination of the issues, and therefore has a significant benefit because forensic images of the devices may potentially reveal the full extent and usage, if any, of [moving party's] information."); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 325 F.R.D. 551, 558 (E.D. Pa. 2016) (finding the request proportional where "the probative value of the sought after

discovery is potentially substantial because it may be relevant to factual issues at the heart of [the] theory of liability").

Because there is a protective order (ECF No. 85), Rightscorp's supposed concerns about confidentiality are not a legitimate basis for refusing this discovery. *Lux*, 2020 WL 1700572, at *4 ("[A]ny concerns about [the non-moving party's] unrelated personal and business information being revealed are resolved by the Protective Order in this matter . . . and an appropriate ESI Protocol."). In any event, RCN has also made clear that it would agree to any reasonable confidentiality measures, such as AEO treatment or procedures comparable to those for accessing source code. (Ex. D). Moreover, assuming Rightscorp is correct that the databases contain some information that is not relevant to this case, it simply does not make sense for Rightscorp to be so concerned about RCN's outside counsel or experts viewing that data. There is no apparent risk of harm to Rightscorp, and in any event, there is no reason to doubt that RCN's counsel and experts would comply with the protective order in this case. Furthermore, even if some information in the databases may pertain to other ISPs, it still may be relevant to understanding the operation and reliability of Rightscorp's system.

The relevance of this data, and the prejudice RCN may suffer from being denied an opportunity to inspect it, far outweigh Rightscorp's unsupported claims of burden. The Court should therefore order Rightscorp to make the databases Rightscorp uses to store evidence of alleged copyright infringement at issue available for inspection by RCN.

### 4. The Court Should Order Rightscorp to Serve Initial Disclosures

Rightscorp's initial disclosures were due over a year ago, 30 days after Rightscorp was served with RCN's October 5, 2020 First Amended Answer and Counterclaims (ECF No. 104). Fed. R. Civ. P. 26(a)(1)(D). Since that time, Rightscorp has inexplicably refused to serve initial disclosures, despite multiple requests from RCN's counsel. RCN asked most recently in late November, and after receiving no response, followed up again two days before filing this discovery letter. (*See* Ex. G). This morning, counsel responded that Rightscorp cannot commit to providing initial disclosures—even at some time in the future—because the main responsible attorney is out of the office this week. (*See id.* 12/30/21 Email from B. Toth).

RCN can only speculate about why Rightscorp refuses to provide initial disclosures. It may be connected to the fact that Rightscorp appears to lack any corporate powers because its corporate status is void in Delaware (its state of incorporation) for failure to pay over $450,000 in franchise taxes (Ex. H), or that its license to conduct business in California (where its operations are located) has been forfeited for failure to file annual statements (Ex. I). *See also, e.g.*, *V.E.C. Corp. of Del. v. Hilliard*, No. 7:10-cv-2542, 2011 WL 7101236, at *6 (S.D.N.Y. Dec. 13, 2011) ("Under Delaware law, a corporation which has been proclaimed forfeited for non-payment of taxes . . . is in a state of coma from which it can easily be resuscitated, but until this is done its powers as a corporation are inoperative and the exercise of these powers is a criminal offense.") (cleaned up); *City of San Diego v. San Diegans for Open Gov't*, 207 Cal. Rptr. 3d 703, 709 (Cal. Ct. App. 2016) ("A corporation that has had its powers suspended lacks the legal capacity to prosecute or defend a civil action during its suspension. . . . . Despite this clear authority, SDOG, represented by [a law firm], filed an answer in the Validation Action. Such conduct was clearly wrong. Additionally, [the law firm's] explicit approval of SDOG's appearance and representation of SDOG was, as described by the superior court, unethical.") (cleaned up).

## Conclusion

      RCN respectfully requests that the Court grant the relief requested in this letter. Counsel for RCN is available for a teleconference or videoconference on these matters at the Court's convenience.

      Respectfully Submitted,

      */s/ Edward F. Behm, Jr.*
      Edward F. Behm, Jr.

CC:    All counsel of record via ECF