

**Edward F. Behm, Esquire**
Direct  **T** 267.780.2030  **F** 215.405.9070
ebehm@atllp.com

January 18, 2022

**VIA EMAIL AND ECF**

The Honorable Tonianne J. Bongiovanni
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

   Re: *UMG Records, Inc., et al. vs. RCN Telecom Services, LLC, et al.*
      Civil Action No. 3:19-cv-17272-MAS-TJB

Dear Judge Bongiovanni:

  This firm represents Defendants (collectively, "RCN") in the above-referenced matter. We write in opposition to Plaintiffs' December 30, 2021 letter brief (ECF No. 194) (hereinafter "Plfs. Br."), which seeks to compel (1) the collection, search, and production of four additional custodians' email files, and (2) the production of documents withheld as privileged or work product.

  The relief requested in Plaintiffs' letter brief should be denied in its entirety. Plaintiffs' allegations of deceit and misconduct are completely baseless and represent nothing more than a fishing expedition. Plaintiffs are desperately seeking a "smoking gun" to support their claims and are frustrated that they haven't found one (because there isn't one). With discovery set to close in two months, compelling RCN at this late stage to reopen its email collection efforts would be unduly burdensome and not proportional to the needs of the case. This is particularly true given that (1) Plaintiffs have been aware of these custodians and their roles since before this case was filed, yet failed to raise these complaints until RCN's email production was substantially complete; (2) three of the four new proposed custodians are attorneys or attorney subordinates, and the fourth is RCN's CEO, who has no direct involvement in matters relevant to this case; and (3) RCN produced a corporate witness to testify regarding RCN's email collection efforts, and that deposition yielded no information supporting Plaintiffs' claims that RCN has withheld relevant materials.

  Additionally, the Court should reject Plaintiffs' request for an order requiring RCN to produce a substantial number of email communications and attachments that RCN has logged and withheld as privileged or work product. RCN's privilege claims are proper and well-supported, and Plaintiffs provide no basis for this Court to order a voluminous production of these materials due to purported deficiencies in RCN's privilege log.

## I. Factual and Procedural Background[1]

In this case, Plaintiffs allege that RCN—an internet service provider ("ISP") that offers internet access to millions of Americans—is secondarily liable for copyright infringement because it did not permanently terminate the internet access of subscribers after receiving emails from Counterclaim-Defendant Rightscorp, Inc., accusing those subscribers of copyright infringement. *See generally* Am. Compl. (ECF No. 9). Plaintiffs' claims are based on emails and audio files that Plaintiffs' trade association, Counterclaim-Defendant Recording Industry of America, Inc. ("RIAA"), purchased from Rightscorp.

Plaintiffs filed their original Complaint on August 27, 2019 and their Amended Complaint on November 22, 2019. The parties conducted their Rule 26(f) conference on February 27, 2020 and exchanged Initial Disclosures on March 18, 2020. In its initial disclosures, RCN identified "individuals likely to have discoverable information."

The parties agreed to conduct email discovery separate from other document discovery, with potentially relevant emails identified by searching the email files of specified email custodians with an agreed list of search terms. On June 4, 2020, RCN served its proposed list of email custodians in response to Plaintiffs' Interrogatory No. 1 (Ex. 1) and identified additional email custodians on August 14, 2020 (Ex. 2). RCN began production of custodial emails on December 4, 2020 and produced its privilege log on May 12, 2021. RCN produced a revised privilege log on October 13, 2021 and a final log on November 18, 2021 in response to requests from Plaintiffs.

Fact discovery is set to close on March 30, 2022 and the parties have conducted one deposition to date.

## II. Legal Standards

"Pursuant to Rule 26, courts have broad authority to impose limits on otherwise relevant discovery when the discovery sought is unreasonably cumulative, or where the burden or expense of discovery outweighs its likely benefit." *In re Novo Nordisk Sec. Litig.,* 530 F. Supp. 3d 495, 504 (D.N.J. 2021). "This rule of proportionality guards against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Id.* (citations omitted). "There comes a point where the marginal returns on discovery do not outweigh the concomitant burden, expense, and bother. The Court's role is to find the right balance." *Goodman v. Burlington Coat Factory Warehouse Corp.,* 292 F.R.D. 230, 233 (D.N.J. 2013). "A court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case." *Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 464 (N.D. Tex. 2016) (citing Fed. R. Civ. P. 26).

The attorney client privilege is the "oldest of the privileged for confidential communications known to the common law," whose purpose is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in the observance of law and administrative of justice." *Upjohn v. U.S.*, 449 U.S. 383, 389 (1981). Documents within the scope of the attorney-client privilege are "zealously protected." *Haines v.*

---

[1] Plaintiffs' "Background" section is rife with inaccuracies; however, in the interest of focusing on issues relevant to Plaintiffs' request for an order compelling additional email discovery, RCN will not take up space in this response letter addressing all such issues.

*Liggett Group, Inc.*, 975 F.2d 81, 90 (3d Cir. 1992). Since a corporation must act through its agents, communications between an attorney and the corporation's employees, including lower level employees, will be afforded the protections of the privilege where doing so would give effect to the purposes of the privilege. *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990). "Courts have also held that the client may disclose communications to co-defendants or co-litigants without waiving the privilege … These exceptions are consistent with the goal underlying the privilege because each type of disclosure is sometimes necessary for the client to obtain informed legal advice." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991).

### III. Argument

Plaintiffs argue that RCN deployed "a multi-pronged strategy to shield its relevant documents from disclosure." Plfs. Br. at 4. This attack on RCN's discovery efforts is baseless and the accusations unwarranted.

As detailed below, RCN has in good faith searched for and produced ***millions*** of responsive emails and documents in this case and has cooperated with many of Plaintiffs' requests for additional discovery. Plaintiffs have been in possession of RCN's list of email custodians and RCN's email production for over a year. At this late stage in discovery, Plaintiffs' request to compel further email discovery is overly burdensome, untimely, and unlikely to result in any non-duplicative, responsive materials. In sum, Plaintiffs' request to compel is not proportional to the needs of this case and the Court should deny it.

#### A. The Court Should Not Compel RCN to Collect, Search and Produce Additional Custodian Email Files

This is a copyright infringement case, and it concerns how RCN responded to accusations of copyright infringement directed at subscribers of RCN's internet service. Accordingly, when it came time to conduct email discovery under the parties' agreed protocol, RCN notified Plaintiffs that it would collect email from individuals with direct involvement and responsibilities concerning alleged copyright infringement issues. These people included:

- Ruth Ann Welsh, who oversaw RCN's Digital Millennium Copyright Act ("DMCA") program for processing copyright infringement complaints;
- Ms. Welsh's boss, William Davis, and Mr. Davis's boss, Robert Roeder;
- Phil Rhinelander and Jeremy Johnson, who developed and managed RCN's automated system for processing copyright infringement complaints;
- Peter Jacoby, RCN's designated DMCA agent;
- Chris Jackman, who was responsible for maintaining the email inbox designated to receive copyright infringement complaints;
- Jason Wasmanski, who was responsible for carrying out account terminations pursuant to RCN's DMCA policy; and
- John Feehan, RCN's CFO, who is knowledgeable about financial issues potentially relevant to Plaintiffs' alleged damages.

After RCN had substantially completed its production, RCN also agreed to Plaintiffs' request to add an additional email custodian, William Sievers, who was responsible for managing RCN's call center.

ARMSTRONG TEASDALE LLP

Now, with discovery set to close in March, Plaintiffs seek the collection, search, and production of emails from four additional email custodians, despite having had the ability to do so nearly <u>a year and a half ago, when RCN identified its email custodians</u>. Specifically, Plaintiffs seek the collection, search, and production of the email files from: Jim Holanda, CEO of RCN; Jeff Kramp, General Counsel of RCN; James Hill, Vice-President of Legal at RCN; and Deborah Rankin, Legal Project Manager at RCN. Mr. Kramp and Mr. Hill are both in-house attorneys, and Ms. Rankin is an in-house paralegal who works for them.

At the outset, the Court should deny Plaintiffs' requests as to Mr. Holanda, Mr. Hill, and Ms. Rankin, for failure to meet and confer.[2] *See* Civil L.R. 37-1(a)(1). Plaintiffs made a specific—albeit untimely and unwarranted—request for RCN to search additional custodial email, and they only sought additional discovery with respect to Mr. Kramp and Mr. Sievers. Plaintiffs did not mention any of these new proposed custodians. *See* Ex. 3, 9/23/21 Email from R. Gilmore. Thus, because the parties never properly met and conferred regarding additional email discovery from these custodians, Plaintiffs' request for an order compelling additional discovery should be denied.

The Court should deny Plaintiffs' requested relief for a number of other reasons as well.

1. <u>Plaintiffs' new email discovery requests are untimely and unwarranted.</u>

Over a year and a half ago, RCN informed Plaintiffs of the custodians from whom RCN intended to collect and search email, using the parties' agreed search terms. (Ex. 1 & 2). Plaintiffs should have made any objections at that time—*before* RCN completed its email production—and they have no legitimate excuse for failing to do so. Moreover, Plaintiffs fail to show that this additional email discovery is likely to yield non-duplicative, discoverable material.

Regarding Jeff Kramp, RCN's General Counsel, any relevant emails are exceedingly likely to be privileged or work product. Plaintiffs offer no reason for the Court to conclude otherwise.

Furthermore, Plaintiffs have known of Mr. Kramp's role since before this case was filed yet did not pursue discovery of his email until September 2021, after RCN's email production was complete. *See* Ex. 4, 9/24/21 Email from Z. Howenstine. When Plaintiffs requested Mr. Kramp's emails in September, they had not only known of Mr. Kramp for years, but had also been in possession of the list of custodians that RCN intended to use for email collection for over a year. *Id.* As a result, Plaintiffs' request for Mr. Kramp's emails in September 2021 was already untimely and prejudicial, and now is even more so. *See* Ex. 3.[3] RCN immediately notified Plaintiffs that it would not agree to collect and search the emails of its General Counsel. *See* Ex. 4. Indeed, Plaintiffs have known at least since September that the parties were at "an impasse" regarding the collection of Mr. Kramp's emails yet improperly waited until now—with the fact discovery deadline little more than two months away—to seek relief from the Court. *See* Ex. 5, 9/29/21 Email from J. Tracer ("We understand the parties to be at an impasse regarding Jeff Kramp.").

With respect to James Hill and Deborah Rankin, the facts are even worse for Plaintiffs. As with Mr. Kramp, any relevant emails Mr. Hill (in-house counsel) and Ms. Rankin (in-house

---

[2] *See* Local Civil Rule 37.1(a)(1) ("Counsel shall confer to resolve any discovery dispute.").

[3] In that same request, Plaintiffs also sought the collection of emails from Bill Sievers, another RCN employee. Despite knowing that any relevant emails from Bill Sievers would be duplicative of emails already produced in this case, RCN agreed to search Mr. Sievers' emails in the interest of resolving the dispute without court intervention.

paralegal) may possess would be overwhelmingly privileged or work product. Plaintiffs assert that RCN has "refus[ed] to collect and search the emails of its corporate executive and in-house attorneys," yet Mr. Kramp is the only individual that Plaintiffs formally requested discovery of prior to now. Plaintiffs have known of Mr. Hill's and Ms. Rankins' roles in the company since before this case was filed. Plaintiffs offer no credible explanation as to why they are asking the Court to compel RCN to conduct this burdensome and expensive review for the first time now.[4]

The request for custodial email from Jim Holanda, RCN's CEO, appears to be based on **one email** that Plaintiffs received from a third-party production. Pltfs. Br. at 7. On November 14, 2016, Mr. Holanda emailed a copy of an RCN litigation strategy memorandum (related to a different dispute) to a company interested in acquiring RCN, Abry Partners. Disclosing pending litigations is a customary requirement in connection with a corporate acquisition and does not have any bearing on Mr. Holanda's involvement with RCN's DMCA process or knowledge of any matters relevant to this lawsuit. Mr. Holanda is not involved in the DMCA process at RCN and is therefore not an appropriate document custodian. The Court should reject this proposed fishing expedition. *See, e.g.*, *In re: Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 3:15-cv-7658, 2021 WL 3140030, at *9 (D.N.J. July 7, 2021) (The "Apex Doctrine" applies to instances where an executive has no first-hand knowledge of the facts. Under this doctrine, courts limit discovery that is unreasonably cumulative, duplicative, or that can be obtained from some other source that is more convenient, less burdensome, or less expensive.).

Plaintiffs do not provide any defense for their delay in seeking this additional email discovery. Plaintiffs' argument that RCN should conduct an additional email review relies entirely on **two emails** that were obtained through third-party productions in July 2021. Plaintiffs rely on these emails to support their theory that "RCN's DMCA Policy and copyright infringement were major topics during negotiations to purchase RCN." Plfs. Br. at 7. Two emails hardly indicate that these subjects were "major topics." Indeed, the fact that Plaintiffs' third-party discovery did not uncover any other such documents *refutes* this notion.

Furthermore, both emails relate to a different litigation, and neither suggests the existence of additional documents that may be relevant to the instant case. The fact that RCN's upper management was involved in these negotiations and therefore emailed requested materials does not indicate that they are likely to possess any other relevant, responsive materials. Again, RCN has cooperated with Plaintiffs' *reasonable* requests for additional email discovery, as in the case of Mr. Sievers, whose email RCN is actively reviewing for production. Plaintiffs' other requests are unreasonable and should be denied.

> 2. <u>The email discovery sought is likely to be duplicative and is not proportional to the needs of the case.</u>

Even if RCN was to engage in the unduly burdensome task of collecting and reviewing custodial email for four additional custodians, it is unlikely to result in the production of additional, materially relevant document. In fact, it is most likely that any relevant emails would be

---

[4] Plaintiffs have not identified any time period for these searches, but assuming they are the same time periods sought for other email custodians (2010-present), that will likely result in the collection of hundreds of thousands of emails. Although there are automated tools to conduct the "search term" filter, the review of the results will require manual review by an attorney. The manual review of thousands of emails at this point in discovery, when the parties' efforts should be focused on conducting depositions and completing fact discovery, would be highly prejudicial to RCN.

duplicative of emails already produced from other custodial accounts—which included all RCN employees directly responsible for copyright- and DMCA-related issues. Further, the costs associated with collecting, searching and producing or logging emails spanning a decade's time would be sizable. *See, e.g.*, *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 428 (D.N.J. 2009) ("It would be improvident at this juncture to grant Edgewood the relief it seeks when it has not shown any indicia of bad faith on the part of Ford. To countenance such a holding would unreasonably put the shoe on the other foot and require a producing party to go to herculean and costly lengths (especially in a document-heavy case such as this) in the face of mere accusation to rebut a claim of withholding.").

The cases that Plaintiffs cite in their brief are clearly distinguishable from the facts here. *Prudential* was a class action lawsuit that involved fraudulent activity across a number of business units. As a result, the plaintiffs originally asked the defendant to use 86 custodians (later culled to 66) and then sought the addition of several dozen more. The court agreed to allow 10 additional custodians due to the "size and scale" of the action. But even then, the Court did so reluctantly. *See City of Sterling Heights Gen Employees' Retirement Sys. v. Prudential Financial, Inc.*, No. 12-cv-5275, 2015 WL 5055241, at *3 (D.N.J. Aug. 21, 2015) ("[T]he Court is cognizant of the sizable costs to Prudential involved in the searching, review and production of information from each additional custodian. Although Prudential is a large corporation with substantial resources, the Court should not be—and is not—insensitive to these costs."). Moreover, in that case, the parties had more than five months left of discovery. *Id.* at ECF No. 328. Here, in contrast, discovery is set to close in two months, and the issues are concentrated to a smaller group of individuals—specifically, the nine individuals whose custodial RCN agreed to search, because they had direct involvement in relevant events.

Additionally, unlike in the *Younes* case, Plaintiffs have no basis for accusing RCN of "gotcha" tactics. There, the defendant had failed to produce documents concerning "Project P" because the plaintiff had only asked for "Operation Philadelphia," despite knowing they both referred to the same project. *Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 708 (D.N.J. 2015). Likewise, in *Montana*, the defendant had excluded emails that referred to "Art Montana" because the relevant search term was "Arthur Montana." *Montana v. Cnty. Of Cape May Bd. of Freeholders*, No. 09-cv-755, 2013 WL 11233748, at *9 (D.N.J. Sept. 2013). Plaintiffs know very well that RCN did not employ these kinds of tactics in its discovery efforts—especially since the parties came to an agreement on search term parameters *before* applying them. To be clear, RCN is not aware of any relevant, non-privileged emails that have not been produced (subject to RCN's ongoing review of Mr. Sievers' custodial email, which is not at issue in Plaintiffs' letter brief).

Plaintiffs are also wrong to suggest that searching the custodial email of these four new custodians might yield pre-April 2016 documents relating to copyright infringement on RCN's network. Plfs. Br. at 8. Plaintiffs argue it is "manifestly not credible" that more emails do not exist from this time period. This assertion is completely baseless, backed by nothing but attorney argument, and at odds with the evidence. Plaintiffs are well aware that RCN does not intend to assert a safe harbor defense under the DMCA, 17 U.S.C. § 512(a), for any period prior to June 2016, as RCN stated in its response to Plaintiffs' Interrogatory No. 7. Therefore, it is manifestly credible that RCN did not have any discussions in or before April 2016 about a policy for terminating repeat copyright infringers—a requirement of the DMCA—that did not yet exist. Whether or not Plaintiffs' attorneys "believe" the existing evidence is not a sufficient reason for Plaintiffs to reopen email discovery, with the resulting substantial burden and expense for RCN. *See, e.g.*, *Ford Motor*, 257 F.R.D. at 428 ("The gravamen of Edgewood's complaint is that it

suspects it has not received all of the documents to which it is entitled. But such a conclusory allegation premised on nefarious speculation has not moved several courts, nor will it move this one, to grant burdensome discovery requests late in the game … Here, Edgewood has not made a colorable showing that Ford is purposefully (or even negligently) withholding documents. The notion that a document production is insufficient based on a belief that documents must exist simply is not enough to grant a motion to compel that would require Ford to go back to square one and begin its document collection efforts anew.").

Finally, it bears mentioning that RCN, at Plaintiffs' request, produced a corporate witness—Anthony Faudale, Director of Infrastructure—for the sole purpose of testifying about RCN's collection of custodial email in response to Plaintiffs' discovery requests. That deposition lasted nearly an entire day and yielded no information supporting Plaintiffs' accusations that RCN failed to produce relevant documents. *See generally* Plfs. Br. Plaintiffs' accusations are factually baseless and should be treated accordingly.

3. The parties agreed to treat email discovery and document collection separately.

Lastly, it is important to note that Plaintiffs and RCN agreed to conduct email discovery separately from document discovery. It is disingenuous for Plaintiffs to admonish RCN for conducting its document collection "separate from the custodial email collection," when Plaintiffs did the same thing. *See* Ex. 6, 7/17/20 Email from M. Petrino. And in fact, that was the purpose of the phased discovery approach that the parties took from the start. The parties agreed that to the extent they are aware, or become aware, of emails that are responsive to a request for production, those emails will be produced even if they do not hit on any search terms. RCN did just that. Neither party agreed, however, to do an independent investigation for responsive emails outside of running the agreed search terms. *See* Ex. 7, 7/23/20 Email from Z. Howenstine.

For all of these reasons, the Court should deny Plaintiffs' request to compel RCN to collect and search the email files of these additional four email custodians.

## B. The Court Should Not Compel RCN to Produce Privileged Documents

With respect to RCN's privilege log, Plaintiffs take issue with three categories of entries: emails with no attorney included, emails with an attorney copied, and email attachments. Each category is addressed below.

RCN must first correct Plaintiffs' suggestion that RCN has withheld a disproportionate volume of materials. RCN's amended privilege log contains 1,039 email entries; for comparison's sake, however, RCN produced 8,574,797 emails in this case, which obviously far eclipses the number of withheld documents.[5] Furthermore, Plaintiffs and RIAA's privilege logs contain roughly 3,000 entries.[6] Because discovery has focused in large part on the parties' internal

---

[5] Plaintiffs' suggestion rings particularly hollow considering that Plaintiffs only produced 2,013 emails as a result of its custodian search.

[6] In addition, regarding Plaintiffs' assertion that RCN's logs had "multiple deficiencies"—Rule 26 does not require parties to include or organize the information on a privilege log in the way that Plaintiffs suggest. Plfs. Br. at 9. Nevertheless, in the interest of cooperation, and to avoid unnecessary court intervention, RCN provided amended privilege logs to address Plaintiffs' requests. Plaintiffs' remaining issues could not be addressed because RCN disagrees that its privilege log has any further deficiencies.

ARMSTRONG TEASDALE LLP

discussions regarding copyright infringement issues, which routinely involve attorneys or the discussion of attorney advice, it should be no surprise that both sides have withheld a large volume of materials as privileged or work product.

### 1. RCN privileged emails with no attorney.

Plaintiffs argue that certain documents on RCN's privilege log have been improperly withheld because there is no attorney present on the email.[7] However, "[c]ourts overwhelmingly recognize that a communication is not *per se* unprivileged simply because it is solely between non-attorneys." *Corkrean v. Drake Univ.*, No. 4:21-cv-336, 2022 WL 18632, at *3 (S.D. Iowa Jan. 3, 2022); *see also In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 3:16-md-2738, 2021 WL 3144945, at *10 (D.N.J. July 26, 2021) ("[T]he mere absence of an attorney on a document is not necessarily determinative as to the document's protected status. Communications remain privileged if they assist [an] attorney to formulate and render legal advice.")

Plaintiffs' citation of a case from 1979 does not convey the full picture of how this district interprets the attorney-client privilege. The Third Circuit agrees that the attorney-client privilege is not waived simply because an attorney is not included on a communication. *See, e.g., Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991) ("Courts have also held that the client may disclose communications to co-defendants or co-litigants without waiving the privilege … These exceptions are consistent with the goal underlying the privilege because each type of disclosure is sometimes necessary for the client to obtain informed legal advice.").

The purpose of the attorney-client privilege is to engage in "full and frank communication" with attorneys "and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn*, 449 U.S. at 389. "This purpose would be undermined if non-attorney employees of an organization could not discuss or share legal advice with one another without waiving the privilege unless one of those non-attorneys had been employed by an attorney to assist in rendering professional services." *Corkrean*, 2022 WL 18632, at *3 ("In other words, the Court believes employees of a client-organization should be able to discuss an attorney's advice without waiving the privilege even if neither of those employees has been directed by the attorney to do so."); *see also Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 618 (N.D. Cal. 2020) (applying the privilege to communications that "discuss or transmit legal advice given by counsel" and "discuss [an employee's] intent to seek legal advice about a particular issue.").

RCN's emails that do not include an attorney but appear on its privilege log fall squarely within these court decisions. RCN's DMCA policy was developed by legal counsel; however, legal counsel cannot perform the steps that put a policy into motion (*e.g.*, developing software for processing complaints received by email, updating customer service guidelines, reviewing the functioning of internal processes, etc.). Necessarily then, there are communications that do not involve attorneys but nevertheless discuss legal advice, share legal advice, or reflect notes or questions generated for discussion with attorneys. *See, e.g.*, *United States v. ChevronTexaco*

---

[7] Although there are emails properly on RCN's privilege log that do not include an attorney, it's worth pointing out that a significant number of entries—specifically meeting invites—did include an RCN attorney, James Hill. The document collection database used to generate RCN's privilege log could not output participant names for these entries; however, an attorney was included on these documents. *See, e.g.*, ECF No. 194-4 at entry nos. 1660-2483.

*Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) ("Materials transmitted between nonlawyers, that reflect matters about which the client intends to seek legal advice or comparable to notes a client would make to prepare for a meeting with her lawyer … It would undermine the purpose of the attorney-client privilege not to extend protection to such notes."); *see also In re Riddell Concussion Reduction Litig.,* 2016 WL 7108455, at *5 (D.N.J. Dec. 5, 2016) ("sharing documents amongst corporate employees does not necessarily vitiate a privilege"). RCN has properly withheld and logged these communications as privileged, and Plaintiffs offer no evidence or authority demonstrating otherwise.

### 2. RCN privileged emails with attorneys copied.

Plaintiffs argue that certain entries on RCN's privilege log have been improperly withheld because an attorney is only cc'ed on the email. For at least the same reasons stated above, Plaintiffs are wrong to argue that these privilege claims are facially deficient. In addition, the excerpts from cases cited by Plaintiffs depict an improperly narrow view.

Plaintiffs cite to *Dejewski* for the proposition that just because RCN attorneys were copied on an email does protect those emails from discovery. No. 19-cv-14532, 2021 WL 118929, at *1 (D.N.J. Jan. 12, 2021). However, that case requires a second element to make an email unprivileged: that the attorney also "did not actively participate in providing legal advice as part of that email." In contrast, all of the withheld, privileged RCN emails at issue here concern legal advice which an RCN attorney provided or was asked to provide. Jeff Kramp and James Hill were copied on emails to monitor the activity being advanced by their legal advice so that they could provide further input or advice as needed (and which they may well have done by phone or direct conversation, without generating additional responsive emails).

Additionally, courts in this district have further clarified the law since *Dejewski*. For example, courts in the Third Circuit have found that an email communication may be privileged even if it does not expressly request legal advice. It is sufficient that "the overall tenor of the document indicates that it is a request for legal advice or services." *Jorjani v. New Jersey Inst. of Tech.*, No. 2:18-cv-11693, 2021 WL 4237255, at *3–4 (D.N.J. Sept. 17, 2021) (citing *Engage Healthcare Communs. v. Intellisphere*, No. 3:12-cv-787, 2017 WL 10259770, at *3 (D.N.J. Sept. 12, 2017)); *see also Muro v. Target Corp.*, 250 F.R.D. 350, 363 (N.D. Ill. 2007). "[W]hen an individual email communication within an email chain either discusses, transmits, and/or reflects legal advice, the communication within the document is protected by the privilege." *Id*. The *Jorjani* case further held that "the privilege protects communications with those that must be consulted in order for a lawyer to provide legal advice – i.e., those that 'need to know' or have information necessary to assist the lawyer in providing legal advice.'" *Id.* (citing *Margulis v. Hertz. Corp.*, No. 2:14-cv-1209, 2017 WL 772336, at *8, (D.N.J. Feb. 28, 2017)). The RCN emails with attorneys cc'ed fall within the parameters set by these cases.

Moreover, to the extent emails on RCN's privilege log contain factual information in addition to legal advice, that does not negate their status as attorney-client privileged. "[T]he fact that non-privileged information was communicated to an attorney may be privileged, even if the underlying information remains unprotected." *Jorjani*, 2021 WL 4237255, at *3–4 ("a non-privileged email does not necessarily vitiate the application of the attorney-client privilege to subsequent and otherwise independently privileged documents part of the same email chain"); *see also Muro*, 250 F.R.D. at 363 (corporate email communications received by attorney "that include

a string of earlier email messages (i.e., email chains), including those email chains that forwarded prior non-privileged emails" to attorney are protected by attorney-client privilege).

### 3. RCN privileged email attachments.

Lastly, Plaintiffs argue that RCN did not analyze email attachments separately from the parent emails to which they were attached. This is not true. RCN did conduct an analysis of attachments and concluded that those that are on its privilege log, are properly there. Plaintiffs are incorrect when they claim to have identified 56 sample infringement notices with "no input from attorneys." These attachments are properly privileged or work product because they are draft notices to subscribers about copyright complaints that were generated by attorneys.

Regarding the 19 documents that Plaintiffs identify as containing "factual information," these attachments contain highly sensitive customer information that RCN cannot disclose due to certain privacy obligations. However, RCN is willing to produce redacted versions of these documents, although the redactions will be significant. RCN stands on its privilege designations with respect to the emails containing those attachments.

## IV. Conclusion

RCN respectfully requests that the Court deny the relief requested in Plaintiffs' letter (ECF No. 194). Counsel for RCN is available for a teleconference or videoconference on these matters at the Court's convenience.

Respectfully Submitted,

*/s/ Edward F. Behm, Jr.*
Edward F. Behm, Jr.

CC: All counsel of record via ECF