# McElroy Deutsch

1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
**T:** 973.993.8100 | **F:** 973.425.0161
**MDMC-LAW.COM**

THOMAS R. CURTIN
Direct Dial: (973) 401-7117
tcurtin@mdmc-law.com

February 8, 2022

**VIA ECF**

Hon. Tonianne J. Bongiovanni, U.S.M.J.
Clarkson S. Fisher Federal Building
 and U.S. Courthouse
402 E. State Street
Trenton, New Jersey 08608

   Re: *UMG Recordings, Inc. et al. v. RCN Telecom Services, LLC et al.*
      Civil Action No. 19-17272 (MAS) (TJB)

Dear Judge Bongiovanni:

   This firm, Jenner & Block LLP, and Stein Mitchell Beato & Missner LLP jointly represent Plaintiffs in the above-referenced action. Plaintiffs submit this letter in further support of their letter dated December 30, 2021 (ECF 194) and in response to the opposition (ECF 197) filed by Defendants RCN Telecom Services, LLC, *et al.* ("RCN"). Plaintiffs request that the Court compel RCN to: (i) collect, search, and produce the responsive contents of four custodial email files; and (ii) produce documents RCN has improperly claimed are privileged.[1]

   As the Court is aware, Plaintiffs initiated this lawsuit to seek redress for RCN's actions in contributing to and profiting from the widespread infringement of Plaintiffs' copyrighted sound recordings by RCN's subscribers using RCN's high-speed internet services.[2] One key issue in the case is RCN's decision in or around June 2016 to purportedly implement a repeat infringer termination policy pursuant to the Digital Millennium Copyright Act (the "DMCA"). That decision and RCN's alleged implementation of its policy will affect multiple central issues in this case, including RCN's knowledge of or willful blindness to copyright infringement on its network, whether RCN acted willfully in contributing to and profiting from its subscribers'

---

[1] Plaintiffs request that the Court set a conference to hear and resolve these disputes.

[2] In their December 30 letter, Plaintiffs described in detail the factual and legal background supporting their claims against RCN. *See* ECF 194 at 1-4. While RCN claims in conclusory fashion that Plaintiffs' description was inaccurate, it does not cite any specific assertion with which it disagrees or offer any competing statement of background facts for the Court to consider. *See* ECF 197 at 2 n.1. Accordingly, the Court should accept Plaintiffs' description of the factual and legal background relevant to this dispute as unrebutted.

McElroy, Deutsch, Mulvaney & Carpenter, LLP
COLORADO · CONNECTICUT · DELAWARE · FLORIDA · MASSACHUSETTS · NEW JERSEY · NEW YORK · PENNSYLVANIA · RHODE ISLAND

# McElroy Deutsch

Hon. Tonianne J. Bongiovanni, U.S.M.J.
February 8, 2022
Page 2

infringement, and whether RCN can successfully invoke the DMCA's safe harbor defense.[3] Strikingly, however, RCN has produced virtually no communications about that alleged change in corporate policy or its awareness of the rampant copyright infringement by its users that necessitated such a change.[4]

Such documents must exist. RCN's alleged shift from having no repeat infringer termination policy to supposedly implementing such a policy (which RCN calls a "DMCA Policy") was a major change made at a significant time. The DMCA provides internet service providers ("ISPs") like RCN with an affirmative defense to certain copyright infringement claims, but only if the ISP satisfies specific conditions, including adopting and reasonably implementing "a policy that provides for the termination in appropriate circumstances of subscribers . . . who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). Thus, RCN's choice not to comply with the DMCA's safe harbor requirements before June 2016 reflects its decision to prioritize the collection of subscription fees from subscribers who were repeat infringers over its ability to avoid financial liability arising from copyright actions based on infringements by those subscribers. Conversely, RCN's alleged implementation of its DMCA Policy in June 2016 demonstrates its analysis of those issues had changed.

It is easy to understand why RCN's analysis and policy shifted so dramatically in the months prior to June 2016. In December 2015, a music publishing company called BMG Rights Management ("BMG") won a $25 million jury verdict plus about $8.5 million in fees and costs against another ISP (Cox Communications) on claims for secondary copyright infringement based on infringement notices from Rightscorp, Inc. ("Rightscorp") substantively identical to the notices Rightscorp was sending to RCN. Indeed, a few months after prevailing at trial against Cox, BMG sent a letter to RCN requesting a meeting to discuss infringement on RCN's network. RCN responded in June 2016 by allegedly adopting its DMCA Policy and by suing BMG seeking a declaration of non-infringement.

---

[3] Plaintiffs submit that the evidence will ultimately show that RCN is not entitled to invoke the safe harbor defense for any period of time relevant to this lawsuit.

[4] RCN tries to deflect the focus from its undeniable suppression of such documents by talking about the overall volume of material it has produced and asserts that it has produced "8,574,797 emails in this case." ECF 197 at 7. But that number is misleading: virtually all of those documents are merely copies of copyright infringement notices that RCN received or other automated emails in RCN's systems. RCN has produced only 452 internal, non-automated emails to date on any subject matter. Thus, while the large number of documents demonstrates the magnitude of the infringements occurring on RCN's network, it says nothing about whether RCN has complied with its discovery obligations.

# McElroy Deutsch

Hon. Tonianne J. Bongiovanni, U.S.M.J.
February 8, 2022
Page 3

Given those facts, it is simply not credible to assert that RCN had no internal discussion of these issues. Plaintiffs undertook a measured approach to learn why RCN's production was lacking before raising the issue with the Court. At first, Plaintiffs sought to learn whether RCN had adequately preserved all potentially relevant documents, whether RCN had collected all the potentially relevant documents it had preserved, whether RCN had properly run search terms against all the documents it had collected, whether RCN had adequately reviewed all the documents hitting on the search terms it had run, and whether RCN had appropriately produced all the responsive documents it had reviewed. Eventually, Plaintiffs learned that RCN was (i) refusing to collect, search, and produce emails from custodians it knew would have relevant, non-duplicative documents, and (ii) withholding the responsive documents it found from other custodians as purportedly privileged regardless of whether those communications involved an attorney or related to the request for or provision of legal advice.[5]

With regard to RCN's document custodians, Plaintiffs demonstrated in their December 30 letter that RCN's corporate executives and members of its legal department had relevant communications with third parties that RCN did not produce because it did not collect the custodial email accounts of those individuals. *See* ECF 194 at 5-9. Third party document productions in this case prove beyond a shadow of a doubt that RCN's production was inadequate. RCN essentially concedes that this is true.

Moreover, RCN has utterly failed to substantiate its privilege claims. As the party asserting privilege, RCN bears the burden of demonstrating that the privilege applies through record evidence, typically in the form of declarations or affidavits. However, RCN failed to introduce any such evidence in opposing the relief requested in Plaintiffs' December 30 letter.

Accordingly, the Court should grant relief to Plaintiffs that addresses both categories of RCN's wrongful suppression of material evidence.

## I. RCN's Missing Document Custodians

In their December 30 letter, Plaintiffs demonstrated that third parties responding to document subpoenas identified relevant documents that are contained in the custodial email files

---

[5] As part of their due diligence to determine whether and how RCN was avoiding the production of these relevant documents, Plaintiffs took a deposition regarding RCN's document preservation and collection efforts. *See* ECF 197 at 7 (describing deposition). That deposition provided additional foundation for Plaintiffs' belief that the insufficiencies in RCN's document production were due to the conduct described above. Plaintiff's decision to take these extra steps demonstrates that Plaintiffs exercised care in their investigation and only raised these issues with the Court when the parties could not resolve them independently.

# McElroy Deutsch

Hon. Tonianne J. Bongiovanni, U.S.M.J.
February 8, 2022
Page 4

of RCN employees whose emails were not collected, searched, or produced in this case by RCN. *See* ECF 194 at 5-9. In particular, Plaintiffs learned through their third party subpoenas that:

- In November 2016, RCN's CEO, Jim Holanda, emailed a litigation strategy memorandum about RCN's lawsuit against BMG to Abry Partners, the private equity firm that owned RCN and was in the process of selling it at the time. Mr. Holanda cc'd RCN's general counsel, Jeff Kramp, on this communication; and

- In January 2017, RCN's outside counsel emailed a copy of a draft settlement agreement with BMG to TPG Capital, the private equity firm buying RCN from Abry. This communication was also cc'd to Mr.Kramp.

These "smoking gun" emails conclusively demonstrate that: (1) RCN was aware of its potential liability for copyright infringement in light of the Cox verdict and BMG demand letter; (2) RCN was aware that this issue was relevant to Abry's efforts to sell RCN to TPG; and (3) RCN's senior management and members of RCN's legal department communicated with those private equity firms about those issues. However, RCN did not produce or log these emails—or any other non-duplicative communications Mr. Holanda or members of RCN's legal department must have had about this subject matter—because it did not collect the custodial email files of Mr. Holanda, Mr. Kramp, James Hill (another RCN in-house attorney), or Deborah Rankin (an RCN paralegal). These facts go far beyond the foundation required to establish a "fair inference" that these email accounts contain non-duplicative responsive documents that RCN has withheld. *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Prudential Fin., Inc.*, No. 12-cv-5275-MCA-LDW, 2015 WL 5055241, at *3 (D.N.J. Aug. 21, 2015).[6]

Indeed, RCN concedes in its opposition that its "upper management was involved" in the negotiations between Abry and TPG and "emailed requested materials" relevant to those negotiations. ECF 197 at 5. None of RCN's other email custodians played that role. *See id.* at 3 (describing RCN's custodians). Thus, RCN's opposition confirms Plaintiffs' assertion that there are custodial email accounts within RCN that contain relevant, non-duplicative documents that RCN is refusing to collect, search, and produce. Unless these documents are produced, Plaintiffs will have no way of knowing what other relevant internal or external communications Mr.

---

[6] RCN's argument that no such inference exists because Plaintiffs have not yet uncovered *additional* non-duplicative, relevant documents beyond those disclosed by third parties is patently frivolous. *See* ECF 197 at 5. There is no duty for Plaintiffs to conduct all of their discovery through third parties or somehow to uncover documents not produced by any party to qualify for relief. Moreover, even if Plaintiffs knew about and could subpoena every potentially relevant third party, those subpoenas still would not uncover RCN's non-duplicative internal communications.

# McElroy Deutsch

Hon. Tonianne J. Bongiovanni, U.S.M.J.
February 8, 2022
Page 5

Holanda or members of RCN's legal department had about some of the core issues in this lawsuit.

Unable to rebut Plaintiffs' allegations and the inferences that inevitably arise from them, RCN opposes Plaintiffs' request by asking the Court to apply an incorrect legal standard and by raising meritless procedural objections. First, RCN invokes the "apex doctrine" to argue that discovery from Mr. Holanda should be limited given his role as RCN's CEO. *See* ECF 197 at 5. However, as the case cited by RCN demonstrates, that doctrine applies, if at all, when a party seeks to ***depose*** a corporate executive, not when the party seeks the production of relevant documents from the executive's files. When a deposition is involved, a court may balance the executive's first-hand knowledge of the issues against the potential burden on the executive from being required to testify. *See In re: Valeant Pharms. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658, 2021 WL 3140030, at *9 (D.N.J. July 7, 2021). At this time, Plaintiffs are only seeking the production of Mr. Holanda's emails, which should not require any of Mr. Holanda's personal time and thus does not implicate the considerations underlying the "apex doctrine." As explained above, the proper standard that applies to requests to collect, search, and produce additional custodial email accounts is whether there is a "fair inference" to conclude they contain non-duplicative, relevant documents. *City of Sterling Heights*, 2015 WL 5055241, at *3.[7]

Second, RCN claims that Plaintiffs' motion is "untimely." ECF 197 at 4. This argument is meritless. Plaintiffs proceeded in a logical and orderly fashion in addressing RCN's insufficient document production and involved the Court only after exhausting their investigation into the reasons for RCN's failure to produce relevant documents, and conferring with RCN in an effort to resolve this dispute. As Plaintiffs explained in their December 30 letter and above, RCN's failure to produce relevant documents could have occurred for multiple different reasons, and Plaintiffs invested considerable time and resources into narrowing the potential issues through meeting and conferring with RCN—and taking a deposition of an RCN corporate representative—before raising the issue with the Court. *See* ECF 194 at 1-4; *supra* at p. 3, ¶1.

Further, while RCN claims that it identified its email custodians in June 2020 in response to Plaintiffs' Interrogatory No. 1, *see* ECF 197 at 2, RCN did not actually confirm its list of

---

[7] RCN does not argue that *City of Sterling Heights* applied the incorrect legal standard, but baselessly claims that case is "distinguishable" based on its facts. ECF 197 at 6. In *City of Sterling Heights*, the court compelled a party to collect, search, and produce the emails of 10 additional custodians where there was a fair inference that the party's prior custodial searches left out relevant, non-duplicative documents. Here, Plaintiffs seek documents from four additional custodians for the same reason.

# McElroy Deutsch

Hon. Tonianne J. Bongiovanni, U.S.M.J.
February 8, 2022
Page 6

email custodians to Plaintiffs until August 2021.[8] After that date, the parties continued to meet and confer regarding the sufficiency of RCN's document production. Indeed, those efforts were the basis for multiple joint requests to the Court to extend the date by which written discovery disputes must be submitted. *See* ECF 184, 191. Once Plaintiffs had identified the precise reasons why RCN's production was insufficient and exhausted all avenues to work productively with RCN to address those insufficiencies, they timely filed their discovery letter.[9]

Moreover, the current fact discovery deadline provides no basis to deny Plaintiffs' application. Fact discovery in this matter has always been scheduled to accomplish three primary tasks in an orderly fashion: (a) facilitate document productions and written discovery, (b) resolve disputes related to those issues, and then (c) allow sufficient time to conduct fact depositions. As noted above, that schedule has already been extended multiple times so the parties could complete the first two steps; if an additional extension is necessary for RCN to comply with its document production obligations, there is no reason to suspect that the parties could not agree on an appropriate schedule or that the Court would be unwilling to order a revised schedule.[10] Any other outcome would permit RCN to withhold relevant documents without justification and then claim the time it would take to correct that withholding (including the time necessary to obtain an order from the Court) provides reason to excuse its improper suppression of evidence.

Finally, RCN's own conduct exposes the disingenuous nature of their "timeliness" argument. Plaintiffs filed their discovery letter on the deadline set by the Court. *See* ECF 192 (Order setting the deadline to submit document discovery disputes to the court by December 30, 2021). That same day, RCN filed two discovery letters of its own, both relating to disputes it had been aware of for many months, but did not file until the deadline. *See* ECF 195 at 2 (noting that the parties reached an impasse in September 2021); ECF 196 (moving to overrule objection

---

[8] Interrogatory No. 1 asked RCN to identify the individuals it believed had "knowledge of relevant facts." ECF 197-1 at 2. It said nothing about RCN's potential email custodians. It was not until August 13, 2021 that RCN provided a complete list of its email custodians, which it acknowledged differed from the list identified in its interrogatory response. *See* Ex. 1 at 1-2 (Aug. 13, 2021 email from M. Szewczyk).

[9] In light of the extensive and repeated efforts Plaintiffs took to meet and confer with RCN, RCN's claim that Plaintiffs' application should be denied "for *failure* to meet and confer" has no basis in reality. ECF 197 at 4 (emphasis added). Tellingly, RCN does not claim the "failures" it alleges made any difference in the parties' lengthy negotiations or, if "corrected," would have led to a narrower set of issues requiring the Court's attention.

[10] RCN concedes it has not yet produced all the documents it agreed to produce in this case. *See* ECF 197 at 5 (noting that RCN is still "actively reviewing" emails for production).

# McElroy Deutsch

Hon. Tonianne J. Bongiovanni, U.S.M.J.
February 8, 2022
Page 7

to interrogatory served in March 2021).  On such a record, RCN's accusation that Plaintiffs' application should be denied based on when it was presented to the Court is hypocritical and frivolous.

Accordingly, the Court should compel RCN to collect, search, and produce the emails of Mr. Holanda, Mr. Kramp, Mr. Hill, and Ms. Rankin.

## II. RCN's Baseless Privilege Assertions

In addition to concealing material information by refusing to search the emails of individuals that it knew had relevant documents, RCN also attempted to suppress inculpatory communications about its DMCA Policy and its knowledge of copyright infringement on its network by baselessly asserting privilege over three categories of documents: (a) communications involving no attorneys at all; (b) communications that include attorneys, but reflect no attorney involvement; and (c) communications with attachments that are plainly not privileged.  Critically, as the party withholding documents on the basis of privilege, RCN has the burden to prove its privilege claims are proper.  *See In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012).  It has manifestly failed to do so.

All of RCN's privilege claims should be rejected because RCN has failed to provide any evidence to support them.  A party asserting entitlement to the attorney-client privilege can meet its burden "only by an evidentiary showing based on competent evidence," such as declarations or affidavits from the relevant attorneys or corporate employees.  *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 (E.D. Pa. 2001).  RCN was undoubtedly aware of this requirement, as the very case it cites recognized that "attorney declarations generally are necessary to support the designating party's position in a dispute about attorney-client privilege."  *Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D. 603, 619 (N.D. Cal. 2020) (internal quotations omitted).  Yet RCN included no evidence with its submission to the Court.  RCN's knowing failure to substantiate its privilege assertions demonstrates that all of those assertions are baseless.

Moreover, even if the Court were to accept the *ipse dixit* claims of RCN's counsel as fact, RCN's privilege claims still fail as a matter of law.

### A. Communications With No Attorneys

RCN withheld more than 106 communications as privileged even though they included no attorneys at all.  ECF 194 at 10 & n.17 (identifying privilege log entries).  Under binding Third Circuit authority, a communication can be privileged only if it is between a client and "a member of the bar of a court, or his subordinate."  *In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979).  Thus, these communications should be produced.

# McElroy Deutsch

Hon. Tonianne J. Bongiovanni, U.S.M.J.
February 8, 2022
Page 8

      In response, RCN cites largely out-of-circuit authority to argue that, in some circumstances, communications can be privileged even if they do not include an attorney. *See* ECF 197 at 8-9.[11] Even under RCN's articulation of the scope of the attorney-client privilege, RCN has not met its burden to show that the documents it withheld qualify as privileged. In the rare cases when courts in this district have extended the privilege to communications that do not include an attorney, they have done so only to communications that "assist an attorney to formulate and render legal advice." *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 16-md-2738, 2021 WL 3144945, at *10 (D.N.J. July 26, 2021) (alterations omitted). Such communications necessarily ***precede*** the provision of legal advice by an attorney. Without any evidence in the record demonstrating a nexus between the communications RCN withheld and legal advice RCN received, RCN cannot meet its burden to demonstrate that the non-attorney communications are privileged. Further, the relevant entries in RCN's privilege log demonstrate that the non-attorney communications RCN withheld were ***not*** created to assist an attorney in providing future legal advice. Those privilege log entries predominantly claim that the communications at issue were merely "reflecting" or "regarding" legal advice. *See, e.g.*, ECF 194-5 at Ref Nos. 1-5 ("reflecting"), 11 ("regarding"). That phrasing implies the legal advice at issue had already been provided.[12] The authorities cited by RCN confirm that the conclusory assertion in a privilege log that a document "'reflects' an attorney's advice is insufficient to demonstrate that the document should be found privileged." *Scalia*, 336 F.R.D. at 618 (internal quotations omitted).

      RCN has also failed to meet its burden with regard to the few communications without attorneys that were ostensibly created to seek legal advice. Even under the broadest articulation of privilege that RCN cites, such communications are privileged only if they reflect ***both*** "advice given by counsel" and "an employee's intent to seek legal advice about a particular issue." *Corkrean v. Drake Univ.*, No. 21-cv-336, 2022 WL 18632, at *3 (S.D. Iowa Jan. 3, 2022) (quoting *Scalia*, 336 F.R.D. at 618). RCN cannot meet its burden to prove its employees' intent to seek legal advice without declarations from those employees. *See Scalia*, 336 F.R.D. at 619 (rejecting privilege claim because it was not supported by employee declarations).

    **B.**    **Communications Only Nominally Including Attorneys**

      RCN withheld more than 674 communications that included lawyers who never participated in the discussion. *See* ECF 194 at 10 n.18 (identifying communications). This mass

---

[11] The only Third Circuit authority RCN cites addresses a different issue, namely when the disclosure of a privileged communication to a third party constitutes a waiver of privilege. *See Westinghouse Elec. Corp. v. Rep. of Philippines*, 951 F.2d 1414, 1423-24 (3d Cir. 1991).

[12] RCN's opposition also indicates that some of these communications "discuss" or "share" legal advice already provided. ECF 197 at 8.

McElroy, Deutsch, Mulvaney & Carpenter, LLP
4569808_1

assertion of privilege over documents that involved no legal advice is facially improper and RCN should be compelled to produce them. *See id.* at 10-12.

It is black-letter law that an email is not privileged when "an in-house attorney: (1) is a mere recipient of that email; and (2) did not actively participate in providing legal advice as part of that email." *Dejewski v. Nat'l Beverage Corp.*, No. 19-cv-14532, 2021 WL 118929, at *1 (D.N.J. Jan. 12, 2021).[13] RCN does not dispute the first element and fails to meet its burden on the second. Unable to point to any written communications demonstrating that its attorneys participated in the email threads identified by Plaintiffs, RCN claims only that its attorneys were included so they could "provide further input or advice as needed" and "may well have" done so by phone or face-to-face conversation. ECF 197 at 9. These speculative statements are unsupported by any evidence and should be dismissed for that reason alone. Further, they do not demonstrate that RCN's attorneys ***actually provided*** any legal advice in response to any particular email they received. Thus, RCN has failed to meet its burden to demonstrate that any of those communications are privileged.

RCN's complete failure to substantiate any of its privilege claims in this category runs headlong into the policy supporting the *Dejewski* standard. The court in that case expressed concern that parties might seek "to evade the limitations of the privilege concerning the production of relevant discovery by simply copying an attorney on all company-generated emails to protect them from discovery, regardless of whether legal services were sought or who the other recipients of the email were." 2021 WL 118929, at *1. RCN attempted to do exactly that in this case.

### C. Communications With Unprivileged Attachments

RCN withheld 75 email attachments that must be produced regardless of whether the emails to which they are attached are privileged. These attachments span two categories: (1) 56 documents that appear to be sample infringement notices reflecting no input from attorneys; and (2) 19 documents reflecting underlying factual information relevant to RCN's knowledge of copyright infringement on its network. *See* ECF 194 at 13 & nn.24-25 (identifying attachments).

---

[13] While RCN claims that courts have "further clarified the law since *Dejewski*," ECF 197 at 9, RCN cites only one post-*Dejewski* case: *Jorjani v. N.J. Inst. of Tech.*, No. 18-cv-11693, 2021 WL 4237255 (D.N.J. Sept. 17, 2021). But that case addresses the separate issue of whether an email can be considered a request for legal advice, not whether an attorney included on an email sufficiently participates in providing such advice. *See* 2021 WL 4237255, at *3-4. Unsurprisingly, *Jorjani* does not cite *Dejewski* or analyze its legal standard at all.

# McElroy Deutsch

Hon. Tonianne J. Bongiovanni, U.S.M.J.
February 8, 2022
Page 10

First, RCN has not met its burden to withhold the 56 sample infringement notices. The only basis proffered by RCN is its conclusory statement that these notices "were generated by attorneys." ECF 197 at 10. Nothing in the record supports this claim. To the contrary, RCN's privilege log shows that these notices were attached to emails sent to attorneys, not from attorneys. *See* ECF 194 at 10 (describing emails).

Second, RCN concedes that the 19 factual documents are ***not*** privileged, but claims that it can produce them only in redacted form due to "privacy obligations." ECF 197 at 10. There is no reason to permit RCN to redact these documents. RCN does not articulate what its purported privacy obligations are or offer any reason why they cannot be resolved by the procedures in the protective order in this case. Further, RCN never disclosed this objection to Plaintiffs prior to raising it in its opposition letter. If RCN sincerely intended to raise this objection to production, it should have met and conferred with Plaintiffs before raising it with the Court.

## Conclusion

For all the reasons stated in Plaintiffs' December 30 letter and above, the Court should compel RCN to (i) collect, search, and produce the responsive contents of the custodial email files of Jim Holanda, Jeff Kramp, James Hill, and Deborah Rankin; and (ii) produce the documents RCN has improperly claimed are privileged.

Respectfully submitted,

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

*s/ Thomas R. Curtin*

THOMAS R. CURTIN

cc: All counsel (via ECF and e-mail)

# **EXHIBIT A**

Tracer, Jacob

| | |
|---|---|
| **From:** | Maggie Szewczyk <MSzewczyk@atllp.com> |
| **Sent:** | Friday, August 13, 2021 5:30 PM |
| **To:** | Tracer, Jacob; Richard L. Brophy; Zachary C. Howenstine; Ted Behm; Kyle G. Gottuso |
| **Cc:** | Bart, Andrew H.; 'Robert Gilmore'; Phil O'Beirne; Kevin Attridge |
| **Subject:** | RE: UMG v. RCN, No. 3:19-cv-17272-MAS-TJB (D.N.J.) [IWOV-IDOCS.FID3699945] |

External Email – Exercise Caution

Jake,

RCN's responses are below in red.

Thanks,
Maggie



Armstrong Teasdale LLP

**Margaret Szewczyk** | Attorney – IP Litigation

7700 Forsyth Blvd., Suite 1800, St. Louis, Missouri 63105-1847
MAIN PHONE: 314.621.5070 | MAIN FAX: 314.621.5065
DIRECT: 314.552.6644 | Extension: 7510 | FAX: 314.621.5065
mszewczyk@atllp.com
www.armstrongteasdale.com
Always exceed expectations through teamwork and excellent client service.

Please consider the environment before printing this email.

---

**From:** Tracer, Jacob <JTracer@jenner.com>
**Sent:** Monday, August 9, 2021 4:51 PM
**To:** Maggie Szewczyk <MSzewczyk@atllp.com>; Richard L. Brophy <RBrophy@atllp.com>; Zachary C. Howenstine <ZHowenstine@atllp.com>; Ted Behm <EBehm@atllp.com>; Kyle G. Gottuso <KGottuso@atllp.com>
**Cc:** Bart, Andrew H. <ABart@jenner.com>; 'Robert Gilmore' <RGilmore@steinmitchell.com>; Phil O'Beirne <POBeirne@steinmitchell.com>; Kevin Attridge <KAttridge@steinmitchell.com>
**Subject:** RE: UMG v. RCN, No. 3:19-cv-17272-MAS-TJB (D.N.J.) [IWOV-IDOCS.FID3699945]

Zach and Maggie,

We are writing to follow up on our meet and confer call last Wednesday. As discussed on that call, we are waiting for responses on the following issues:

1. Custodians. Please provide a complete list of RCN's document custodians. While you referred us to RCN's supplemental response to interrogatory No. 1, it was clear on our call that the list of individuals in that response was not a complete list of custodians. Your inability to confirm the identity of such custodians after repeated requests raises the issue of whether the selection of RCN's custodians was made by your client and whether the resulting document collection was also done in-house at RCN. We will need to get clarity on that issue or add it to the topics covered by #2 below.

RCN's list of custodians was identified in its response to Rog 1. However, after that identification, we became aware of two additional employees (Peter Jacoby and Chris Jackman) that we believed may have additional responsive

1

materials. We collected their emails and ran the search terms as with all other custodians. Therefore, ultimately RCN searched and produced more email than we originally committed to.

For the sake of clarity, the complete list of RCN email custodians is:
Rob Roeder
John Feehan
William Davis
Ruth Ann Welsch
Jason Wasmanski
Phil Rhinelander
Jeremy Johnson
Peter Jacoby
Chris Jackman

2. Prioritized 30(b)(6) deposition. As discussed, we requested a prioritized Rule 30(b)(6) deposition on RCN's document retention and collection, which would be without prejudice to Plaintiffs to designate additional Rule 30(b)(6) deposition topics later in discovery. You asked for a list of topics to consider. To that end, a draft list of topics is included at the end of this email.

We will respond in a separate email on this topic.

3. Communications with lawyers cc'd. We requested that RCN re-review the documents in which RCN's in-house counsel were cc'd, but were not the sender or primary recipient. It is well established that "a litigant cannot cloak business information in privilege by involving an attorney in the communication of business matters." *Claude P. Bamberger Int'l, Inc. v. Rohm & Haas Co.*, No. 96-cv-1041, 1997 WL 33768546, at *3 (D.N.J. Aug. 12, 1997). Because Mr. Kramp and Mr. Hill were cc'd on more than 500 emails but wrote or received almost none, it does not appear they were providing legal advice on this subject matter. You indicated that you would consider our request. Please let us know your position on this issue.

We investigated this issue and stand by the designation of the majority of these emails as privileged. We will, however, be down-grading and producing a small set of documents that we identified in our re-review and believe are appropriate to produce, at least in redacted form.

4. Privilege logs. We discussed a number of potential amendments to RCN's privilege log:
   a. Pre-April 2016 entries. We understand that you are planning to supplement your log to provide more information about the entries on your privilege log from before April 2016. Please provide us with a date by which that will be completed.

We agreed to provide a supplemental privilege log with updated narratives for the RCN emails that pre-date April 2016, i.e. RCNPriv001-6. We plan to produce that supplemental log next week.

   b. Communications with no attorney identified. Our letter referred to entries on RCN's log that did not identify any attorney included. In our call, you indicated that you believed those were meeting invites, but that you would look into any that were not if we identify them. We have taken another look and request that you re-review the following communications (not meeting invites) that do not identify any attorneys at all: RCNPriv0001, 0002, 0005, 0006, 0014, 0018-22, 0026, 0030, 0043, 0083, 0101-07, 0120, 0124-26, 0140, 0194, 0195, 0199, 0200, 0203, 0204, 0210, 0211, 0238, 0248, 0250, 0253, 0266-70, 0273, 0274, 0287-92, 0295, 0296, 0299, 0302, 0341, 0353, 0367-69, 0374, 0393-400, 0413, 0439, 0440, 0442-44, 0446, 0452, 0453, 0526, 0534, 0544, 0545, 0550-52, 0559, 0624, 0625, 0705, 0788, 0789, 0799, 0800, 0803, 0827, 0891, 0901-03, 0912-17, 0926, 0930, 0950, 1002, 1015, 1085, 1134, and 1151.

We are reviewing the entries identified above and will provide a response on our position next week.

   c. Logging every communication in a thread. We understand the parties to agree that every communication in an email thread must be logged separately. We further understand that RCN will amend its log to address RCNPriv0323, which we addressed in our July 27 letter. However, this issue is

>
> not limited just to RCNPriv0323. In particular, we have also identified the following non-exhaustive list of communications where not every email in a thread appears to be logged: RCNPriv0005, 0008, 0024, 0027, 0036, 0038, 0069, 0140, 0146, 0200, 0207, 0223, 0271, 0287, 0297, 0357, 0375, 0385, 0451, 0457, 0626, 0770, 0780, 0846, 0865, 0897, 1077, 1138, and 1169. Even if some of these communications originated outside RCN or were forwarded from a mobile device (and thus lack metadata for earlier communications in the thread), they still must be logged individually if RCN claims privilege over them.

We are reviewing the entries identified above and will provide a response on our position next week.

>   d. **Additional amendments**. We request that RCN supplement its privilege log to (a) identify any versions of documents described on your privilege log that have been produced in redacted form; and (b) identify all attachments for which you are claiming privilege, including identifying the file name of the attachments and the emails to which they are attached. To the extent that non-privileged attachments have been produced elsewhere in the production, the log should state that the attachment has been produced elsewhere. Plaintiffs and the RIAA are open to doing the same and to including the subject lines of emails on their logs (redacted as necessary if information in the subject lines is itself privileged or protected work product).

Agreed.

We reserve the right to raise any additional issues with RCN's privilege log.

Best,
Jake

---

Draft list of prioritized Rule 30(b)(6) deposition topics

1. RCN's policies, practices, and procedures regarding document retention, preservation, and deletion from 2011 to the present, including any changes made thereto.

2. RCN's actual practices and efforts regarding document retention, preservation, and deletion related to or resulting from the BMG-Cox Litigation, the BMG Cease & Desist Letter, the RCN-BMG Litigation, the UMG-Grande Litigation, or this litigation, including but not limited to:

   a. Documents or Communications reflecting any litigation hold notices, whether formal or informal, related to the BMG-Cox Litigation, the BMG Cease & Desist Letter, the RCN-BMG Litigation, the UMG-Grande Litigation, or this litigation;
   b. Dates on which RCN issued any litigation hold notices, whether formal or informal, related to the BMG-Cox Litigation, the BMG Cease & Desist Letter, the RCN-BMG Litigation, the UMG-Grande Litigation, or this litigation;
   c. Identification of departments, individuals, or any other organizations or entities that issued and received such litigation hold notices, and the dates on which they were issued and received;
   d. Identification of the categories of information identified for preservation in any such litigation hold notices; and
   e. Identification of any methods undertaken to ensure the preservation of documents subject to any such litigation hold notices.

3. The existence and nature of documents within RCN's possession, custody, or control or communications related to RCN or involving RCN personnel related to (i) the DMCA, (ii) Notices, (iii) allegations of Customers engaging in copyright infringement, (iv) Repeat Infringer Termination Policies, or (v) Rightscorp.  Such documents or communications shall include but are not limited to those related to the development or amendment of any policies or practices to address allegations of Customers using RCN's internet services who were alleged to have engaged in

3

copyright infringement, as well as any project names or pseudonyms applied to the development or amendment of any such policies.

4. RCN's deletion of documents or communications concerning (i) the BMG-Cox Litigation, (ii) the BMG Cease & Desist Letter, (iii), the RCN-BMG Litigation, (iv) the UMG-Grande Litigation, (v) this litigation, (vi) the DMCA, (vii) Notices, (viii) allegations of Customers engaging in copyright infringement, (ix) Repeat Infringer Termination Policies, (x) Rightscorp, or (xi) any allegations in the Amended Complaint and the Second Amended Answer and Counterclaim.

5. RCN's efforts to locate and produce documents in this litigation, including but not limited to:

    a. Identification of custodians searched;
    b. Identification of the types and sources of documents or other data collected and searched for each custodian;
    c. Identification of the time period of documents or other data collected and searched for each custodian;
    d. Identification of search terms used;
    e. Identification of time period searched;
    f. Locations of documents responsive to Plaintiffs' Requests for Production or otherwise identified by RCN as containing relevant information;
    g. The process by which RCN collected documents for production in this litigation; and
    h. Individuals responsible for identifying custodians, collecting documents or other data from those custodians, developing and implementing searches of such documents or data, and reviewing and producing documents in this litigation, and the roles of each such individual in those processes.

6. The protocol applied to RCN's review of otherwise responsive documents for attorney-client privilege, work product privilege, or any other privilege.

**From:** Tracer, Jacob
**Sent:** Monday, August 2, 2021 6:33 PM
**To:** 'Maggie Szewczyk' <MSzewczyk@atllp.com>; Richard L. Brophy <RBrophy@atllp.com>; Zachary C. Howenstine <ZHowenstine@atllp.com>; Ted Behm <EBehm@atllp.com>; Kyle G. Gottuso <KGottuso@atllp.com>
**Cc:** Bart, Andrew H. <ABart@jenner.com>; 'Robert Gilmore' <RGilmore@steinmitchell.com>; Phil O'Beirne <POBeirne@steinmitchell.com>; Kevin Attridge <KAttridge@steinmitchell.com>; BNewberg@mcguirewoods.com; blevine@bllawnj.com
**Subject:** RE: UMG v. RCN, No. 3:19-cv-17272-MAS-TJB (D.N.J.) [IWOV-IDOCS.FID3699945]

Maggie,

We are available at 3 pm ET on Wednesday afternoon. I will send around a dial-in separately.

We are reviewing the topics you raised in your email and can discuss them on our call in addition to the issues we raised with RCN's privilege log. However, your assertion that the RIAA's log lacks internal communications about Rightscorp is demonstrably incorrect. The RIAA's log refers to numerous such communications—as just one example (which is not meant to be exhaustive), see rows 93-96 of the RIAA's log. In addition, the RIAA's log goes back to at least 2011 because, although there were no responsive documents with respect to RCN before 2016, the RIAA's original and supplemental privilege logs from Grande have been deemed produced in this action.

Best,
Jake

**From:** Maggie Szewczyk <MSzewczyk@atllp.com>
**Sent:** Friday, July 30, 2021 9:21 PM
**To:** Tracer, Jacob <JTracer@jenner.com>; Richard L. Brophy <RBrophy@atllp.com>; Zachary C. Howenstine

<ZHowenstine@atllp.com>; Ted Behm <EBehm@atllp.com>; Kyle G. Gottuso <KGottuso@atllp.com>
**Cc:** Bart, Andrew H. <ABart@jenner.com>; 'Robert Gilmore' <RGilmore@steinmitchell.com>; Phil O'Beirne <POBeirne@steinmitchell.com>; Kevin Attridge <KAttridge@steinmitchell.com>; BNewberg@mcguirewoods.com; blevine@bllawnj.com
**Subject:** RE: UMG v. RCN, No. 3:19-cv-17272-MAS-TJB (D.N.J.) [IWOV-IDOCS.FID3699945]

External Email – Exercise Caution
Jake,

We are available for a meet and confer next week.  We propose a time on Wednesday—2pm ET or later works for us.  If that works for you, please circulate an invite.

On that call we would also like to address our issues with plaintiffs' privilege log.  For example, there are a number of entries that indicate documents have been redacted as opposed to withheld, yet there is no indication of the produced document it relates to.  Another issue is the lack of email subject lines on plaintiffs' privilege log, which deprives RCN of the ability to assess the validity of the privilege claim.  We would also like to confirm the meaning of the categories represented for each column of the log, particularly, if the "author" represents the sender of the email or the custodian.

RIAA's privilege log suffers from the same issues as plaintiffs, in addition to other issues.  For example, RIAA appears to have applied an improper time limitation.  The entries on RIAA's log only go back to 2/22/16; however, RCN's RFPs seek documents further back in time than that date. Based on other documents produced in this case, it is clear that responsive documents exist that should be either logged or produced.  In addition, there also appear to be no emails that describe any internal RIAA communications regarding Rightscorp, which seems unlikely to be consistent with reality.  Further, there are a number of entries that include Rightscorp representatives and claim a work product privilege, yet pre-date the 2019 consulting agreement.  Please explain RIAA's position on this issue.

The list of document custodians was something we addressed on our last meet and confer; however, to reiterate, RCN agreed to update its rog responses with document custodians and this list was identified in defendant's response to rog no. 1.  That understanding was memorialized in a correspondence from Zach Howenstine on 7/23/20 in which we agreed to "update our list of custodians by supplementing Defendants' response to Interrogatory No. 1."

We will plan to discuss the remaining issues raised in your letter of July 27, 2021 on that meet and confer.

Thanks,
Maggie



Armstrong Teasdale LLP

**Margaret Szewczyk** | Attorney – IP Litigation
7700 Forsyth Blvd., Suite 1800, St. Louis, Missouri 63105-1847
MAIN PHONE: 314.621.5070 | MAIN FAX: 314.621.5065
DIRECT: 314.552.6644 | Extension: 7510 | FAX: 314.621.5065
mszewczyk@atllp.com
www.armstrongteasdale.com
Always exceed expectations through teamwork and excellent client service.

Please consider the environment before printing this email.


********** **PRIVATE AND CONFIDENTIAL**********

This transmission and any attached files are privileged, confidential or otherwise the exclusive property of the intended recipient, Armstrong Teasdale LLP or its subsidiaries.  If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or  attached to this transmission is strictly prohibited. If you have received this transmission in error, please contact us immediately by email (admin@atllp.com) or by telephone (+1 800.243.5070) and promptly destroy the original transmission and its attachments. Opinions, conclusions and other information in this message that do not relate to the official business of Armstrong Teasdale LLP or its subsidiaries shall be understood as neither given nor endorsed by it. Armstrong Teasdale LLP and its subsidiaries may monitor email traffic data. Please read our **Global Privacy Policy** to find out how Armstrong Teasdale LLP and its subsidiaries process personal information.

Armstrong Teasdale LLP is a Missouri-registered limited liability partnership organized under the laws of the State of Missouri, USA. The London office of Armstrong Teasdale LLP is operated by Armstrong Teasdale Limited, a private limited company registered in England and Wales (Registration No. 08879988), that is authorized and regulated by the Solicitors Regulation Authority (SRA No. 657002). The registered office of Armstrong Teasdale Limited is 200 Strand, London WC2R 1DJ. Please review our **International Legal Notices**.

**From:** Tracer, Jacob <JTracer@jenner.com>
**Sent:** Friday, July 30, 2021 12:24 PM
**To:** Richard L. Brophy <RBrophy@atllp.com>; Zachary C. Howenstine <ZHowenstine@atllp.com>; Maggie Szewczyk <MSzewczyk@atllp.com>; Ted Behm <EBehm@atllp.com>; Kyle G. Gottuso <KGottuso@atllp.com>
**Cc:** Bart, Andrew H. <ABart@jenner.com>; 'Robert Gilmore' <RGilmore@steinmitchell.com>; Phil O'Beirne <POBeirne@steinmitchell.com>; Kevin Attridge <KAttridge@steinmitchell.com>; BNewberg@mcguirewoods.com; blevine@bllawnj.com
**Subject:** RE: UMG v. RCN, No. 3:19-cv-17272-MAS-TJB (D.N.J.)

**CAUTION:** **EXTERNAL EMAIL**

Richard and Zach,

We're following up on our request for a meet and confer on the issues described in our letter. Please let us know some times you're available early next week, as we would like to have the call no later than Wednesday.

We also reiterate the request in our letter that, in advance of any meet and confer, you provide your list of document custodians to us. We still have not been able to identify that list in any previous correspondence. One of the issues we will want to address at the meet and confer is what additional steps RCN will undertake to ensure it adequately searches for documents relating to copyright infringement and the DMCA from before April 14, 2016, including but not limited to searching additional document custodians. We cannot have that conversation unless we know which custodians you have already searched. We would also would like to discuss conducting a prioritized 30(b)(6) deposition of RCN on the topic of document preservation and collection efforts.

Thanks,
Jake

**From:** Tracer, Jacob
**Sent:** Tuesday, July 27, 2021 11:42 AM
**To:** 'Richard L. Brophy' <RBrophy@atllp.com>; Zachary C. Howenstine <ZHowenstine@atllp.com>; 'MSzewczyk@atllp.com' <MSzewczyk@atllp.com>; 'EBehm@atllp.com' <EBehm@atllp.com>; 'KGottuso@atllp.com' <KGottuso@atllp.com>

**Cc:** Bart, Andrew H. <ABart@jenner.com>; 'Robert Gilmore' <RGilmore@steinmitchell.com>; Phil O'Beirne <POBeirne@steinmitchell.com>; Kevin Attridge <KAttridge@steinmitchell.com>; 'BNewberg@mcguirewoods.com' <BNewberg@mcguirewoods.com>; 'blevine@bllawnj.com' <blevine@bllawnj.com>
**Subject:** UMG v. RCN, No. 3:19-cv-17272-MAS-TJB (D.N.J.)

Counsel,

Please see the attached.

Best,
Jake

---

**Jacob Tracer**

**Jenner & Block LLP**
919 Third Avenue, New York, NY 10022-3908  |  jenner.com
+1 212 407 1765 | TEL
+1 312 515 3588 | MOBILE
JTracer@jenner.com
Download V-Card  |  View Biography

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---