# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### (609) 989-2040

CHAMBERS OF
**TONIANNE J. BONGIOVANNI**
UNITED STATES MAGISTRATE JUDGE

**U.S. COURTHOUSE**
402 E. STATE STREET, RM 6052
TRENTON, NJ 08608

March 8, 2022

<u>**LETTER ORDER**</u>

Re:     <u>**UMG Recordings, Inc., et al. v. RCN Telecom Services, LLC, et al.**</u>
         <u>**Civil Action No. 19-17272 (MAS)**</u>

Dear Counsel:

Pending before the Court are the following discovery disputes:

- Whether Rightscorp. Inc. ("Rightscorp"), in responding to RCN's Requests for Production Nos. 11, 12 and 14, should be compelled to produce documents regarding actual or alleged errors, defects, inaccuracies, and misrepresentations in its email notices to other ISPS, in addition to RCN;

- Whether Rightscorp should have to produce its internal documents and communications with clients or potential clients about the works in suit in response to RCN's Request for Production No. 22;

- Whether Rightscorp should be compelled to produce all documents that refer to or reflect any discussion of the proper form or content of its copyright complaints as requested in RCN's Request for Production No. 42;

- Whether Rightscorp should be compelled to allow RCN to inspect Rightscorp's SQL server and related database or databases that Rightscorp used and uses to store data

obtained from individual BitTorrent users, through the operation of its system for detecting and notifying ISPs of alleged copyright infringement;

- Whether Rigthscorp should have to serve initial disclosures related to RCN's First Amended Answer and Counterclaims;

- Whether RCN should be compelled to search for responsive emails from the following four custodians:   CEO Jim Holanda, in-house attorneys Jeff Kram and James Hill, and paralegal Deborah Rankin;

- Whether RCN should have to produce various documents identified on its privilege log, including 106 communications on which no attorney is present, 674 communications that occurred through 199 email chains or standalone emails that include attorneys, but in which the attorneys never participated in the discussions, and email attachments to communications identified as privilege, but for which no independent privilege analysis was made for the attachment, which include 56 documents that appear to be sample infringement notices, and 19 documents other documents; and

- Whether Plaintiffs should be compelled to respond to RCN's Interrogatory No. 12, which asks them to "[i]dentify all persons who participated in Plaintiffs' decision in or around 2009 to remove Digital Rights Management ('DRM') from sound recordings sold through the iTunes Store."

The Court has broad discretion in deciding the aforementioned discovery disputes. *See United States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017) (noting that "[a]s we have often said, matters of docket control and discovery are committed to [the] broad discretion of the district

court"); *Halsey v. Pfeiffer*, Civil Action No. 09-1138, 2010 WL 3735702, at *1 (D.N.J. Sept. 17, 2010) (noting that "[d]istrict courts provide magistrate judges with particularly broad discretion in resolving discovery disputes"); *Gerald Chamles Corp. v. Oki Data Americas*, *Inc.*, Civ. No. 07-1947 (JEI), 2007 WL 4789040, at *1 (D.N.J. Dec. 11, 2007) (stating that it is "well-settled that Magistrate Judges have broad discretion to manage their docket and to decide discovery issues[.]") The Court utilizes said discretion in considering whether to compel the aforementioned discovery.

Federal Rule of Civil Procedure ("Rule") 26 governs the scope of discovery in federal litigation. Pursuant to Rule 26(b)(1), information is discoverable if it is both "relevant to any party's claim or defense and proportional to the needs of the case." FED.R.CIV.P. ("Rule") 26(b)(1). Information is generally considered relevant if it "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED.R.EVID. 401. "The party seeking discovery has the burden to show that the information it seeks is relevant. *See Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000).

Even where the information sought is relevant and proportional to the needs of the case, it is not discoverable if it is protected by the attorney-client privilege or work product doctrine. The party asserting the claimed privilege bears the burden of establishing that it applies. *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 305 (D.N.J. 2008); *Schwarz Pharma, Inc. v. Teva Pharmaceuticals USA, Inc.*, Civil Action No. 01-4995 (DRD), 2007 WL 2829744, at *2 (Sept. 27, 2007) (citing *Smithkline Beechman Corp. v. Apotex Corp.*, 232 F.R.D. 467, 472 (E.D. Pa. 2005). No specific evidence is required to satisfy the burden. Rather, the applicability of the attorney-client privilege and work product doctrine must be determined on a

3

case-by-case basis.  *See Upjohn Co. v. United States*, 449 U.S. 383, 396, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

With these standards in mind, the Court turns to the aforementioned issues raised by the parties.   Given the parties and the Court's familiarity with same, the Court does not recite the facts and arguments concerning said disputes in detail herein.   Instead, the Court sets forth its decision regarding each dispute in order below.

1.  RCN's Requests for Production Nos. 11, 12 and 14

The Court denies RCN's request to compel Rightscorp to search for and produce documents regarding actual or alleged errors, defects, inaccuracies, and misrepresentations in email notices to other ISPs in response to RCN's Requests for Production Nos. 11, 12 and 14. While the Court understands that complaints from RCN's customers do not exist because RCN did not alert its customers of Rightscorp's infringement notices due to Rightscorp's alleged failure to digitally sign the notices as required by RCN's DMCA policy, this fact does not alter the Court's analysis.

Despite RCN's claims to the contrary, the Court finds that customer complaints in general, and those from customers of other ISPs in particular, are of little probative value.   RCN suggests that such complaints "are plainly relevant to evaluating the accuracy and reliability of Rightscorp's detection system" because "[o]bviously, if a meaningful portion of Rightscorp's allegations are disputed, then that calls into question the legitimacy of its detection system and, therefore, Plaintiffs' ability to prove copyright infringement."   (Letter from Edward F. Behm, Jr., to Hon. Tonianne J. Bongiovanni of 8/13/2021 at 3; Docket Entry No. 168).   Yet, RCN provides no case law to support this "obvious" conclusion.   Perhaps this is because it is hard to see how complaints

made from customers who would have every reason to deny infringement would be useful evidence of how Rightscorp's system actually works.

The Court finds that Rightscorp has already adequately responded to RCN's Requests for Production Nos. 11, 12 and 14 by producing the notices it sent, the downloaded files at issue, the source code delineating how its system operates, and other documents that explain how its technology operates.   Further, as outlined below, this information will be supplemented by Rightscorp's production of a duplicate copy of its native database that includes only information related to RCN.   This is sufficient.   Rightscorp need not search for or produce documents regarding actual or alleged errors, defects, inaccuracies, and misrepresentations in email notices to other ISPs.

2.   RCN's Request for Production No. 22

At the outset, the Court finds that RCN's Request for Production No. 22, which seeks, "All Documents and Things, excluding Rightscorp Emails, that refer to any of the songs listed in Exhibit A to Plaintiffs' First Amended Complaint, including without limitation all communications with any client or potential client that refer or relate to any of those songs" is overbroad and unduly burdensome.   However, in its request to compel Rightscorp's production of the aforementioned information, RCN apparently narrows Request for Production No. 22, focusing on three topics.   Specifically, RCN argues that it needs this information because (1) "[c]ommunications with actual and potential clients about the works in suit are directly relevant to" whether Rightscorp "had authority from any relevant rightsholder to send the copyright infringement notices at issue in this case"; (2) the information sought will establish "whether Rightscorp made promises, or received instructions, about the number of complaints it would send

about a given work or over a given period of time"; and (3) "[c]ommunications with clients about the importance of monitoring the internet for infringement of certain songs over others" or "if a client thought it was only important to monitor a certain song for a short period of time" is relevant to the value of the copyright today, which is relevant to evaluating Plaintiff's claim for statutory damages. (Letter from Edward F. Behm, Jr., to Hon. Tonianne J. Bongiovanni of 8/13/2021 at 5). With respect to these three groups of information, Rightscorp has responded that (1) it will "produce representative samples of the agreements it has with customers to conduct its infringement detection business"; (2) "[t]o the best of Rightscorp's knowledge," there is no documentation concerning promises Rightscorp made or instructions it received about the number of complaints it would send about a given work or over a given period of time; and (3) Rightscorp "does not possess information as to how those works are valued by the owner." (Letter from Brian J. Levine to Hon. Tonianne J. Bongiovanni of 8/27/2021 at 4).

At this juncture, the Court directs Rightscorp to produce representative samples of the agreements it has with customers to conduct its infringement detection business. No later than **March 18 2022**, Rightscorp and RCN are directed to confer telephonically regarding how the representative samples will be selected. Rightscorp is directed to produce the representative samples by **April 15, 2022**. Given Rightscorp's representation that no documentation exists concerning promises Rightscorp made or instructions it received about the number of complaints it would send, the Court shall require nothing else in this regard. However, the Court finds that Rightscorp's representation that it "does not possess information as to how those works are valued by the owner" misses the mark. RCN did not ask Rightscorp to search for and produce information concerning how the works at issue are valued by the owners. Instead, RCN requested

Rightscorp's "[c]ommunications with clients about the importance of monitoring the internet for infringement of certain songs over others" or "if a client thought it was only important to monitor a certain song for a short period of time."   Rightscorp does not assert that such communications were searched for and do not exist.   The Court finds that such communications, if they exist, bear on the value of the works' copyrights today and are relevant to this case.   As a result, Rightscorp is directed to search for and produce all nonprivileged, responsive documents by **April 15, 2022**.

      3.  RCN's Request for Production No. 42

RCN's Request for Production No. 42 requests "[a]ll Documents and Things that refer to or reflect any discussion or consideration of the appropriate form, content, nature, or characteristics of email notices sent (or to be sent) to an ISP, or ISPs generally, regarding alleged instances of copyright infringement on that ISP's network."   RCN argues that such communications are relevant to Plaintiffs' claim for contributory copyright infringement because "Plaintiffs must prove that RCN had knowledge of the specific instances of direct copyright infringement at issue in this case" and "Plaintiffs are relying solely on Rightscorp's copyright complaints to prove such knowledge."   (Letter from Edward F. Behm, Jr., to Hon. Tonianne J. Bongiovanni of 8/13/2021 at 5).   RCN also argues that such communications are relevant to RCN's counterclaims asserting Rightscorp's unfair business practices as it is "relevant to the alleged unfairness of Rightscorp's business practices as well as to RCN's alleged knowledge of infringement" and because such communications might disclose "internal discussion[s] or consideration by Rightscorp of whether, when, or how to employ digital signatures" which is "highly relevant both to Plaintiffs' claims and RCN's counterclaims."   (*Id*. at 5-6).

In response to RCN's Request for Production No. 42, Rightscorp agreed to produce "nonprivileged documents responsive to this Request, as long as the documents are specifically related to the alleged infringements over the RCN network and plaintiffs in this case and to the extent such documents are in Rightscorp's possession, custody, or control and are located after a diligent search."   (Letter from Brian J. Levine to Hon. Tonianne J. Bongiovanni of 8/27/2021 at 5 (internal quotation marks and citation omitted).   Rightscorp has since agreed to modify its limiting objection and search for and produce "relevant nonprivileged documents . . . that relate to infringement notices substantially the same as the notice sent to RCN."   (*Id*.)

The Court finds Rightscorp's modified response acceptable.   However, to the extent Rightscorp has not already done so, it shall also produce a privilege log identifying all responsive, privileged documents on same.   Rightscorp is directed to produce all nonprivileged, responsive documents as well as its privilege log by **April 15, 2022**.

4.   Rightscorp's SQL Server and Related Database or Databases

While RCN did not explicitly serve a discovery request seeking to inspect Rightscorp's SQL server and related database or databases, given that RCN raised the request with Rightscorp while discussing their other disputes, the Court shall consider same.   RCN's request to access the SQL server and related database or databases that Rightscorp used and uses to store data obtained from individual BitTorrent users, through the operation of its system for detecting and notifying ISPs of alleged copyright infringement, is overbroad and disproportional to the needs of the case. While RCN argues that it requires access to Rightscorp's native database, the Court finds that Rightscorp's prior offer to create a duplicate copy of the native database that includes only information related to RCN is more than sufficient to provide RCN with an understanding of how

8

Rightscorp's system operates and to permit RCN to assess the accuracy of Rightscorp's alleged detections and to test the veracity and completeness of its alleged infringement evidence.   This is especially true in light of the information already produced by Rightscorp, including its source code in addition to data files.   RCN's arguments concerning the value of information regarding the users of other networks beyond RCN's are unavailing.   So too are RCN's arguments concerning bitfield data and choke data, as the source code of Rightscorp's infringement detection system makes clear that the system does not maintain bitfield data or choke data.   The Court finds that additional discovery of Rightscorp's SQL server and related database or databases beyond that set forth above would amount to impermissible fishing.   As a result, the Court denies same. Rightscorp is directed to create and produce a duplicate copy of its native database that includes only information related to RCN no later than **April 15, 2022**.

   5.   Initial Disclosures

   Rightscorp was served after Plaintiffs and RCN conducted their Rule 26(f) conference and the Court held the initial scheduling conference in this matter.   Pursuant to Rule 26(a)(1)(D), "[a] party that is first served or otherwise joined after the Rule 26(f) conference must make the initial disclosures within 30 days after being served or joined, unless a different time is set by stipulation or court order."   The parties did not stipulate to a different time, nor did the Court enter an order setting a different due date for Rightscorp's initial disclosures.   While Rightscorp argues that it should not have to serve initial disclosures regarding RCN's "patently frivolous counterclaim" that the District Court already dismissed once and regarding which Rightscorp has again moved to dismiss, that is not the standard set in the Rules.   (Letter from Brian J. Levine to Hon. Tonianne J. Bongiovanni of 1/31/2022 at 2; Docket Entry No. 198).   As a result, Rightscorp is directed to

9

provide its initial disclosures no later than **April 15, 2022**.   To the extent RCN has not served its initial disclosures regarding its Amended Counterclaims, it is also directed to do so by **April 15, 2022**.

6.   Additional Custodians

The Court shall require RCN to conduct a search of the email files of its CEO, Jim Holanda. Given the two documents produced by third-party private equity firms, it appears likely that relevant, non-duplicative, nonprivileged documents exist in Mr. Holanda's email files.   Further, the Court finds that requiring RCN to conduct a search of Mr. Holanda's email files is proportional to the needs of the case.   Mr. Holanda's status as RCN's CEO does not alter the Court's conclusion.   Nothing in the "apex doctrine" cited by RCN suggests that a corporate executive's files should not be searched.   Rather, it is when a party seeks to depose a corporate executive that the "apex doctrine" becomes applicable.   Pursuant to same, "courts have the ability to prohibit the deposition of a high-level executive where the executive had no firsthand personal knowledge of the events in dispute." *In re: Valeant Pharms. Int'l, Inc. Sec. Litig.*, Civil Action No. 15-cv-07658, 2021 WL 3140030, *9 (D.N.J. July 7, 2021).   Moreover, in light of the fact that RCN only identified the complete list of its email custodians on August 13, 2021, coupled with Plaintiffs need to review the information produced and the parties' efforts to narrow their disputes, the Court finds that Plaintiffs' request for the additional custodial email searches is timely.   As a result, RCN is directed to search Mr. Holanda's email files and produce all relevant, nonprivileged

communications by **April 15, 2022**.   If necessary, RCN shall also produce a revised privilege log on that date.

The Court shall not, however, require RCN to conduct searches of in-house attorneys Jeff Kram and James Hill, or paralegal Deborah Rankin's email files.   Given the likelihood that the information discovered in Messrs. Kram and Hill's and Ms. Rankin's files would be privileged or subject to the work product doctrine, the Court finds that the discovery sought is disproportional to the needs of the case.

 7. <u>RCN's Privilege Log</u>

The Court has reviewed RCN's privilege log as well as the issues raised by Plaintiffs regarding numerous documents withheld by RCN and RCN's response to same.   In the first instance, the Court addresses the 56 email attachments that are documents that appear to be sample infringement notices attached to emails that have no input from attorneys.   While not stated in its privilege log, RCN has explained that these documents are "draft notices to subscribers about copyright complaints that were generated by attorneys[,]" and, as such, RCN argues they have been properly withheld.   (Letter from Edward F. Behm, Jr. to Hon. Tonianne J. Bongiovanni of 1/18/2022 at 10; Docket Entry No. 197).   The Court agrees with RCN.   However, RCN is directed to update its privilege log to specifically indicate that these documents are draft notices generated by attorneys.

The Court turns next to the remaining 19 email attachments.   RCN states that "these attachments contain highly sensitive customer information that RCN cannot disclose due to certain privacy obligations[,]" and indicates it is "willing to produce redacted versions of these documents although the redactions will be significant." (*Id*.)   RCN's willingness to produce the documents

in redacted form is insufficient.   RCN's explanation suggests that the documents are not, in fact, privileged.   It is entirely unclear why the Discovery Confidentiality Order entered in this case on August 7, 2020 (Docket Entry No. 85) is insufficient to protect the "highly sensitive customer information" allegedly disclosed in the 19 documents.   In the normal course, these documents would be produced with an Attorneys Eyes Only designation.   RCN is directed to either produce same in that manner or provide additional argument supported by relevant case law to establish that its decision to produce the documents in redacted format is appropriate by **March 18, 2022**.

With respect to the remaining documents at issue, while courts generally disfavor conducting an *in camera* review of withheld documents (*Corbi v. Marina Assocs.*, Civil No. 08-5875-RBK-JS, 2009 WL 10727983, at *2 (D.N.J. July 14, 2009) (citing *Nishika, Ltd. v. Fuji Photo Film Co, Ltd.*, 181 F.R.D. 465, 467 (D. Neb. 1998) (citations omitted))), here, the Court shall exercise its discretion to undertake same as there are "sufficient facts calling into question a claim of privilege[.]"   *Weiss v. First Unum Life*, Civil Action No. 02-4249 (PGS), 2012 WL 13187625, at *2 (D.N.J. March 15, 2012).   Indeed, the Court cannot on the record before it determine the propriety of RCN's privilege claims.   As a result, the Court shall conduct an *in camera* review of a limited sample of documents.   Plaintiffs are directed to select any 10 documents from the 106 communications on which no attorney is listed, and 20 email/email chains from the 199 email chains or standalone emails that include attorneys, but in which the attorneys never participated in the discussions for the Court's *in camera* review.   Plaintiffs are directed to make their selection by **March 18, 2022**.   RCN is directed to produce the documents to the Court for an *in camera* review by **April 15, 2022**.   The Court shall review the 30 communications and determine what, if any, further action is warranted.

8.  <u>RCN's Interrogatory No. 12</u>

RCN's request that Plaintiffs be compelled to "[i]dentify all persons who participated in Plaintiffs' decision in or around 2009 to remove Digital Rights Management ('DRM') from sound recordings sold through the iTunes Store" as requested in RCN's Interrogatory No. 12 is denied. The Court finds that the information sought, which concerns a decision Plaintiffs made two years prior to the first instance of copyright infringement at issue in this case, is irrelevant.   Despite RCN's arguments to the contrary, the Court finds that the decision made by Plaintiffs in 2009 neither bears on Plaintiffs' request for damages nor their alleged duty to mitigate same.


**IT IS SO ORDERED.**

**IT IS FURTHER ORDERED THAT THE DISCOVERY SCHEDULE SHALL BE ADJUSTED AFTER THE DISCOVERY SET FORTH ABOVE IS PRODUCED.**


        s/ Tonianne J. Bongiovanni
**TONIANNE J. BONGIOVANNI**
**United States Magistrate Judge**

13