# McElroy Deutsch

1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
**T:** 973.993.8100 | **F:** 973.425.0161
**MDMC-LAW.COM**

KATHLEEN N. FENNELLY
Direct Dial: (973) 401-7106
tcurtin@mdmc-law.com

October 20, 2023

**VIA ECF**

The Honorable Tonianne J. Bongiovanni
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, NJ 08608

   Re: *UMG Records, Inc., et al. vs. RCN Telecom Services, LLC, et al.*
      Civil Action No. 3:19-cv-17272-MAS-TJB

Dear Judge Bongiovanni:

  This firm, Jenner & Block LLP, and Stein Mitchell Beato & Missner LLP jointly represent Plaintiffs in the above-referenced action. We write in response to the letter served by Defendants RCN Telecom Services, LLC *et al.* ("RCN") on October 10, 2023 (ECF 253), purportedly seeking "clarification" of the Court's May 26, 2023 Order (ECF 247) (the "Order"). Among other things, the Order required RCN to produce 54 documents reflecting communications with third parties. While RCN claims to be seeking a clarification, its letter is manifestly an improper request for reconsideration as to 15 of those documents. The Court should deny this request and compel RCN to make a supplemental document production within seven days of the Court's order.[1]

## I. Introduction

  A significant component of RCN's discovery strategy in this case has been to refuse to produce hundreds of concededly relevant documents based upon overly broad claims of privilege. That strategy has required significant motion practice and caused years of delay to this case.

---

[1] Apart from withholding the 15 documents addressed in its "clarification" motion, RCN also redacted 14 of the 54 third-party communication documents when it made its production on October 10, 2023. That was improper, as the Court has already held that RCN waived any privilege claim in those documents. On Tuesday, October 17, 2023, Plaintiffs raised this issue with RCN and requested that it supplement its production this week. RCN has not yet provided a substantive response. Plaintiffs reserve all rights to seek relief from the Court if RCN refuses to produce these documents in full.

McElroy, Deutsch, Mulvaney & Carpenter, LLP
COLORADO · CONNECTICUT · DELAWARE · FLORIDA · MASSACHUSETTS · NEW JERSEY · NEW YORK · PENNSYLVANIA · RHODE ISLAND

# McElroy Deutsch

Hon. Tonianne J. Bongiovanni, U.S.M.J.
October 20, 2023
Page 2

RCN's October 10 letter is yet another attempt to avoid producing critical relevant documents and to further delay these proceedings.

As the Court is aware, for over two years, RCN has undertaken a series of efforts to avoid collecting and producing documents responsive to Plaintiffs' document requests. First, RCN excluded key high-ranking employees—including its CEO, Jim Holanda—from its list of email custodians, even though those employees had hundreds of relevant communications in their files. *See* ECF 194 at 5–9. Then, after the Court ordered RCN to collect, search, and produce Mr. Holanda's emails, *see* ECF 205 at 10–11, RCN withheld the vast majority of Mr. Holanda's relevant communications, invoking a series of ever-changing and inconsistent justifications for doing so. *See* ECF 230 at 1–4 (describing RCN's conflicting grounds for withholding documents). Those withholdings included 54 highly relevant documents reflecting communications with third parties. *See* ECF 224; ECF 227. RCN originally argued that those documents could be withheld because they were communications with "third parties who share or shared a common interest with RCN" and that the third parties were "parties that own or previously owned RCN." ECF 226 at 5. Then, RCN backtracked on those representations and contended for the first time in a sur-reply that some of those documents reflected communications with board members of RCN's parent company and others reflected communications with "representatives" or "agents" of Stonepeak Infrastructure Partners ("Stonepeak"), the private equity firm that owns RCN today. *See* ECF 229; *see also* ECF 230 at 1–4.

After several rounds of briefing, a discovery conference, and follow-up briefing, the Court overruled RCN's objections and ordered RCN to produce these third-party communications from Mr. Holanda's file. *See* ECF 247 at 3–7. The Court expressly ordered RCN to produce "the communications exchanged between RCN, Abry Partners, TPG Capital, and/or Stonepeak Infrastructure Partners, as well as the financial firms who worked with those entities, related to the 2016 sale of RCN from Abry Partners to TPG Capital and the 2020 sale from TPG Capital to Stonepeak [I]nfrastructure Partners." *Id.* at 7.

Yet rather than comply with the Court's Order, RCN now asks the Court to reconsider it in the guise of seeking "clarification" about its application to 15 documents. In the process, RCN repeats some arguments it has made before and raises some new arguments that were available to RCN when this dispute was previously litigated but which RCN chose not to raise. *See* ECF 253. RCN's reconsideration request is procedurally improper, lacks merit, and should be summarily denied.

II. **Argument**

**RCN's Motion Improperly Seeks Reconsideration of the Court's Order.**

Although RCN claims to seek "clarification" of the Court's Order, RCN is actually seeking reconsideration. During the extensive briefing addressing RCN's privilege objections, it was

**McElroy Deutsch**

Hon. Tonianne J. Bongiovanni, U.S.M.J.
October 20, 2023
Page 3

exceedingly clear which documents were at issue.[2] Accordingly, as RCN acknowledges, the Order unambiguously compelled RCN to produce the 15 documents RCN identifies in its letter. ECF 253 at 1. Because the Court ordered RCN to produce these documents, RCN's effort to unwind the Court's ruling would require the Court to reconsider the express ruling it has already issued, not to clarify an ambiguity in the Order that was not addressed.

RCN did not style its letter as a motion for reconsideration because RCN knows that it cannot meet the high bar for reconsideration. To be entitled to reconsideration, RCN must show "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [reached its original decision]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). New Jersey courts emphasize that parties seeking reconsideration must set forth "concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge . . . overlooked." *Est. of Harrison v. Trump Plaza Hotel & Casino*, 2015 WL 3754996, at *1 (D.N.J. June 16, 2015) (quoting Local Civil Rule 7.1(i)). Consistent with this precedent, this Court has acknowledged that a "motion for reconsideration is 'an extremely limited procedural vehicle' which is to be granted 'sparingly.'" *County of Essex v. Aetna, Inc.*, 2019 WL 3842761, at *1 (D.N.J. Aug. 15, 2019) (Bongiovanni, J.).

RCN does not even try to satisfy this heightened burden. Indeed, it does not identify ***any*** change in law, new evidence, or manifest injustice that it contends warrants extraordinary relief. Instead, RCN largely repeats arguments it has already raised with the Court, namely that communications between RCN and its current and former parent companies and certain financial advisors are privileged. Indeed, in its letter dated July 6, 2022, RCN argued that communications between it and (a) members of the board of directors of its current parent company and (b) employees at JP Morgan and Morgan Stanley were within the scope of the attorney-client privilege. *See* ECF 229. Plaintiffs responded to these arguments at length. *See* ECF 230. Those arguments were before the Court when it issued its Order, and RCN does not now identify any intervening changes in the law, new evidence, or manifest injustice that warrants reconsideration.

One of the primary objections Plaintiffs raised to RCN's claim of privilege is that RCN never made the evidentiary submission required to support its claim. Instead, RCN's arguments both then and now were based entirely on the self-serving, incompetent, and unsworn allegations of counsel. To make matters worse, when the inaccuracies contained in those arguments were exposed, RCN simply changed its underlying factual characterizations. RCN's most recent letter provides a telling example. In its July 6 letter, RCN claimed that its communications with JP Morgan and Morgan Stanley were privileged because those entities allegedly advised Stonepeak during the relevant time period. *See* ECF 229 at 2–3 & n.4. Now, however, RCN claims that in these very same documents, JP Morgan and Morgan Stanley actually advised RCN. *See* ECF 253 at 2. Obviously, RCN should be precluded from changing the factual basis for its privilege claims. But more importantly, the fact that RCN would even attempt to change its factual story at this

---

[2] *See* ECF 224; ECF 226; ECF 227, ECF 229; ECF 230; ECF 243.

**McElroy Deutsch**

Hon. Tonianne J. Bongiovanni, U.S.M.J.
October 20, 2023
Page 4

stage underscores why a proper evidentiary showing is required, why unsworn factual statements from counsel are legally inadequate, and why RCN's bald assertions should not be trusted in evaluating RCN's claims of privilege.

RCN also makes some new arguments now that it did not raise in its prior briefing.[3] Critically, all of those arguments were available to RCN when these issues were previously briefed. Indeed, because this dispute relates to RCN's decision to withhold its own relevant documents, RCN has always had complete access to all of the information needed to make these arguments. When Plaintiffs challenged RCN's withholding of the overwhelming majority of relevant documents it had identified, RCN also had ample opportunity to consider the grounds on which it wanted to rely to meet its burden to justify those withholdings. It made a strategic decision to raise the arguments it raised and waive the rest. *See Ross v. Comm'r of Soc. Sec.*, 2020 WL 4282746, at *1 (D.N.J. July 27, 2020) (declining to consider argument raised in supplemental brief because it "was not raised in any way in the opening brief"). Now that its arguments have failed, RCN should not get a second bite at the apple merely because it is unhappy with the Court's decision.

Ultimately, RCN's application is no different than one ***this Court*** has previously considered and rejected. In *Benecard Services, Inc. v. Allied World Specialty Insurance*, the plaintiff moved to "clarify" this Court's order compelling the production of certain documents, arguing that even if the documents at issue were not privileged, they may still be protected by the work product doctrine. 2017 WL 3139565, at *1 (D.N.J. July 21, 2017) (Bongiovanni, J.). This Court treated the application as a reconsideration motion and denied it, holding that Local Civil Rule 7.1(i) "does not contemplate a Court looking to matters which were not originally presented." *Id.* This Court further emphasized the limited grounds when reconsideration is warranted, stating that it is appropriate only when "there is a need to correct a clear error or manifest injustice" for matters that were presented to the court. *Id.* As in *Benecard*, RCN's attempt to raise new arguments and repeat old ones does not warrant reconsideration of the Order.

### RCN's Arguments Fail on Their Merits.

Even considering the merits, RCN's application should still be denied. RCN groups the 15 documents at issue into three categories: (1) four documents reflecting communications between RCN and Abry Partners ("Abry") during the time period when Abry owned RCN; (2) two documents reflecting communications between RCN and Stonepeak during the time period when Stonepeak owned RCN; and (3) nine documents reflecting communications between RCN and its banking advisors, JP Morgan and Morgan Stanley. RCN fails to meet its burden to demonstrate that any category can be withheld.

---

[3] In particular, RCN now claims that some documents are protected by the work product doctrine and that some of its communications with Stonepeak are protected by a common-interest privilege unrelated to Stonepeak's purchase of RCN.

**McElroy Deutsch**

Hon. Tonianne J. Bongiovanni, U.S.M.J.
October 20, 2023
Page 5

*First*, RCN fails to demonstrate that Abry and RCN shared any common *legal* interest sufficient to invoke the common-interest privilege. Indeed, in the authorities RCN cites, the courts universally recognized that the common-interest privilege does not cover parent-subsidiary relationships unless the party resisting disclosure demonstrates the existence of a substantially similar legal interest between the two entities. *See In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 372 (3d Cir. 2007). Thus, the party claiming a common-interest privilege has the burden to prove the existence of such an interest, such as by proving a common legal obligation shared by the parties through a contract. *See Polycast Tech. Corp. v. Uniroyal, Inc.*, 125 F.R.D. 47, 49–50 (S.D.N.Y. 1989) (burden satisfied by introducing a key contractual provision that placed joint responsibility on the communicating parties to disclose certain financial data).

The only potential common interest with Abry that RCN identifies in its letter is that the two companies were on the same side of the negotiating table when Abry sold RCN to TPG Capital in 2016. *See* ECF 253 at 2. That is plainly insufficient. RCN does not articulate any legal obligations it shared with Abry, identify any source for any such alleged obligations, or even explain whether or how its legal interests were aligned with Abry's in the negotiations. Thus, there is no basis to find that any common legal interest existed.[4]

In a last-ditch effort to avoid production, RCN also claims—for the ***first time*** since these disputes arose nearly two years ago—that these documents are attorney work product. Even if the Court were to consider this belated assertion, RCN fails to meet its burden to demonstrate that the documents at issue are actually covered by the work product privilege. It is well established that meeting such a burden requires an "evidentiary showing based on competent evidence and cannot be discharged by mere conclusory or *ipse dixit* assertions." *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 (E.D. Pa. 2001). Yet RCN makes no evidentiary showing and offers only conclusory, *ipse dixit* assertions from counsel in support of its claim. RCN's failure to make an evidentiary showing is particularly significant given its demonstrated willingness to change its factual proffers about disputed documents in order to resist producing them.

*Second*, RCN fails to demonstrate that the two documents reflecting communications between RCN and Stonepeak are privileged. As an initial matter, these communications ***do not include any attorneys***, and for that reason alone they are not privileged. *See In re Grand Jury Investigation*, 599 F.2d 1224, 1233 (3d Cir. 1979) (requiring privileged communications be

---

[4] While RCN selectively quotes *10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334 (D. Del. 2020), to make it appear as if that case stands for the proposition that parties on the same side of a negotiating table share a common legal interest, that case stands for nothing of the sort. *See* ECF 253 at 1–2. Rather, the court in that case expressly noted that the party resisting disclosure "***has not contended***, let alone established" that it shared an "identical legal interest" with the relevant third party. 505 F. Supp. 3d at 338 (emphasis added).

**McElroy Deutsch**

Hon. Tonianne J. Bongiovanni, U.S.M.J.
October 20, 2023
Page 6

between "a member of the bar of a court, or his subordinate"). Further, any privilege was waived because RCN does not establish any common legal interest between itself and Stonepeak. It states only that the communications occurred during the time period when Stonepeak owned RCN and that they relate to "legal matters." ECF 253 at 2. That statement offers no information about whether RCN and Stonepeak were aligned in those legal matters, opposed, or a combination of the two depending on the specific issues at play. *See supra*.

*Third*, RCN fails to demonstrate that the nine documents reflecting communications between RCN and JP Morgan and Morgan Stanley are privileged. As noted above, RCN has painted a conflicting picture of who JP Morgan and Morgan Stanley actually advised, and that inconsistency alone warrants denying RCN's request. *See supra* at 3. Yet even putting that issue aside, RCN still fails to demonstrate that it shared any common legal interest with the financial firms advising it in a commercial transaction. As Plaintiffs have already explained, *see* ECF 230 at 7, financial firms have only ***financial*** interests in corporate transactions and therefore do not share any common ***legal*** interests with the parties that retain them. *See, e.g.*, *Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 237 (N.D. Ill. 2000). RCN does not even acknowledge that Plaintiffs have already briefed this issue, let alone offer any response.[5]

**III.   Conclusion**

For all these reasons and those stated in their June 3, 2022 (ECF 224) and July 13, 2022 (ECF 230) letters, Plaintiffs respectfully request that the Court deny RCN's request for relief and compel RCN to produce the documents at issue within seven days of the Court's order.

Respectfully submitted,

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

*s/ Kathleen N. Fennelly*

KATHLEEN N. FENNELLY

cc:  All counsel (via ECF and e-mail)

---

[5] Moreover, these particular documents are also not privileged because they include only nominal attorney involvement. While attorneys were copied on the communications, no attorney ever participated in them. As Plaintiffs have set forth in prior letters, *see* ECF 194 at 10–12; ECF 200 at 7–9; ECF 224 at 7; ECF 227 at 6–7, an email is not privileged if the attorney is a mere recipient of the email and does not actively participate in providing legal advice. *See In re Grand Jury Investigation*, 599 F.2d at 1233.