**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**(609) 989-2040**

CHAMBERS OF
**TONIANNE J. BONGIOVANNI**
UNITED STATES MAGISTRATE JUDGE

U.S. COURTHOUSE
402 E. STATE STREET, RM 6052
TRENTON, NJ 08608

June 20, 2024

**LETTER ORDER**

Re:   **UMG Recordings, Inc., et al. v. RCN Telecom Services, LLC, et al.**
      **Civil Action No. 19-17272 (RK)**

Dear Counsel:

Pending before the Court are the following discovery disputes: (1) Plaintiffs' objection to Defendants' claim of privilege regarding communications contained in 780 documents that either don't include attorneys or only nominally include attorneys as well as an additional 552 documents similarly withheld from Mr. Holanda's file; (2) Plaintiffs' objection to Defendants redacting subscriber information from 19 documents in order to comply with the Cable Communications Privacy Act (the "Cable Act"); (3) Defendants' request that the Court clarify its Letter Order of May 26, 2023 (Docket Entry No. 247), regarding one point that affects 15 documents withheld from Mr. Holanda's file based on the common interest privilege; (4) Plaintiffs' objection to Defendants redacting information from 8 documents that Defendants were ordered by the Court to produce in the Court's May 26, 2023 Letter Order. The Court has fully reviewed the parties' submissions and considers the aforementioned issues on the papers. The Court addresses each issue in turn below.

Before ruling, the Court notes that it has broad discretion over the pending discovery dispute. *See United States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017) (noting that "[a]s we

have often said, matters of docket control and discovery are committed to [the] broad discretion of the district court"); *Halsey v. Pfeiffer*, Civil Action No. 09-1138, 2010 WL 3735702, at *1 (D.N.J. Sept. 17, 2010) (noting that "[d]istrict courts provide magistrate judges with particularly broad discretion in resolving discovery disputes"); *Gerald Chamles Corp. v. Oki Data Americas*, *Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007) (stating that it is "well-settled that Magistrate Judges have broad discretion to manage their docket and to decide discovery issues[.]") Indeed, it is well settled that the appropriate scope of discovery and the management of requests for discovery are left to the sound discretion of the Court. *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982) (finding that conduct of discovery is committed to sound discretion of Court). The Court exercises said discretion in considering the issues raised.

1. Plaintiffs' objection to the original 780 and additional 582 documents being withheld as privileged when the communications at issue do not include attorneys or only nominally include attorneys.

As the parties are aware, the Court previously determined that it would conduct a limited *in camera* review of a sample of 30 of the original 780 documents to determine what, if any further action is warranted with respect to Defendants' claims of privilege with respect to the documents at issue. After conducting the *in camera* review, the Court finds that RCN's claims of privilege are largely well-founded. The majority of documents withheld reflect protected information.

Nevertheless, the Court finds that a small subset of documents withheld should have been disclosed. With respect to RCNPriv 0340, 0341 and 0342, the Court notes that these documents involve the redaction of subscriber information. The Court addresses same in point 2 below. The parties are directed to comply with the Court's decision regarding the redaction of subscriber information as outlined below.

Despite Defendants' description to the contrary, the Court finds that RCNPriv 0651, 1267, 1276, and 1514 are not privileged. Notwithstanding the fact that in-house counsel is included on RCNPriv 1267, 1276, and 1514 in the most recent email in each email chain, the Court finds that no legal advice is conveyed in any of these email chains. As a result, **Defendants are directed to produce same to Plaintiffs by 7/9/2024**. The Court finds that the remaining documents it reviewed have been appropriately withheld.

The Court directs the parties to use the Court's findings regarding the 30 documents reviewed *in camera* and apply same to the remaining documents at issue to either eliminate or, at least significantly narrow, the number of documents in dispute. The parties are directed to confer and submit a status update regarding their efforts by **7/9/2024**. The Court shall thereafter determine how to proceed. If the parties require additional time to meet and confer regarding the documents at issue, they may submit a request for a reasonable extension to tjb_orders@njd.uscourts.gov.

2. Plaintiffs' objection to Defendants redacting subscriber information from 19 documents in order to comply with the Cable Act.

Defendants argue that the Cable Act prohibits them from "disclosing 'personally identifiable information' about a subscriber unless the disclosure is made (1) 'pursuant to a court order authorizing such disclosure' and (2) 'the subscriber is notified of such order' by [Defendants]." (Letter of 3/18/2022 from Edward F. Behm, Jr., Esq., to Hon. Tonianne J. Bongiovanni, U.S.M.J., at 1 (quoting 47 U.S.C. § 551(c)(1), (c)2(B)); Docket Entry No. 208). Defendants argue that since Plaintiffs have not sought the identities of its subscribers in discovery, the Court should permit Defendants to redact the subscriber information rather than require Defendants to "undertake the time-consuming and burdensome exercise of notifying the affected subscribers" as set forth in the requirements of the Cable Act, which would then also require the

3

Court to address any objections raised by the subscribers to having their information released. (*Id*.)

Plaintiffs, however, claim that the Court should not countenance Defendants' delayed reliance on the Cable Act. Moreover, Plaintiffs note that "the Cable Act does not preclude the production of customer information[,] but rather "authorizes the production of information so long as the internet service provider ("ISP") provides notice to the subscribers at issue." (Letter of 3/25/2022 from Thoms R. Curtin, Esq., to Hon. Tonianne J. Bongiovanni, U.S.M.J. at 2; Docket Entry No. 209). Plaintiffs argue that Defendants have failed to provide any case law supporting their argument that they should be permitted to redact information so as to avoid complying with the notice requirements of the Cable Act.

Furthermore, Plaintiffs contend that RCN has "never articulated what types of information it seeks to redact from the documents at issue[.]" (*Id*.) Plaintiffs take issue with Defendants broadly referring to the subscribers' "personal information" without disclosing whether Defendants seek to redact "anonymized account numbers, more sensitive information like social security numbers, or something else entirely." (*Id*.) Under these circumstances, Plaintiffs claim that it is impossible to conclude that the redacted information is even regulated by the Cable Act. In addition, Plaintiffs argue that they "have no basis to evaluate whether RCN's proposed redactions affect Plaintiffs' ability to access relevant information in the documents.' (*Id*.) Plaintiffs also note that the cases cited by Defendants "demonstrate that subscriber information is routinely disclosed in copyright litigation involving ISPs." (*Id*. at 3, n.1).

Plaintiffs argue that permitting Defendants to redact subscriber information contained in the 19 documents at issue "would deprive Plaintiffs of non-privileged information that is relevant to disputed issues in this case." (*Id*. at 3). Further they claim that requiring Defendants to comply

with the Cable Act's notice requirements is proportional to the needs to this case. In this regard, Plaintiffs argue that in other cases Defendants have been ordered to comply with the notice requirements of the Cable Act and Defendants have proffered no explanation regarding "why notifying its subscribers" here "would impose a burden greater than the burden imposed" in the other cases. In addition, Defendants argue that there is no reason to suspect that potential objections by individual subscribers would be burdensome. (*Id*. at 4). In this regard, Plaintiffs note that "a subsequent order in one of the cases RCN cites referenced just six subscriber objections received by the court." (*Id*. (citing *See Warner Bros. Records Inc. v. Charter Commc'ns, Inc.* No. 19-cv-874, ECF 244, Special Master's Order (D. Colo. Sept. 21, 2020)).

Last, Plaintiffs contend that Defendants argument that they should be permitted to redact the 19 documents at issue because Plaintiffs have not sought the identities of their subscribers in discovery is without merit. Plaintiffs claim that this argument ignores the fact that "Plaintiffs propounded multiple requests for production that include customer information within their scope, such as all documents concerning the suspension or termination of customer accounts for violations of RCN's purported repeat infringer termination policy." (*Id*.) Moreover, Plaintiffs argue that Defendants have failed to cite to any legal authority suggesting that specificity on the part of Plaintiffs was required. (*See id*.)

After reviewing the parties' arguments, under the circumstances of this case, the Court shall require Defendants to comply with the Cable Act's notice requirements with respect to the 19 documents at issue to provide the subscribers an opportunity to object to the disclosure of their information. As an initial matter, as previously determined by the Court, the subscriber information contained in the 19 documents is not privileged. Further, as Plaintiffs' note, the Cable Act contains

no directive that ISPs are to redact subscriber information from disclosure; instead, the Cable Act compels ISPs to comply with its notice requirements before disclosing subscriber information. 47 U.S.C. § 551(c)(1), (c)2(B). While Plaintiffs here have not explicitly asked Defendants to identify their subscribers in discovery, the subscriber information is contained in many of the documents requested by Plaintiffs. Additionally, Defendants have not cited any legal authority specifically supporting their request to redact the subscriber information rather than comply with the Cable Act's notice requirements.

Moreover, the Court finds that requiring Defendants to comply with the Cable Act's notice requirements is proportional to the needs of the case and not unduly burdensome. Defendants have failed to establish how notifying the subscribers at issue that their personal identifying information is subject to disclosure and advising them of their right to object would be unduly burdensome and time consuming. Clearly, as evidenced in the parties' correspondence on this issue, Defendants have engaged in this process many times in the past. Furthermore, the Court has no basis on which to conclude that there will be a multitude of objections to the disclosure of the subscribers' personal identifying information. Obviously, the Court will have to address any objection that is made, but that is the responsibility of the Court.

No later than **7/9/2024**, Defendants are directed to notify the relevant subscribers that the Court has directed Defendants to disclose their personal identifying information. The notice sent out by Defendants shall indicate that the subscribers may seek relief from the Court regarding the disclosure of their personal identifying information by filing an objection with 30 days of Defendants conveying notice. In the interim, to the extent Defendants have not already done so,

Defendants are to produce the 19 documents in redacted format with a more specific explanation regarding the substance of material redacted. **This production shall be made by 7/9/2024**.

    3.   Defendants' request for clarification of the Court's Letter Order of May 26, 2023.

Defendants request that the Court clarify its Letter Order of May 26, 2023 with respect to 15 documents that they have and continue to withhold from Mr. Holanda's file based on the common interest privilege. These documents include: (1) four documents that represent communications between only Defendants and ABRY Partners ("ABRY") that took place when ABRY owned Defendants; (2) two documents that represent communications between Defendants and Stonepeak Infrastructure Partners ("Stonepeak") that took place when Stonepeak owned Defendants; and (3) nine documents exchanged between RCN and JP Morgan and/or Morgan Stanley, companies that served as Defendants' banking advisors during Defendants' acquisition negotiations.

Defendants seek clarification of the Court's Letter Order of May 26, 2023 regarding the aforementioned 15 documents, contending that the Court required the production of these and other documents from Mr. Holanda's file, finding that the common interest document did not apply because the communications at issue were "between parties 'negotiating a commercial transaction from the opposite sides of a bargaining table.'" (Letter of 10/10/2023 from Edward F. Behm, Jr., Esq., to Hon. Tonianne J. Bongiovanni, U.S.M.J., at 1 (quoting Letter Order of 5/26/2023 at 5 (citations omitted)); Docket Entry No. 253). Defendants, however, argue that said reasoning doesn't apply to the aforementioned 15 documents because (1) the first category of documents involve communications between only RCN and ABRY, and ABRY, as RCN's owner at the time, "shared an 'identical legal interest' with RCN[,]" noting that "because ABRY and RCN were both

7

negotiating with TPG (the company that acquired RCN from ABRY in 2017) from the same 'side of the table,' they were 'allied in a common legal cause,'" (*Id.* a 1-2 (quoting *10x Genomics, Inc. v. Celsee, Inc.,* 505 F. Supp. 3d 334, at 337-38 (D. Del. 2020)); (2) the second category of documents involve communications between RCN and Stonepeak "without the involvement of any third parties" and "RCN and Stonepeak shared 'identical legal interests' concerning the subject matter" at issue in the communications (*Id.* at 2); and (3) the third category of documents involve documents exchanged between Defendants and JP Morgan and/or Morgan Stanley, Defendants' banking advisors during Defendants' acquisition negotiations, who "were operating from the same 'side of the table'" when the documents were exchanged. (*Id*. a 2-3 (quoting *10x Genomics*, 505 F. Supp. 3d at 338)). Further, Defendants claim that the communications between Defendants and ABRY "contain attorney-client privileged and work product material prepared by outside counsel[,]" and that the communications between Defendants and Stonepeak similarly concern "legal matters." (*Id*. a 2).

In the first instance, the Court finds that there is nothing unclear about the Court's determination as outlined in its Letter Order of May 26, 2023. Indeed, there is nothing obscure or ambiguous that needs clarification. The Court, therefore, treats Defendants request for clarification as what it really is, a request for reconsideration.

While not expressly authorized by the Federal Rules of Civil Procedure, motions for reconsideration are governed by Local Civil Rule 7.1(i). *Weston v. Subaru of Am., Inc.*, Civ. No. 20-5876, 2022 WL 18024222, at *7 (D.N.J. Dec. 31, 2022). It is well established that a motion for reconsideration is to apply in extremely limited circumstances. *Tehan v. Disability Mgmt. Servs., Inc.*, 111 F. Supp. 2d 542, 549 (D.N.J. 2000); *see also A.K. Stamping Co. Inc., v. Instrument Specialties Co. Inc.*, 106 F.Supp.2d 627, 662 (D.N.J. 2000) (internal citations and quotations omitted) ("The extraordinary remedy of reconsideration, pursuant to . . . Local Civil Rule 7.1, is

8

to be granted sparingly."); *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 533 (D.N.J. 1998) ("[A] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple."). Thus, a motion for reconsideration must be denied "where a party simply asks the court to analyze the same facts and cases it had already considered in reaching its original decision." *Tehan,* 111 F. Supp. 2d at 549*; see, e.g., Morris v. Siemens Components, Inc.*, 938 F. Supp. 277, 278 (D.N.J. 1996) ("A party's mere disagreement with a decision of the district court should be raised in the ordinary appellate process and is inappropriate on a motion for reargument.").

In a motion for reconsideration, the movant bears the burden of establishing either: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent a manifest injustice. *Max's Seafood Cafe ex rel. Lou-Ann v. Quinteros*, 176 F.3d 669, 677 (3d. Cir. 1999). To be clearly erroneous, the Court must have a "definite and firm conviction that a mistake has been committed." *Haines v. Liggett Group, Inc.*, 975 F. 2d 81, 92 (3d Cir. 1992). A manifest injustice is "an error in the trial court that is direct, obvious, and observable." *Antonio-Villalba v. Hollingsworth*, Civ. Nos. 12-7779, 12-7836, 2013 WL 5592367, at *2 (D.N.J. Oct. 13, 2013).

Here, Defendants have failed to meet their burden of establishing that reconsideration is appropriate. There has been no intervening change in the controlling law; nor has evidence not previously available become available. For example, while Defendants now argue that the communications between Defendants and ABRY are protected by the work product doctrine in addition to the attorney-client privilege and that JP Morgan and/or Morgan Stanley advised Defendants during Defendants' acquisition negotiations, not Stonepeak, as originally maintained,

9

both of these propositions were or should have been known to Defendants at the time the issue was originally briefed. Further, while Defendants' request for clarification may implicitly suggest that the Court's determination regarding the 15 documents at issue may represent a clear error of law or result in manifest injustice, the Court finds that Defendants have entirely failed to establish same.

In this regard, the Court notes that Defendants' arguments concerning communications between Defendants and (1) ABRY; (2) Stonepeak, and (3) JP Morgan and/or Morgan Stanley were briefed at length prior to the Court issuing its Letter Order of May 26, 2023. The Court considered same before ruling and, nevertheless, determined that Defendants should produce the 15 documents at issue. Further, the Court also notes that while it did rely on the *10x Genomics* court's analysis regarding the inapplicability of the common interest privilege where those involved were on opposite sides of the bargaining table, that proposition did not make up the entire basis of the Court's decision. *See, generally*, Letter Order of 5/26/2023.

Moreover, even looking at the arguments currently raised by Defendants, the Court remains unpersuaded that the common interest privilege applies to the communications at issue. As set forth in *In re Teleglobe Commc'ns Corp.,* 493 F.3d 345, 364 (3d Cir. 2007), *as amended* (Oct. 12, 2007), the common interest privilege "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." To be eligible for protection under the common interest privilege "the communication must be shared with the *attorney* of the member of the community of interest" and "all members of the community must share a common legal interest in the shared communication." *Id*. As such, for the common interest privilege to apply, clients must be "represented by separate counsel[,] the communication at interest must be shared between "the clients' separate attorneys[,]" and "members of the community of interest

must share at least a substantially similar legal interest." *Id*. at 364-65. Importantly, "it is not the case that parents and subsidiaries are in a community of interest as a matter of law." *Id*. at 378. Instead, "even in the parent-subsidiary context a joint representation only arises when common attorneys are affirmatively doing legal work for both entities on a matter of common interest." *Id*. at 379.

Here, Defendants have not met their burden of establishing that the common interest privilege applies to the communications between Defendants and ABRY. Defendants have not established the shared legal interest between ABRY and Defendants. There is no explanation of the purported shared legal interest or how Defendants and ABRY's legal interests aligned. The mere fact that both were on the same side of the table when ABRY sold Defendants to TPG, *i.e.*, the fact relied upon by Defendants in their request for "clarification," is insufficient.[1]

Similarly, Defendants have not met their burden of establishing that the common interest privilege applies to the communications between Defendants and Stonepeak. In this regard, the Court notes that the two communications at issue do not include attorneys. Furthermore, Defendants, again, have failed to establish a shared legal interest between Defendants and Stonepeak. Instead, Defendants point to the fact that Defendants and Stonepeak were on the same side of the table when the communications were made, as Stonepeak owned Defendants at said time, and that the communications concerned "legal matters" on which Stonepeak and Defendants "shared 'identical legal interests' concerning the subject matter[.]" (Letter of 10/10/2023 from Edward F. Behm, Jr. to Hon. Tonianne J. Bongiovanni, U.S.M.J., at 2). The Court finds

---

[1] The Court does not address Defendants' argument that the communications between Defendants and ABRY are also protected by the work product doctrine. This argument was available to Defendants at the time the issue initially arose. Defendants did not make it then and the Court shall not consider it now.

Defendants' conclusory statements regarding Stonepeak and Defendants' purported shared identical legal interests to be insufficient for Defendants to carry its burden.

Likewise, Defendants' arguments concerning the applicability of the common interest privilege to the communications between Defendants and JP Morgan and/or Morgan Stanley are unpersuasive. Regardless of whether JP Morgan and/or Morgan Stanley advised Defendants, as Defendants now argue, or Stonepeak, as Defendants argued when the matter was first considered, Defendants have failed to establish a shared legal interest, as opposed to financial interest, between the companies.

As a result, Defendants are directed to produce the 15 documents from Mr. Holanda's file that they have withheld from production. **This production shall be made by 7/9/2024**.

4. Plaintiffs' objection to Defendants' redaction of 8 documents ordered to be produced by the Court in its Letter Order of May 26, 2023.

Defendants request that the Court clarify its Letter Order of May 26, 2023 with respect to 8 documents ordered to be produced by the Court's in its Letter Order of May 26, 2023. Defendants have produced these documents in redacted form and seek clarification of the Court's finding regarding the inapplicability of the common interest privilege to these communications. As with its previous request for clarification regarding the 15 documents withheld from Mr. Holanda's files, the Court finds that the present request for clarification is actually a request for reconsideration. Further, the Court finds reconsideration to be unwarranted here.

Defendants argue that "[t]he eight documents at issue . . . do not fall within the scope of the Court's order because these emails were all exchanged between parties that were either current owners, board members, or managing RCN at the time of the communication." (Letter of 11/14/2023 from Edward F. Behm, Jr. to Hon. Tonianne J. Bongiovanni, U.S.M.J., at 2).

Defendants, however, fail to establish that the Court overlooked this fact when it entered its Letter Order of May 26, 2023, or that Defendants ever argued that these documents should be protected because they only involved entities on the same side of the negotiating table. Under these circumstances, reconsideration is not warranted. Defendants are directed to produce unredacted versions of the 8 documents. **This production shall be made by 7/9/2024**.

    **IT IS SO ORDERED.**

                                                                          s/ Tonianne J. Bongiovanni
                                                                         **TONIANNE J. BONGIOVANNI**
                                                                         **United States Magistrate Judge**