# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

UMG RECORDINGS, INC., *et al.*,

        Plaintiffs,

    v.

RCN TELECOM SERVICES, LLC, *et al.*,

        Defendants.

Civil Action No. 19-17272
(RK) (TJB)

**Motion Date: August 5, 2024**

**ORAL ARGUMENT
REQUESTED**

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' APPEAL FROM AND OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER OF JUNE 21, 2024

Thomas R. Curtin
Kathleen N. Fennelly
McELROY, DEUTSCH, MULVANEY
 & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
(973) 993-8100

Andrew H. Bart (*pro hac vice*)
Rémi Jaffré (*pro hac vice* application forthcoming)
Jacquellena T. Carrero (*pro hac vice* application forthcoming)
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................1

BACKGROUND .........................................................................................3

I.      The Significance of the Abry Documents. .....................................3

II.     RCN Withheld Thousands of Documents, Resulting in a Yearslong
        Discovery Dispute. .........................................................................7

        A.      The Magistrate Judge Ordered RCN to Produce Documents
                from Key Custodians, including Mr. Holanda. ....................8

        B.      The Magistrate Judge Ordered RCN to Produce
                Communications between RCN and Abry from Mr. Holanda's
                Files. .................................................................................9

        C.      The Magistrate Judge Denied RCN's Request for
                Reconsideration of the May 2023 Order. ...........................12

LEGAL STANDARD.................................................................................13

ARGUMENT ...........................................................................................15

I.      THE MAGISTRATE JUDGE PROPERLY CHARACTERIZED
        RCN'S OCTOBER 2023 LETTER AS A REQUEST FOR
        RECONSIDERATION. ..................................................................16

II.     RCN FAILED TO TIMELY RAISE ITS WORK PRODUCT AND
        COMMON INTEREST ARGUMENTS. .........................................18

        A.      The Magistrate Judge Properly Declined to Consider RCN's
                Untimely Work Product Claim.........................................19

        B.      RCN Failed to Timely Argue a Common Legal Interest Based
                on a Parent-Subsidiary Relationship. .................................22

III.    RCN FAILED TO MEET ITS BURDEN TO SUBSTANTIATE ITS
        WORK PRODUCT AND COMMON INTEREST CLAIMS. .....................23

        A.      RCN Failed to Demonstrate That the Abry Documents Are
                Protected Work Product........................................................24

B.    The Magistrate Judge Correctly Determined that the Abry Documents Cannot Be Withheld Pursuant to the Common-Interest Doctrine. ...................................................................26

CONCLUSION ......................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Aruanno v. Marcyves*,
    2016 WL 5958163 (D.N.J. Oct. 13, 2016)........................................................14

*Benecard Services, Inc. v. Allied World Specialty Insurance*,
    2017 WL 3139565 (D.N.J. July 21, 2017)................................................. 16, 19

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958 (E.D.
    Va. 2016), *aff'd in part, rev'd in part on other grounds*, 881 F.3d 293 (4th
    Cir. 2018).......................................................................................................5

*Conoco Inc. v. U.S. Dep't of Just.*,
    687 F.2d 724 (3d Cir. 1982).............................................................................23

*Cooper Hosp./Univ. Med. Ctr. v. Sullivan (Cooper I)*,
    183 F.R.D. 119 (D.N.J. 1998) ............................................................. 13, 25, 28

*Cooper Hosp./Univ. Med. Ctr. v. Sullivan (Cooper II)*,
    183 F.R.D. 135 (D.N.J. 1998) ............................................................. 21, 23, 25

*County of Essex v. Aetna, Inc.*,
    2019 WL 3842761 (D.N.J. Aug. 15, 2019)........................................................14

*Crown Fin. Corp. v. McDonald's Corp.*,
    2013 WL 12155435 (D.N.J. Nov. 25, 2013)......................................... 1, 14, 24

*D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*,
    2011 WL 1871110 (D.N.J. May 13, 2011) ......................................................19

*Farmers & Merchants Nat. Bank v. San Clemente Fin. Grp. Sec., Inc.*,
    174 F.R.D. 572 (D.N.J. 1997) .........................................................................13

*Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*,
    680 F. Supp. 159 (D.N.J. 1988) ......................................................................18

*In re Grand Jury Subpoena*,
    745 F.3d 681 (3d Cir. 2014)...............................................................................23

*In re Grand Jury*,
    705 F.3d 133 (3d Cir. 2012)...............................................................................23

*In re Teleglobe Commc'ns Corp.*,
    493 F.3d 345 (3d Cir. 2007)..................................................................... 26, 27

*Garcia v. Corr. Med. Serv., Inc.*,
    2018 WL 1317867 (D.N.J. Mar. 14, 2018)................................................ 16, 18

*Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*,
    202 F.R.D. 418 (E.D. Pa. 2001).........................................................................24

*Guinta v. Accenture, LLP*,
    2009 WL 301920 (D.N.J. Jan. 23, 2009).........................................................18

*Hoffmann-La Roche, Inc. v. Roxane Lab'ys, Inc.*,
    2011 WL 2446600 (D.N.J. June 16, 2011).......................................................28

*Joshua-Stone v. Mee*, 2008 WL 2986226, at *1 (D.N.J. July 31, 2008)................14

*Lithuanian Com. Corp. v. Sara Lee Hosiery*,
    177 F.R.D. 205 (D.N.J. 1997).............................................................................14

*Max's Seafood Café v. Quinteros*,
    176 F.3d 669 (3d Cir. 1999)...............................................................................14

*McLane Foodservice, Inc. v. Ready Pac Produce, Inc.*,
    2012 WL 1981559 (D.N.J. June 1, 2012)............................................ 26, 27, 28

*North v. Portfolio Recovery Assocs., LLC*,
    2024 WL 1694755 (D.N.J. Apr. 19, 2024 2024)............................................20

*TD Bank, N.A. v. Hill*,
    2014 WL 12617548 (D.N.J. Aug. 20, 2014).....................................................27

*TransWeb, LLC v. 3M Innovative Properties Co.*,
  2012 WL 2878076 (D.N.J. Apr. 12, 2012), *report and recommendation
  adopted as modified*, 2012 WL 2878075 (D.N.J. July 13, 2012). ...................18

*10x Genomics, Inc. v. Celsee, Inc.*,
  505 F. Supp. 3d 334 (D. Del. 2020) ................................................................26

**Statutes**

17 U.S.C. § 512 ......................................................................................................5,6

**Other Authorities**

District of New Jersey Local Civil Rule 72.1 .................................................... 13, 17

District of New Jersey Local Civil Rule 7.1 ...................................................... 18, 19

Joe Mullin, *Rightscorp wins landmark ruling, Cox hit with $25M verdict in
  copyright case*, ARS TECHNICA (Dec. 17, 2015),
  https://arstechnica.com/tech-policy/2015/12/rightscorp-wins-landmark-
  ruling-cox-hit-with-25m-verdict-in-copyright-case..........................................7

Plaintiffs UMG Recordings, Inc. et al. ("Plaintiffs") respectfully submit this memorandum of law in opposition to the appeal by Defendants RCN Telecom Services, LLC et al. ("RCN") of the non-dispositive June 21, 2024 Order of Magistrate Judge Tonianne J. Bongiovanni (the "June 2024 Order").

## PRELIMINARY STATEMENT

RCN's appeal arises from a series of interrelated discovery disputes which stem from RCN's improper attempts to withhold almost all of its communications about the critical fact issues in this case. While RCN has put forth various and often contradictory excuses to support its transparent attempt to secrete some of the most relevant and damning evidence against it, there is one overriding principle that compels production of the documents at issue here—RCN cannot satisfy its burden to prove that documents are protected by the common interest privilege or the work product doctrine through an unsworn attorney statement lacking "any affidavits or other documents to bolster its assertion." *Crown Fin. Corp. v. McDonald's Corp.*, 2013 WL 12155435, at *2 (D.N.J. Nov. 25, 2013). In this case, despite three years of serial motion practice, RCN has never submitted a single piece of evidence to support its privilege assertions. Rather, RCN has attempted to justify its withholding of concededly relevant documents by relying on unsworn and unsupported statements from its counsel. This has left RCN free to change its account of key

factual issues when those statements are exposed as outright falsehoods, as they repeatedly have been.

The two documents at issue in this appeal are a November 2016 email and its attachment that RCN's CEO Jim Holanda sent to Abry Partners ("Abry"), a third-party private equity firm that owned RCN, around the time Abry was preparing to sell RCN to another private equity firm (the "Abry Documents"). *See* Excerpt from RCN's Privilege Log at RCNPriv 3044–45, ECF 224-3. These documents are part of a set of hundreds of communications from Mr. Holanda's files that RCN has resisted producing since 2021.

RCN has offered constantly evolving bases for withholding Mr. Holanda's documents, none of which have been supported by any evidence. Originally, RCN argued that there were no responsive documents at all in Mr. Holanda's email file. When that was revealed to be untrue, RCN conceded that Mr. Holanda did possess responsive documents, but asserted that they were privileged attorney-client communications. When that too was debunked because Mr. Holanda's underlying communications were with third parties, RCN shifted course again and contended—again with no factual foundation—that the documents were instead protected under the work product doctrine. Given this background, the Magistrate Judge correctly compelled production of the documents.

It is important to note at the outset that RCN did not advance the central substantive arguments it pursues in this appeal—that the Abry Documents are protected work product and that they can be withheld under the common interest doctrine *because they are communications between a parent and its subsidiary*—until *after* the Magistrate Judge had already ordered RCN to produce the documents at issue. Accordingly, the Magistrate Judge properly treated RCN's belated effort to raise its new arguments as a motion for reconsideration and appropriately declined to consider those new arguments.

Further, in this appeal, RCN asks the Court to consider new allegations that were *never* advanced to the Magistrate Judge and—like all the allegations on which RCN has relied to support its privilege assertions—are unsupported by any evidence. Simply put, the demonstrably false, inconsistent, and wholly unsupported assertions of RCN's counsel are inadequate to satisfy RCN's burden.

The Court should affirm the Magistrate Judge's well-reasoned order.

## BACKGROUND

### I. The Significance of the Abry Documents.

This case arises out of RCN's decision to continue to provide internet services to subscribers it knew were using those services to repeatedly infringe Plaintiffs' copyrighted works. Plaintiffs are recorded music companies contained within the three major music groups—Universal Music Group, Sony Music Entertainment, and

Warner Music Group.  Am. Compl. ¶ 2, ECF 9.  Collectively, Plaintiffs own or control the vast majority of legitimate commercial sound recordings in the United States.  *See id.*

Plaintiffs initiated this lawsuit against RCN, an internet service provider ("ISP"), to seek redress for RCN's actions that contributed to the widespread infringement of Plaintiffs' sound recordings by RCN's subscribers.  *See generally id.*  Those subscribers used RCN's high-speed internet services to access an anonymous peer-to-peer file sharing network called BitTorrent, where, without authorization, they distributed and made unauthorized copies of thousands of Plaintiffs' copyrighted sound recordings available for free copying by the public.  *Id.* ¶¶ 55–60.

These infringements were discovered and documented by third party Rightscorp Inc. ("Rightscorp"), which developed technology to monitor BitTorrent and began to send notices of copyright infringement to RCN in 2011.  *Id.*  Because BitTorrent only identifies users by their IP address, the ISP operating the network hosting a given user (here, RCN)—and *only* that ISP—possesses the records necessary to match IP addresses to specific internet users.  *Id.* ¶¶ 65–75.  Thus, ISPs like RCN are the sole parties that can police infringement that occurs utilizing BitTorrent.

To incentivize ISPs to play an active role in curbing infringements, the Digital Millennium Copyright Act ("DMCA") provides them with an affirmative defense to claims that they are secondarily liable for damages for copyright infringement committed on their networks.  However, that defense, often called a "safe harbor", is expressly conditioned on, among other things, an ISP adopting and reasonably implementing "a policy that provides for the termination in appropriate circumstances of subscribers . . . who are repeat infringers."   17 U.S.C. § 512(i)(1)(A).  RCN has asserted the safe harbor defense in this action.  *See* RCN Answer at 15–16, ECF 161.  Thus, in addition to the elements of Plaintiffs' secondary infringement claims, one of the key factual issues in this litigation is whether RCN qualifies for the safe harbor defense.

At the time Rightscorp began sending RCN infringement notices in 2011, RCN concededly did not have a repeat infringer termination policy, meaning that it allowed users to infringe copyrights using the RCN network with no consequences. *Id.* ¶¶ 65–75.  But in December 2015, RCN's risk calculus apparently changed.  That month, a different copyright owner, BMG Rights Management ("BMG"), won a jury trial against a different ISP, Cox Communications ("Cox"), on secondary copyright claims that are substantively the same as those in this case and were also based on Rightscorp's notices.  *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199

F. Supp. 3d 958 (E.D. Va. 2016), *aff'd in part, rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018).

A few months after the verdict, BMG sent a letter to RCN requesting a meeting to discuss the widespread infringement on RCN's network. *See* Pls.' Letter dated Feb. 8, 2022, ECF 200 (describing BMG's letter). Aware that it faced substantial liability, RCN responded in June 2016 by (1) belatedly implementing the first iteration of its so-called "DMCA policy" to attempt to avoid future liability and (2) suing BMG seeking a declaration of noninfringement. *See id.*; *see generally RCN Telecom Servs., LLC v. BMG Rights Mgmt. (US) LLC*, No. 16-cv-4417 (S.D.N.Y.).

At the same time, Abry—the private equity firm that then owned RCN—was in the process of selling RCN to another private equity firm called TPG Capital. *Id.* Given the widespread coverage of the *BMG v. Cox* verdict in the ISP community, RCN's exposure to claims based on the theory successfully prosecuted against Cox was a major due diligence consideration for all parties. *Id.* Indeed, the sale of RCN was publicly announced in August 2016, just a month after RCN filed its lawsuit against BMG.

Thus, the Abry Documents—in which RCN's CEO informed Abry during the diligence process about how RCN perceived and was responding to its manifest liability—implicate two key issues in this case: (1) RCN's knowledge of its

subscribers' infringing conduct, and (2) RCN's development and implementation of its so-called "DMCA Policy" in June 2016.  Indeed, RCN's belated development and implementation of its "DMCA Policy" at this critical juncture—after receiving millions of infringement notices for five years prior—are critical facts bearing on both RCN's knowledge and the willfulness of its conduct as well as whether RCN is entitled to safe harbor protection pursuant to 17 U.S.C. § 512.

## II.  RCN Withheld Thousands of Documents, Resulting in a Yearslong Discovery Dispute.

RCN and the entire ISP industry knew that the verdict in *BMG v. Cox* was heavily influenced by incriminating internal emails obtained during discovery, in which Cox employees expressed disdain for the DMCA and their obligation to police copyright infringement. *See, e.g.*, Joe Mullin, *Rightscorp wins landmark ruling, Cox hit with $25M verdict in copyright case*, ARS TECHNICA (Dec. 17, 2015), https://arstechnica.com/tech-policy/2015/12/rightscorp-wins-landmark-ruling-cox-hit-with-25m-verdict-in-copyright-case/ (describing internal Cox e-mails). Accordingly, RCN made the affirmative decision to withhold its relevant communications by any means necessary.  Indeed, prior to motion practice, RCN's document production included a mere 500 emails and attachments.  Feb. 16, 2023 Hr'g Tr. ("Feb. 2023 Hr'g Tr.") at 8:16–21, ECF 244.  In sharp contrast, RCN withheld more than 3,000 documents on privilege grounds.  *Id.*  RCN's repeated attempts to frustrate document discovery have caused severe litigation delays.

Shockingly, even though this lawsuit was filed nearly five years ago, only one deposition (concerning RCN's preservation of relevant documents) has yet occurred.[1]

### A. The Magistrate Judge Ordered RCN to Produce Documents from Key Custodians, Including Mr. Holanda.

The instant discovery dispute dates back to 2021, when RCN excluded key high-ranking employees—including its CEO, Jim Holanda—from its list of email custodians. RCN's counsel attempted to justify this omission by representing to the Court that these officers had no relevant communications. *See* Pls.' Letter dated Dec. 30, 2021 at 5–9, ECF 194. The transparent falsity of RCN's position was exposed when, in response to Plaintiffs' subpoena, Abry disclosed the existence of an email Mr. Holanda sent to Abry in 2016 regarding the *RCN v. BMG* litigation— the very same Abry Documents at issue in this appeal. *See id.* at 7. The existence of the Abry Documents confirmed that RCN was aware of its significant exposure to litigation as result of the *BMG v. Cox* verdict and, accordingly, sought to address that exposure by suing BMG and belatedly instituting a DMCA policy. As a direct consequence of this awareness, RCN's DMCA policy and copyright infringement liability were major topics of discussion among RCN's senior management and Abry as Abry negotiated its sale of RCN to TPG. *Id.*

---

[1] On May 12, 2022, the Court stayed fact depositions until the Court addressed the pending discovery disputes. *See* Order dated May 12, 2022.

In December 2021, Plaintiffs challenged RCN's refusal to search the email files of its executives.  *See generally id.*  In response, RCN represented to the Court that Mr. Holanda was "not involved in the DMCA process at RCN" and therefore was not an appropriate custodian, *see* RCN Letter dated Jan. 18, 2022 at 5, ECF 197, a representation that was exposed as untrue after Abry disclosed the existence of the Abry Documents.  *See supra* at 8.  In a March 2022 Order, the Magistrate Judge ordered RCN to collect, search, and produce responsive and non-privileged documents from Mr. Holanda's files.[2]  *See* Letter Order dated Mar. 8, 2022, ECF 205 ("March 2022 Order").  That search revealed close to 600 non-duplicative *responsive* documents in Mr. Holanda's files.  *See* Pls.' Letter dated July 13, 2022 at 1, ECF 230.

### B.   The Magistrate Judge Ordered RCN to Produce Communications between RCN and Abry from Mr. Holanda's Files.

Notwithstanding the Magistrate Judge's order to produce Mr. Holanda's relevant documents, RCN produced only 19 of those documents[3] and withheld the

---

[2] Plaintiffs separately challenged RCN's withholding of 780 other documents—not from Mr. Holanda's files—on the basis of attorney-client privilege, because they did not include any attorneys or did so only nominally.  *See generally* Pls.' Letter dated Dec. 30, 2021, ECF 194.  In her March 2022 Order, the Magistrate Judge ordered the parties to submit a sample of 30 of those documents for *in camera* review.  Mar. 2022 Order.

[3] Six of these 19 documents were redacted for purported privilege, and five of them were merely images of company logos that appeared in emails.  Pls.' Letter dated June 3, 2022, ECF 224 at 3.

remaining 575 on purported privilege grounds.  Pls.' Letter dated June 3, 2022 at 3, ECF 224.  Thus, in June 2022, Plaintiffs were once again forced to seek court intervention.  *See id.*  Plaintiffs' letter-motion sought, among other documents, 54 relevant documents exchanged with third parties.  Some of these documents were communications with the three private equity firms that have owned RCN since 2016—Abry, TPG, and Stonepeak Infrastructure Partners ("Stonepeak"), which purchased RCN from TPG in 2020—including the two Abry Documents at issue here.  *See id*.  Others were communications between RCN and multiple financial firms that worked on the two sales.

In response, RCN argued that those communications were not discoverable because they were with "third parties who share or shared a common interest with RCN" because those third parties were "parties that own or previously owned RCN." RCN Letter dated June 17, 2022 at 5, ECF 226.  After Plaintiffs submitted their reply brief, RCN submitted a sur-reply in which it backtracked from its prior assertions of common interest and argued instead, without any evidentiary support, that some of the documents at issue reflected communications with board members of RCN's parent company and that others reflected communications with "representatives" or "agents" of Stonepeak even if they were not employed by Stonepeak.  *See* RCN Letter dated July 6, 2022, ECF 229; *see also* Pls.' Letter dated July 13, 2022 at 1–4, ECF 230.  In particular, RCN contended that JPMorgan and Morgan Stanley had

advised Stonepeak in its acquisition of RCN and were two such "agents."   RCN
Letter dated July 6, 2022, ECF 229.

RCN's description of these documents, including the Abry Documents, as
being communications with Stonepeak or its representatives, *id.* at 2 n.4 (citing
RCNPriv 3044–45), was demonstrably false because, as explained above, the Abry
Documents are from 2016, when Abry was in the process of selling RCN to TPG.
Stonepeak had no involvement in that transaction at all.

After several rounds of briefing, oral argument, and follow-up briefing, in
May 2023, the Court rejected RCN's common interest arguments and ordered RCN
to produce these third-party communications from Mr. Holanda's files.[4]  *See* Letter
Order Dated May 2023 (the "May 2023 Order"), ECF 247 at 3–7.   The Court
expressly ordered RCN to produce all of the "***communications exchanged between
RCN, Abry Partners***, TPG Capital, and/or Stonepeak Infrastructure Partners, as well
as the financial firms who worked with those entities, related to the 2016 sale of
RCN from Abry Partners to TPG Capital and the 2020 sale from TPG Capital to
Stonepeak [I]nfrastructure Partners."   *Id.* at 7 (emphasis added).   RCN never
appealed that Order.

---

[4] The May 2023 Order resolved the dispute regarding third-party communications
but stated that the Magistrate Judge would resolve the parties' other pending disputes
under separate cover.  May 2023 Order at 1.

### C.   The Magistrate Judge Denied RCN's Request for Reconsideration of the May 2023 Order.

Despite the fact that its arguments for withholding Mr. Holanda's relevant documents had once again been rejected, RCN still did not produce those documents. Instead, it filed a letter in October 2023 purporting to request "an order clarifying that RCN is not required to produce" certain documents covered by the May 2023 Order. *See* RCN Letter dated Oct. 10, 2023 ("RCN Reconsideration Br.") at 3, ECF 253. Shockingly, the arguments supporting that request directly contradicted the unsworn factual statements that RCN's counsel had previously made to the Court. Most egregiously, while RCN previously claimed that JPMorgan and Morgan Stanley advised Stonepeak during its 2020 acquisition of RCN, RCN now claimed that JPMorgan and Morgan Stanley advised RCN itself. *See id.* at 2–3. RCN offered no explanation for this glaring about-face in its factual representations to the Court.[5] RCN also argued, *for the first time* nearly two years into this discovery dispute, again without factual support, that certain documents, including the Abry Documents at issue here, were protected under the work product doctrine. *See id.* at 2.

In June 2024, the Magistrate Judge issued the Order from which RCN now appeals. Letter Order Dated June 21, 2024 (the "June 2024 Order"), ECF 263. As

---

[5] RCN also re-classified the Abry Documents as communications solely between RCN and Abry—not with Stonepeak as it had previously erroneously claimed. *See* RCN Reconsideration Br. at 2–3.

relevant here, the Magistrate Judge denied RCN's motion as to its communications with third parties (including the Abry Documents), holding that RCN (1) had waived its work product argument by not raising it in earlier submissions and (2) had failed to meet its burden to show that any common interest privilege applied.  June 2024 Order at 11 n.1.  The Magistrate Judge ordered RCN to produce the remaining third-party communications by July 9, 2024.[6]

RCN then filed this appeal.  However, it blatantly violated the July 2024 Order by neither producing the Abry Documents as that Order required nor seeking a stay of the Order.  That conduct directly contravened Local Civil Rule 72.1(c)(1)(B), which provides that the filing of an appeal does *not* "operate to stay the order pending appeal."  Local Civ. R. 72.1(c)(1)(B).

## **LEGAL STANDARD**

Matters within a magistrate judge's discretion, such as discovery rulings, are given "particularly broad deference."  *Farmers & Merchants Nat. Bank v. San Clemente Fin. Grp. Sec., Inc.*, 174 F.R.D. 572, 585 (D.N.J. 1997).  "[A] district court

---

[6] The June 2024 Order also contained the Magistrate Judge's findings on the 30 documents she reviewed *in camera*.  June 2024 Order at 2–3.  In an attempt to deflect this Court's attention from the issue presented, RCN focuses on the fact that, of that small, non-representative sample, the Magistrate Judge found that only 4 documents needed to be produced.  RCN Br. at 10 n.3.  This conclusion has no relevance to the issue before this Court.  Indeed, the parties have agreed to toll Plaintiffs' time to appeal that decision pending the completion of the parties' meet-and-confers on the remaining 1,302 purportedly privileged documents.  *See* Order and Stipulation, ECF 265.

may reverse a magistrate judge's determination of a non-dispositive issue only if it is 'clearly erroneous or contrary to law.'" *Cooper Hosp./Univ. Med. Ctr. v. Sullivan (Cooper I)*, 183 F.R.D. 119, 127 (D.N.J. 1998). In reviewing a magistrate judge's factual findings, a district court "may not consider any evidence which was not presented to the magistrate judge." *Joshua-Stone v. Mee*, 2008 WL 2986226, at *1 (D.N.J. July 31, 2008) (citing *Haines v. Liggett Group. Inc.*, 975 F.2d 81, 92 (3d Cir. 1992)). The Court reviews *de novo* a magistrate judge's legal conclusions. *Lithuanian Com. Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 213 (D.N.J. 1997).

"Reconsideration is 'an extremely limited procedural vehicle' which is to be granted 'sparingly.'" *County of Essex v. Aetna, Inc.*, 2019 WL 3842761, at *1 (D.N.J. Aug. 15, 2019). It is only warranted if the movant can demonstrate "(1) an intervening change in the controlling law; (2) *the availability of new evidence that was not available when the court [reached its original decision];* or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (emphasis added). A district judge's review of a magistrate judge's denial of a reconsideration motion is limited to determining whether the magistrate judge correctly applied this standard. *See Aruanno v. Marcyves*, 2016 WL 5958163, at *1 (D.N.J. Oct. 13, 2016).

14

## **ARGUMENT**

RCN's appeal should be summarily denied because RCN has plainly failed to meet its burden to substantiate its privilege assertions.  It is black-letter law that an unsworn attorney statement lacking "any affidavits or other documents to bolster its assertion" is insufficient to meet a party's burden to support a privilege claim.  *See Crown Fin. Corp.*, 2013 WL 12155435, at *2.  Moreover, any evidence submitted must provide sufficient details showing why the specific documents at issue satisfy the privilege requirements.  *See TransWeb, LLC v. 3M Innovative Props. Co.*, 2012 WL 2878076, at *9 (D.N.J. Apr. 12, 2012) (finding conclusory declaration insufficient to satisfy burden to prove work product protection), *report and recommendation adopted as modified*, 2012 WL 2878075 (D.N.J. July 13, 2012).

Throughout this three-year dispute, RCN has brazenly disregarded these rules and sought to withhold thousands of documents based only on the *ipse dixit* assertions of its attorneys.  RCN has simply said whatever was expedient to justify its privilege arguments, then quickly retreated and reformulated its assertions whenever its prior assertions were rejected or exposed as false.  That alone warrants denying RCN's appeal.

Moreover, even if this Court were to entertain RCN's latest round of unsupported assertions, they should be rejected.  As an initial matter, the Magistrate Judge correctly interpreted RCN's effort to undo the May 2023 Order as an

application for reconsideration.  Further, the Magistrate Judge correctly denied that application because RCN failed to assert either its work product or its current common interest arguments for withholding the Abry Documents prior to its reconsideration motion.  Finally, RCN has failed to demonstrate that either basis for withholding the Abry Documents is applicable.

## I.   THE MAGISTRATE JUDGE PROPERLY CHARACTERIZED RCN'S OCTOBER 2023 LETTER AS A REQUEST FOR RECONSIDERATION.

Although RCN self-servingly styled its October 2023 letter as a motion to "clarify" the Magistrate Judge's May 2023 Order, *see* RCN Reconsideration Br., that Order required no clarification.  It expressly compelled RCN to produce (as relevant here) "the communications exchanged between RCN [and] Abry Partners . . . related to the 2016 sale of RCN from Abry Partners to TPG Capital . . . ."  May 2023 Order at 7.  That clear directive indisputably included the Abry Documents.  Indeed, RCN sought further relief from the Magistrate Judge precisely because the order compelled it to produce those documents.

A clarification motion seeks to "explain or clarify something ambiguous or vague, not to alter or amend."  *See Garcia v. Corr. Med. Serv., Inc.*, 2018 WL 1317867, at *1 (D.N.J. Mar. 14, 2018) (internal citation omitted).  RCN's letter, by contrast, was a quintessential reconsideration motion seeking relief from the Magistrate Judge's unambiguous prior decision.  *See Benecard Servs., Inc. v. Allied*

*World Specialty Ins. Co.*, 2017 WL 3139565, at \*2 (D.N.J. July 21, 2017) (treating clarification motion as reconsideration motion when plaintiff sought relief from order it "simply disagree[d] with").

RCN's suggestion that the Court's May 2023 Order was vague or ambiguous because it did not identify the third-party communications that RCN was ordered to produce is false. *See* RCN Mem. of L. in Supp. RCN's Appeal from Magistrate Judge's Order ("RCN Br.") at 4 n.1, ECF 266-1. In briefing the issue, the parties clearly identified the disputed documents both by reference to their privilege log number identifiers and by referring to them in their respective categories. *See* Pls.' Letter dated June 3, 2022 at 6 n.6, ECF 224 (identifying third-party communications, including the Abry Documents, by privilege log number); RCN Letter dated June 27, 2022, ECF 226 (RCN citing Plaintiffs' letter and describing the identified third-party communications as the "Category 3 documents"); RCN Letter dated July 6, 2022, ECF 229 (RCN sur-reply identifying third-party communications by privilege log number, including the Abry Documents). Further, the Magistrate Judge was well aware of the Abry Documents in particular, given their prominent role as the catalyst for ordering discovery of Mr. Holanda's documents in the first place. *See supra* at 7–8. It is beyond any good faith dispute that all parties and the Court understood that the Abry Documents were part of the disputed third-party communications RCN was ordered to produce in May 2023.

Moreover, if, in fact, RCN had sought clarification instead of reconsideration, this appeal would be manifestly untimely and must be denied on that basis alone. In this District, parties have 14 days to appeal a magistrate judge's ruling, but that deadline is reset if a motion for reconsideration is filed. Local Civ. R. 72.1(c)(1)(A). Other motions, including clarification motions, do not reset the time to appeal. *See id.* Here, RCN's appeal challenges the substance of the May 2023 Order compelling it to produce the Abry Documents. *See* RCN Reconsideration Br. If RCN's motion was anything other than a motion for reconsideration, then RCN's time to appeal the May 2023 Order has long since expired and RCN must comply with that order and produce the Abry Documents immediately.

## II.   RCN FAILED TO TIMELY RAISE ITS WORK PRODUCT AND COMMON INTEREST ARGUMENTS.

It is well established that arguments not raised in an underlying motion "cannot form a proper basis for reconsideration" of that motion. *See Guinta v. Accenture, LLP*, 2009 WL 301920, at *6 (D.N.J. Jan. 23, 2009); *Garcia v. Corr. Med. Serv., Inc.*, 2018 WL 1317867, at *2 (D.N.J. Mar. 14, 2018) (instructing that reconsideration "is not an opportunity to raise new matters or arguments"). Local Civil Rule 7.1 "does not . . . contemplate a Court looking to matters which were not originally presented." *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1988).

Applying that rule, the Magistrate Judge correctly declined to consider RCN's arguments made for the first time in its motion for reconsideration.

**A.    The Magistrate Judge Properly Declined to Consider RCN's Untimely Work Product Claim.**

In responding to Plaintiffs' motion challenging RCN's withholding of Mr. Holanda's communications with third parties, RCN never argued that those documents were protected by the work product doctrine.  Rather, RCN made a strategic decision to justify its withholding of plainly relevant documents solely on a broad—and incorrect—conception of the common interest privilege. [7] Specifically, RCN chose to advance only the following arguments: first, that the documents at issue were communications with "third parties who share or shared a common interest with RCN" and that the third parties were "parties that own or previously owned RCN"; and later (in sur-reply) that they were communications with board members of RCN's parent company. *See supra* at 10–11.

Given RCN's failure to argue that any of the underlying documents were work product, the Magistrate Judge appropriately refused to consider that argument after

---

[7] The common interest doctrine is an extension of the attorney-client privilege. *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 2011 WL 1871110, at *4 (D.N.J. May 13, 2011).  Thus, while asserting the common interest doctrine necessarily implies an assertion that the documents at issue are protected by the attorney-client privilege, it says nothing about whether the party claims they are protected work product.  Indeed, as RCN now acknowledges, the work product doctrine is governed by *different* rules concerning disclosures to third parties.

ruling on the dispute.    In *Benecard Services, Inc. v. Allied World Specialty Insurance*, the plaintiff moved to "clarify" a court order compelling the production of certain documents, arguing that even if the documents at issue were not privileged, they might still be protected work product.  2017 WL 3139565, at *1 (D.N.J. July 21, 2017).  The court treated the application as a reconsideration motion and denied it, holding that Local Civil Rule 7.1(i) "does not contemplate a Court looking to matters which were not originally presented."  *Id.*  Similarly, in *North v. Portfolio Recovery Assocs., LLC*, the district court affirmed the magistrate judge's denial of a reconsideration motion because the movant attempted to introduce new claims in its reconsideration motion.  2024 WL 1694755, at *4 (D.N.J. Apr. 19, 2024).  The court explained that "[r]econsideration is not an opportunity to assert matters that the movant could have raised before the Court reached its original decision."  *Id.*  As in *Benecard* and *North*, RCN's attempt to raise a previously unasserted work product argument after being ordered to produce the Abry Documents was correctly rejected.

Citing three portions of the record out of context, RCN now attempts to distort the record to make it appear as if it had asserted work product protection for the Abry Documents from the outset.  Those attempts are meritless.

First, RCN claims that it raised a work product argument in its opposition to Plaintiffs' motion to compel.  RCN Br. at 8 (citing ECF 226 at 5).  This assertion is demonstrably false. In fact, RCN made a general reference to work product materials

in reciting the standard for the *common interest privilege*.  *See* ECF 226 at 5 ("Due to the relationships between parties, they shared a common interest and were therefore able to exchange privileged and work product materials without waiving any privilege or protection.").  Read in context, this passing reference to work product does not assert a work product argument, let alone claim and prove that the doctrine applies to any particular document.

Second, RCN mischaracterizes its arguments during the February 2023 hearing before the Magistrate Judge.  Again, RCN did not assert work product as the basis for withholding any particular documents during that hearing.  Rather, RCN's counsel made a general reference to work product materials in describing the types of documents Mr. Holanda receives as CEO.  Feb. 2023 Hr'g Tr. at 20:22–21:1 (RCN's counsel stating that Mr. Holanda "receives a lot of information from a lot of different sources, much of which are frequently containing attorney advice, containing attorney work product").  Again, this passing general reference to work product did not assert that the doctrine applies to any particular documents.

Third, the fact that RCN identified the work product doctrine on its privilege log as one of the bases for withholding the Abry Documents, *see* RCN Br. at 8, at most preserved RCN's ability to raise that argument in opposing a subsequent motion to compel.  But the log entry is not itself a defense to waiver once RCN failed to raise the argument during motion practice before the Magistrate Judge.  *See*

*Cooper Hosp./Univ. Med. Ctr. v. Sullivan ("Cooper II")*, 183 F.R.D. 135, 142–43
(D.N.J. 1998) (recognizing that arguments not made to the magistrate judge are
waived).  If anything, RCN's privilege log demonstrates that RCN's failure to argue
work product in its briefing was a conscious, strategic choice, as RCN demonstrably
chose not to pursue the work product claim identified in its privilege log.

> ### B.     RCN Failed to Timely Argue a Common Legal Interest Based on a Parent-Subsidiary Relationship.

Similarly, prior to its reconsideration motion, RCN never raised the common
interest privilege argument it now presents to this Court.  RCN now argues that the
Abry Documents are protected by the common interest privilege because they are
communications between a parent (Abry) and its subsidiary (RCN).  However, in
opposing Plaintiffs' motion to compel, RCN advanced a blunderbuss common
interest argument that any "parties that own or previously owned RCN" necessarily
shared a common legal interest with RCN, with no distinction between current,
former, or future owners at the time of the relevant communication.  ECF 226 at 5.
Then, in a sur-reply, RCN modified its common interest argument and premised it
solely on a purported common legal interest between RCN and third parties that
shared that interest "as a result of pending or completed acquisitions."  ECF 229 at
2.  The only such third parties RCN identified in its sur-reply were Stonepeak—

which as noted above acquired RCN in 2020 and thus had no connection to the Abry documents—and its agents.  *See id.*[8]

Only after the Magistrate Judge rejected that argument did RCN assert for the first time, in its reconsideration motion, that the Abry Documents could be common interest documents by virtue of being exchanged between a subsidiary and its then current parent.  RCN cannot now challenge the Magistrate Judge's ruling on a claim it never asserted in its initial briefing.  *See Cooper II*, 183 F.R.D. at 142–43.

## III.  RCN FAILED TO MEET ITS BURDEN TO SUBSTANTIATE ITS WORK PRODUCT AND COMMON INTEREST CLAIMS.

Even assuming RCN's work product and common interest arguments—raised only after being ordered to produce the Abry Documents—were properly before the Court, they still fail on the merits.  Consistent with its conduct throughout this dispute, RCN has not met its burden to demonstrate that either the work product doctrine or the latest version of its common interest claim protect the Abry Documents from disclosure.

---

[8] While RCN's sur-reply also referenced communications between RCN and members of the Board of Directors of Radiate Holdco, RCN argued that they were not third-party communications at all.  *See* RCN Letter dated July 6, 2022 at 1–2, ECF 229.  Nor did the sur-reply identify Abry as a relevant parent entity.  RCN has never explained (let alone provided evidence demonstrating) the relationship between Abry, Radiate, and RCN—again underscoring why a proper evidentiary showing was necessary.

**A.    RCN Failed to Demonstrate That the Abry Documents Are Protected Work Product.**

The work product doctrine "protects from discovery materials prepared or collected by an attorney 'in the course of preparation for possible litigation.'" *In re Grand Jury Subpoena*, 745 F.3d 681, 693 (3d Cir. 2014).  As the party invoking the work product doctrine, RCN bears the burden of proving that the documents at issue are actually privileged under this standard.  *See In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012); *Conoco Inc. v. U.S. Dep't of Just.*, 687 F.2d 724, 730 (3d Cir. 1982).  In order to satisfy that burden, a party is required to submit supporting evidence, *see Crown Fin. Corp.*, 2013 WL 12155435, at *2, but RCN has not proffered *any* evidence in any iteration of its privilege briefing.

Instead, as it has done throughout this dispute, RCN has attempted to support its work product claim with unsubstantiated arguments in its briefs.  Such unsworn attorney statements lacking "any affidavits or other documents to bolster [their] assertion[s]" cannot satisfy a party's burden to support a privilege claim.  *See Crown Fin. Corp.*, 2013 WL 12155435, at *2 (finding no work product protection based on "deficient" evidentiary showing).  Rather, the party seeking to withhold documents must make an affirmative "evidentiary showing based on competent evidence and cannot be discharged by mere conclusory or ipse dixit assertions." *Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*, 202 F.R.D. 418, 423 (E.D. Pa.

2001).  RCN's history of making patently false representations to the Magistrate Judge underscores the need for such a rule.  *See supra* at 7–11.

Shamelessly, RCN seeks yet another bite at the apple by alleging new unsworn and unsupported facts in this appeal that were never presented to the Magistrate Judge *at all*.  This is likewise improper.  "[P]arties who litigate before a Magistrate Judge must raise any and all arguments before the Magistrate Judge, or waive their right to assert the arguments before the district court on appeal."  *Cooper II*, 183 F.R.D. at 142.

In its appeal, for the first time, RCN alleges that Mr. Holanda's cover email (one of the Abry Documents) explained outside counsel's role in the pending litigation and the work that outside counsel's firm was doing for RCN at the time.  RCN Br. at 9–10.  RCN further purports to provide additional detail about the memorandum attached to that email (the other Abry Document), including by claiming that the memorandum concerns settlement strategy for the then-pending copyright infringement litigation between RCN and BMG.  *Id.*  Such a belated presentation fails for two obvious reasons.  First, none of these facts were presented to the Magistrate Judge at any point in any briefing on this issue, *see* ECF 226, 229, 253, 259, and accordingly cannot be considered in this appeal.  *Cooper I*, 183 F.R.D. at 127–28 ("[A] district court may not consider any evidence which was not presented to the magistrate judge.").  Second, as with every submission on this issue,

25

RCN fails to make a proper evidentiary proffer but instead relies solely on the unsworn, unverified assertions of counsel (whose conduct was at issue on the motion and who had made false representations to the Court and changed those false representations whenever they were identified).    Indeed, the facts of this case underscore why proper evidentiary submissions are required.

Accordingly, RCN has failed to satisfy its burden to demonstrate the application of the work product doctrine.[9]

### B.    The Magistrate Judge Correctly Determined That the Abry Documents Cannot Be Withheld Pursuant to the Common Interest Doctrine.

Despite RCN's failure to properly raise it, the Magistrate Judge considered the latest iteration of RCN's common interest argument on the merits and determined that RCN failed to establish a shared legal interest between Abry and RCN.  That determination was correct.

The common interest privilege "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others."  *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345 (3d Cir. 2007), *as amended*

---

[9] While RCN baldly asserts that Mr. Holanda was explaining outside counsel's role to an Abry Board member, RCN does not contend, let alone provide any evidence, that this communication contains attorney impressions, that Mr. Holanda was directed by a lawyer to provide the summary, or that any of that email's contents were drafted at the behest of a lawyer or in anticipation of litigation.  *See* RCN Brief at 9–10.

(Oct. 12, 2007).   This privilege "is an extension of the attorney-client privilege, protecting from discovery communications among clients and attorneys 'allied in a common legal cause.'"  *10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020).   As RCN's cited authority acknowledges, the common interest doctrine "does not apply where a communication is designed to further a commercial transaction instead of a common legal strategy."  *TD Bank, N.A. v. Hill*, 2014 WL 12617548, at *3 (D.N.J. Aug. 20, 2014).   The party asserting the common interest privilege bears the burden of showing that the common interest privilege applies. *McLane Foodservice, Inc. v. Ready Pac Produce, Inc.*, 2012 WL 1981559, at *3 (D.N.J. June 1, 2012) ("Just as the burden of proof is on the party asserting the work-product doctrine, the burden of proof is on the party asserting the [common interest] doctrine.").

On reconsideration before the Magistrate Judge, RCN relied on the unsupported allegation of its counsel that RCN and Abry shared a common legal interest merely by virtue of being on the "same side of the table" negotiating with RCN's buyer.  *See* RCN Reconsideration Br. at 1–2, ECF 253.   However, the Magistrate Judge correctly held that the Third Circuit's *Teleglobe* decision, which RCN had previously pointed to as governing authority on this issue, forecloses this argument.   June 2024 Order at 10–11.  In *Teleglobe*, the court addressed whether Teleglobe's former parent company "may assert . . . privilege against its former

family members." 493 F.3d at 353. Although the court resolved the case on other grounds, it recognized that the common interest privilege does not automatically cover parent-subsidiary relationships without a showing of a substantially similar legal interest between the two entities. The Third Circuit stated that it "stretches . . . the community-of-interest privilege too far" to hold that parents and subsidiaries "may freely share documents without implicating the disclosure rule," as they do not necessarily have substantially similar legal interests in all of each other's communications. *Id.* at 372.[10]

Thus, RCN's and Abry's (then) subsidiary-parent relationship, standing alone, is insufficient to support the invocation of the common interest doctrine. Prior to this appeal, RCN made no effort whatsoever to identify a common legal interest between RCN and Abry.[11] While RCN now makes a belated attempt to remedy that

---

[10] RCN now calls into question the applicability of *Teleglobe*, RCN Br. at 10–12, despite having previously pointed to it as a key authority on the common interest privilege. *See* Feb. 2023 Hr'g Tr. at 44:9–47:24 (RCN's counsel asserting that "*Teleglobe* governs here"). Indeed, as a direct result of RCN raising *Teleglobe* for the first time in that hearing, there was supplemental briefing on the import of that decision to the common interest issues in dispute. *See* ECF 243.

[11] Contrary to RCN's assertions, the Magistrate Judge did not conclude that the common interest privilege was inapplicable because no attorneys were included on the communications between RCN and Abry. *See* RCN Br. at 11. Rather, the Magistrate Judge held that RCN had failed to meet its burden of establishing a shared legal interest. *See* June 2024 Order at 10–11. While the Magistrate Judge noted that *Teleglobe* required that the privileged communications be between "the clients' separate attorneys", she did not apply that portion of the rule. *Id.* And even if she had, that would be consistent with other decisions in this District. *See, e.g., McLane*

deficiency, *see* RCN Br. at 10–11, those arguments again consist of the unsupported assertions of counsel which were never presented to the Magistrate Judge, and thus must be ignored. *See, e.g.*, *Cooper I*, 183 F.R.D. at 127–28.

In any event, RCN's new assertions do not demonstrate the existence of a common legal interest. They simply contend that Mr. Holanda was "updating" Abry "on RCN's legal strategy" in the BMG litigation. *See* RCN Br. at 10–11. RCN adduces no facts (let alone evidence) showing that RCN and Abry shared a legal interest in that litigation, especially given that at that time Abry was in the process of selling RCN and had different priorities than RCN itself. *See McLane Foodservice, Inc.*, 2012 WL 1981559, at *4 (explaining that the common interest doctrine requires a common legal interest as opposed to a common business interest).

## CONCLUSION

For the foregoing reasons, the Court should affirm the Magistrate Judge's June 2024 Order.

---

*Foodservice, Inc.*, 2012 WL 1981559, at *4; *Hoffmann-La Roche, Inc. v. Roxane Lab'ys, Inc.*, 2011 WL 2446600, at *3 (D.N.J. June 16, 2011) (stating that the common interest privilege's "attorney-sharing requirement is 'black-letter law'").

Dated:  July 22, 2024                  Respectfully submitted,

*/s/ Kathleen N. Fennelly*
Thomas R. Curtin
Kathleen N. Fennelly
**McElroy, Deutsch, Mulvaney &**
    **Carpenter, LLP**
1300 Mount Kemble Avenue, P.O. Box 2075
Morristown, NJ 07962
Tel: (973) 993-8100
Fax: (973) 425-0161
tcurtin@mdmc-law.com
kfennelly@mdmc-law.com
gjones@mdmc-law.com

Andrew H. Bart (*pro hac vice*)
Rémi Jaffré (*pro hac vice* application
forthcoming)
Jacquellena T. Carrero (*pro hac vice*
application forthcoming)
**Jenner & Block LLP**
1155 Avenue of the Americas
New York, NY 10036
Tel: (212) 891-1600
Fax: (212) 891-1699
abart@jenner.com
rjaffre@jenner.com
jcarrero@jenner.com

***Attorneys for Plaintiffs***