UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UMG RECORDINGS, INC., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>RCN TELECOM SERVICES, LLC, et al.,<br><br>Defendants. | No. 3:19-cv-17272-RK-TJB |

## DECLARATION OF ZACHARY C. HOWENSTINE

I, Zachary C. Howenstine, declare as follows:

1. I am licensed to practice law in the State of Missouri and am a partner with the law firm of Armstrong Teasdale LLP. I am counsel of record for Defendants RCN Telecom Services, LLC, et al. (collective, "RCN") in this suit filed by Plaintiffs UMG Recordings, Inc., et al. ("Plaintiffs"). I have been responsible for day-to-day management of this litigation since it was filed. I have been admitted to practice in the District of New Jersey on a *pro hac vice* basis pursuant to ECF No. 37 entered on January 28, 2020. I have personal knowledge of the facts set forth below and if called upon and sworn as a witness, I could and would competently testify to them.

2. After the Court issued its June 21, 2024 Letter Order (ECF No. 263), the parties met and conferred by email about how best to follow the Court's direction on page 3 to apply the Court's rulings regarding documents reviewed *in camera* to the approximately 1,300 remaining challenged documents. RCN proposed that it would re-review these documents in view of the Court's rulings, and that the parties would then meet and confer "about any lingering concerns plaintiffs may have." Plaintiffs agreed, and the parties filed a stipulation and proposed order reflecting their agreement, which the Court entered. *See* ECF No. 265.

3. At my direction and under my oversight, a team of me and two other Armstrong Teasdale attorneys re-reviewed the approximately 1,300 challenged documents in view of the Court's rulings on the *in camera* documents. This review was preceded by a group discussion regarding the 30 documents submitted for *in camera* review and the group's takeaways from the Court's rulings. Upon conclusion of this review, we determined that 361 of the challenged documents should be produced and that the remainder had been properly withheld. The 361 documents were produced on July 26, 2024, at which time RCN also served an updated privilege log.

4. On August 6, 2024, pursuant to the parties' agreement (ECF No. 265), the parties met and conferred about these matters via Zoom videoconference. Plaintiffs were represented by Rémi Jaffré and Jacquellena Carrero, who were subsequently admitted *pro hac vice* in this matter by order dated August 23, 2024 (ECF No. 276). RCN was represented by me and Margaret Szewczyk, who was admitted *pro hac vice* in this matter by order dated January 28, 2020 (ECF No. 38). My statements in this declaration about that meeting are informed by my memory and by contemporaneous notes taken separately by me and Ms. Szewczyk.

5. Our (RCN's counsel's) focus in the meet and confer was to attempt to understand whether and how the parties might resolve some or all of the remaining privilege issues without court intervention.

6. As noted above, prior to the meeting, I had proposed by email on June 27, 2024 that the purpose of the meet and confer would be to address "any lingering concerns plaintiffs may have" after receiving RCN's supplemental document production (i.e., the 361 documents produced on July 26, 2024) and updated privilege log. Plaintiffs agreed to this in an email from Mr. Jaffré on June 28, 2024.

2

7. In the August 6, 2024 meet and confer, counsel for Plaintiffs did not state that they believed that RCN's remaining privilege claims lacked evidentiary support. Plaintiffs' counsel did not mention the notion of, or need for, evidentiary support for RCN's privilege claims in any way. Plaintiffs' counsel did mention that Plaintiffs might seek further guidance from the Court regarding the nature and basis of its rulings on the documents submitted for *in camera* review, because Plaintiffs did not know the contents of the documents the Court found to be privileged. Because I was unclear on what form this request for guidance might take, I repeatedly pressed Plaintiffs' counsel to explain what relief they intended to seek from the Court, so that the parties could meaningfully meet and confer and potentially reach agreement. For example, I noted that if Plaintiffs intended to ask the Court to further explain its rulings, in whole or in part, they should articulate what specifically they would ask the Court to do so that we could discuss with our client whether RCN would join that request. Plaintiffs' counsel demurred and indicated that they were unable to provide any additional detail. Plaintiffs' counsel did not indicate that Plaintiffs intended to seek an order requiring RCN to produce any of the remaining withheld documents.

8. To address Plaintiffs' claimed need for more guidance on the Court's *in camera* rulings, I volunteered that RCN could provide more detailed descriptions of the 26 documents the Court had deemed properly withheld as privileged. Plaintiffs accepted this offer, and RCN provided a document containing this information on August 13, 2024. A true and correct copy of the document is attached as Exhibit 1. This document contains more than 26 line items because in some instances an email and separate attachment(s) were counted together for purposes of submitting documents for *in camera* review.

9.     Attached as Exhibit 2 is a true and correct copy of an email chain containing RCN's transmission of Exhibit 1 to Plaintiffs on August 13, 2024 and an August 16, 2024 response email from Mr. Jaffré.  RCN did not receive any further communication from Plaintiffs about these matters before Plaintiffs filed their August 27, 2024 letter brief.  In that response email, Mr. Jaffré stated: "We continue to believe that further court intervention is necessary with respect to the documents that were not directly covered by the magistrate judge's ruling."  I understood "intervention" to refer to Plaintiffs seeking additional guidance from the Court on its previous privilege rulings, as Plaintiffs had not described any other relief they intended to seek from the Court.  I note that Mr. Jaffré also asks in the email whether RCN re-reviewed documents from Mr. Holanda's file that had been withheld by RCN and challenged by Plaintiffs.  RCN's counsel separately confirmed that it had.

10.    In this case, RCN's review of potentially responsive documents for claims of attorney-client privilege and work product protection ("privilege review") has been conducted by Armstrong Teasdale attorneys acting at my direction and under my oversight.  Before the review described above in paragraph 3, RCN's initial privilege review was conducted by a team of four attorneys working with two paralegals.  The review included multiple group meetings and internal correspondence regarding privilege and work product issues, as well as numerous informal discussions between me and other members of the team about questions that arose during the privilege review.  RCN served its initial privilege log on May 12, 2021 and updated it on November 18, 2021 (in response to inquiries from Plaintiffs); April 15, 2022 (as a result of the Court ordering RCN to collect and review the emails of its CEO, James Holanda); May 21, 2022 (to include additional materials from Mr. Holanda's files); May 24, 2022 (to correct an inadvertent Bates labeling error); and July 26, 2024 (as described above in paragraph 3).  I am

responsible for RCN's privilege review and verify that RCN's claims of attorney-client privilege and work product protection, both initially and during the re-review described above in paragraph 3, were and are based upon a good faith belief that the materials withheld were or are deserving of protection.

      I declare under penalty of perjury that the foregoing is true and accurate.

      Executed on September 4, 2024 in New Rochelle, New York.

                                /s/    *Zachary C. Howenstine*_____
                                          Zachary C. Howenstine