Michael C. Witsch
Attorney ID No. 029842012
ARMSTRONG TEASDALE LLP
Two Logan Square
100 N. 18th Street, Suite 710
Philadelphia, PA 19103
Tel. (267) 780-2000
Fax. (215) 405-9070
mwitsch@atllp.com

Richard L. Brophy (*pro hac vice*)
Zachary C. Howenstine (*pro hac vice*)
Mark A. Thomas (*pro hac vice*)
Kyle G. Gottuso (*pro hac vice*)
Sydney K. Johnson (*pro hac vice*)
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 621-5070
Fax: (314) 621-5065

Stephanie M. Piper (*pro hac vice*)
ARMSTRONG TEASDALE LLP
400 Park Ave., 12th Floor
New York, NY 10022
(212) 209-4400
smpiper@atllp.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UMG RECORDINGS, INC., et al.,

Plaintiff,

vs.

RCN TELECOM SERVICES, LLC, et al.,

Defendants.

**No. 3:19-cv-17272-RK-TJB**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION**

**ORAL ARGUMENT REQUESTED**

**MOTION DAY: OCTOBER 5, 2026**

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. FACTUAL & PROCEDURAL BACKGROUND ........ 4

III. LEGAL STANDARD ........ 8

IV. ARGUMENT ........ 10

A. Under *Cox*, the Labels have failed to state a claim for contributory copyright infringement. ........ 10

B. Under *Cox*, the Labels have failed to state a claim for vicarious copyright infringement. ........ 15

CONCLUSION ........ 19

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*After II Movie, LLC v. WideOpenWest Fin., LLC*,
No. 1:21-cv-1901 (D. Colo. May 26, 2026) ........................................................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................ 18, 19

*Bodyguard Prods., Inc. v. RCN Telecom Servs. of Mass., LLC*,
No. 1:21-cv-15310-ESK-MJS (D.N.J. Apr. 21, 2026)..........................................3

*Cobbler Nev., LLC v. Gonzales*,
901 F.3d 1142 (9th Cir. 2018)........................................................................14

*Country Club Assocs., LLC v. Clinton Twp. Sewerage Auth.*,
No. 3:19-cv-20525, 2026 WL 1862303 (D.N.J. June 29, 2026)................. 8, 9, 14

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
145 S. Ct. 2841 (2025)...................................................................................17

*Cox Communications, Inc. v. Sony Music Entertainment*,
607 U.S. __, 146 S. Ct. 959 (2026) ..... 1, 2, 3, 4, 5, 6, 8, 10, 11, 12, 13, 14, 15, 19

*Grande Commc'ns Networks, LLC v. UMG Recordings, Inc.*,
146 S. Ct. 2152 (2026).....................................................................................5

*Leonard v. Stemtech Int'l Inc.*,
834 F.3d 376 (3d Cir. 2016) ..........................................................................15

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) ........................................................................... 11, 13

*Ohio v. Johnson*,
467 U.S. 493, 500 (1984) .................................................................................9

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007)........................................................................10

*Qazizadeh v. Pinnacle Health Sys.*,
214 F. Supp. 3d 292 (M.D. Penn. 2016) ...........................................................9

*Shapiro, Bernstein & Co. v. H. L. Green Co.*,
316 F.3d 304, 307–08 (2d Cir. 1963) .....15

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
145 S. Ct. 2844 (2025) ..... 2, 11, 15, 17

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
93 F.4th 222 (4th Cir. 2024) .....2

*UMG Recordings, Inc. v. Grande Commc'ns Networks LLC*,
No. 1:17-cv-365 (W.D. Tex. May 2, 2019) .....5

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*,
384 F. Supp. 3d 743 (W.D. Tex. 2019) .....10

*UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*,
No. 23-50162 (5th Cir. July 29, 2026) .....5

*UMG Recordings, Inc. v. Verizon Commc'ns Inc.*,
No. 1:24-cv-5285 (S.D.N.Y. Apr. 22, 2026) .....3

*United States ex rel. Silver v. Omnicare, Inc.*,
No. 1:11-cv-01326-ESK-AMD, 2021 WL 9848445 (D.N.J. Apr. 13, 2021) .....9

*United States v. Jerry*,
487 F.2d 600 (3d Cir. 1973) .....9, 19

*Warner Recs. Inc. v. Altice USA, Inc.*,
No. 2:23-cv-576 (E.D. Tex. Apr. 22, 2026) .....3

**Other Authorities** **Page(s)**

17 U.S.C. § 512 (i)(1)(A) .....6
17 U.S.C. § 512(a) .....6
17 U.S.C. § 512(l) .....6

**Rules** **Page(s)**

FRCP 12(b)(6) ..... 4, 14, 19
FRCP 54(b) .....8, 9
FRCP 60(b) .....9
Local Civil Rule 7.1(i) .....8

# I. INTRODUCTION

The Court should reconsider its 2020 ruling that Plaintiffs UMG Recordings, Inc., et al. ("the Labels") stated claims for contributory and vicarious infringement against Defendants RCN Telecom Services, LLC, et al. ("RCN"). *See* Mem. Op., Dkt. No. 88; Order, Dkt. No. 89.

Earlier this year, the Supreme Court decided *Cox Communications, Inc. v. Sony Music Entertainment*, 607 U.S. __, 146 S. Ct. 959 (2026), which effectively ended the music and movie industries' misguided copyright litigation campaigns against the country's internet service providers. Before *Cox*, this Court and others had permitted rightsholders to pursue secondary infringement claims against ISPs, based on the notion that an ISP becomes liable for its customers' online conduct when it fails to terminate internet service to known copyright infringers. *See, e.g.*, Mem. Op. 18–21.

*Cox* emphatically rejected that view of secondary liability, holding that "a company is not liable as a copyright infringer for merely providing a service to the general public with knowledge that it will be used by some to infringe copyrights." 146 S. Ct. at 964. In other words, "contributory liability cannot rest only a provider's knowledge of infringement and insufficient action to prevent it." *Id.* at 969. Instead, the Supreme Court held—reaffirming its precedents—that an ISP is only

contributorily liable for its customers' infringement "if it actively encourages infringement through specific acts." *Id.* at 967.

*Cox* is virtually identical to this case. *Cox* was brought by the same plaintiffs—the three major U.S. record labels—asserting the same theories of secondary liability against Cox Communications, another ISP. The Supreme Court held that Cox was entitled to judgment as a matter of law because there was no evidence that Cox "induce[d] or encourage[d] its subscribers to infringe in any manner"—such as by "express promotion, marketing, and intent to promote infringement." 146 S. Ct. at 968. Here, the Labels likewise do not allege any facts showing that RCN "actively encourages infringement through specific acts." *Id.* at 967. As such, the Labels have failed to state claims for contributory infringement.

As for vicarious infringement, this Court previously denied RCN's motion to dismiss due to "the lack of binding or persuasive authority on the issue of direct financial benefit"—one of the necessary elements of a vicarious infringement claim. Mem. Op. 27. *Cox* supplies that authority.

In addition to clarifying the law on contributory liability, the Supreme Court left standing the Fourth Circuit's ruling that Cox Communications was not vicariously liable. *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 233 (4th Cir. 2024), *cert. denied in relevant part*, 145 S. Ct. 2844 (2025). Vicarious liability requires the defendant to directly profit from the infringing conduct, and the Fourth

Circuit recognized that "[t]he continued payment of monthly fees for internet service" is "not a financial benefit flowing directly from *the copyright infringement itself*." *Id.* at 232 (emphasis in original). Here, as in *Cox*, RCN's receipt of monthly subscription fees from alleged infringers is the basis of the Labels' vicarious infringement claim. Am. Compl. ¶ 100, Dkt. No. 9. The Labels' vicarious infringement claim against RCN therefore fails as a matter of law.

In short, the Labels have no basis to pursue secondary copyright infringement claims against RCN because they do not allege that (1) RCN induced or encouraged anyone to infringe the Labels' asserted copyrights or (2) RCN directly profited from any infringement of the Labels' asserted copyrights. Indeed, in the wake of *Cox*, the Labels and other rightsholders dismissed ***every other*** secondary copyright infringement case against an ISP—including the movie industry's virtually identical lawsuit against RCN.[1] The same *should* have happened here. However, there is a

[1] The other case against RCN was also brought in this District, and it was dismissed within a month of the Supreme Court's decision. *See* Stipulation of Dismissal with Prejudice, Dkt. No. 153, *Bodyguard Prods., Inc. v. RCN Telecom Servs. of Mass., LLC*, No. 1:21-cv-15310-ESK-MJS (D.N.J. Apr. 21, 2026). *See also* Stipulation of Dismissal with Prejudice, Dkt. No. 368, *After II Movie, LLC v. WideOpenWest Fin., LLC*, No. 1:21-cv-1901 (D. Colo. May 26, 2026); Jt. Stipulation of Dismissal Pursuant to Rule 41(a)(1)(A)(ii), Dkt. No. 55, *UMG Recordings, Inc. v. Verizon Commc'ns Inc.*, No. 1:24-cv-5285 (S.D.N.Y. Apr. 22, 2026); Jt. Stipulation of Dismissal Pursuant to Rule 41(a)(1)(A)(ii), Dkt. No. 334, *Warner Recs. Inc. v. Altice USA, Inc.*, No. 2:23-cv-576 (E.D. Tex. Apr. 22, 2026). As discussed in Section II, the Labels also recently informed the Fifth Circuit that in light of *Cox*, they intend to abandon their copyright infringement claims against Grande Communications Networks, LLC, an ISP affiliated with RCN.

pending discovery dispute between the parties regarding RCN's privilege claims, and the Labels are using that dispute as justification for keeping this case alive, seemingly in order to extract concessions from RCN. *See infra* Section II. But a discovery dispute has no bearing on whether the Labels have stated viable claims against RCN.

Because the Labels have failed to state claims against RCN for contributory and vicarious copyright infringement, the Court should dismiss the Labels' Amended Complaint pursuant to Rule 12(b)(6).

## II. FACTUAL & PROCEDURAL BACKGROUND

This case has been pending for seven years with little progress toward a resolution on the merits. Only one deposition has been taken—a narrow Rule 30(b)(6) deposition regarding the Labels' since-abandoned accusation that RCN spoliated evidence—and there is no schedule in place.

The Labels filed this case in 2019 as an offshoot of a separate copyright infringement lawsuit against another ISP, Grande Communications Networks, which is an affiliate of RCN.[2] The Labels' case against Grande was tried to a jury in 2022, resulting in a verdict for the Labels. Following the Supreme Court's decision in *Cox*, however, the Supreme Court granted Grande's petition for writ of

---

[2] RCN and Grande are commonly owned, and after the filing of this lawsuit, both ISPs rebranded as "Astound Broadband."

certiorari, vacated the judgment, and remanded the case for further proceedings in light of *Cox*. *Grande Commc'ns Networks, LLC v. UMG Recordings, Inc.*, 146 S. Ct. 2152 (2026). On remand to the Fifth Circuit, the Labels recently represented that they "do not intend to litigate the merits of [the] case further" in view of *Cox*. Supp. Letter Br. 1, Dkt. No. 199, *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, No. 23-50162 (5th Cir. July 29, 2026).

It has always been RCN's impression that the Labels filed this case against RCN for additional leverage in discussions regarding a potential settlement of *Grande*. This case was filed in August 2019, as the parties were beginning to prepare in earnest for the *Grande* trial, which was originally scheduled for early 2020.[3] And since that time, after initially pressing for document discovery (which the Labels could have tried to use in *Grande*, considering that some members of RCN's management team testified at trial), the Labels have consistently sought to frustrate any progress toward a resolution.

For nearly the past five years, the Labels have been raising an ever-evolving series of complaints about RCN's claims of privilege over internal documents relating to RCN's handling of copyright issues. For background, throughout the

[3] Order Setting Jury Selection/Trial and Related Deadlines, Dkt. No. 275, *UMG Recordings, Inc. v. Grande Commc'ns Networks LLC*, No. 1:17-cv-365 (W.D. Tex. May 2, 2019). The *Grande* trial date was continued several times, first because of issues with the court's schedule, and then due to the COVID-19 pandemic.

relevant time period, RCN employed internal policies and procedures for handling copyright infringement complaints directed at its customers. These policies and procedures were intended to satisfy the requirements of the Digital Millennium Copyright Act ("DMCA") safe harbor provisions, which would give RCN an affirmative defense to copyright infringement claims if it adopted and enforced a policy for terminating service to repeat infringers "in appropriate circumstances."[4] *See* 17 U.S.C. § 512(a), (i)(1)(A); RCN's 2d Am. Answer 15–16 (¶ 7), Dkt. No. 161. Thus, it should come as no surprise that the development, implementation, and continued execution of RCN's DMCA policy (over a period of many years) generated a substantial amount of privileged and work product material. *See, e.g.*, June 21, 2024 Letter Order 2, Dkt. No. 263 (after *in camera* review, ruling that "RCN's claims of privilege are largely well-founded").

Nevertheless, the Labels have used complaints about RCN's privilege claims to grind this litigation to a halt. In the leadup to the 2022 trial in *Grande*, at a point when RCN had already produced millions of documents and was pressing for depositions of the Labels' fact witnesses, the Labels asked Magistrate Judge

[4] In *Cox*, the Supreme Court rejected the Labels' argument that the existence of this safe harbor demonstrates that ISPs should otherwise be liable for their subscribers' infringing conduct. 146 S. Ct. at 969 ("Sony overreads the DMCA. . . . The DMCA merely creates new *defenses* from liability for such providers. And, the DMCA made clear that failure to comply with the safe-harbor rules 'shall not bear adversely upon . . . a defense by the service provider that the service provider's conduct is not infringing.'" (emphasis in original) (quoting 17 U.S.C. § 512(l)).

Bongiovanni to stay all fact depositions in this matter "until [the Court] has determined that [RCN has] complied with all their document discovery obligations in this matter." Pls.' Letter Br. 1, Dkt. No. 215. Two days later, on May 12, 2022, Magistrate Judge Bongiovanni granted the Labels' request. Text Order, Dkt. No. 216. Fact depositions have been stayed since that Order—i.e., for more than four years.

In objecting to the stay, RCN observed that the Labels' request "seems calculated to cause lengthy delay," because "so long as [the Labels] can come up with additional complaints about RCN's document production . . . the stay would continue." Defs.' Letter Br. 7–8, Dkt. No. 221. That is precisely what has happened. The stay has remained in place for years because the Labels have thwarted any final resolution through a series of shifting complaints that have resulted in no fewer than 20 discovery letter briefs to Magistrate Judge Bongiovanni.[5] The Court has issued multiple orders to attempt to resolve these matters, but no matter the Court's rulings, the Labels refuse to take no (or yes) for an answer. *See, e.g.*, Mar. 8, 2022 Letter Order 11–12, Dkt. No, 205; May 26, 2023 Letter Order, Dkt. No. 247; June 21, 2024 Letter Order, Dkt. No. 263; Aug. 16, 2024 Mem. Op. & Order, Dkt. Nos. 273 & 274.

---

[5] *See* Dkt. Nos. 194, 197, 200, 224, 226, 227, 229, 230, 243, 253, 254, 255, 257, 258, 259, 260, 279, 281, 282, 283, 312, 313, 314.

After the Supreme Court decided *Cox*, it appeared that this case would finally gain momentum toward a resolution. As set forth above, in the immediate aftermath of *Cox*, the Labels and other rightsholders dismissed all their other contributory and vicarious copyright infringement suits against ISPs. *See supra* n.1. But the Labels have refused to do the same with this case. Instead, it seems that the Labels view the ongoing privilege dispute as a form of leverage. In other words, the Labels seem to believe that RCN might be willing to pay money to avoid a resolution of that issue—notwithstanding the clear legal defects in the Labels' claims. But in fact, RCN has no such concerns, not least because RCN's privilege claims are well-founded (as Magistrate Judge Bongiovanni already found). *See* Dkt. No. 263, at 2.

In any event, the Labels' ginned-up privilege complaints are an irrelevant sideshow, considering that their copyright infringement claims against RCN fail as a matter of law under *Cox*. As detailed below, the Court should grant RCN's request for reconsideration and dismiss the Labels' Amended Complaint with prejudice.

## III. LEGAL STANDARD

Rule 54(b) provides that an interlocutory order "that adjudicates fewer than all the claims . . . may be revised at any time before the entry of judgment . . . ."[6]

[6] For Rule 54(b) motions for reconsideration based on new authority, courts do not apply the 14-day deadline otherwise imposed by Local Civil Rule 7.1(i). *See, e.g.*, *Country Club Assocs., LLC v. Clinton Twp. Sewerage Auth.*, No. 3:19-cv-20525, 2026 WL 1862303, at *1 (D.N.J. June 29, 2026) (granting reconsideration of 2024

District courts "possess[] inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so." *United States v. Jerry*, 487 F.2d 600, 605 (3d Cir. 1973), *abrogated on other grounds*, *Ohio v. Johnson*, 467 U.S. 493, 500 (1984); *see also United States ex rel. Silver v. Omnicare, Inc.*, No. 1:11-cv-01326-ESK-AMD, 2021 WL 9848445, at *1 (D.N.J. Apr. 13, 2021) (same).

Thus, under Rule 54(b), "reconsideration of such orders may be had even if the movant cannot show" one of the grounds for reconsideration of a final judgment or order under Rule 60(b)—i.e., "an intervening change in controlling law, the availability of new evidence that was not available when the court issued the underlying order, or the need to correct a clear error of law or fact or to prevent manifest injustice." *Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295, 304 (M.D. Penn. 2016). Courts do, however, "frequently look to these standards for guidance in considering such motions." *See, e.g.*, *Country Club*, 2026 WL 1862303, at *1 (quotations & citation omitted).

order denying a motion to dismiss based on 2026 decision of the New Jersey Supreme Court).

## IV. ARGUMENT

### A. Under *Cox*, the Labels have failed to state a claim for contributory copyright infringement.

The Labels have failed to state a claim for contributory copyright infringement because they do not allege that RCN induced or encouraged anyone to infringe their asserted copyrights. This is dispositive under *Cox*. *See* 146 S. Ct. at 967–68.

Before *Cox*, some lower courts—including this Court—recognized a so-called "material contribution" theory of contributory copyright infringement. *See, e.g.*, Mem. Op. 18–21, Dkt. No. 88. Under this theory, courts reasoned that an ISP "materially contributes" to online infringement when it provides infringers with internet access, and that "an ISP's failure to take remedial action against repeat copyright infringement is tantamount to encouraging infringement." *Id.*, at 21 (collecting cases). Thus, courts concluded that an ISP "can be held contributorily liable if it has actual knowledge that specific infringing material is available using its system and can take simple measures to prevent further damage to copyrighted works"—i.e., terminating service to accused infringers—"yet continues to provide access to infringing works." *Id.*, at 19 (quoting *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007)); *see also, e.g.*, *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 768 (W.D. Tex. 2019) (applying this "rule of liability" to a defendant ISP).

In *Cox*, the Supreme Court rejected these decisions, holding that "a company is not liable as a copyright infringer for merely providing a service to the general public with knowledge that it will be used by some to infringe copyrights." 146 S. Ct. at 964. In repudiating the lower courts' "material contribution" standard, the Supreme Court noted its "repeated admonition that contributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it." *Id.* at 969; *see also id.* at 968 ("This Court has repeatedly made clear that mere knowledge that a service will be used to infringe is insufficient to establish the required intent to infringe.").

*Cox* reaffirmed that the Supreme Court's previous decisions in *Grokster*[7] and *Sony*[8] set out the exclusive paths for proving contributory infringement. *See* 146 S. Ct. at 968, 969 (the Fourth Circuit erred in "establishing a new form of contributory liability" that "went beyond the two forms of liability recognized in *Grokster* and *Sony*"). Under these precedents, "[t]he intent required for contributory liability can be shown ***only if*** [1] the party induced the infringement or [2] the provided service is tailored to that infringement." *Id.* at 967 (emphasis added).

Under the first theory, represented by *Grokster*, "[a] provider induces infringement if it actively encourages infringement through specific acts"—for

---

7 *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005).

8 *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984).

example, where companies "promoted and marketed their software as a tool to infringe copyrights." *Cox*, 146 S. Ct. at 967. Under the second theory, laid out in *Sony*, "[a] service is tailored to infringement if it is 'not capable of 'substantial' or 'commercially significant' noninfringing uses.'" *Id.* (citation omitted).

*Cox*'s holding mirrors the contributory liability standard RCN urged in its motion to dismiss filed over five years ago. *See* Mem. of Law ISO RCN's Mot. to Dismiss 12, Dkt. No. 15-1. Under this standard, the Labels have failed to state a claim because there is no allegation that RCN induced or encouraged infringement—i.e., that RCN "actively encourage[es] . . . infringement through specific acts." *Id.* (citations and quotations omitted); *see generally* Am. Compl., Dkt. No. 9.

Instead, the Labels' claims are premised entirely on RCN's alleged *failure to **prevent*** infringement. *See* Am. Compl. ¶¶ 5 ("Armed with the knowledge of which customers were engaged in specific, repeated acts of illegal infringement on RCN's network, Defendants could easily have stopped those customers from continuing to engage in infringement using RCN's internet service. But for years, Defendants failed to terminate the accounts of repeat infringers or take any other meaningful action to curb this ongoing theft."), 89 ("RCN had the means to withhold [internet service] upon learning of specific infringing activity by specific users, but failed to do so, purposefully ignoring and turning a blind eye to the flagrant and repeated infringement by its subscribers.").

These allegations are plainly insufficient under *Cox*. "[I]n *Grokster*, the Court confirmed that 'a court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement.'" *Cox*, 146 S. Ct. at 968 (quoting *Grokster*, 545 U.S. at 939 n.12). The Labels do not allege any facts indicating that RCN "actively encourage[d]" any of its customers to infringe the Labels' copyrights, *id.* at 967, and they did not argue otherwise in opposing RCN's motion to dismiss. *See* Pls.' Opp'n to Defs.' Mot. Dismiss 21–25, Dkt. No. 52 (claiming only that RCN "materially contributed" to infringement by providing known infringers with internet service). The Labels do not allege that RCN hosts websites or engages in marketing tactics that promote infringement; that RCN stores infringing data for customers; or that RCN distributes any online content, software, or tools for the purpose of infringing copyrights. *See generally* Am. Compl. Indeed, the Labels' allegations regarding RCN's conduct are nearly identical to the evidence that *Cox* deemed insufficient as a matter of law. 146 S. Ct. at 965–66, 968.

The Labels have also failed to state a claim under the second theory recognized in *Cox*: providing a service that is "'not capable of 'substantial' or 'commercially significant' noninfringing uses.'" 146 S. Ct. at 967 (citation omitted). The Labels do not allege that RCN's internet service is incapable of substantial non-infringing uses. *See generally* Am. Compl. RCN, like Cox, "simply provided

Internet access, which is used for many purposes other than copyright infringement." *Cox*, 146 S. Ct. at 968; Am. Compl. ¶ 62 ("RCN provides its subscribers with high-speed internet service."); *see also Cobbler Nev., LLC v. Gonzales*, 901 F.3d 1142, 1149 (9th Cir. 2018) ("Providing internet access can hardly be said to be distributing a product or service that is not capable of substantial or commercially significant noninfringing uses." (quotations & citation omitted)).

Thus, in view of *Cox*, the Court should reconsider its prior ruling that the Labels stated a claim for contributory copyright infringement. *See* Mem. Op. 18–22, Dkt. No. 88; Order, Dkt. No. 89. *Cox* represents an intervening change in law that warrants reconsideration,[9] and it is "consonant with justice" to dispose of a claim that is not viable under controlling law. *See, e.g.*, *Country Club Assocs.*, 2026 WL 1862303, at *2–4 (reconsidering denial of motion to dismiss in light of new authority). The Court should dismiss Count I of the Amended Complaint pursuant to Rule 12(b)(6).

[9] As noted, RCN has always maintained that the contributory liability standard enunciated in *Cox* is the proper standard. *See, e.g.*, Dkt. No. 15-1, at 12. Nevertheless, *Cox* is properly characterized as an intervening change in law because it upended the conclusions of many lower courts—including this Court—regarding the applicable standard.

### B. Under *Cox*, the Labels have failed to state a claim for vicarious copyright infringement.

*Cox* makes clear that the Labels' vicarious infringement claim fails as well, because the Amended Complaint does not plausibly allege that RCN has any "direct financial interest" in the alleged infringement of the Labels' asserted copyrights.[10]

Here, the Labels allege that "RCN obtained a direct financial benefit from the subscribers' infringing activity in the form of monthly subscription fees that they would not have received if they had terminated those subscribers' accounts." Am. Compl. ¶ 100, Dkt. No. 9. In its motion to dismiss, RCN argued that this allegation is insufficient because a "direct financial interest" requires "more than the mere receipt of 'flat periodic payments for service.'" Dkt. No. 15-1, at 28 (collecting cases). Whether an RCN subscriber commits 0, 10, 100, or 1,000 acts of

---

[10] "To establish vicarious infringement, a plaintiff must prove that the defendant had (1) the right and ability to supervise or control the infringing activity; and (2) a direct financial interest in such activities." Mem. Op. 22, Dkt. No. 88 (quoting *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 388 (3d Cir. 2016)). RCN maintains that it has never made sense to apply vicarious liability principles to the relationship between an ISP and its subscribers for internet service. As the Fourth Circuit observed in *Cox*, "[v]icarious liability for copyright infringement is an outgrowth of the agency principles of respondeat superior." 93 F.4th at 230 (quotations & citations omitted); *see also, e.g.*, *Shapiro, Bernstein & Co. v. H. L. Green Co.*, 316 F.3d 304, 307–08 (2d Cir. 1963) (tracing the evolution of the doctrine and observing that liability is appropriate in cases that "lie closer on the spectrum to the employer-employee model than to the landlord-tenant model"). The "control" RCN is alleged to have over its customers—the blunt ability to terminate their internet service—is far removed from the agency relationships that lead to vicarious liability. *See Cox*, 93 F.4th at 230; *Shapiro*, 316 F.3d at 307–08.

infringement, RCN receives the same monthly fee for service. Thus, RCN does not receive any "direct financial benefit" from infringing conduct.

In considering RCN's motion to dismiss, the Court observed that district courts have taken different views on the application of the "direct financial benefit" standard. Mem. Op. 25–26, Dkt. No. 88. In the end, however, "considering the lack of binding or persuasive authority on the issue of direct financial benefit," the Court found that RCN had failed to show that dismissal was warranted. Mem. Op. 27.

*Cox* expressly adopts RCN's view of the law and supplies the authority that the Court previously found absent. In *Cox*, the Fourth Circuit recognized that "the crux of the financial benefit inquiry is whether a causal relationship exists between the infringing activity and a financial benefit to the defendant." 93 F.4th at 231. "[I]n every case, the financial benefit must flow directly from the third party's acts of infringement to establish vicarious liability." *Id.* at 232. "To prove vicarious liability, therefore, [the Labels] had to show that Cox profited from its subscribers' infringing download and distribution of [the Labels'] copyrighted songs." *Id.*

The Fourth Circuit went on to explain that the Labels failed to make that showing, in a passage that is directly applicable here:

> **The continued payment of monthly fees for internet service, even by repeat infringers, was not a financial benefit flowing directly from *the copyright infringement itself*.** As Cox points out, subscribers paid a flat monthly fee for their internet access no matter what they did online. Indeed, Cox would receive the same monthly fees even if all of its subscribers stopped infringing. **Cox's financial interest in**

> **retaining subscriptions to its internet service did not give it a financial interest in its subscribers' myriad online activities, whether acts of copyright infringement or any other unlawful acts.** An internet service provider would necessarily lose money if it canceled subscriptions, but that demonstrates only that the service provider profits directly from the sale of internet access. **Vicarious liability, on the other hand, demands proof that the defendant profits directly from the *acts of infringement* for which it is being held accountable.**

93 F.4th at 232 (italics in original). Accordingly, the Fourth Circuit held that Cox was not vicariously liable as a matter of law. *Id.* at 233. The Supreme Court denied the Labels' request for certiorari on this issue, while granting Cox's request as to the Fourth Circuit's contributory infringement decision. *Sony Music Ent. v. Cox Commc'ns, Inc.*, 145 S. Ct. 2844 (2025); *Cox Commc'ns, Inc. v. Sony Music Ent.*, 145 S. Ct. 2841 (2025).

In view of *Cox*, the Labels have failed to state a claim because they do not plausibly allege that RCN "profited from its subscribers' infringing download and distribution of [the Labels'] copyrighted songs." 93 F.4th at 232. The Labels' allegations that "RCN obtained a direct financial benefit . . . in the form of monthly subscription fees" (*see* Am. Compl. ¶ 100, Dkt. No. 9) is insufficient, because such subscription fees are not "a financial benefit flowing directly from *the copyright infringement itself*." 93 F.4th at 232 (emphasis in original). As in *Cox*, RCN's "financial interest in retaining subscriptions to its internet service did not give it a

financial interest in its subscribers' myriad online activities, whether acts of copyright infringement or any other unlawful acts." *See id.*

Because the Labels do not plausibly allege that RCN profits directly from any infringement, it does not matter that the Labels have alleged that the ability to infringe drew subscribers to RCN's service. The Fourth Circuit addressed this precise issue in *Cox*, recognizing that "[i]f copyright infringement draws customers to the defendant's service or incentivizes them to pay more for their service, that financial benefit may be profit from infringement"—but that does not make the financial interest *direct*. *Id.* at 231–32. In other words, the plaintiff still must show that the financial benefit "flow[s] directly from the third party's acts of infringement." *Id.* at 232. The Labels make no such allegations here.

Even setting that issue aside, the Labels' "draw" allegations are insufficient because they are mere "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations & citation omitted). The Labels simply allege, in conclusory fashion, that subscribers were drawn to RCN's service by the ability to infringe. *See* Am. Compl. ¶¶ 6–7, 99. The Labels do not identify a single such subscriber, do not identify any particular copyrighted work that any subscriber wanted to unlawfully pirate on RCN's network, and do not identify any facts supporting the conclusion

that the ability to infringe drew the subscriber to RCN's service.[11] Without these facts, the Labels' allegations are nothing more than "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quotations & citation omitted).

In sum, *Cox* supplies the "binding or persuasive authority on the issue of direct financial benefit" that the Court previously found was lacking. Mem. Op. 27. Because *Cox* makes clear that the Labels' allegations are insufficient to state a claim, it is "consonant with justice" to grant reconsideration and dismiss the Labels' vicarious infringement claim pursuant to Rule 12(b)(6). *Jerry*, 487 F.2d at 605.

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion, reconsider and vacate its August 31, 2020 Memorandum Opinion and Order (Dkt. Nos. 88 & 89), and grant RCN's Motion to Dismiss (Dkt. No. 15) with prejudice.

---

[11] It would be disingenuous of the Labels to argue that only RCN can identify the infringing subscribers by name. The Labels' copyright notices to RCN identify subscribers by IP address (*see* Am. Compl. ¶¶ 57–58), and the Labels could have done the same in their Amended Complaint. And to the extent the Labels are unable to identify specific RCN subscribers drawn to RCN's service by the ability to infringe the Labels' asserted copyrights, then one might question the Labels' Rule 11 basis for the allegations in the Amended Complaint.

Date: August 31, 2026

Respectfully submitted,

*/s/ Michael C. Witsch*
Michael C. Witsch
Attorney ID No. 029842012
ARMSTRONG TEASDALE LLP
Two Logan Square
100 N. 18th Street, Suite 710
Philadelphia, PA 19103
Tel. (267) 780-2000
Fax. (215) 405-9070
mwitsch@atllp.com

Richard L. Brophy*
Zachary C. Howenstine*
Mark A. Thomas*
Kyle G. Gottuso*
Abigail A. Twenter*
Sydney K. Johnson*
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621-5070
rbrophy@atllp.com
zhowenstine@atllp.com
kgottuso@atllp.com
skjohnson@atllp.com

Stephanie M. Piper*
ARMSTRONG TEASDALE LLP
400 Park Ave., 12th Floor
New York, NY 10022
(212) 209-4400
smpiper@atllp.com

*Admitted Pro Hac Vice

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 31, 2026, I caused a true and correct copy of the foregoing to be filed via the ECF system and served on all counsel of record.

*/s/ Michael C. Witsch*
Michael C. Witsch